UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GLACIAL CAPITAL, LLC and TRSE
HOLDINGS LLC,

                   Plaintiffs,

    v.

BANCO DE LA PROVINCIA DE BUENOS
AIRES,

                   Defendant.

Case No. _____24-cv-8156_____

---

## COMPLAINT

Plaintiffs Glacial Capital, LLC and TRSE Holdings LLC ("**Plaintiffs**"), by and through their attorneys, for their Complaint against defendant Banco de la Provincia de Buenos Aires ("**Banco Provincia**" or the "**Bank**"), allege as follows:

## INTRODUCTION

1.    This is an action for declaratory relief against Banco Provincia pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to resolve questions of actual controversy involving the relationship between the Province of Buenos Aires' (the "**Province**") wholly owned bank, Banco Provincia, and the Province, and in particular, for a determination that Banco Provincia is the alter ego of the Province. In addition to declaratory relief, Plaintiffs seek a money judgment holding Banco Provincia liable to satisfy the Province's unpaid debts to Plaintiffs. Plaintiffs also seek an order directing Banco Provincia to turn over funds sufficient to satisfy Plaintiffs' judgments against the Province, including funds from the Province's master account at the Bank.

2.    Plaintiffs are the beneficial owners of 10.875% debt securities issued by the Province in 2011 (the "**Notes**"). Under the terms of an indenture dated as of January 12, 2006, by

and between The Bank of New York as Trustee and the Province as Issuer (the "**Indenture**"), the Province is contractually mandated to make principal and interest payments on the Notes. The Province defaulted on interest payments on the Notes on August 25, 2020, and subsequently defaulted on principal payments on February 5, 2021.

3.      Plaintiffs, as beneficial owners of Notes with a principal amount of $25,600,000,[1] brought claims under the Indenture and associated documents before this Court, in an action styled *Glacial Capital, LLC and TRSE Holdings LLC v. The Province of Buenos Aires*, Case No. 1:21-cv-10786-MKV (the "**2021 Action**"). Plaintiffs' motion for summary judgment in the 2021 Action having been granted, Plaintiff obtained, on March 20, 2023, a judgment against the Province in the amount of $15,627,333.04 in favor of Plaintiff Glacial Capital, LLC, and $19,465,625.37 in favor of Plaintiff TRSE Holdings LLC, respectively (the "**2021 Action Judgment**").[2] Since March 20, 2023, the 2021 Action Judgment has been accruing post-judgment interest.

4.      Furthermore, Plaintiffs, as beneficial owners of an additional $77,639,666 in principal amount of Notes, brought claims under the Indenture and associated documents before this Court in an action styled *Glacial Capital, LLC and TRSE Holdings LLC v. The Province of Buenos Aires*, Case No. 1:24-cv-04076-JHR (the "**2024 Action**"). Plaintiffs' motion for summary judgment in the 2024 Action having been granted, Plaintiffs obtained, on October 23, 2024, a judgment against the Province in the amount of $55,037,270.85 in favor of Plaintiff Glacial Capital, LLC, and $69,760,489.95 in favor of Plaintiff TRSE Holdings LLC, respectively (the "**2024 Action Judgment**").[3] This is accruing post-judgment interest.

---

[1]   In this Complaint, the principal amount of the Notes refers to the present principal balance thereof, after giving effect to amortization payments that were made prior to the Province's default. The face amount of the Notes continues to be their original principal amount, which is three times the present principal balance.

[2]   Ex. 1 (2021 Action Judgment).

[3]   Ex. 6 (2024 Action Judgment).

5.      Despite the absence of any dispute over the Province's underlying default, the Province continues to ignore its obligations, in the hope that its delay will drive Plaintiffs to accept far less than what they are owed. Faced with the Province's recalcitrance, Plaintiffs request that this Court declare Banco Provincia—the Province's financial agent and wholly owned and controlled subsidiary tasked as a matter of law with servicing the Province's debt—to be the Province's alter ego, such that its assets may be utilized to satisfy Plaintiffs' existing judgments.

6.      An alter ego determination is appropriate here for a number of reasons. The Bank's relationship with the Province goes well beyond mere principal-agent. Banco Provincia is not an independent sovereign instrumentality, but rather a nominal commercial bank that the Province controls in every way, from its creation as a mere extension of the Province through its day-to-day operations and its financial affairs. Banco Provincia collects taxes and duties on the Province's behalf and services the Province's debts. The Province dominates the Bank's governance through officers and directors who are appointed for their political connections, rather than their merit, and who implement the Province's overall and day-to-day directions regardless of whether they accord with ordinary banking practice or sound commercial management. Thus, the Province dictates not only the Bank's overall strategic objectives, as an ordinary shareholder might do, but also its detailed operational policies, including directing the Bank to offer non-market loan terms to advance the Province's political and social goals.

7.      The Province also exerts economic control over the Bank. The Province forces the Bank to shoulder the costs of loss-generating social programs unrelated to any ordinary banking practice or business such that the Bank then becomes dependent on the Province for its financial survival. Each year, the Province promises to provide infusions of government funds to support Banco Provincia's annual budget. And all of Banco Provincia's debts and other third-party

obligations are guaranteed by the Province as a matter of law. This statutory guarantee goes well beyond the limited guarantee of bank deposits that other governments sometimes provide. And yet, despite its publicly announced obligations to support the Bank, all too often the Province offers up its own debt to shore up the Bank's finances, which the Bank accepts and books as if it were cash, contrary to both ordinary commercial and accounting practices. Again, these are not the acts of independent entities.

8.      Given the Province and Banco Provincia's tightly entwined relationship, treating them as separate entities would give rise to fraud and result in injustice. In fact, while the Province refuses to pay its obligations, Banco Provincia, its financial agent on the Notes, continues to maintain and utilize correspondent accounts at banks in New York. In other words, the Province continues to shirk its obligations but nonetheless benefits from access to the United States financial system and New York law by hiding behind the Bank.

9.      A judgment creditor of a foreign sovereign may look to an instrumentality of the sovereign debtor for satisfaction of a judgment either when the instrumentality is so extensively controlled by its owner that a relationship of principal and agent is created, or when giving effect to the ostensibly separate legal status of the state and its instrumentality would work a fraud or injustice. Both tests are satisfied here.

10.     Courts often consider five factors in their analysis of a state instrumentality's separateness from its sovereign owner: (1) the degree to which governmental officials manage the entity or otherwise have a hand in its daily affairs; (2) the level of economic control by the government; (3) whether the entity's profits go to the government; (4) whether the government is the real beneficiary of the entity's conduct; and (5) whether adherence to separate identities would entitle the foreign state to benefits in United States courts while avoiding its obligations. While

these factors are not a mechanical formula for determining extensive control, they all lead to the conclusion here that the Province and the Bank are alter egos, not distinct and truly separate legal entities.

11.     Separately, because Banco Provincia is subject to jurisdiction in this District, based on, among other things, its own repeated use of correspondent accounts in New York for commercial purposes, including servicing the Notes and other debts of the Province, this Court can order the Bank to turn over assets of the Province, which has waived execution immunity, in satisfaction of Plaintiffs' judgments.

12.     Put simply, Banco Provincia is the alter ego of the Province, dominated thoroughly by the Province and tasked with holding and shielding the Province's financial assets from foreign execution.  As such, Banco Provincia is liable to Plaintiffs and its assets can and should be available to Plaintiffs in satisfaction of their judgments in the 2021 Action and 2024 Action.

<u>**PARTIES**</u>

13.     Plaintiff Glacial Capital, LLC is a limited liability company organized and existing under the laws of the State of Delaware with a registered office address at c/o Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, Delaware 19904.

14.     Plaintiff TRSE Holdings LLC is a limited liability company organized and existing under the laws of the State of Delaware with a registered office address at c/o United Corporate Services, Inc., 874 Walker Rd, Suite C, Dover, Delaware 19904.

15.     Defendant Banco de la Provincia de Buenos Aires is a bank that is wholly owned by the Province of Buenos Aires, headquartered at San Martin 137 Ciudad Autónoma de Buenos Aires, Argentina.

16.     Non-Party Judgment Debtor the Province of Buenos Aires is a political subdivision of the Republic of Argentina, as defined by the Foreign Sovereign Immunities Act ("**FSIA**"), 28 U.S.C. § 1603(b).  It is therefore a foreign state for purposes of the FSIA.

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1367, because this is a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity" under the FSIA, 28 U.S.C. § 1330(a).[4]

18.     Banco Provincia is a "foreign state" as defined in 28 U.S.C. § 1603 because it is "an agency or instrumentality of" the Province, which is itself a political subdivision of the Argentine Republic.  Under 28 U.S.C. §§ 1605(a)(1) and 1605(a)(2), Banco Provincia is not immune from the subject-matter jurisdiction of this Court.

19.     Pursuant to § 1605(a)(1) of the FSIA, a purported instrumentality such as Banco Provincia is not entitled to immunity in an action to enforce a U.S. judgment because the Bank is the alter ego of the Province, and the Province has waived its sovereign immunity as to both jurisdiction and enforcement with respect to the Notes, including under Section 9.7 of the Indenture, in which the Province expressly and unconditionally waived sovereign immunity (both immunity as to jurisdiction and immunity as to enforcement).

20.     Specifically, Section 9.7 of the Indenture states:

> To the extent that the Province may in any jurisdiction claim for itself or its assets or revenues . . . sovereign or other immunity from suit, execution, attachment (whether in aid of execution, before judgment or otherwise) or other legal process, the Province agrees not to claim and irrevocably waives such immunity in respect of its obligations under this Indenture or

---

[4]     *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 497 (1983) (holding that "every action against a foreign sovereign necessarily . . . 'arises under' federal law").

the Debt Securities of any Series to the fullest extent permitted by the laws of such jurisdiction.[5]

As the Province's alter ego, that waiver extends not only to the Province, but to Banco Provincia.

21.    This Court also has jurisdiction over Banco Provincia as the alter ego of the Province, because this action "aris[es] out of or relat[es] to the Debt Securities of a Series or the Indenture," which the Province agreed to "submit[] to the non-exclusive jurisdiction of any U.S. federal or New York state court sitting in the Borough of Manhattan, City of New York."[6] The same text appears in Section 13 of the form Terms and Conditions.[7]

22.    Moreover, pursuant to § 1605(a)(2), Banco Provincia is not immune because this action is based on (i) Banco Provincia's commercial activity in the United States; (ii) at least one act performed by Banco Provincia in the United States in connection with its commercial activity elsewhere; and/or (iii) at least one act committed outside the territory of the United States in connection with Banco Provincia's commercial activity elsewhere, where that act caused a direct effect in the United States.

23.    Alternatively, this Court has subject matter jurisdiction under 28 U.S.C. § 1332, as the amount at issue exceeds $75,000, and there is complete diversity among the parties.

24.    This Court has personal jurisdiction over Banco Provincia pursuant to 28 U.S.C. § 1330(b), which allows the exercise of personal jurisdiction over a foreign state that is not immune from suit and that has been properly served with process pursuant to 28 U.S.C. § 1608.

25.    This Court also has personal jurisdiction over Banco Provincia pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), which permits this District to exercise personal jurisdiction to the extent allowed by New York statutes.  New York's C.P.L.R. § 302 provides jurisdiction over

---

[5]    Ex. 2 (Indenture) at § 9.7.
[6]    Ex. 2 (Indenture) at § 9.7.
[7]    Ex. 2 (Indenture) at Ex. C § 13.

Banco Provincia because it transacted business in New York by, among other things, maintaining correspondent accounts at U.S. financial institutions located in New York, using those accounts to service the debts of the Province as fiscal agent for the Province, including in connection with pre-default payments on the Notes and serving as the Province's agent for service of process for claims arising under or related to the Notes. At the time of the issuance of the Notes, the Bank maintained an office in this District. That office remained in place until at least 2019, and to this day, Banco Provincia maintains its own agent for service of process in New York.

26.    Venue is proper in this District because the Province, and thereby Banco Provincia, expressly waived "any objection to venue or defense of an inconvenient forum" in Section 9.7 of the Indenture and the Terms and Conditions applicable to the Notes. Alternatively, to the extent there is no judicial district in which this action may otherwise be brought, venue is proper in this District because this Court has personal jurisdiction over both the Province and Banco Provincia.

27.    With respect to Plaintiffs' alter ego claims, venue is proper in this District under 28 U.S.C. § 1391(f)(3) because Banco Provincia is doing business in this District, including through its ongoing and deliberate use of correspondent bank accounts.

28.    Venue is also proper in this District under 28 U.S.C. § 1391(f)(1) because a substantial part of the events or omissions that gave rise to Plaintiffs' claims under the Notes, including the Province's failure to make payment as required and the Bank's failure to service the Province's debts took place in this District.

## **FACTUAL ALLEGATIONS**

29.    The present action arises out of the Province's non-payment of certain contractually mandated payments on Plaintiffs' Notes, in breach of the governing Indenture and the express terms of the Notes. Such non-payment has resulted in two separate judgments against the Province.

30.    As described below, the Province dominates Banco Provincia to such an extent that the Bank does not exist or operate as an independent instrumentality.  Instead, the Bank operates as the Province's agent, tasked with performing core governmental functions.  Banco Provincia, which was created as a commercial bank and not a governmental agency, operates not only in the service of the Province's broader economic policy objectives, but it is the vehicle by which the Province directs specific projects designed for political ends—political ends that are underwritten, either directly or indirectly, by the Bank to the detriment of the Bank's own commercial interests. Because the Province controls everything from the Bank's funding to its financial policies to its leadership, the Province's influence over Banco Provincia goes far beyond that of normal supervisory control or the espousal of generalized corporate goals that may be expected of a shareholder or from mere State oversight of a separate state instrumentality.  The Bank is the Province's alter ego.

## A.    The Province's Breach of the Indenture and Subsequent Litigation

31.    Plaintiffs are the beneficial owners of Notes of an aggregate principal amount of $103,239,666, of which $25,600,000 was the subject of the 2021 Action and the balance was the subject of the 2024 Action.

32.    The Province issued the Notes in 2011.  The Notes provided for (i) semi-annual payment of interest and (ii) payment of principal in three installments.  The Notes matured on January 26, 2021.

33.    Since July 26, 2020, the Province has failed to make the contractually mandated interest and principal payments.  The Bank's failures to pay amounted to Events of Default under the Indenture and the Notes.

34.     Plaintiffs brought a breach of contract action before this District on December 16, 2021, *Glacial Capital, LLC and TRSE Holdings LLC v. The Province of Buenos Aires*, Case No. 1:21-cv-10786.

35.     On March 20, 2023, this Court entered a judgment in favor of Plaintiffs.  Judgment was entered against the Province in the amount of $15,627,333.04 in favor of Plaintiff Glacial Capital, LLC, and in the amount of $19,465,625.37 in favor of Plaintiff TRSE Holdings LLC.[8] The judgment includes prejudgment interest through the date of entry.  Post-judgment interest continues to accrue.[9]

36.     Plaintiffs brought a second breach of contract action—the 2024 Action—before this District on May 28, 2024, *Glacial Capital, LLC and TRSE Holdings LLC v. The Province of Buenos Aires*, Case No. 1:24-cv-04076-JHR.

37.     On October 23, 2024, this Court entered a second judgment in favor of Plaintiffs. Judgment was entered against the Province in the amount of $55,037,270.85 in favor of Plaintiff Glacial Capital, LLC, and in the amount of $69,760,489.95 in favor of Plaintiff TRSE Holdings LLC.  The judgment includes prejudgment interest through the date of entry.  Post-judgment interest is accruing.[10]

38.     As of this filing, the Province has failed to pay one penny of either judgment.

39.     This action seeks to remedy the Province's ongoing misconduct and non-payment of its obligations pursuant to the recorded judgments of this Court.

---

[8]  *Supra* ¶ 3.
[9]  *Id.*
[10]  *Supra* ¶ 4.

B.    **Banco Provincia Is the Alter Ego of the Province**

40.    It is well established that the purported separateness between a sovereign (or political subdivision thereof, such as the Province) and an instrumentality can and should be disregarded where the sovereign's extensive control of its instrumentality demonstrates that the separation is a fiction.

41.    The Province's extensive control over Banco Provincia is undeniable, and the facts presented below more than satisfy the standard articulated by the Supreme Court in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("***Bancec***"), which typically considers: (1) the level of economic control by the government; (2) whether the entity's profits go to the government; (3) whether the government is the real beneficiary of the entity's conduct; (4) the degree to which governmental officials manage the entity or otherwise have a hand in its daily affairs; and (5) whether adherence to separate identities would entitle the foreign state to benefits in United States courts while avoiding its obligations.    While there is no mechanical formula for determining when the separate status of a government instrumentality is to be disregarded, here, all the traditional *Bancec* factors plainly and robustly demonstrate that Banco Provincia is the alter ego of the Province.

42.    ***First***, the Province exerts a high level of economic control over Banco Provincia. The Bank is wholly owned by the Province, which treats it as an extension of the government, not a true, separate instrumentality.    Consistent with that treatment, the Bank is subject to extraordinarily intrusive government management while being awarded special privileges not applicable to other banks operating in the Province.

43.    ***Second***, the Province absorbs the Bank's profit and losses.  The Province dictates the Bank's spending on the Province's political projects such that the Province bears the Bank's

operating losses, brought upon the Bank, at least in part, by the same loss-generating projects that the Province dictates but fails to fully fund. Thus, while the Province ostensibly guarantees all the Bank's obligations to third parties by law, allocates part of its budget every year to Banco Provincia, and even steps in to provide financial support to the Bank as needed, that financial support often comes not in the form of real currency, but rather as debt commitments and other promises of future payments that the Bank, in an unreasonable departure from ordinary commercial practice that no arms-length party would emulate, treats at full face value.

44.     ***Third***, Banco Provincia acts as a mere extension of the Province, which is the real beneficiary of Banco Provincia's conduct. The Bank is the Province's fiscal agent, collecting its fiscal revenues and taxes and servicing the Province's public debt, among scores of other tasks typically within the purview of, and performed directly by, a government. And the Bank provides these purported services without charge. The Bank serves as the Province's piggy bank into which the Province collects, stores and removes funds at will. The Province further uses—and benefits from using—the Bank to implement and advance its political policies and programs. The Province imposes commercially unsound programs to be implemented by the Bank that serve only to bolster the Province's political agenda. The Province also uses the Bank's property, including office space and vehicles, as if it were its own and for its benefit.

45.     ***Fourth***, Provincial government officials manage the Bank and control its day-to-day operations. As detailed below, the Governor of the Province appoints Banco Provincia's Board of Directors, which is dominated by political allies who use the Bank to implement the Province's pet policies, including implementing programs that require the Bank to make non-market loans based on political, rather than commercial, criteria. These policies are not the result of the

operations of an independent instrumentality operating under its charter, but rather political spending, including programming imposed upon the Bank by the current Provincial government.

46.    *Fifth*, Banco Provincia and the Province's refusal to observe corporate formalities or otherwise function as true separate entities renders the distinction between them a fiction, and respecting their purported separateness would inequitably allow the Province to shield its financial assets from creditors while continuing to benefit from its use of the Bank as its catspaw, including for continued access to the U.S. financial system.  Banco Provincia collects and holds the Province's tax revenues and spends them at the Province's direction.  By using the Bank as a collection and paying agent for essentially all of the Province's finances, the Province has created a "cut out" that allows it to access the New York banking system while evading its lawful obligations.  At the same time, the Province itself does not recognize the Bank's separateness, as the Bank's Charter and enabling legislation require the Province to guarantee payment of any obligation of the Bank, including any judgment that might be entered against Banco Provincia here. It would, as a result, be inequitable to treat Banco Provincia as a separate corporate entity when the Province does not treat it the same way.

## 1.    Banco Provincia Is Subject to the Province's Economic Control

47.    The Province's high level of economic control over Banco Provincia is demonstrated, first, by Province's treatment of the Bank as an arm of the Provincial government; second, by Provincial law, which subjects the Bank to the Province's control; third, by the Bank's role as financial agent for the Province; and fourth, by the Argentine courts' repeated recognition of Banco Provincia's status as a Provincial state entity.

### a.   Banco Provincia Is an Agent of the Provincial Government

48.     Banco Provincia is a wholly owned government bank created by Provincial law. This relationship predates the founding of the Argentine Republic.  In fact, one of the Province's conditions to joining the new nation was that Banco Provincia would remain subject to the Province's ownership and control and be exempt from the national government's regulations and oversight that are applicable to all other Argentine banks.[11]

49.     Banco Provincia remains under the Province's ownership and control to this day, reflecting the Province's "interest in retaining the full and perpetual freedom to manage its provincial bank, so useful for its financial interests and economic needs of its people."[12]  The Province's control extends to both the Bank's management and its finances, including by dictating the Bank's spending.  The lack of financial independence is further demonstrated by the Province guaranteeing all the Bank's debts.[13]

50.     In fact, despite having its own Board of Directors—appointed by the Governor of the Province as further explained below[14]—the Bank is subject to direct oversight from the Ministry of Economy of Buenos Aires.[15]  Under the implementing legislation and the Bank's Charter, the Ministry of Economy of Buenos Aires is responsible for managing Banco Provincia's relationship with the Executive Branch of the Province.[16]

51.     As an arm of the Government, the Province provides Banco Provincia special treatment not afforded to other financial institutions.  For example, unlike the case with other banks, the Province does not tax dividends paid on Banco Provincia's shares.  While taxes may not be

---

[11]   *See* Ex. 5 (Notes Prospectus) at 100.
[12]   *Banco de la Provincia de Buenos Aires c/Nación* [Supreme Court of Argentina] March 15, 1940, 186:170.
[13]   *Infra* ¶ 72.
[14]   *Infra* ¶¶ 99–101.
[15]   Ex. 3 (Provincial Law 9434/79) at Art. 13; *see also* Ex. 4 (Charter) at Art. 13.
[16]   *Id.*

economically necessary in the sense that the Province receives 100% of the dividend regardless of whether those dividends are taxed or not, the failure to tax is, nevertheless, a disregard of corporate separateness.[17]

52.     Banco Provincia is similarly exempted from Provincial and Argentine laws governing the conduct and operations of banks generally.  Instead, Banco Provincia is "subject to" audits and budgetary controls issued "by entities created under the provincial Constitution: the General Accounting Office and the Auditing office of the Province of Buenos Aires."[18]  This is not the case for any commercial bank operating in the Province of Buenos Aires.

53.     In other words, the Bank is subject to the economic control of Provincial financial and political authorities.

### b.      The Bank Is the Province's Financial Agent

54.     Banco Provincia's relationship with the Province is established in the legislation that created Banco Provincia, as well as legislation prescribing and enacting the Bank's corporate charter.  That legislation makes clear that one of the principal functions of the Bank is to act as the "financial agent of the Government of the Province" and that the Bank is tasked with carrying out "all banking-type transactions" undertaken by the Provincial government.[19]

55.     As the financial agent for the Province, Banco Provincia is empowered to perform myriad tasks for the Province on its behalf.  For one, Banco Provincia collects fiscal revenues and taxes on behalf of the Province.[20]  Banco Provincia, rather than the Province, also services the Province's public debt.[21]  And, when the funds collected by the Bank as tax collector for the

---

[17]    Ex. 3 (Provincial Law 9434/79) at Art. 4; *see also* Ex. 4 (Charter) at Art. 4.
[18]    *Note 1, Notes to the Consolidated Financial Statements*, BANCO PROVINCIA (Dec. 31, 2021), https://www.bancoprovincia.com.ar/content/EEFF/ing_EEFF_unificado_31122021.pdf.
[19]    Ex. 3 (Provincial Law 9434/79) at Art. 9; *see also* Ex. 4 (Charter) at Art. 9.
[20]    Ex. 3 (Provincial Law 9434/79) at Art. 9; *see also* Ex. 4 (Charter) at Art. 9.
[21]    Ex. 3 (Provincial Law 9434/79) at Art. 9(b); *see also* Ex. 4 (Charter) at Art. 9(b).

Province are insufficient to cover the Province's contractual obligations, "the Bank may advance the necessary funds [from its own assets] and reimburse itself . . . afterwards[.]"[22]  By law and in practice, the Province reaches into the Bank as if it would into its own pockets.  Banco Provincia does not function as a distinct and separate entity working at arm's length from the Province.

56.    Banco Provincia also grants guarantees and carries out directives for transactions undertaken by the Province.[23]  Put simply, Banco Provincia carries out duties and functions that are typically reserved for the Provincial government to exercise itself—rendering Banco Provincia (by and through its conduct) indistinguishable from the Province itself.

57.    In addition to its role within the boundaries of the Province, Banco Provincia acts as the Province's agent in international transactions.  With respect to the Notes, for example, the Indenture between Banco Provincia and Bank of New York states that "[t]he Province has appointed Banco de la Provincia de Buenos Aires . . . as its agent (the 'Authorized Agent') to receive on behalf of itself and its property service of any summons and complaint."[24]

58.    Reflective of the financial ties between the Province and Banco Provincia, substantial portions of the offering documents for the Notes are devoted to discussions of Banco Provincia, including its fundamental role in the finances of the Province and the operation of the Provincial government more broadly.

59.    The offering documents for the Notes also explain that "Banco Provincia is also the *exclusive paying agent* of the Province, handling payments of civil servants' wages and salaries and pension and retirement benefits, as well as payments to the Province's creditors.  In addition,

---

[22]    Ex. 3 (Provincial Law 9434/79) at Art. 9(b); *see also* Ex. 4 (Charter) at Art. 9(b).
[23]    Ex. 3 (Provincial Law 9434/79) at Art. 9(c); *see also* Ex. 4 (Charter) at Art. 9(c).
[24]    Ex. 2 (Indenture) at § 9.7.

Banco Provincia is the exclusive agent for judicial deposits related to non-federal cases in provincial courts."[25]

60.    Offering documents also include Banco Provincia in the definition of "Public Sector Instrumentality," which definition expressly includes "any department, ministry or agency of the government of the Province."  In other words, Banco Provincia is not an independent commercial bank, but rather an extension of the Province itself that is subject to the day-to-day whims of the Provincial government.

### c.    Argentine Courts Repeatedly Confirm That Banco Provincia Is Part of the Provincial Government

61.    Argentine courts, both at the Provincial and federal level, including the Supreme Court of Argentina, have repeatedly and routinely confirmed that Banco Provincia is a State entity and part of the Provincial government.

62.    The Supreme Court of Argentina has recognized Banco Provincia as an entity akin to "a State institution" rather than a private bank.  As the Supreme Court of Argentina explained in *Banco de la Provincia de Buenos Aires c/Nación*, Banco Provincia's "attributes" are not those of a commercial bank but rather "***define and shape a State institution*** and ***not*** a particular bank in which its constituents or founders contribute capital for the purpose of creating a corporation authorized under the Commerce Code, to carry out known and common banking operations."[26]

63.    Argentine courts have also exempted Banco Provincia from Provincial taxes and fines, reasoning that imposing such payment obligations on the Bank would impose an economic burden ***on the Province***.

---

[25]    Ex. 5 (Notes Prospectus) at 100 (emphasis added).
[26]    *Banco de la Provincia de Buenos Aires c/Nación* [Supreme Court of Argentina] March 15, 1940, 186:170.

64.     For example, in *Banco de la Provincia de Buenos Aires v. Municipality of Arrecifes*, before the Administrative Contention Claim of La Plata, the court held that Banco Provincia should be exempt from taxes and fees imposed by a Provincial municipality because the municipality should not be allowed to "interfere[] with the economic-political, etc. management ***of the Province***." As that court also noted, "several precedents of th[at] court" had found Banco Provincia to "constitute [a] true bod[y] of the State."[27] In other words, the court rejected the imposing of taxes and fines on the Bank, because imposing a fine on the Bank would be no different that imposing a fine on the Province itself.

65.     In reaching that conclusion, the court adopted Banco Provincia's own arguments. Specifically, in *Banco de la Provincia de Buenos Aires v. Municipality of Arrecifes*, Banco Provincia argued to the administrative court that "the Bank, its assets, acts, contracts, or operations it undertakes, and the rights resulting therefrom, are exempt from any form of tax," because in the words of the Bank, ***Banco Provincia*** "***is the State itself***: it is the Provincial State Bank."[28]

66.     Furthermore, Argentine courts treat Banco Provincia employees as public employees or public officers, and subject them to the corresponding rights and obligations as other government employees under Provincial law.[29]

67.     Consistent with the fact that the Bank is not a separate, independent commercial enterprise, the Province's administrative court for public employees has jurisdiction over disputes between Banco Provincia and its employees—not the courts tasked with interpreting and applying private law, which courts decide disputes between employees and true commercial employers.[30]

---

[27]    *See* Ignacio Monica Rosana c/ Banco de la Provincia de Buenos Aires s/ Pretensión Indemnizatoria – Empleo Público - Cuestión De Competencia Art. 7 Ley 12.009, Supreme Court of the Province of Buenos Aires (emphasis added).

[28]    *Id.* (emphasis added).

[29]    *Id.*

[30]    *Id.*

68.     Argentine courts have also found that contract disputes with Banco Provincia should be resolved in the same administrative courts that handle other cases against the Provincial government and not the civil courts that would have jurisdiction if Banco Provincia were a private entity.

## 2.    The Province Absorbs Banco Provincia's Losses and Guarantees Its Obligations

69.     Banco Provincia is not an independent economic actor, but rather a tool for the Province to further its political goals without regard for whether the activities required by the Province are profitable.  When the burden of carrying out the Province's agenda becomes too much for the Bank to bear, the Province steps in and provides financial support to Banco Provincia, at least on paper.

70.     The finances of the Bank and the Province are intertwined as Banco Provincia's profits and losses have a direct impact on the Province's financial and fiscal health.  The Province dictates that Banco Provincia, though undercapitalized, engage in politically motivated non-commercial endeavors, such that Banco Provincia relies on the Province to fund business expenses. The Province has consistently failed to finance its own pet projects.  And rather than adequately capitalize the Bank, over the last several years the Province has directed an average of 4% of its annual budget to fund the Bank's own budget so as to help maintain its solvency.

71.     Notably, during the financial crises of the 2000s, the Province repeatedly combined the Province's public debt with that of Banco Provincia to create comingled obligations.  The Province has also been forced to take direct ownership of many of Banco Provincia's non-performing loans.[31]

---

[31]  *Id.*

72.     By statute, the Province guarantees all of Banco Provincia's obligations.  This guarantee is not limited in amount, time, type of obligation, location of incurrence, location, or type of obligee.  Indeed, the guarantee extends even to Banco Provincia's obligations incurred by its branches abroad.  Fitch Ratings Inc., one of the largest credit rating agencies in the world, confirms that Banco Provincia's "liabilities (including those of its branches abroad) are guaranteed by the Province of Buenos Aires."[32]

73.     This guarantee goes far beyond the limited guarantee governments sometimes provide on local bank deposits.  It also imposes an obligation to fund the Bank far beyond the capital contributions that might be required of shareholders (on a case-by-case basis pursuant to specific contracts—something very different than the Province's blanket guarantee).  As a result of this free total guarantee, the Bank's expenditures and losses are really the Province's expenditures, resulting in a commingling of their finances.

74.     The Province readily admits its obligation to support Banco Provincia in multiple debt offerings, including in statements made in debt prospectuses issued in October 2005, April 2007, January 2011, June 2015, July 2015, March 2016, June 2016 (two separate offerings), August 2016, October 2016, November 2016, February 2017, and March 2017.  As stated in the Province's July 13, 2017 offering memorandum, for example, the Province is required by law "to make payments to Banco Provincia's creditors if Banco Provincia fails to meet its payment obligations."

75.     The Province has repeatedly noted this payment obligation in its other debt offerings as well.  The Province reaffirmed its obligation to finance the Bank and ensure the

---

[32] *Fitch Affirms Provincia Casa Financiera at 'CCC-'*, FITCHRATINGS (Apr. 18, 2024), https://www.fitchratings.com/research/banks/fitch-affirms-provincia-casa-financiera-at-ccc-18-04-2024.

solvency of Banco Provincia in more recently issued prospectuses, including those in April 2020 and October 2021.

76.     Beyond guaranteeing Banco Provincia's debts, the Province has historically treated the Bank's obligations as its own.  This is not simply a theoretical obligation.  Rather, the Province's obligation to support Banco Provincia and guaranty its obligations has been called upon many times.  For example, Provincial Law No. 12,509 authorized the Province to consolidate the Provincial public debt with Banco Provincia's debt.  As the Province explained in the prospectus for the Notes, the "Province has made contributions and provided support to, and entered into transactions with Banco Provincia to ensure the solvency of, Banco Provincia."[33]

77.     And, in the same prospectus, the Province explained that it "cannot assure [investors] that it will not be required to provide further financial or other support to Banco Provincia, which could lead to substantial unbudgeted expenditures and liabilities, undermine the Province's public finances and adversely affect its ability to service its debt obligations, including the New Bonds."[34]  In other words, there is no meaningful separation between the Bank's finances and the Province's finances.

78.     Consistent with this ongoing obligation, substantial portions of the Province's debt offerings over the last 20 years are dedicated to discussions of Banco Provincia and its financials, because the financial condition of the Province is totally intertwined with the financial condition of the Bank.

### 3.     The Province Is the Real Beneficiary of the Bank's Conduct

79.     Many of the core functions of Banco Provincia are governmental and inextricably intertwined with the operation of the Province.  For instance, Banco Provincia performs duties and

---

[33]   Ex. 5 (Notes Prospectus) at 16.
[34]   *Id.*

obligations on the Province's behalf, serves as the Province's tax authority and treasury and issues payments for obligations in fact owed by the Province.  In a blatant disregard of corporate separateness, Banco Provincia does not charge the Province for these services.

      a.     **Banco Provincia Performs Governmental Duties and Obligations**

      80.    As the Province's financial agent,[35] Banco Provincia carries out tasks that are typically reserved for government branches such as the Treasury or Ministry of Economy.  Banco Provincia performs these governmental actions *not* at the independent direction of the Bank's executives or Board of Directors but instead at the direction of the Province itself.

      81.    For example, the Bank "collect[s] [] revenues and taxes" and "service[s] [] the Province's public debt," based on "the instructions given annually by the Minister of the Economy."[36]

      82.    For transactions undertaken by the Province, Banco Provincia is also tasked with "grant[ing] guaranties [and] undertak[ing] transactions that in substance imply a guarantee . . . and if the Bank has to meet the commitments entailed in its guarantee, it will be authorized to take the respective funds from the [Province's] taxes and revenue received."[37]  There is barely the veneer of separation between the assets of Banco Provincia and the Province.

      83.    While Banco Provincia is tasked with collecting taxes, duties and other funds of the Province—including the proceeds of debt offerings such as issuance of the Notes upon which the 2021 Action and 2024 Action judgments are based—and maintaining those funds on behalf of the Province, Banco Provincia receives no compensation for this service, again demonstrating the Province's dominion over the Bank.[38]

---

[35]  *See supra* ¶¶ 54–60.
[36]  Ex. 3 (Provincial Law 9434/79) at Art. 9; *see also* Ex. 4 (Charter) at Art. 9.
[37]  *Id.*
[38]  Ex. 3 (Provincial Law 9434/79) at Art. 6; *see also* Ex. 4 (Charter) at Art. 6.

b.    **The Province Uses Banco Provincia to Restructure Its Debt, Often at a Loss to the Bank**

84.    The Province regularly alters the terms of its purported "debt" to Banco Provincia so that the Province can repay it on more favorable terms.

85.    For example, in 2021, pursuant to Provincial Resolution 435/2021, obligations of the Province to Banco Provincia were to be paid over a period of 24 months on an interest-free basis, during a period of high inflation—ranging from 50% in 2021 to 211% in 2023. At the same time the Bank was charging the Province no interest, far safer obligations bore very high rates of interest. For example, Argentina's Monetary Policy Interest Rate ranged from almost 32% in July 2021 to more than 90% in July 2023;[39] "Interest Rates on Overnight Repo Transactions for the BCRA [the Republic of Argentina's Central Bank]" ranged from 42.7% in July 2021 to 116.0% in July 2023; and "Interest Rates on 30-Day Deposits with Financial Institutions" ranged from 34.3% in July 2021 to 93.6% in July 2023.[40]

86.    The Province itself acknowledges that it has historically received favorable restructuring terms at the expense of Banco Provincia through what it calls a "favorable" "regularizing process."[41] The Bank does so because it is completely controlled by the Province.

87.    The Province has also used the Bank's assets to effectively pay the Province's debt to its own vendors. For example, in 2009, the Ministry of Economy of the Province dictated a process by which suppliers who held receivables payable by the Province could apply to the Treasury of the Province for a Provisional Loan Certificate ("**PLC**"). The suppliers could then

---

[39]    *Argentina Policy Rate*, CEIC, https://www.ceicdata.com/en/indicator/argentina/policy-rat (last visited Oct. 17, 2024).

[40]    *Main Variables*, BANCO CENTRAL DE LA REPÚBLICA ARGENTINA, https://www.bcra.gob.ar/PublicacionesEstadisticas/Principales_variables_i.asp (last visited Oct. 20, 2024).

[41]    *Economia*, GOBIERNO DE LA PROVINCIA DE BUENOS AIRES, https://www.gba.gob.ar/economia/provincial_office_debt_and_public_credit (last visited Sept. 25, 2024).

take their PLC to Banco Provincia, which was obligated to grant loans quickly and at preferential rates—effectively using the Bank's assets to pay the Province's debts. The PLCs allegedly acted as collateral, guaranteed by the Province. This program was reinstated in 2020 when the Province was again unable to pay its creditors itself.

### c.    The Province Regularly Funds Its Obligations to the Bank With Non-Market Debt Rather than Cash

88.    On many occasions when the Province has been required to step in and support Banco Provincia financially, it has done so by issuing Provincial debt bonds or similar instruments that defer actual monetary payment to Banco Provincia or Banco Provincia's creditors for many years.

89.    The Province routinely supports the Bank from a bookkeeping perspective by providing funding in the form of bonds and other debt instruments, thereby giving the Bank receivables that it can treat as assets without money truly changing hands, thereby further undermining the purported separate finances of the Province and the Bank. Moreover, the Bank appears to value these bonds at face value on issuance, without any accounting for the fact that the Province's debt is treated by third parties, including ratings agencies, as high risk and subject to substantial discounts when traded.

90.    No independent bank or any other commercial entity acting at arms-length would ever agree to accept the Province's debt on these terms.

### d.    The Province Treats the Bank's Property as Its Own

91.    The Province treats the Bank's physical assets as its own, taking them at will.

92.    Banco Provincia also provides the Province with office spaces and cars at no cost.

93.    For example, in December 2022 Banco Provincia granted a "*comodato*" that retroactively provided (and continues to provide) the Eighth Floor of 402/30 Bartolome Mitre

Street in Buenos Aires for the use of the Ministry of Treasury and Finance. This *comodato* is, in effect, a zero-cost lease to the Province. Similar *comodatos* have been (and continue to be) granted for the 12th Floor of a building located at San Martin, 2563/83, Mar del Plata, District of Pueyrredon, this time for the benefit of the Cultural Institute of the Province of Buenos Aires, as well as for additional spaces. Historically, Banco Provincia has provided the use of vehicles to the Province under similar *comodatos* as well.

94.    The Province's debt offerings demonstrate the Province's recognition that the Bank's assets are the Province's assets, by, among other things, expressly providing that Banco Provincia's holdings of the Province's debt are to be treated as though they are held by the Province directly for purposes of debtholder decisions, such as restructuring of the Notes or other debts.

95.    Because it is completely controlled by the Province, the Bank charges nothing for the real estate and services provided to the Province. This non-payment cannot be justified simply by pointing to the Bank's status as a subsidiary of the Province. By providing myriad services for no compensation whatsoever—not even reimbursement of the operating costs—the Bank allows the Province to benefit at the expense of the Bank and its separate finances. This is a blatant disregard of the corporate form.

**4.    The Province Controls the Bank's Operations**

96.    The Province dictates critical aspects of the Bank's day-to-day operations, further demonstrating that the Bank is not an ordinary financial institution, nor even an independent sovereign instrumentality, but rather an arm and agent, and thereby alter ego, of the Province.[42]

97.    In addition to its power over the Bank's finances, the Province exercises its control through its dominion over Banco Provincia's leadership. The Province can and does not only

---

[42]    *See supra* ¶¶ 48–53.

select but also directs the Bank's leadership.  To ensure that the Bank operates at the whims of the Province, the Province uses its appointment power to prioritize the nomination of political cronies to the Board of Directors thereby keeping the Bank from exercising any truly independent authority over its decision-making and operations.  The Province wields this control over Banco Provincia to achieve and implement the Province's policies and political goals.

a.    **The Province's Constitution, the Provincial Law Creating Banco Provincia and the Bank's Charter Give the Province Exceptional Control over the Bank**

98.    Banco Provincia is not run like a true commercial bank.  Instead, as set forth in its public Mission Statement, Banco Provincia's express goal is to drive the "economic and productive development of the Province of Buenos Aires."[43]  While this public function of Banco Provincia as established in its Charter is not necessarily impermissible as an aspirational goal for management, in practice the Bank is called upon to serve as far more than an independent instrumentality free from Provincial interference.

99.    The Bank is led by a Board of Directors who are appointed by the Province consisting of one President and eight voting members.[44]  Banco Provincia's Board of Directors has direct control over the operation of the Bank, contrary to the strategic role typically assigned to directors of a private company.  This direct role over operations is outlined in the Bank's enacting statute and the Charter, both of which task the Board with, among other things, approving, establishing, authorizing, and regulating all the Bank's transactions, services and expenses, as well as any and all loans.[45]

---

[43]    *Sustainability Report 2023*, BANCO PROVINCIA, https://www.bancoprovincia.com.ar/content/REPORTE_SOSTENIBILIDAD_2023_INGLES.pdf (last visited Sept. 25, 2024).

[44]    Ex. 3 (Provincial Law 9434/79) at Art. 18; *see also* Ex. 4 (Charter) at Art. 18.

[45]    *See, e.g.*, Ex. 3 (Provincial Law 9434/79) at Art. 9; *see also* Ex. 4 (Charter) at Art. 9.

100.    Each voting member and the President of the Board of Directors must be "appointed by the Executive Branch," *i.e.*, the Governor of the Province of Buenos Aires, and "the approval of the Senate" of Buenos Aires is required.[46]

101.    The Governor's appointment power is likewise reflected in the Constitution of the Province at Article 144(18)(4), which gives the Governor the "power[]" to "appoint[], with the agreement of the Senate . . . [t]he President and the directors of the Bank of the Province that correspond to him to designate."

102.    Financial or economics experience is not a requirement for appointment to the Board of Directors.

103.    Members of the Bank's board are persons exercising public functions under Provincial law.  For example, board members are subject to the same public office asset disclosure regime that applies to other Provincial officials.

104.    Consistent with the Province's control of Banco Provincia, each of Banco Provincia's annual reports lists the authorities to which it answers.  The first named "authorities" in Banco Provincia's most recent annual reports are Governor of the Province Axel Kicillof, Vice Governor Veronica Maria Magario, and Cabinet Minster Carli Bianco.

105.    In other words, the Bank acknowledges that it is not an independent instrumentality, but rather takes instructions directly from the Province, and not just through the Province-controlled Board of Directors.

---

[46]    Ex. 3 (Provincial Law 9434/79) at Art. 18; *see also* Ex. 4 (Charter) at Art. 18.

   b.  **The Province Appoints Board Members Who Use the Bank to Advance the Executive Branch's Politics and Policies**

106. The Province uses the Board of Directors' direct role in the Bank's operations to manipulate the Bank actions by appointing board members aligned with the Province's interests. While there is no issue *per se* with the Provincial government appointing board members as the owner of the Bank, here, the Province uses that power to directly manage the Bank. Indeed, the Province uses its appointment power to the Board of Directors to ensure it maintains control over Banco Provincia, including not only its policies, but also its operations.

107. For example, Directors' Resolution 856/23 granted a $19,998,627 loan—denominated in Argentine pesos—to the Province on non-market terms. In practice, this enhanced role—including the power to approve individual loans—allows the Province to cause the Directors to force the Bank to accede to the financial demands of the Province.

108. Whenever a new Provincial Governor is elected, the Governor routinely appoints a new Bank president who is politically aligned with his policies. Since at least 1999, each Provincial Governor has appointed a new president of Banco Provincia after beginning their term. Consistent with that practice, current Governor Axel Kicillof appointed Juan Cuattromo as Bank President the same month Kicillof took office in 2019. This type of appointment power is consistent with a government-controlled agency or instrumentality; it is inconsistent with the notion of an entity that is separate and independent from the government.

109. Consistent with the Province's refusal to allow the Bank to operate as an independent commercial entity, board appointments are not based on aptitude or expertise but rather political ideology and experience. Indeed, appointments to the Bank's Board of Directors are often a steppingstone to other political positions or act as favors that the Province gives to

political actors to encourage them to assist the Provincial government in implementing its political goals both inside and outside of the Bank.

110.    Although appointments as President and to the Board of Directors require legislative approval under Banco Provincia's Charter and Provincial law, reports indicate that in practice governors ignore this corporate formality and appoint directors directly.

111.    Historically, many members of Banco Provincia's board serve or served in government positions, including many with little obvious ties to the banking industry.  Current and former members of Banco Provincia's board have served with the National Defense Commission, the Ministry of Labor, the Constitutional Affairs and Justice Commission, and the Labor and Health Commission.  Members have also served as Undersecretaries for Political Affairs.  Similar ties between the government and Bank officials exist with respect to Bank Presidents.  For example, past presidents have served as Minister of Production (Martin Lousteau) and Provincial Spokesperson (Gustavo Marangoni), among other positions.

112.    Consistent with historical practice, most of the current members of the Board of Directors have served in political positions prior to their appointment, including Juan M. Cuattromo (President), a longtime political confidant of Governor Kicillof, who worked in the Argentine Ministry of Economy and Public prior to becoming President of the Bank; Humberto A. Vivaldo, who served as a Director Administration in the Ministry of Labor; Carlos Fernández, who was a member of the Argentine National Congress and a Provincial senator; Sebastián Galmarini, who was a senator of the Province and part of Governor Kicillof's ruling coalition;  Laura González, who was and indeed still is a delegate of the Buenos Aires Ministry of Labor; Santiago Nardelli, who was deputy of the Province of Buenos Aires, where he held a vice president position and chaired various Provincial commissions; and Bruno Screnci Silva, who previously worked in the

government of the City of Buenos Aires where he served, first, as Undersecretary of Political Affairs, and later, as a Government Minister.

113.    A number of Governor Kicillof's appointees are known cronies willing to advance the Governor's politics and policies.  For example, the current President of the Board of Directors, Juan Miguel Cuattromo, has been described as a "Kicillof soldier" and one of Governor Kicillof's most loyal supporters.  This is particularly notable given Kicillof's economic views and personal politics.  During his time as Finance Minister for the national government under Cristina Fernández de Kirchner, Kicillof repeatedly rejected the notion that the government should honor its debts and favored, and ultimately implemented, the nationalization of formerly private companies, including Argentina's national oil company, YPF S.A., to avoid contractual obligations.  Indeed, as reported in the New York Times, Kicillof was seeking to "assert greater state control over Argentina's economy."

114.    Appointments to the Board of Directors are also used as bargaining chips for political gain—reflective of a governmental entity rather than one that is independent of it.  For example, in 2022, Governor Kicillof appointed Carlos Fernández, a member of the opposition party Unión Civica Radical (Radical Civic Union), to the Board of Directors.  According to reports, this appointment came following a "negotiation that the Kicillof government had with the [opposition party]" in return for the opposition voting for a law Kicillof favored.  Similarly, on June 24, 2024, local Argentine news outlet La Política Online reported that Kicillof was considering offering a seat on the Bank's Board of Directors to a member of a minority party in return for the party voting in favor of a bill that Kicillof proposed.[47]

---

[47]    *La Política Online*, UN SECTOR DE LOS LIBERTARIOS PIDE UN ASIENTO EN EL BAPRO PARA APROBAR LA EMPRESA DE EMERGENCIAS DE KICILLOF (June 24, 2024), https://www.lapoliticaonline.com/provincia/un-sector-de-los-libertarios-pide-un-asiento-en-el-bapro-para-aprobar-la-empresa-de-emergencias-de-kicillof/.

115.    These appointments, and others, are consistent with Governor Kicillof's acknowledgment in a January 14, 2020 article published by *Letra P* that there is a tradition of allocating Bank board positions to the opposition, and that he is "willing to accept that" tradition if such appointments advanced Provincial prerogatives.[48]

116.    Governor Kicillof's acknowledgement echoes findings of members of a 2002 Bicameral Commission of the Provincial Congress—created under Provincial Law 12,729 to investigate the "uncollectable" loans that Banco Provincia granted to third parties affiliated with government officials—that Banco Provincia's board members were appointed based on political loyalty or as tools for forging electoral alliances. Members of that Commission also found that Banco Provincia had no real internal controls and instead answered to the Provincial Executive and that the Bank would deviate from its established credit rules to fund election campaigns of the governing party.

117.    This politicization of board appointments continues to this day.

c.    **The Province Forces Banco Provincia to Implement Government Policies and Programs at the Bank's Expense**

118.    Through its control of Banco Provincia, the Province uses the Bank to carry out its economic policies and preferred social programs. To be clear, Banco Provincia is not an independent instrumentality that is simply tasked by charter with advancing overarching policies or general strategic goals and then left to its own devices in implementing those policies and goals. Instead of allowing the Bank to set up its own programs as an independent instrumentality, the Province dictates not only the creation, but also the operational details of numerous social programs.

---

[48]    *Letra P*, Kicillof no completa el directorio y un radical podría poner en jaque al Bapro (Jan. 14, 2024), https://www.letrap.com.ar/nota/2020-1-14-11-13-0-kicillof-no-completa-el-directorio-y-un-radical-podria-poner-en-jaque-al-bapro.

119.    The terms imposed by the Province on Banco Provincia are non-market and favor the social objectives of the current Provincial government over sound business practices.  Such programs are not imposed on other banks operating in the Province.

120.    The Province also uses Banco Provincia as a public relations tool to bolster the government's popularity and approval rating.  The Province forces Banco Provincia to participate in public events and to create special discounts that are designed to advance the Province's political goals, not the Bank's business.  These roles are not typical of an ordinary commercial bank nor an independent instrumentality.

        **i.      The Bank Runs the Province's Economic and Development Programs**

121.    The Province controls the day-to-day operations of the Bank, not merely its high-level policy objections, and has used Banco Provincia as a tool to advance its economic policies.  The Province directs Banco Provincia to create programs and credit lines at non-market rates to further the political objectives of the current Provincial administration.  The terms and conditions of the programs and credit lines are crafted by the Province, or under the Province's direction, and are devoid of market or commercially reasonable benchmarks.

122.    One such example of the Province's programmatic control over Banco Provincia is the creation and implementation of the Buenos Aires Rural Development Plan ("**BARDP**").  BARDP coordinates actions of nine ministries of the Province and provides funding for various Province-approved agro-industrial infrastructure projects.  Under BARDP, the Bank has provided tens of billions of pesos loans on non-market terms.  For example, the Bank granted the loans with interest rates significantly below market rates.  In fact, the interest rates were so low that, because of the country's skyrocketing inflation, it was a near certainty that the loans would cause the Bank to lose money on real terms.  For example, at the instruction of the Province, the Bank charged interest rates of 22% and 24% in 2021, which were significantly less than both the existing market

interest rate and inflation rate.  As of August 2024, loans were offered with an annual interest rate of 23% while the inflation rate was over 200% per year, nearly ten times more than the applicable interest rate.  The impact of these below-market rates was only exacerbated by the repayment terms, which often do not require any payment for 48 or even 60 months, resulting in a sure loss for the Bank but political gain for those in control of the Provincial government.

123.    Similar to BARDP, the Province has also used the Bank to fund its Procampo Digital initiative, a credit program introduced in 2023 allowing bank clients to manage their purchase of various agricultural products.  Procampo Digital allows customers to apply for loans with fixed and preferential rates if the loan is being used for agriculture or farming, economic sectors favored by the current Provincial administration.  Like BARDP, Procampo Digital provides loans at interest rates well below prevailing rates and then-levels of inflation, which includes rates of just 17.5% in 2024.  Again, these loans are non-market and uneconomic, ensuring that the Bank will lose money on real terms even if the loans are repaid in a timely fashion.

124.    In a July 22, 2023 Banco Provincia press release referring to the program launch, the Bank's president acknowledged as much.  The press release stated that Procampo Digital was "not a commercial idea, but a political decision of our Governor Axel Kicillof."  At the Province's direction, thousands of customers have received below-market financing through Procampo Digital, and the Bank has extended the equivalent of tens of millions of U.S. dollars in money losing loans as a result.

125.    In yet another example of the Province's control of the Bank, in September 2023, Banco Provincia was specifically directed to use funds to provide non-market loans to teachers and public-school employees at a loss to the Bank.  These loans were offered with a fixed interest rate of 60% and a repayment term of up to 36 months.  These terms were well under the rate of

inflation, which at the time was over 138%.  As with so many other programs mandated by the Province, these loans guaranteed that the Bank would lose money on real terms even if the loans were repaid.  When making the announcement for these loans, Governor Kicillof commended his government's efforts to return Banco Provincia to the service of ordinary citizens instead of, in his terms, focusing too much on "financial speculation" and investments.  The Province reiterated this view in a September 20, 2023 press release confirming the governor's statement.

### ii.    The Province Uses Banco Provincia to Bolster Its Popularity

126.    The Province uses the Bank to bolster the government's popularity through programs devoid of economic justification or benchmarks and that are directed to consumers as public relations tools for the Province.

127.    One example of the Province using Banco Provincia as publicity for its own political gain is the Cuenta DNI program.  The Cuenta DNI program is a payment processing program operated through the Bank that permits users to make contactless payments and bank withdrawals.  To increase political support, the Province often offers promotions and discounts through Cuenta DNI.  Promotions have included, for example, refunds for butchers, farms, and fishmongers, and cashback payments on transactions using a Banco Provincia credit card.  The Province uses its day-to-day control over the Bank to increase the Province's popularity at the Bank's expense.

128.    Between July 2021 and December 2021, the Ministry of Treasury and Finance of the Province of Buenos Aires provided approximately US$ 50 million to finance these promotional offers.  But since then, the discount and promotions programs implemented at the Province's direction have been paid for using funds taken directly from Banco Provincia.

129.    Cuenta DNI has become a hallmark of Kicillof administration political marketing, with more than eight million users as of November 2023.  The Province takes funds from Banco

Provincia to fund the Cuenta DNI program and market the Provincial government favorably to citizens. Instead of allowing the Bank to operate independently for its own gain, the Province uses the Bank's resources to market the government favorably to citizens.

130.    The Province also routinely obliges Banco Provincia to participate in various public expositions to market the Province's political leadership to the people. For example, Banco Provincia is mandated to attend Expoagro, an open-air agricultural exhibition organized by two Argentine newspapers, at which the Bank bolsters the Provincial government by creating and providing promotions, offers, and financing facilities while extolling the government's role in these programs. To that end, in Banco Provincia's 2023 Sustainability Report, the Bank's president explained that Banco Provincia's participation in Expoagro "derives from a political decision of Governor Axel Kicillof, who required us to put Banco Provincia at the service of the entire production of the province of Buenos Aires." In other words, Banco Provincia's participation is nothing more than a way for the Provincial Government to expand and publicize its role in the agricultural sector. It is not the act of an independent instrumentality.

> **d.** **The Province Uses Its Control of Banco Provincia to Address Financial Crises**

131.    During times of economic crisis, the Province has regularly directed Banco Provincia to bear the cost of the Province's own social programming as well as the risk associated with the Province's lack of funds.

132.    In 2020, the Province compelled Banco Provincia to step in and salvage the Province's social commitments in light of the COVID-19 pandemic. While the goal may have been laudable, the implementation was not. For example, in September 2020, the Province implemented its *Alimentar* Card as part of the Province's efforts to provide money for food to those in need. To fund the program, the Province passed Provincial Resolution No. 38/2020, which not

only directs Banco Provincia to serve as the financial agent for the program but also orders Banco Provincia to absorb all expenses associated with the program's operations and logistics management.

133.    And, when hard currency has been scarce due to the Province's lack of liquidity, the Province has directed Banco Provincia to accept alternative forms of repayment not accepted by commercial banks.  For example, Provincial Law 12,727 declared an economic emergency in the Province and directed the Bank to accept special bonds issued by the Province known as *Patacones* for the payment of all Provincial and municipal debts and obligations.  Private banks were not subjected to this requirement and could continue to demand that debts be satisfied with currency instead of scrip.

134.    Through these actions, and others like them, the Province uses the Bank's balance sheet for its own purposes without negotiation, contract or other regard for the Bank's purported independence.

**5.    It Would Be Unjust to Recognize Banco Provincia's Purported Separate Status Here**

135.    The Province controls Banco Provincia.  The Bank is not an independent instrumentality.  Instead, the nominal distinction between the Province and Banco Provincia is one of form, not substance, and serves only to aid the Province in improperly shielding its assets from creditors like Plaintiffs.

136.    It would be improper to allow the Province to continue to access U.S. financial and legal markets through Banco Provincia while the Province uses the Bank's purported independent existence to shield assets from Plaintiffs and other creditors.

137.    This is particularly true here given that Banco Provincia was directly involved in the offering of the Notes that gave rise to the judgments in the 2021 Action and 2024 Action.

138.    The Bank played several key roles in the issuance and maintenance of the Notes. Banco Provincia served as local co-manager in Argentina for the offering of the Notes, served as the Province's agent tasked with collecting and ultimately transferring funds for payment on the Notes into the United States, and served as the Province's agent for service of process in the United States for claims under the Notes' Indenture.[49]

139.    As the Province's financial agent, Banco Provincia is charged with servicing the Province's debts, including the Notes.[50]  It has failed to do so.  Meanwhile, despite its refusal to service the Province's debts to Plaintiffs, Banco Provincia continues to use its correspondent bank accounts in New York to conduct U.S. Dollar transactions on a regular basis, including to make payments to holders of restructured notes that the Province issued in the hope that noteholders would accept less beneficial terms than the existing Notes held by creditors such as the Province in exchange for a renewed promise of payment.

140.    Giving effect to Banco Provincia's nominal separateness from the Province would unjustly deprive Plaintiffs of the ability to recover the assets located in this District that, although nominally held by Banco Provincia, are in fact controlled by the Province.

141.    Allowing the Province to utilize Banco Provincia—an entity it totally dominates, controls and directs for its own political purposes—to collect, hold, and spend the Province's tax and other revenue while at the same time it contends that Banco Provincia is a separate entity would work a fraud or injustice upon the creditors of the Province.  As long as the charade of separateness persists, the Province is able to use the Bank to take advantage of New York's banking system and stable set of laws to move the Province's money through New York without honoring the debts that the Province incurred in New York and committed to pay back in New York.

---

[49]    *Supra* ¶¶ 8, 57, 59.
[50]    *Supra* ¶¶ 11, 44, 55.

142.    Put simply, Banco Provincia's finances are commingled with the Province's finances and it is the Province's alter ego.  As such, Plaintiffs' judgments against the Province should be declared enforceable against Banco Provincia.

## COUNT ONE
### (DECLARATORY RELIEF)

143.    Plaintiffs repeat and reallege paragraphs 1 to 142 of this Complaint as set forth herein.

144.    While the Province and Banco Provincia claim to be independent juridical entities, in reality, the Province and Provincial officials play an essential role in the management and operations of the Bank.  The Province and current Provincial administration dictate the composition of the Bank's Board of Directors,[51] and direct the Bank's day-to-day operations.[52] The Province frequently obligates Banco Provincia to host and promote specific Provincial social programs for political purposes, while leaving the Bank to shoulder the costs.[53]  In addition to its managerial hold, the finances of the Province and the Bank are intertwined and the Province uses the Bank's assets as its own.  The Province exerts inordinate economic control over the Bank, including by guaranteeing all of Banco Provincia's obligations to third parties and annually funding a significant portion of the Bank's budget, thereby allowing the Province to treat the Bank's funds as its own.

145.    The Province is the real beneficiary of the Bank's actions.  The profits and losses of the Bank flow directly to the Province and the Province uses the Bank to further its political goals without regard for the Bank's independent economic existence.  Banco Provincia serves as the Province's financial agent and is tasked with collecting taxes and other duties on the Province's

---

[51]    *See supra* ¶¶ 106–17.
[52]    *See supra* ¶¶ 48–53; 121–25.
[53]    *See supra* ¶¶ 118–25.

behalf, all without remuneration.[54] The Province also benefits by unilaterally restructuring its purported "debt" to the Bank so that it can be repaid on favorable terms—essentially transferring value from the Bank to the Province by reducing the value of the Bank's assets to the detriment of non-Provincial creditors—and by taking Bank property for the Provincial government's use without compensation.

146.    A justiciable and actual controversy exists with respect to whether Banco Provincia is an alter ego of the Province.

147.    A declaratory judgment resolving this question is likely to prevent further harm to Plaintiffs resulting from the Province's abuse of Banco Provincia's status as a sovereign instrumentality through the shielding of assets from Plaintiffs and other creditors.

148.    A declaratory judgment resolving this question is likely to clarify or settle the legal rights of the parties to this action.

149.    A declaratory judgment resolving this question is likely to terminate a source of insecurity or controversy that brought about this action.

150.    An instrumentality such as Banco Provincia is the alter ego of a sovereign political subdivision when the sovereign controls the instrumentality so extensively that a principal-agent relationship exists between them.

151.    In particular, the Province (1) uses Banco Provincia's property as its own; (2) ignores Banco Provincia's purported separate juridical status; (3) deprives Banco Provincia of any independence from close political control; (4) subjects Banco Provincia to Provincial approvals of business decisions; and (5) issues policies and directives that cause Banco Provincia to act directly on behalf of the Province and contrary to its independent financial interests.

---

[54] *See supra* ¶¶ 54–60; 80–83.

152.    An instrumentality such as Banco Provincia is also the alter ego of a sovereign political subdivision when giving effect to the nominal separateness of the instrumentality would work fraud or injustice.

153.    Here, the Province completely controls Banco Provincia.  The Province uses the Bank as its proxy to collect and hold the Province's tax and other revenues and to pay the Province's favored creditors, while at the same time evading its other lawful creditors by maintaining the charade of separateness.  Moreover, the nominal distinction between the Province and Banco Provincia is regularly disregarded while serving to aid the Province in avoiding its obligations under the respective judgments and shielding assets from creditors such as Plaintiffs. The Province uses Banco Provincia to engage with and benefit from the New York banking system, all while avoiding having the Province's revenues applied to pay the Province's legitimate creditors. Giving effect to Banco Provincia's nominal separation from the Province would unjustly deprive Plaintiffs of the ability to recover assets located in New York that, although nominally held by Banco Provincia, should be deemed to be assets of the Province.

154.    Accordingly, Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202.

**COUNT TWO**
**(MONEY JUDGMENT ON EXISTING JUDGMENT)**

155.    Plaintiffs repeat and reallege paragraphs 1 to 142 of this Complaint as set forth herein.

156.    On March 20, 2023, this Court entered judgment in favor of Plaintiffs in the 2021 Action.  Judgment was entered against the Province in the amount of $15,627,333.04 in favor of Plaintiff Glacial Capital, LLC and in the amount of $19,465,625.37 in favor of TRSE Holdings LLC.

157.    The judgment in the 2021 Action continues to accrue post-judgment interest.

158.    As the alter ego of the Province, Banco Provincia is liable for the Province's obligations.

159.    Accordingly, Plaintiffs are entitled to judgment against Banco Provincia in the same amount as the judgment entered against the Province, plus interest at the then-applicable post-judgment interest rate under 28 U.S.C. § 1961 from March 20, 2023 to the date of entry.

## COUNT THREE
### (MONEY JUDGMENT ON EXISTING JUDGMENT)

160.    Plaintiffs repeat and reallege paragraphs 1 to 142 of this Complaint as set forth herein.

161.    On October 23, 2024, this Court entered judgment in favor of Plaintiffs in the 2024 Action. Judgment was entered against the Province in the amount of $55,037,270.85 in favor of Plaintiff Glacial Capital, LLC and in the amount of $69,760,489.95 in favor of TRSE Holdings LLC.

162.    The judgment in the 2024 Action is accruing post-judgment interest.

163.    As the alter ego of the Province, Banco Provincia is liable for the Province's obligations.

164.    Accordingly, Plaintiffs are entitled to judgment against Banco Provincia in the same amount as the judgment entered against the Province, plus interest at the then-applicable post-judgment interest rate under 28 U.S.C. § 1961 from October 23, 2024 to the date of entry.

## COUNT FOUR
### (FOR TURNOVER PURSUANT TO C.P.L.R. § 5225)

165.    Plaintiffs repeat and reallege paragraphs 1 to 142 of this Complaint as set forth herein.

166.    Section 5225(b) of the C.P.L.R. states, in relevant part, that a court "shall require a . . . person in possession or custody of money . . . in which the judgment debtor has an interest

or . . . a person who is a transferee of money . . . from the judgment debtor . . . to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor."[55]

167.    Here, Plaintiffs are the holders of a final judgment that remains unpaid, and Banco Provincia holds unencumbered funds belonging to the Province substantially in excess of what Plaintiffs are owed.

168.    Under the Indenture and other documents associated with the offering and issuance of the Notes, the Province has expressly waived its sovereign immunity from execution.  Any funds that are not expressly reserved for an essential public service are thus subject to execution in satisfaction of that Judgment.

169.    Pursuant to Rule 69(a) of the Federal Rules of Civil Procedure and C.P.L.R. § 5225, Plaintiffs respectfully request that the Court enforce Plaintiffs' judgment against the Province by issuing an order conveying, assigning, and directing the payment to Plaintiffs of all rights, title, and interest of the Province in the funds held in the Province's master account at Banco Provincia, in such amount sufficient to satisfy Plaintiffs' judgment.

## REQUEST FOR RELIEF

Plaintiffs respectfully request a judgment:

a.    declaring, pursuant to 28 U.S.C. § 2201, that Banco Provincia is the alter ego of the Province;

b.    adjudging Banco Provincia to be jointly and severally liable for the judgment in the 2021 Action that has been awarded to Plaintiffs against the Province based on the Province's payment default;

---

[55]    *See also Bernard v. Lombardo*, 2016 WL 7377240, at *4 (S.D.N.Y. Nov. 23, 2016).

c.    adjudging Banco Provincia to be jointly and severally liable for the judgment in the 2024 Action that has been awarded to Plaintiffs against the Province based on the Province's payment default;

d.    awarding money damages against Banco Provincia in the amount of Plaintiffs' judgments in the 2021 Action and 2024 Action against the Province, together with post-judgment interest;

e.    directing Banco Provincia to turn over the contents of the Province's Treasury account in an amount sufficient to satisfy the judgment in the 2021 Action;

f.    awarding interest, costs, fees and other expenses associated with this action, including reasonable attorneys' fees; and

g.    any such other relief this Court deems just and proper.

Dated:    October 28, 2024

GIBSON, DUNN & CRUTCHER LLP

By:  _____

Robert L. Weigel (rweigel@gibsondunn.com)
Jason W. Myatt (jmyatt@gibsondunn.com)
Nadia Alhadi (nalhadi@gibsondunn.com)
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

Miguel A. Estrada (mestrada@gibsondunn.com)
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: (202) 955-8500