# EXHIBIT 2

**EXECUTION COPY**

---

**THE PROVINCE OF BUENOS AIRES**
**as Issuer**

**and**

**THE BANK OF NEW YORK**
**as Trustee**

**INDENTURE**

**dated as of January 12, 2006**

---

DEBT SECURITIES

---

ARTICLE ONE
DEFINITIONS

Section 1.1.     Certain Terms Defined.......................................................................... 1
Section 1.2.     New York Time .................................................................................. 5

ARTICLE TWO
THE DEBT SECURITIES

Section 2.1.     Issuable in Series; Amount Unlimited ................................................. 5
Section 2.2.     Authentication and Delivery of Debt Securities ................................. 7
Section 2.3.     Execution of Debt Securities ............................................................. 7
Section 2.4.     Certificate of Authentication.............................................................. 8
Section 2.5.     Form of Debt Securities...................................................................... 8
Section 2.6.     Registration, Transfer and Exchange of Debt Securities.................. 10
Section 2.7.     Mutilated, Defaced, Destroyed, Stolen and Lost Debt
                Securities; Cancellation and Destruction of Debt Securities ............ 12

ARTICLE THREE
COVENANTS

Section 3.1.     Payment of Principal and Interest ..................................................... 12
Section 3.2.     Offices for Payments.......................................................................... 12
Section 3.3.     Appointment to Fill a Vacancy in Office of Trustee ......................... 13
Section 3.4.     Payments ............................................................................................ 13
Section 3.5.     Notice of Event of Default................................................................. 15
Section 3.6.     Limitation on Liens............................................................................ 15

ARTICLE FOUR
DEFAULT AND REMEDIES

Section 4.1.     Events of Default ............................................................................... 16
Section 4.2.     Acceleration of Maturity, Rescission and Annulment....................... 17
Section 4.3.     Collection of Indebtedness by Trustee; Trustee May Prove
                Debt.................................................................................................... 18
Section 4.4.     Application of Proceeds..................................................................... 19
Section 4.5.     Suits for Enforcement ........................................................................ 19
Section 4.6.     Restoration of Rights on Abandonment of Proceedings.................... 20
Section 4.7.     Limitations on Suits by Holders ........................................................ 20
Section 4.8.     Unconditional Right of Holders to Receive Principal and
                Interest................................................................................................ 20
Section 4.9.     Powers and Remedies Cumulative; Delay or Omission Not
                Waiver of Default............................................................................... 21
Section 4.10.    Control by Holders............................................................................. 21
Section 4.11.    Payments After a Default................................................................... 21
Section 4.12.    Prescription ....................................................................................... 22

ARTICLE FIVE
CONCERNING THE TRUSTEE

Section 5.1.    Duties and Responsibilities of the Trustee........................................ 22
Section 5.2.    Certain Rights of the Trustee ....................................................... 23
Section 5.3.    Trustee Not Responsible for Recitals, Disposition of Debt
                Securities or Application of Proceeds Thereof ................................ 25
Section 5.4.    Trustee May Hold Debt Securities; Collections ............................. 25
Section 5.5.    Monies Held by Trustee .............................................................. 25
Section 5.6.    Compensation and Indemnification of Trustee and Its Prior
                Claim.......................................................................................... 25
Section 5.7.    Right of Trustee to Rely on Official's Certificate ........................... 26
Section 5.8.    Persons Eligible for Appointment as Trustee ................................. 26
Section 5.9.    Resignation and Removal; Appointment of Successor Trustee......... 26
Section 5.10.   Acceptance of Appointment by Successor Trustee .......................... 27
Section 5.11.   Merger, Conversion, Consolidation or Succession to Business
                of Trustee ................................................................................... 28
Section 5.12.   Appointment of Co-Trustee .......................................................... 29

ARTICLE SIX
CONCERNING THE HOLDERS

Section 6.1.    Evidence of Action Taken by Holders............................................ 30
Section 6.2.    Proof of Execution of Instruments and of Holding of Debt
                Securities.................................................................................... 30
Section 6.3.    Holders to Be Treated as Owners ................................................. 30
Section 6.4.    Debt Securities Owned by the Province or Any Public Sector
                Instrumentalities Deemed Not Outstanding..................................... 31
Section 6.5.    Right of Revocation of Action Taken............................................. 31

ARTICLE SEVEN
SUPPLEMENTAL INDENTURES

Section 7.1.    Supplemental Indentures Without Consent of Holders .................... 32
Section 7.2.    Supplemental Indentures with Consent of Holders ......................... 33
Section 7.3.    Effect of Supplemental Indenture .................................................. 33
Section 7.4.    Documents to Be Given to Trustee ................................................ 33
Section 7.5.    Notation on Debt Securities in Respect of Supplemental
                Indentures................................................................................... 34

ARTICLE EIGHT
SATISFACTION AND DISCHARGE OF INDENTURE; UNCLAIMED MONIES

Section 8.1.    Satisfaction and Discharge of Indenture ......................................... 34
Section 8.2.    Application by Trustee of Funds Deposited for Payment of
                Debt Securities ............................................................................ 34
Section 8.3.    Repayment of Monies Held by Trustee Paying Agent ..................... 35
Section 8.4.    Return of Monies Held by Trustee or Any Trustee Paying
                Agent.......................................................................................... 35

ii

ARTICLE NINE
MISCELLANEOUS PROVISIONS

Section 9.1.    Officials of the Province Exempt from Individual Liability ............. 35
Section 9.2.    Provisions of Indenture for the Sole Benefit of Parties and
                Holders ................................................................................... 35
Section 9.3.    Successors and Assigns of the Province Bound by Indenture .......... 35
Section 9.4.    Notices and Demands on Trustee and Holders ................................ 36
Section 9.5.    Official's Certificates and Opinions of Counsel; Statements to
                Be Contained Therein ............................................................... 36
Section 9.6.    Payments Due on Non-Business Days ........................................... 37
Section 9.7.    Governing Law; Consent to Jurisdiction; Waiver of
                Immunities; Currency Indemnity ................................................ 37
Section 9.8.    Counterparts ............................................................................ 38
Section 9.9.    Waiver of Jury Trial ................................................................. 38
Section 9.10.   Effect of Headings ................................................................... 39

ARTICLE TEN
PROVISIONS FOR MEETINGS OF HOLDERS

Section 10.1.   Purposes for Which Meetings May Be Called; Call and Notice
                Meeting of Holders ................................................................... 39
Section 10.2.   Persons Entitled to Vote; Quorum ............................................... 39
Section 10.3.   Proxy ...................................................................................... 40
Section 10.4.   Chairman; Voting ..................................................................... 40
Section 10.5.   Counting Votes; Recording Actions or Meetings ............................ 41

ARTICLE ELEVEN
MODIFICATIONS

Section 11.1.   Modifications ........................................................................... 41
Section 11.2.   Modifications Affecting Debt Securities of a Single Series ............. 41
Section 11.3.   Reserve Matter Modifications Affecting Debt Securities of
                Multiple Series ......................................................................... 42
Section 11.4.   Binding Effect ......................................................................... 42
Section 11.5.   Certain Definitions ................................................................... 42

SCHEDULE I     Existing Bonds
EXHIBIT A      Form of Face of Global Security
EXHIBIT B      Form of Face of Certificated Debt Security
EXHIBIT C      Form of Reverse of Debt Security—Terms and Conditions
EXHIBIT D      Form of Authorization
EXHIBIT E      Form of Incumbency Certificate
EXHIBIT F      Form of Transfer Certificate

TRUST INDENTURE (the "Indenture"), dated as of January 12, 2006, between the PROVINCE OF BUENOS AIRES (the "Province"), and THE BANK OF NEW YORK, a New York banking corporation, as trustee (the "Trustee").

W I T N E S S E T H :

WHEREAS, the Province has duly authorized the execution and delivery of this Indenture to provide for the issuance from time to time of its debentures, notes, securities or other evidences of indebtedness (herein generally called the "Debt Securities") to be issued in one or more series (each, a "Series"), as provided in this Indenture and to provide, among other things, for the authentication, delivery and administration thereof; and

WHEREAS, all things necessary have been done to make this Indenture a valid agreement of the Province in accordance with its terms;

NOW, THEREFORE:

In consideration of the premises and the purchases of Debt Securities by the Holders (as defined below) thereof, the Province and the Trustee mutually covenant and agree, for the equal and proportionate benefit of all Holders from time to time of the Debt Securities, as follows:

ARTICLE ONE

DEFINITIONS

SECTION 1.1.    Certain Terms Defined.  The following terms (except as otherwise expressly provided or unless the context otherwise requires) for all purposes of this Indenture and of any indenture supplemental hereto shall have the respective meanings specified in this Section.  The words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.  The terms defined in this Article include the plural as well as the singular.

"Additional Amounts" shall have the meaning set forth in Paragraph 3 of the Terms.

"Argentina" means the Republic of Argentina.

"Authorization" shall have the meaning set forth in Section 2.1(b).

"Authorized Officials" means the persons designated from time to time by the Ministry of Economy of the Province to act and to give and receive instructions and notices on behalf of the Province hereunder, and to authenticate and deliver Debt Securities on the Province's behalf.

"Authorized Agent" shall have the meaning set forth in Section 9.7.

"Business Day" means any day other than (i) a Saturday or Sunday, (ii) a day on which banking institutions or trust companies are authorized or obligated by law, regulation or executive order to close in the City of New York or in the City of Buenos Aires and (iii) if the Debt Securities are denominated in euro, a day on which the Trans-European Automated Real-

1

Time Gross-Settlement Express Transfer ("TARGET") System, or any successor thereto, is closed for business or (iv) if the Debt Securities are denominated in a currency other than U.S. dollars or euro, a day on which banking institutions or trust companies are authorized or obligated by law or executive order to close the financial center of the country in whose currency the Debt Securities are denominated or a day on which banking institutions in such non-U.S. financial center are not carrying out transactions in the currency of that country.

"Clearstream, Luxembourg" means Clearstream Banking, *société anonyme*.

"Co-Participation Payments" means any transfers made by the federal government of Argentina to the Province pursuant to federal law No. 23,548, as amended or replaced from time to time, and any other law, decree or regulation governing the obligation of the federal government of Argentina to distribute taxes collected by it to the Argentine provinces.

"Co-Participation Secured Indebtedness Ratio" means the percentage that is equal to (A) in any fiscal year, the aggregate amount of payments of principal and interest that will become due in such fiscal year (after giving pro forma effect to the incurrence of Indebtedness secured by a Lien on the Province's right to receive Co-Participation Payments) in respect of Indebtedness that is secured by a Lien on the Province's right to receive Co-Participation Payments, divided by (B) the aggregate amount of Co-Participation Payments actually received by the Province for the fiscal year most recently ended prior to the incurrence of the Lien, (C) multiplied by 100, provided that, with respect to the calculation of payments to be made in respect of principal and interest, inflation adjustment accrued through the most recent fiscal year on such principal and interest shall be given effect, but no effect shall be given for inflation adjustment for the current and any future fiscal years; provided further that the Co-Participation Secured Indebtedness Ratio is to be calculated for each future fiscal year on a stand-alone basis and not by aggregating the principal and interest payments for more than one fiscal year.

"Corporate Trust Office" means the principal corporate trust office of the Trustee, which at the date of execution hereof is located at 101 Barclay Street, Floor 21 West, New York, New York 10286, Attention: Global Finance Unit, Facsimile Number: 212-815-5915.

"Debt Securities" has the meaning set forth in the first recital of this Indenture and more particularly means any Debt Securities authenticated and delivered under this Indenture.

"Depositary" means, with respect to any Series of Debt Securities issued in whole or in part in the form of one or more Global Securities, the Person that is designated as Depositary by the Province until a successor Depositary shall have been appointed pursuant to the applicable provision of this Indenture, and thereafter "Depositary" shall mean or include each Person who is then a Depositary hereunder.

"Dollar" or "US$" means such currency of the United States as at the time of payment is legal tender for the payment of public and private debts.

"Euro" or "€" means the lawful currency of the member states of the European Union that adopt the single currency in accordance with the Treaty establishing the European Community (signed in Rome on March 25, 1957), as amended by the Treaty on European Union

2

(signed in Maastricht on February 7, 1992), and as amended by the Treaty of Amsterdam (signed in Amsterdam on October 2, 1997), and as further amended from time to time.

"Euroclear" means Euroclear Bank, S.A./N.V., as operator of the Euroclear System.

"Event of Default" shall have the meaning set forth in Section 4.1.

"Exchange Act" means the U.S. Securities Exchange Act of 1934, as amended.

"Excluded Indebtedness" means (i) any and all series of Existing Bonds and (ii) any Indebtedness incurred prior to the date hereof under credit facilities extended or guaranteed by member states of the Organisation for Economic Cooperation and Development (OECD) or any agency or instrumentality thereof.

"Existing Bonds" means any outstanding debt securities issued by the Province of any of the series listed in Schedule I hereto.

"Global Security" means a Debt Security evidencing all or a part of a Series of Debt Securities issued to the Depository for such Series in accordance with Article Two and bearing the legend prescribed in Section 2.5(c).

"Holder" means the Person in whose name a Debt Security is registered in the Register.

"Indebtedness" means, with respect to any Person, whether outstanding on the original issuance date of a series of New Securities or at any time thereafter:  (i) all indebtedness of such Person for borrowed money; (ii) all reimbursement obligations of such Person (to the extent no longer contingent) under or in respect of letters of credit or bankers' acceptances; (iii) all obligations of such Person to repay deposits with or advances to such Person; (iv) all obligations of such Person (other than those specified in clauses (i) and (ii) above) evidenced by Securities, debentures, notes or similar instruments; and (v) to the extent no longer contingent, all direct guarantees, endorsements, *avales* or similar obligations of such Person in respect of, and all direct obligations of such Person to purchase or otherwise acquire, or otherwise to assure a creditor against loss in respect of, indebtedness or obligations of any other Person specified in clause (i), (ii), (iii) or (iv) above.

"Indenture" means this instrument as originally executed and delivered or, if amended or supplemented as herein provided, as so amended or supplemented and, unless the context otherwise requires, shall include the terms of a specific series of Debt Securities.

"Lien" means any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance on or with respect to, or any preferential arrangement which has the practical effect of constituting a security interest with respect to the payment of any obligation with or from the proceeds of, any currently existing or future asset or revenues of any kind under the laws of Argentina.

"Majority" means greater than 50%.

"Modification" shall have the meaning set forth in Section 11.1.

3

"Non-Reserve Matter" shall have the meaning set forth in Section 11.5.

"Official's Certificate" means, as the context requires, a certificate signed by at least one Authorized Official.

"Opinion of Counsel" means an opinion in writing signed by legal counsel (who may be an employee of or counsel to the Province or the Trustee, as applicable).

"Outstanding" shall have the meaning set forth in Section 11.5.

"Payment Date" shall have the meaning set forth in Section 3.4(a).

"Person" means an individual, a corporation, a partnership, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

"Province" means the Province of Buenos Aires.

"Public Sector Instrumentality" shall have the meaning set forth in Section 6.4(a).

"Register" shall have the meaning set forth in Section 2.6(a).

"Registrar" means The Bank of New York.

"Reserve Matter Modification" shall have the meaning set forth in Section 11.5.

"Reserve Matters" shall have the meaning set forth in Section 11.5.

"Responsible Officer" means, when used with respect to the Trustee, any officer within the corporate trust department of the Trustee, including any vice president, assistant vice president, assistant secretary, assistant treasurer, trust officer or any other officer of the Trustee who customarily performs functions similar to those performed by the Persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of such person's knowledge of and familiarity with the particular subject and who shall have direct responsibility for the administration of this Indenture.

"Securities Act" means the U.S. Securities Act of 1933, as amended.

"Series" shall have the meaning set forth in the recitals of this Indenture.

"Terms" shall have the meaning set forth in Section 2.1(a).

"Trustee" means The Bank of New York until any successor trustee for any Series of Debt Securities shall have become such pursuant to Article Five, and thereafter shall mean or include each Person who is a Trustee for one or more Series of Debt Securities hereunder.  If at any time there is more than one Trustee, then "Trustee" as used with respect to the Debt Securities of any Series shall mean the Trustee with respect to that Series.

"Trustee Paying Agent" shall have the meaning set forth in Section 3.2.

4

SECTION 1.2.    New York Time.  All times referred to in this Indenture or the Debt Securities of all Series are local time in the City of New York, United States of America, except as otherwise specified.

ARTICLE TWO

THE DEBT SECURITIES

SECTION 2.1.    Issuable in Series; Amount Unlimited.  The Province may from time to time issue Debt Securities in one or more separate Series.  The aggregate principal amount of Debt Securities that may be authenticated and delivered under this Indenture is unlimited.

(a)    Debt Securities of all Series shall contain or incorporate by reference the terms and conditions (the "Terms") set forth in Exhibit C hereto, except to the extent modified or superseded by the terms set forth in the Authorization (as defined below) with respect to a specific Series, and shall have the benefit of and be bound by the terms of this Indenture.

(b)    The specific terms of each Series of Debt Securities shall be authorized by the Province in an authorization (each, an "Authorization") substantially in the form set forth in Exhibit D hereto, executed on behalf of the Province by an Authorized Official, which shall set forth the following with respect to that Series:

(i)    the title of the Debt Securities of that Series (which shall distinguish the Debt Securities of that Series from all other Series of Debt Securities);

(ii)    the limit, if any, upon the aggregate principal amount of Debt Securities of that Series that may be authenticated and delivered under this Indenture (except for Debt Securities authenticated and delivered upon transfer of, or in exchange for, or in lieu of other Debt Securities of that Series pursuant to the provisions hereof or of the Debt Securities of that Series);

(iii)    the price or prices (expressed as a percentage of the aggregate principal amount of that Series) at which the Debt Securities of that Series will be issued;

(iv)    the date or dates on which or periods during which the Debt Securities of that Series may be issued, and the dates on, or the range of dates within which, the principal of (and premium, if any, on) the Debt Securities of that Series are or may be payable;

(v)    the rate or rates or the method of determination thereof at which the Debt Securities of that Series shall bear interest, if any, the date or dates from which such interest shall accrue, the Payment Dates on which such interest shall be payable, and the record dates for the determination of the Holders of the Debt Securities of that Series to whom any such interest will be payable;

(vi)    the places, if any, in addition to or instead of the Corporate Trust Office of the Trustee, where the principal of (and premium, if any) and interest on Debt Securities of that Series shall be payable;

5

(vii)     if the amount of principal of or any premium or interest on any Debt Securities of that Series may be determined by reference to an index or pursuant to a formula, the manner in which such amount will be determined;

(viii)    the obligation, if any, of the Province to redeem or purchase Debt Securities of that Series pursuant to any sinking fund or analogous provisions or at the option of a Holder and the periods within which or the dates on which, the prices at which and the terms and conditions upon which Debt Securities of that Series shall be redeemed or repurchased, in whole or in part, pursuant to such obligation;

(ix)      the periods within which or the dates on which, the prices at which and the terms and conditions upon which Debt Securities of that Series may be redeemed, if any, in whole or in part, at the option of the Province or otherwise;

(x)       if other than denominations of any integral multiple of $1.00, the denominations in which individual Debt Securities of that Series shall be issuable;

(xi)      whether the Debt Securities of that Series are to be issued as original issue discount Debt Securities and the amount of discount with which the Debt Securities of that Series shall be issued;

(xii)     whether the Debt Securities of that Series are to be issued in whole or in part in the form of one or more Global Securities and, in such case, the form of legend or legends, if any, which shall be borne by any such Global Security in addition to or in lieu of that set forth in Section 2.5 hereof, the Depositary for such Global Security or Securities and the terms and conditions, if any, upon which interests in such Global Security or Securities may be exchanged in whole or in part for the definitive Debt Securities represented thereby;

(xiii)    if other than U.S. dollars, the currency in which Debt Securities of that Series shall be denominated or in which payment of the principal of (and premium, if any) and interest on Debt Securities of that Series may be made and any other terms concerning such payment;

(xiv)     if the principal of (and, premium, if any) or interest on Debt Securities of that Series is to be payable, at the election of the Province or a Holder thereof, in a currency other than that in which the Debt Securities are denominated or payable without such election, the periods within which and the terms and conditions upon which such election may be made and the time and the manner of determining the exchange rate between the currency in which the Debt Securities are denominated or payable without such election and the currency in which the Debt Securities are to be paid if such election is made;

(xv)      any other terms of the Debt Securities of that Series (which terms shall not be inconsistent with the provisions of this Indenture); and

(xvi)     CUSIP, ISIN, or other identifying numbers with respect to the Debt Securities of that Series.

(c)    All Debt Securities of any one Series shall be substantially identical except as to denomination and as may otherwise be provided in the Authorization for, or any supplemental indenture with respect to, that Series.

SECTION 2.2.    <u>Authentication and Delivery of Debt Securities</u>.  Upon the execution and delivery of this Indenture, or from time to time thereafter, Debt Securities of any Series in an aggregate principal amount not in excess of such principal amount as shall have been set forth in an Authorization may be executed and delivered by the Province to the Trustee for authentication, accompanied by an Official's Certificate directing such authentication, and the Trustee shall thereupon authenticate and deliver such Debt Securities in accordance with such Official's Certificate without any further action by the Province.

SECTION 2.3.    <u>Execution of Debt Securities</u>.  The Debt Securities of any Series shall be executed manually or in facsimile on behalf of the Province by one Authorized Official.  The Debt Securities of any Series (i) may also have such additional provisions, omissions, variations or substitutions as are not inconsistent with the provisions of this Indenture and (ii) may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with this Indenture, any law or with any rules made pursuant thereto, or with the rules of any securities exchange, governmental agency or Depositary therefor, or as may be determined consistent herewith, by the Authorized Officials executing Debt Securities, in the case of each of clauses (i) and (ii) as conclusively evidenced by the proper execution of such Debt Securities by one Authorized Official.

With the delivery of this Indenture, the Province is furnishing, and from time to time thereafter may furnish, a certificate substantially in the form of Exhibit E hereto (an "<u>Incumbency Certificate</u>"), identifying and certifying the incumbency and specimen (and facsimile) signature(s) of one or more Authorized Officials.  The Province shall promptly furnish to the Trustee a new Incumbency Certificate upon a change in the Authorized Officials.  Until the Trustee receives a subsequent Incumbency Certificate, the Trustee shall be entitled to rely on the last Incumbency Certificate delivered to it for purposes of determining the Authorized Officials.  Typographical and other minor errors or defects in any signature shall not affect the validity or enforceability of any Debt Security that has been duly authenticated and delivered by the Trustee.

In case any Authorized Official who shall have executed any of the Debt Securities shall cease to be an Authorized Official before the Debt Security so executed is authenticated and delivered by the Trustee, such Debt Security nonetheless may be authenticated and delivered as though the Person who executed such Debt Security had not ceased to be an Authorized Official; and any Debt Security may be executed on behalf of the Province by such Person who is, as of the actual date of the execution of such Debt Security, an Authorized Official, even though as of the date of the execution and delivery of this Indenture such Person was not an Authorized Official.

SECTION 2.4.    <u>Certificate of Authentication</u>.  Only such Debt Securities as shall bear thereon a certification of authentication substantially as set forth below in this Section 2.4, executed by the Trustee by manual or facsimile signature of one of its Responsible Officers, shall be entitled to the benefits of this Indenture or be valid or obligatory for any purpose.  Such

certification by the Trustee upon any Debt Security executed by or on behalf of the Province shall be conclusive evidence that the Debt Security so authenticated has been duly authenticated and delivered hereunder and that the Holder thereof is entitled to the benefits of this Indenture.

<div align="center">TRUSTEE'S CERTIFICATE OF AUTHENTICATION</div>

This is one of the Debt Securities of the Series designated herein issued under the within-mentioned Indenture.

The Bank of New York, as Trustee

Dated: _____    By: _____
*Authorized Signatory*

SECTION 2.5.    <u>Form of Debt Securities</u>.  (a)  The Debt Securities of each Series will be issued in fully registered form without coupons.  The face of the Debt Securities of each Series shall be substantially in the form of Exhibit A hereto (for Global Securities) or Exhibit B hereto (for Definitive Securities) and the reverse of which shall be substantially in the form of Exhibit C hereto or, in either case, such other form as shall be set forth in the Authorization for such Series.

(b)    Each Debt Security shall be dated the date of its authentication.

(c)    If the Province shall establish pursuant to an Authorization that the Debt Securities of a Series are to be issued in whole or in part in the form of one or more Global Securities, then the Authorized Official shall execute and the Trustee, upon receipt of an Official's Certificate so directing, shall authenticate and deliver one or more Global Securities in fully registered form.  Global Securities authenticated under this Indenture shall be registered in the name of the Depositary designated for such Global Securities or a nominee thereof and delivered to such Depositary or a nominee thereof or custodian therefor, and each such Global Security shall constitute a single Debt Security for all purposes of this Indenture.  Global Securities shall bear a legend in substantially the following form:

THIS SECURITY IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE REFERRED TO HEREINAFTER AND IS REGISTERED IN THE NAME OF A DEPOSITARY OR A NOMINEE THEREOF.  THIS SECURITY MAY NOT BE EXCHANGED, IN WHOLE OR IN PART, FOR A SECURITY REGISTERED, AND NO TRANSFER OF THIS SECURITY, IN WHOLE OR IN PART, MAY BE REGISTERED, IN THE NAME OF ANY PERSON OTHER THAN SUCH DEPOSITARY OR A NOMINEE THEREOF, EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE.

So long as the Depositary for a Global Security, or its nominee, is the registered owner of such Global Security, such Depositary or such nominee, as the case may be, will be considered the sole owner or Holder of the Debt Securities represented by such Global Security for all purposes under this Indenture.  Except as specified below or with respect to the terms of

<div align="center">8</div>

Debt Securities of any Series, owners of beneficial interests in a Global Security will not be entitled to have any of the individual Debt Securities of such Series represented by such Global Security registered in their names, or be entitled to receive physical delivery of any such Debt Securities in definitive form and will not be considered the owners or Holders thereof under this Indenture.

None of the Province, the Trustee, any Trustee Paying Agent or any Registrar for such Debt Securities will have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial interests in a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial interests.

(d)     Each Depositary designated by the Province pursuant to this Section 2.5 must, at the time of its designation and at all times while it serves as Depositary, be a clearing agency that is registered, exempt from registration or not required to be registered under the Exchange Act and/or any other applicable statute or regulation in order to be eligible to act as a Depositary in connection with the Debt Securities of the Series that are deposited with such Depositary.

(e)     If at any time (i) a Depositary located in the United States for any Global Security (A) notifies the Province that it is unwilling or unable to continue as Depositary for such Global Security, (B) ceases to be a "clearing agency" registered under the Exchange Act or (C) shall no longer be eligible to act as such under this Section 2.5, and, if a successor Depositary for such Global Security is not appointed by the Province within 90 days after the Province receives notice from the Depositary or becomes aware of such ineligibility, or (ii) a Depositary located outside of the United States (A) is closed for a continuous period of 14 days (other than by reason of statutory holidays), (B) announces an intention permanently to cease business or does in fact do so, (C) is not registered and ceases to be exempt from registration or becomes required to be registered under the Exchange Act or (D) shall no longer be eligible to act as such under this Section 2.5, the Province's election pursuant to this Section 2.5 that Debt Securities of that Series be represented by a Global Security shall no longer be effective, such Global Security will be deemed to be surrendered for cancellation and the Province will execute, and the Trustee, upon receipt of an Official's Certificate directing the authentication and delivery of definitive Debt Securities and an adequate supply of definitive Debt Securities, will authenticate and deliver to each beneficial owner identified by the relevant Depositary, without charge, definitive Debt Securities of that Series in any authorized denominations in an aggregate principal amount equal to the principal amount of such Global Security in exchange for such Global Security.

(f)     If the Trustee has instituted or has been directed to institute any judicial proceeding in a court to enforce the rights of the Holders of Debt Securities of any Series thereunder and the Trustee has been advised by counsel that in connection with such proceeding it is necessary or appropriate for the Trustee to obtain possession of the Debt Securities of such Series, the Trustee may in its sole discretion determine that the Debt Securities of such Series represented by a Global Security or Securities shall no longer be represented by such Global Security or Securities.  Additionally, the Province, at its option, may determine to terminate the book-entry system through the Depositary for any Series and make definitive Debt Securities of such Series available to the Holders of Debt Securities of such Series or their nominees.  In either

such event, the Province hereby agrees to execute and the Trustee, upon receipt from the Province of an Official's Certificate directing the authentication and delivery of definitive Debt Securities and an adequate supply of definitive Debt Securities of such Series, will authenticate and deliver, in exchange for Global Securities of such Series, definitive Debt Securities of such Series (and, if the Trustee has in its possession definitive Debt Securities of such Series previously executed by the Province, the Trustee will authenticate and deliver such definitive Debt Securities), in authorized denominations, in an aggregate principal amount equal to the principal amount of the Global Securities of such Series.

(g)     Definitive Debt Securities issued in exchange for a Global Security or any portion thereof shall be registered in such names as the Depositary for such Global Security shall direct.  Other than as set forth in Section 2.6, Definitive Debt Securities will only be issued in exchange for interests in a Global Security pursuant to Sections 2.5(e) and 2.5(f) hereof.

SECTION 2.6.     Registration, Transfer and Exchange of Debt Securities.  (a)  The Registrar shall maintain at the Corporate Trust Office a register of all Debt Securities (the "Register") for the registration of all Debt Securities and transfers and exchanges thereof.  Upon presentation for transfer or exchange of a Debt Security of any Series in whole or in part at the office of any Trustee Paying Agent accompanied by a written instrument of transfer or exchange in the form approved by the Province (it being understood that, until notice to the contrary is given to Holders, the Province shall be deemed to have approved the form of instrument of transfer or exchange, if any, printed on a Debt Security of any Series) executed by the Holder, in person or by such Holder's attorney-in-fact duly authorized in writing, such Trustee Paying Agent shall instruct the Registrar to record in the Register the portion of such Debt Security as is being transferred, and the Trustee shall authenticate and issue a new Debt Security in the name of the transferee and will cause such new Debt Security and a Debt Security evidencing any untransferred portion to be delivered to the transferor at the office of such Trustee Paying Agent.

The Register shall also include customary notations, including, without limitation, whether Debt Securities of any Series have been paid or canceled, or, in the case of mutilated, defaced, destroyed, lost or stolen Debt Securities, whether such Debt Securities have been replaced.

The Registrar shall at all reasonable times during office hours make the Register available for inspection by the Province or any Person authorized in writing by the Province, acting on its behalf, or any Holder of Debt Securities for the purposes contemplated hereby and for the taking of copies thereof or extracts therefrom, and, at the expense of the Province, the Trustee shall deliver to such Persons, lists of Holders of Debt Securities and their addresses and the amounts of such holdings such Persons may reasonably request.

The Register shall be in written form in the English language or in any other form capable of being converted into such form within a reasonable time.

(b)     The Holder of a definitive Debt Security may transfer the same in whole or in part (in an amount equal to the authorized denomination or any integral multiple thereof) by surrendering such definitive Debt Security at the Corporate Trust Office or at the office of any Trustee Paying Agent, together with an executed instrument of transfer substantially in the form

of Exhibit F to this Indenture.  In exchange for a definitive Debt Security of any Series properly presented for transfer, the Trustee shall, within three Business Days of such request if made at such Corporate Trust Office, or within ten Business Days if made at the office of a Trustee Paying Agent (other than the Trustee), authenticate and deliver at the relevant office to the transferee or send by first class mail (at the risk of the transferee) to such address as the transferee may request, a definitive Debt Security or Securities, as the case may require, of such Series for like aggregate principal amount and of such authorized denomination or denominations as may be requested.  The presentation for transfer of any definitive Debt Security shall not be valid unless made at the Corporate Trust Office in the City of New York or at the office of a Trustee Paying Agent by the registered Holder in person, or by a duly authorized attorney-in-fact.  The Province shall ensure that the Trustee shall be provided with an adequate supply of definitive Debt Securities for authentication and delivery pursuant to the terms of this Section 2.6(b).

(c)    At the option of the Holder, a definitive Debt Security may at any time be presented for exchange into an equal aggregate principal amount of definitive Debt Securities in different authorized denominations, but only at the Corporate Trust Office or at the office of a Trustee Paying Agent together with a written request for the exchange.  Subject to this Section 2.6(c), whenever one or more definitive Debt Securities of any Series shall be surrendered for exchange, the Trustee shall, within three Business Days of such request if made at such Corporate Trust Office, or within ten Business Days if made at the office of a trustee paying agent (other than the Trustee), authenticate and deliver a definitive Debt Security or Securities of such Series for a like aggregate principal amount and of such authorized denomination or denominations as may be requested.  The Province shall ensure that the Trustee shall be provided with an adequate supply of definitive Debt Securities for authentication and delivery pursuant to the terms of this Section 2.6(c).

(d)    All new Debt Securities authenticated and delivered by the Trustee upon registration of transfer or in exchange for Debt Securities of other denominations shall be the valid obligations of the Province, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Debt Securities surrendered upon such registration of transfer or exchange.  Neither gain nor loss of interest shall result from such registration of transfer or exchange.

(e)    All Debt Securities surrendered for registration of transfer or exchange shall be delivered to the Trustee.  The Trustee shall cancel and dispose of all such Debt Securities surrendered for exchange and shall promptly deliver a certificate of disposition stating the serial numbers, U.S. dollar value (or equivalent value in the currency or currencies in which the Debt Securities of such Series are denominated) and total number of all Debt Securities disposed of hereunder, to the Province.

(f)    The Trustee shall not be required to register any transfer or exchange of Debt Securities during the period from the Record Date (as such term is defined in the Debt Securities) to the relevant Payment Date (or during any other periods designated in the Terms), and for the purposes of any interest payment, such payment shall be made to those Persons in whose names the Debt Securities are registered on such Record Date.

11

(g)      Notwithstanding any other provision to the contrary, whenever a Debt Security, alleged to have been lost, stolen or destroyed in replacement for which a new Debt Security has been issued, is presented to the Trustee for payment at maturity or, if applicable, at redemption or for registration of transfer or exchange, the Trustee shall as soon as practicable notify the Province in respect thereof and shall deal with such Debt Security in accordance with the Province's instructions.

(h)      Transfers, registrations and exchanges will be permitted and executed as provided in the Terms and in this Section 2.6.  No service charge shall be made for any registration of transfer or exchange of the Debt Securities of any Series, but the Province and the Trustee may charge the party requesting any registration of transfer, exchange or registration of the Debt Securities of any Series a sum sufficient to cover any stamp duty, tax or other governmental charge or insurance charge that may be imposed in relation thereto therewith and any other amounts required to be paid by the provisions of the Debt Securities of such Series, which shall be borne by the party requesting such transfer, registration or exchange.

SECTION 2.7.      Mutilated, Defaced, Destroyed, Stolen and Lost Debt Securities; Cancellation and Destruction of Debt Securities.  The Trustee shall comply with Paragraph 7 of the Terms relating to mutilated, defaced, destroyed, lost or stolen Debt Securities of any Series as well as the reasonable instructions of the Province with respect to such Debt Securities.

ARTICLE THREE

COVENANTS

SECTION 3.1.      Payment of Principal and Interest.  The Province covenants and agrees that it will duly and punctually pay or cause to be paid the principal of and interest (including Additional Amounts) on each of the Debt Securities and any other payments to be made by the Province under the Debt Securities and this Indenture to the Trustee, at the place or places, at the respective times and in the manner provided in the Debt Securities and this Indenture.

All monies (save for its own account) paid to the Trustee under the Debt Securities and this Indenture shall be held by it in trust for the Holders of Debt Securities to be applied by the Trustee to payments due under the Debt Securities and this Indenture at the time and in the manner provided for in the Debt Securities and this Indenture.

SECTION 3.2.      Offices for Payments.  So long as any of the Debt Securities remain Outstanding, the Province covenants and agrees to maintain an office or agency where:  (a) the Debt Securities may be presented for payment, (b) the Debt Securities may be presented for exchange, transfer and registration of transfer as provided for herein and (c) notices and demands to or upon the Province in respect of the Debt Securities or of this Indenture may be served.  The Province hereby designates for each such purpose the Corporate Trust Office and/or such other office or agency as may be designated from time to time by the Trustee with the consent of the Province (each, a "Trustee Paying Agent").  The Province may provide directly to any such Trustee Paying Agent or Agents the funds for the payment of the principal of and premium and interest, if any, payable on the Debt Securities under an agreement with respect to such funds containing substantially the same terms and conditions set forth in this Section; and the Trustee

12

shall have no responsibility with respect to any funds so provided by the Province to any such Trustee Paying Agent or for any act or omission of any Trustee Paying Agent. If any Series of Debt Securities are listed on the Luxembourg Stock Exchange and the Luxembourg Stock Exchange so requires, the Trustee will maintain a trustee paying agent in Luxembourg for such Series. The Trustee shall also maintain a trustee paying agent in a Member State of the European Union that is not obliged to deduct or withhold tax pursuant to European Council Directive 2003/48/EC or any other European Council Directive implementing the conclusions of the ECOFIN Council meeting of November 26-27, 2002 on the taxation of savings income or any law implementing or complying with, or introduced in order to conform to, such Directive. The Trustee shall give to the Province and the Holders prompt written notice of the location of any such office or agency and of any change of location thereof. Subject to the foregoing, the Province shall have the right at any time to instruct the Trustee to terminate the appointment of any Trustee Paying Agent and to appoint any other paying agents in any place as it may deem appropriate for the purpose of making payments for the exclusive benefit of Holders. Notwithstanding the foregoing, any Trustee Paying Agents appointed pursuant to this Indenture shall be agents solely of the Trustee, and the Province shall have no authority over or any direct relationship with any such Trustee Paying Agent or Agents.

SECTION 3.3.    <u>Appointment to Fill a Vacancy in Office of Trustee</u>.  The Province, whenever necessary to avoid or fill a vacancy in the office of Trustee, shall appoint, in the manner provided in Section 5.9, a Trustee, so that there shall at all times be a Trustee hereunder for each Series of Debt Securities.

SECTION 3.4.    <u>Payments</u>.  (a)  In order to provide for the payment of principal of and interest (including Additional Amounts) on the Debt Securities of any Series as the same shall become due and payable, the Province hereby agrees to pay or to cause to be paid to the account of the Trustee at the Corporate Trust Office or such other office of the Trustee as may be agreed between the Trustee and the Province or, in the case of payments denominated in a currency other than U.S. dollars, at such place of payment as set forth in the Authorization, not later than 1:00 P.M. local time at such place of payment no later than the Business Day prior to each interest payment date or principal payment date (each, a "<u>Payment Date</u>") of such Debt Securities in immediately available funds in U.S. dollars (or in such other currency as shall be specified in the Terms of the Debt Securities of the Series with respect to which payment is to be made), an amount which (together with any funds then held by the Trustee and available for the purpose) shall be sufficient to pay the aggregate amount of interest (including Additional Amounts) or principal or both, as the case may be, becoming due in respect of such Debt Securities on such Payment Date.  Subject to actual receipt of such funds in accordance with this Section 3.4(a), the Trustee shall apply such amount to the payment due on such Payment Date. Pending such application, such amounts shall be held in trust by the Trustee for the exclusive benefit of the Holders entitled thereto and the Province shall have no interest whatsoever in such amounts.

(b)    At least five Business Days prior to the first date for payment of interest on each Series of Debt Securities and, if there has been any change with respect to the matters set forth in the below-mentioned certificate, at least five Business Days prior to each date thereafter for the payment of principal of or interest on such Debt Securities, the Province shall furnish the Trustee with a certificate of any one of the Authorized Officials specifically instructing the

Trustee as to any circumstances in which payments of principal of or interest on such Debt Securities due on such date shall be subject to deduction or withholding for or on account of any taxes described in Paragraph 3 of the Terms and the rate of any such deduction or withholding. If any such deduction or withholding shall be required and if the Province therefore becomes liable to pay Additional Amounts pursuant to Paragraph 3 of the Terms, then, at least five Business Days prior to the date of any such payment of principal or interest, the Province shall furnish the Trustee with a certificate which specifies the amount required to be withheld on such payment to Holders of such Debt Securities and the Additional Amounts, if any, due to Holders of such Debt Securities, and simultaneously shall pay to the Trustee such Additional Amounts as shall be required to be paid to such Holders.

(c)     Whenever the Province shall appoint a Trustee Paying Agent for the purpose of paying amounts due to Holders in respect of the Debt Securities of any Series, it shall cause such Trustee Paying Agent to execute and deliver to the Trustee an instrument in which such agent shall agree with the Trustee and the Province subject to the provisions of this Section 3.4(c) that:

(i)     the Trustee Paying Agent shall hold all sums received by it as such agent for the payment of the Debt Securities of that Series in trust for the exclusive benefit of the Holders of the Debt Securities of that Series;

(ii)     the Trustee Paying Agent shall give the Trustee prompt notice of any failure by the Province to make any payment of the principal of or interest or any Additional Amounts on the Debt Securities of that Series and any other payments to be made by or on behalf of the Province under this Indenture, when the same shall be due and payable; and

(iii)     the Trustee Paying Agent shall pay any such sums so held in trust by it to the Trustee upon the Trustee's written request at any time during the continuance of a failure referred to in clause (ii) above.

Anything in this Section 3.4 to the contrary notwithstanding, the Province may at any time, for the purpose of obtaining a satisfaction and discharge of this Indenture or for any other reason, pay or cause to be paid to the Trustee all sums held by any Trustee Paying Agent in trust for the Holders hereunder, as required by this Section 3.4, such sums to be held by the Trustee in trust for itself and the Holders in accordance with their respective interests.

(d)     If the Trustee and the Province determine that a change in the manner, procedures or payment mechanics (including place of payment to the Trustee or a Trustee Paying Agent or the timing of payment to the Trustee or the Holders) of any amount due hereunder or under the Debt Securities of any Series is necessary or desirable to carry out the objective of assuring payment to the Holders, the Trustee and the Province shall implement such change; provided that no such change would result in a delay of the date upon which the Holders receive their proportionate share of such payment or reduce the amount of such payment.

(e)    Anything in this Section 3.4 to the contrary notwithstanding, the agreements to hold sums in trust for the Holders as provided in this Section 3.4 are subject to the provisions of Section 8.3 and Section 8.4 hereof.

SECTION 3.5.    Notice of Event of Default.  Upon the occurrence of an Event of Default, the Province shall give written notice promptly after becoming aware thereof to the Trustee.  Within 15 days after becoming aware of the occurrence of an event, which with the giving of notice or lapse of time or both would, unless remedied, cured or waived, become an Event of Default, the Province shall give written notice thereof, and of the measures it is taking to remedy such Event of Default or such other event or condition, to the Trustee.

SECTION 3.6.    Limitation on Liens.  The Province covenants and agrees that so long as Debt Securities of any Series remain Outstanding it will not create or permit to subsist any Lien upon the whole or any part of its property or assets to secure any Indebtedness of the Province unless (i) at the same time or prior thereto, the Province's obligations under the Debt Securities of all Series either (A) are secured equally and ratably therewith or (B) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by the Holders of Debt Securities (as provided in Article Ten), and (ii) after giving effect thereto, the aggregate amount then outstanding of all such Indebtedness so secured would not exceed 8% of the Province's annual revenues for the fiscal year most recently ended prior to the incurrence of the Lien.

Notwithstanding the foregoing, the Province may create or permit to subsist:

(a)    any Lien in existence on the date of the indenture;

(b)    any Lien upon bank accounts, deposits or proceeds thereof (or arising from the existence of rights of set-off against such accounts, deposits or proceeds) securing Indebtedness of the Province incurred in connection with letters of credit issued by, or trade finance transactions with, a bank to which such Lien is granted or holding such rights, and which Indebtedness has a final maturity of not greater than 180 days from the date on which payment under such letter of credit or in connection with such trade finance transactions is due and payable;

(c)    any Lien upon any property to secure Indebtedness of the Province incurred specifically for the purpose of financing the acquisition of the property subject to such Lien;

(d)    any Lien existing on any property at the time of its acquisition to secure Indebtedness of the Province;

(e)    any Lien securing Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project, provided that the property over which such Lien is granted consists solely of the assets and revenues of such project or the ownership interest therein;

(f)    any Lien securing Indebtedness incurred for the purpose of financing all or part of the cost of personal property sold or services provided to the Province;

15

(g)     any replacement, renewal or extension of any Lien permitted by clauses (a) through (f) above upon the same property theretofore subject to such Lien, including any replacement, renewal or extension of such Lien resulting from the refinancing (without increase in the principal amount) of the Indebtedness secured by such Lien; provided that the Province shall not be permitted to replace, renew or extend any Lien in respect of Indebtedness to the federal government unless the federal government remains the creditor;

(h)     any Lien to secure public or statutory obligations or otherwise arising by law to secure claims other than for borrowed money;

(i)     any Lien securing Indebtedness of the Province to the federal government of Argentina encumbering the right of the Province to receive Co-Participation Payments; provided that the incurrence of such Indebtedness so secured will not cause the Co-Participation Secured Indebtedness Ratio to exceed 50% in any fiscal year;

provided that any Lien described in clauses (a) through (i) above may not secure any payment obligation, including any contingent liability of any Person, arising from Securities, debentures, notes or other securities which are, or were intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system, or over-the-counter or other securities market or sold in whole or in part pursuant to a private placement exemption in any jurisdiction.

ARTICLE FOUR

DEFAULT AND REMEDIES

SECTION 4.1.    Events of Default.  Each of the following events shall constitute an "Event of Default" under any series of New Securities:

(a)     The Province fails to pay any principal due on any Series of Debt Securities when due and payable for 10 days after the applicable Payment Date; or

(b)     The Province fails to pay any interest or Additional Amounts due on any Series of Debt Securities when due and payable for 30 days after the applicable Payment Date; or

(c)     The Province fails to duly perform or observe any term or obligation contained in the Debt Securities of that Series or herein, which failure continues unremedied for 60 days after written notice thereof has been given to the Province by the Trustee; or

(d)     The Province fails to make any payment when due, after any applicable grace periods, on any of its Indebtedness (other than Excluded Indebtedness) having an aggregate principal amount greater than or equal to U.S.$15,000,000 (or its equivalent in other currencies); or

(e)     Any Indebtedness of the Province (other than Excluded Indebtedness) having an aggregate principal amount greater than or equal to U.S.$15,000,000 (or its equivalent in other currencies) is accelerated due to an event of default, unless the acceleration is rescinded or annulled; or

16

(f)     The Province declares a moratorium of payment of its Indebtedness (other than Excluded Indebtedness); or

(g)     There has been entered against the Province or a provincial agency a final judgment, decree or order by a court of competent jurisdiction from which no appeal may be or is taken for the payment of money in excess of U.S.$15,000,000 (or the equivalent thereof in another currency or currencies) (other than a final judgment, decree or order in respect of any Excluded Indebtedness) and 90 days shall have passed since the entry of such final judgment, decree or order without it having been satisfied or stayed; or

(h)     The validity of the Debt Securities of any Series or of this Indenture is contested by the Province; or

(i)     (A) Any constitutional provision, law, regulation, ordinance or decree necessary to enable the Province to perform its obligations hereunder or under the Debt Securities of any Series, or for the validity or enforceability thereof, shall expire, is withheld, revoked or terminated or otherwise ceases to remain in full force and effect, or is modified in a manner which materially adversely affects, or may reasonably be expected to materially adversely affect, any rights or claims of any of the Holders of Debt Securities of any Series, or (B) any final decision by any court in Argentina having jurisdiction from which no appeal may be or is taken shall purport to render any material provision hereof or of the Debt Securities of any Series invalid or unenforceable or purport to prevent or delay the performance or observance by the Province of its obligations hereunder or under such Debt Securities, and, in each case, such expiration, withholding, revocation, termination, cessation, invalidity, unenforceability or delay shall continue in effect for a period of 90 days.

SECTION 4.2.    Acceleration of Maturity, Rescission and Annulment.  Upon the occurrence and during the continuance of an Event of Default with respect to Debt Securities of any Series, the Holders of at least 25% in aggregate principal amount of the Debt Securities of such Series then Outstanding may by written notice given to the Province (with a copy to the Trustee) declare the Debt Securities of such Series to be immediately due and payable; and upon such declaration the principal amount of the Debt Securities of such Series and the accrued interest on the Debt Securities of such Series will become immediately due and payable upon the date that such written notice is received at the office of the Trustee, unless prior to such date the event giving rise to such Event of Default has been cured before such declaration is made. Holders holding in the aggregate at least 50% in principal amount of the then Outstanding Debt Securities of such Series may waive any existing defaults, and rescind or annul any notice of acceleration, on behalf of all Holders of Debt Securities of such Series, if (A) following the declaration of the Debt Securities of such Series due and payable immediately, the Province has deposited with the Trustee or a Trustee Paying Agent an amount sufficient to pay all overdue installments of principal, interest and Additional Amounts in respect of the Debt Securities of such Series (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal of each of the Debt Securities of such Series at the rate of interest applicable thereto, to the date of such payment or interest) as well as the reasonable fees and compensation of the Trustee; and (B) all other Events of Default with respect to such Series have been remedied.  In the event of a declaration of acceleration because of an Event of Default set forth in paragraph  (d) or (e) of Section 4.1, such declaration of acceleration shall be automatically

17

rescinded and annulled if the event triggering such Event of Default pursuant to such paragraph (d) or (e) shall be remedied, cured or waived by the Holders of the relevant indebtedness, within 60 days after such event.

SECTION 4.3.    Collection of Indebtedness by Trustee; Trustee May Prove Debt.  (a) The Province covenants that if (i) there shall be a default in the payment of any interest (including Additional Amounts) on any Series of Debt Securities when such interest (including Additional Amounts) shall have become due and payable, and such default shall have continued for a period specified in the Terms, or (ii) there shall be a default in the payment of all or any part of the principal of any Series of the Debt Securities when the same shall have become due and payable, whether upon any maturity or by acceleration or otherwise, and such default shall have continued for a period specified in the Terms, then, upon demand of the Trustee, the Province shall pay to the Trustee for the benefit of the Holders of such Series of Debt Securities the whole amount that shall have become due and payable on all Outstanding Debt Securities of such Series for principal or interest (including Additional Amounts), as the case may be (with interest to the date of such payment upon the overdue principal and, to the extent that payment of such interest is enforceable under applicable law, on overdue installments of interest at the rate of overdue interest specified in such Debt Securities); and, in addition thereto, the Province shall pay or cause to be paid such further amount as shall be sufficient to cover the documented costs and expenses of collection reasonably incurred, including reasonable compensation to the Trustee and each predecessor trustee, their respective agents, attorneys and counsel, and any documented expenses and liabilities reasonably incurred, and all documented advances reasonably made, by the Trustee and each predecessor trustee except as a result of their negligence or willful misconduct.

(b)    Until such demand is made by the Trustee, the Province may pay the principal of, and interest on (including Additional Amounts), the Debt Securities to the Holders, whether or not any payment under the Debt Securities shall be overdue.

(c)    In case the Province shall fail forthwith to pay such amounts upon such demand, the Trustee, in its own name and as trustee of an express trust, shall be entitled and empowered (but is not required) to institute any action or proceedings at law or in equity for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against the Province and collect in the manner provided by law out of the property of the Province, wherever situated, the monies adjudged or decreed to be payable.

(d)    All rights of action and of asserting claims under this Indenture or the Debt Securities of any Series may be enforced by the Trustee without the possession of any Debt Securities or the production thereof in any trial or other proceedings relative thereto, and any such action or proceedings instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Trustee, each predecessor trustee and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the Debt Securities of that Series in respect of which such judgment has been recovered.

18

(e)     In any proceedings brought by the Trustee (and also any proceedings involving the interpretation of any provision of this Indenture to which the Trustee shall be a party) with respect to one Series of Debt Securities, the Trustee shall be held to represent all the Holders of such Series of Debt Securities, and it shall not be necessary to make any such Holders parties to any such proceedings.

SECTION 4.4.    <u>Application of Proceeds</u>.  Any monies collected by the Trustee pursuant to this Article Four shall be applied in the following order at the date or dates fixed by the Trustee and, in case of the distribution of such monies on account of principal or interest (including Additional Amounts), upon presentation of the Debt Securities of the Series in respect of which money has been collected and stamping (or otherwise noting) thereon the payment, or issuing Debt Securities in reduced principal amounts in exchange for the presented Debt Securities if only partially paid, or upon surrender thereof if fully paid:

FIRST: To the payment of all amounts due to the Trustee under Section 5.6;

SECOND: In case, and to the extent that, the principal of the Debt Securities of such Series shall not have become and be then due and payable, to the payment of overdue interest (including Additional Amounts) in default on such Series of Debt Securities in the order of the maturity of the installments of such interest (including Additional Amounts), with interest (to the extent that such interest has been collected by the Trustee) upon the overdue installments of interest (including Additional Amounts) at the same rate as the rate of interest specified in such Debt Securities, such payments to be made ratably to the Persons entitled thereto, without discrimination or preference;

THIRD: In case the principal of the Debt Securities of such Series shall have become and shall be then due and payable, to the payment of the whole amount then owing and unpaid upon all Debt Securities of such Series for principal and interest (including Additional Amounts), with interest upon the overdue principal, and (to the extent that such interest has been collected by the Trustee) upon overdue installments of interest (including Additional Amounts) at the rate of interest specified in such Debt Securities; and in case such monies shall be insufficient to pay in full the whole amount so due and unpaid upon the Debt Securities of such Series, then to the payment of such principal and interest (including Additional Amounts), without preference or priority of principal over interest, or of interest over principal, or of any installment of interest over any other installment of interest, or of any Debt Securities of such Series over any other Debt Securities of the same series, ratably to the aggregate of such principal and accrued and unpaid interest; and

FOURTH:  To the payment of the remainder, if any, to the Province or any other Person entitled thereto.

SECTION 4.5.    <u>Suits for Enforcement</u>.  If an Event of Default has occurred, has not been waived and is continuing, the Trustee may in its discretion (but is not required to) proceed to protect and enforce the rights vested in it by this Indenture by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any of such rights, either at law or in equity, whether for the specific enforcement of any covenant or agreement

19

contained in this Indenture or in aid of the exercise of any power granted in this Indenture or to enforce any other legal or equitable right vested in the Trustee by this Indenture or by law.

SECTION 4.6.    Restoration of Rights on Abandonment of Proceedings.  In case the Trustee shall have proceeded to enforce any right under this Indenture and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Trustee, then and in every such case the Province and the Trustee shall be restored respectively to their former positions and rights hereunder, and all rights, remedies and powers of the Province, the Trustee and the Holders shall continue as though no such proceedings had been instituted.

SECTION 4.7.    Limitations on Suits by Holders.  Except as provided in Section 4.8, no Holder of any Debt Securities of any Series shall have any right by virtue of or by availing itself of any provision of this Indenture or of the Debt Securities of such Series to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Indenture or of the Debt Securities, or for any other remedy hereunder or under the Debt Securities, unless (a) such Holder previously shall have given to the Trustee written notice of default and of the continuance thereof with respect to such Series of Debt Securities, (b) the Holders of not less than 25% in aggregate principal amount of the Outstanding Debt Securities of such Series shall have made specific written request to the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have provided to the Trustee such reasonable indemnity or other security as it may require against the costs, expenses and liabilities to be incurred therein or thereby, (c) the Trustee, for 60 days after its receipt of such notice, request and provision of indemnity or other security, shall have failed to institute any such action, suit or proceeding, and (d) no direction inconsistent with such written request shall have been given to the Trustee pursuant to Section 4.10, it being understood and intended, and being expressly covenanted by every Holder of Debt Securities of a Series with every other Holder of Debt Securities of such Series and the Trustee, that no one or more Holder shall have any right in any manner whatever by virtue or by availing itself of any provision of this Indenture or of the Debt Securities to affect, disturb or prejudice the rights of any other Holder of Debt Securities of such Series or to obtain priority over or preference to any other such Holder, or to enforce any right under this Indenture or under the Debt Securities of such Series, except in the manner herein provided and for the equal, ratable and common benefit of all Holders of Debt Securities of such Series.  For the protection and enforcement of this Section 4.7, each and every Holder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

SECTION 4.8.    Unconditional Right of Holders to Receive Principal and Interest. Notwithstanding Section 4.7, each Holder of Debt Securities shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest on (including Additional Amounts) its Debt Security on the stated maturity date for such payment expressed in such Debt Security (as such Debt Security may be amended or modified pursuant to Article Eleven) and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

SECTION 4.9.    Powers and Remedies Cumulative; Delay or Omission Not Waiver of Default.  (a)  Except as otherwise provided herein or in the Terms, no right or remedy herein conferred upon or reserved to the Trustee or to the Holders of Debt Securities is intended to be

exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

(b)    No delay or omission of the Trustee or of any Holder of Debt Securities to exercise any right or power accruing upon any Event of Default occurring and continuing as aforesaid shall impair any such right or power or be construed to be a waiver of any such Event of Default or an acquiescence therein; and, subject to Section 4.7, every power and remedy given by this Indenture or by law to the Trustee or to the Holders of Debt Securities may be exercised from time to time, and as often as shall be deemed expedient, by the Trustee or by such Holders.

SECTION 4.10.    Control by Holders. (a) Subject to Section 4.10(c), the Holders of a Majority in aggregate principal amount Outstanding of the Debt Securities of any Series shall have the right to direct the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred on the Trustee by this Indenture with respect to the Debt Securities of such Series.

(b)    Subject to Section 4.10(c), the Holders of not less than 75% in aggregate principal amount Outstanding of the Debt Securities of any Series shall have the right to direct and approve the settlement or compromise of any legal proceeding for the enforcement of the Debt Securities of that Series commenced by the Trustee.

(c)    Any direction pursuant to Section 4.10(a) or 4.10(b) shall only be in accordance with law and the provisions of this Indenture, and (subject to the provisions of Section 5.1) the Trustee shall have the right to decline to follow any such direction if the Trustee, being advised by counsel, shall determine that the action or proceeding so directed may not lawfully be taken or if the Trustee in good faith by decision of its board of directors, the executive committee, or a trust committee of directors or Responsible Officers of the Trustee shall determine that the action or proceedings so directed would involve the Trustee in personal liability or if the Trustee in good faith shall so determine that the actions or forbearances specified in or pursuant to such direction shall be unduly prejudicial to the interests of the Holders of Debt Securities of that Series that did not join in the giving of said direction, it being understood that, subject to Section 5.1, the Trustee shall have no duty to ascertain whether or not such actions or forbearances are unduly prejudicial to such Holders.

Nothing in this Indenture shall impair the right of the Trustee at its discretion to take any action deemed proper by the Trustee and which is not inconsistent with such direction by the Holders of the Debt Securities with respect to which such action is to be taken.

SECTION 4.11.    Payments After a Default. Upon the occurrence of an Event of Default and the subsequent declaration by the Holders of at least 25% in aggregate principal amount of the Debt Securities of a Series then Outstanding that the principal amount of all the Debt Securities of such Series is due and payable immediately pursuant to Section 4.2, the Trustee may, by notice in writing to the Province and any Trustee Paying Agent, require each Trustee Paying Agent (if any) to deliver all Debt Securities of such Series and all monies, documents and

records held by them with respect to the Debt Securities of such Series to the Trustee or as the Trustee otherwise directs in such notice.

SECTION 4.12.   Prescription.  All claims against the Province for payment of principal of or interest on or in respect of the Debt Securities of any Series shall be prescribed unless made within ten years (in the case of principal) and four years (in the case of interest) from the date on which such payment first became due, or a shorter period if provided by law.

ARTICLE FIVE

CONCERNING THE TRUSTEE

SECTION 5.1.   Duties and Responsibilities of the Trustee.  The Trustee is obliged to perform, and undertakes to perform, such duties and only such duties as are specifically set forth in this Indenture.

No provision of this Indenture shall be construed to relieve the Trustee from liability for its own grossly negligent action, its own grossly negligent failure to act, its bad faith or its own willful misconduct, except that:

(a)   the duties and obligations of the Trustee shall be determined solely by the express provisions of this Indenture, and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee;

(b)   in the absence of gross negligence or willful misconduct on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any statements, certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; but in the case of any such statements, certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Indenture;

(c)   the Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it shall be proved that the Trustee was grossly negligent in ascertaining the pertinent facts;

(d)   the Trustee shall not be liable with respect to any action taken or omitted to be taken by it with respect to Debt Securities of any Series in good faith in accordance with the direction of the Holders of not less than a Majority in aggregate principal amount Outstanding of the Debt Securities of such Series relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture;

(e)   anything in this Indenture to the contrary notwithstanding, in no event shall the Trustee or any Trustee Paying Agent be liable under or in connection with this Indenture for indirect, special, incidental, punitive or consequential losses or damages of any kind whatsoever, including but not limited to lost profits, whether or not foreseeable, even if the

22

Trustee or such Trustee Paying Agent has been advised of the possibility thereof and regardless of the form of action in which such damages are sought;

(f)     if a default occurs hereunder with respect to the Debt Securities of any Series, and if such default is actually known to the Trustee, the Trustee shall give the Holders of the Debt Securities of such Series notice of such default; provided, however, that, in the case of any default of the character specified in Section 4.1(c) with respect to Debt Securities of such Series, no such notice shall be given until at least 30 days after occurrence thereof.  For the purpose of this Section, the term "default" means any event that is, or after notice of lapse of time or both would become, an Event of Default with respect to Debt Securities of such Series; and

(g)     none of the provisions contained in this Indenture shall require the Trustee to expend, advance or risk its own funds or otherwise incur personal financial liability in the performance of any of its duties or in the exercise of any of its rights or powers, if there shall be reasonable ground for believing that the repayment of such funds or adequate indemnity against such liability is not satisfactorily assured to it.

SECTION 5.2.     Certain Rights of the Trustee.  Subject to Section 5.1:

(a)     the Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, Official's Certificate or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture, note, coupon, security or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b)     any request, direction, order or demand of the Province mentioned herein shall be sufficiently evidenced by an Official's Certificate (unless other evidence in respect thereof be herein specifically prescribed);

(c)     the Trustee may consult with counsel and any advice or Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted to be taken by it hereunder in good faith and in accordance with such advice or Opinion of Counsel, absent gross negligence or willful misconduct of the Trustee;

(d)     the Trustee shall be under no obligation to exercise any of the trusts or powers vested in it by this Indenture at the request, order or direction of any of the Holders of Debt Securities pursuant to the provisions of this Indenture, unless such Holders of Debt Securities shall have offered to the Trustee, security or indemnity satisfactory to the Trustee against the costs, expenses and liabilities which might be incurred therein or thereby;

(e)     the Trustee shall not be liable for any action taken or omitted by it in good faith and believed by it to be authorized or within the discretion, rights or powers conferred upon it by this Indenture;

(f)     prior to the occurrence of an Event of Default with respect to a Series of Debt Securities and after the curing or waiving of all Events of Default with respect to a Series of Debt Securities, the Trustee shall not be bound to make any investigation into the facts or matters

23

stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, appraisal, bond, debenture, guaranty, note, coupon, security, or other paper or document unless requested in writing so to do by the Holders of not less than a Majority in aggregate principal amount of the Debt Securities of such Series at the time Outstanding; provided that if the payment within a reasonable time to the Trustee of the documented costs, expenses or liabilities likely to be reasonably incurred by it in the making of such investigation is, in the opinion of the Trustee, not assured to the Trustee by the security afforded to it by the terms of this Indenture, the Trustee may require from the Holders of Debt Securities of such Series indemnity or other security satisfactory to the Trustee against such expenses properly incurred or liabilities as a condition to proceeding; the documented expenses reasonably incurred in every such examination shall be paid by the Province or, if paid by the Trustee or any predecessor trustee, shall be repaid by the Province upon demand;

(g)    the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys not regularly in its employ and the Trustee shall not be responsible for any gross negligence or willful misconduct on the part of any such agent or attorney appointed with due care by it hereunder;

(h)    the Trustee shall not be deemed to have notice of any Event of Default with respect to a Series of Debt Securities unless a Responsible Officer of the Trustee has actual knowledge thereof or unless written notice of any event which is in fact such a default is received by the Trustee at the Corporate Trust Office of the Trustee, and such notice references the applicable Series of Debt Securities and this Indenture;

(i)    the rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian and other Person employed to act hereunder;

(j)    the Trustee may request that the Province deliver an Official's Certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to this Indenture, which Official's Certificate may be signed by any person authorized to sign an Official's Certificate, including any person specified as so authorized in any such certificate previously delivered and not superseded; and

(k)    whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of, or affording protection to, the Trustee shall be subject to the provisions of this Article Five.

SECTION 5.3.    Trustee Not Responsible for Recitals, Disposition of Debt Securities or Application of Proceeds Thereof.  The recitals contained herein and in the Debt Securities shall be taken as the statements of the Province, and the Trustee assumes no responsibility for the correctness of the same.  The Trustee makes no representation as to the validity or sufficiency of this Indenture or of the Debt Securities.  The Trustee shall not be accountable for the use or application by the Province of any of the Debt Securities or of the proceeds thereof.

SECTION 5.4.    Trustee May Hold Debt Securities; Collections.  The Trustee, in its individual or any other capacity, may become the Holder or pledgee of Debt Securities of any Series with the same rights it would have if it were not the Trustee.  The Trustee is entitled to enter into business transactions with the Province or any of its affiliates without accounting for any profit resulting from such transactions.

SECTION 5.5.    Monies Held by Trustee.  All monies received by the Trustee shall, until used or applied as provided herein or in the Terms, be held in trust for the Holders of the Debt Securities but need not be segregated from other funds except to the extent required by mandatory provisions of law.  The Trustee shall not be under any liability to any Person for interest on any monies received by it hereunder.

SECTION 5.6.    Compensation and Indemnification of Trustee and Its Prior Claim.

(a)    To the extent not already required by Section 4.3 or 5.6(b), the Province covenants and agrees to pay to the Trustee from time to time, and the Trustee shall be entitled to, compensation as agreed between the Province and the Trustee (which shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust) and the Province covenants and agrees to pay or reimburse the Trustee and each predecessor trustee upon its request for all documented expenses, disbursements and advances properly and reasonably incurred or made by or on behalf of it in accordance with any of the provisions of this Indenture (including the compensation, documented expenses and disbursements reasonably incurred of its counsel and of all agents and other persons not regularly in its employ) except any such expense, disbursement or advance as may arise from its gross negligence, willful misconduct or bad faith.

(b)    To the extent not already required by Section 4.3 or 5.6(a), the Province also covenants to indemnify the Trustee and each predecessor trustee for, and to hold it harmless against, any loss, liability or expense incurred without negligence, willful misconduct or bad faith on its part, arising out of or in connection with the acceptance or administration of this Indenture or the trusts hereunder and its duties hereunder, including the documented costs and expenses reasonably incurred of defending itself against or investigating any claim of liability with respect to the foregoing.  The obligations of the Province under this Section 5.6 to compensate and indemnify the Trustee and each predecessor trustee and to pay or reimburse the Trustee and each predecessor trustee for documented expenses, disbursements and advances reasonably incurred or made shall constitute additional indebtedness hereunder and shall survive the resignation of the Trustee and the satisfaction and discharge of this Indenture.  Such additional indebtedness shall be a senior claim to that of the Debt Securities upon all property and funds held or collected by the Trustee as such, except funds held in trust for the benefit of the Holders of particular Debt Securities, and the Debt Securities are hereby subordinated to such senior claim.

SECTION 5.7.    Right of Trustee to Rely on Official's Certificate.  Subject to Sections 5.1 and 5.2, whenever in the administration of the trusts of this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering or omitting any action hereunder, such matter (unless other evidence in respect thereof shall be herein specifically prescribed) may, in the absence of gross negligence, willful misconduct or bad faith on the part of the Trustee, be deemed to be conclusively proved and established by an

Official's Certificate delivered to the Trustee, and shall, in the absence of gross negligence, willful misconduct or bad faith on the part of the Trustee, be full warrant to the Trustee for any action taken, suffered or omitted by it under the provisions of this Indenture upon the faith thereof.

SECTION 5.8.    Persons Eligible for Appointment as Trustee.  The Trustee hereunder shall at all times be a corporation having a combined capital and surplus of at least US$50,000,000, has a trustee or representative office in the City of Buenos Aires, maintains such accounts in Argentina as may be necessary to carry out the obligations of the Trustee set forth in this Indenture, has its Corporate Trust Office in the Borough of Manhattan, the City of New York and is doing business in good standing under the laws of the United States or of any state or territory thereof or of the District of Columbia that is authorized under such laws to exercise corporate trust powers (including all powers and related duties set forth in this Indenture), and subject to supervision or examination by federal, state, territorial or District of Columbia authority.  If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of its supervising or examining authority, then, for the purposes of this Section 5.8, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.  If at any time the Trustee with respect to the Debt Securities of any Series shall cease to be eligible in accordance with the provisions of this Section 5.8, it shall resign immediately in the manner and with the effect hereinafter specified in this Indenture.

SECTION 5.9.    Resignation and Removal; Appointment of Successor Trustee.

(a)    The Trustee may at any time resign with respect to the Debt Securities of one or more Series by giving not less than 90 days' written notice of resignation to the Province and by providing notice thereof to the affected Holders at the expense of the Province as provided in Paragraph 9 of the Terms.  Upon receiving such notice of resignation, the Province shall promptly appoint a successor trustee with respect to such Series by written instrument in duplicate, one copy of which instrument shall be delivered to the resigning Trustee and one copy to the successor trustee.  If no successor trustee shall have been so appointed and have accepted appointment within 60 days after such notice of resignation has been given, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor trustee, or any Holder of Debt Securities of the affected Series who has been a bona fide Holder of a Debt Security of such Series for at least six months may, on behalf of himself and all others similarly situated, petition any such court for the appointment of a successor trustee in respect of such Series of Debt Securities.  Such court may thereupon, after such notice, if any, as it may deem proper, appoint a successor trustee with respect to the Debt Securities of the affected Series.

(b)    In case at any time any of the following shall occur:

(i)    the Trustee shall cease to be eligible in accordance with the provisions of Section 5.8 and shall fail to resign after written request therefor by or on behalf of the Province or by any Holder; or

(ii)    the Trustee shall become incapable of acting, or shall be adjudged bankrupt or insolvent, or a receiver or liquidator of the Trustee or of its property shall be

appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then, in any such case, (A) the Province may remove the Trustee and appoint a successor trustee with respect to all affected Debt Securities by written instrument, in duplicate, one copy of such instrument to be delivered to the Trustee so removed and one copy to the successor trustee, or (B) any Holder who has been a bona fide Holder of a Debt Security of any affected Series for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor trustee with respect to the Debt Securities of such Series.

(c)    The Holders of a Majority in aggregate principal amount Outstanding of the Debt Securities of any Series may at any time remove the Trustee and appoint a successor trustee for the Debt Securities of such Series by delivering to the Trustee so removed, to the successor trustee so appointed and to the Province the evidence provided for in Section 6.1 of the action in that regard taken by the Holders.  If at any time there is more than one Trustee with respect to Debt Securities of different Series issued pursuant to this Indenture, each reference to the "Trustee" shall be read as a reference to the Trustee for the time being in place in respect of the relevant Series of Debt Securities.  The foregoing sentence is without prejudice to Section 5.12.

(d)    Any resignation or removal of the Trustee and any appointment of a successor trustee pursuant to any of the provisions of this Section 5.9 shall become effective upon acceptance of appointment by the successor trustee as provided in Section 5.10.

SECTION 5.10.    Acceptance of Appointment by Successor Trustee.  (a)  In the case of an appointment hereunder of a successor trustee with respect to all Debt Securities, each successor trustee so appointed shall execute and deliver to the Province and to its predecessor trustee an instrument accepting such appointment hereunder, and thereupon the resignation or removal of the predecessor trustee shall become effective and such successor trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, duties and obligations of its predecessor hereunder, with like effect as if originally named as Trustee herein; but, nevertheless, on the written request of the Province or of the successor trustee, upon payment of its charges then unpaid, the Trustee ceasing to act shall pay over to the successor trustee all monies at the time held by it hereunder and shall execute and deliver an instrument transferring to such successor trustee all such rights, powers, duties and obligations.  Any Trustee ceasing to act shall, nevertheless, retain a prior claim upon all property or funds held or collected by such Trustee to secure any amounts then due it pursuant to the provisions of Section 5.6.

(b)    In case of the appointment hereunder of a successor trustee with respect to the Debt Securities of one or more (but not all) Series, the Province, the predecessor trustee and each successor trustee with respect to the Debt Securities of the affected Series shall execute and deliver an indenture supplemental hereto wherein each successor trustee shall accept such appointment and which (i) shall contain such provisions as shall be necessary or desirable to transfer and confirm to, and to vest in, each successor trustee all the rights, powers, trusts and duties of the retiring Trustee with respect to the Debt Securities of that or those Series to which

27

the appointment of such successor trustee relates, (ii) shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the retiring Trustee with respect to the Debt Securities of that or those Series as to which the retiring Trustee is not retiring shall continue to be vested in the retiring Trustee and (iii) shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one trustee, it being understood that nothing herein or in any such supplemental indenture shall constitute such Trustees co-trustees of the same trust and that each such Trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such Trustee; and, upon the execution and delivery of any such supplemental indenture, the resignation or removal of the retiring Trustee shall become effective to the extent provided therein and each such successor trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee with respect to the Debt Securities of that or those Series to which the appointment of such successor trustee relates; but, on request of the Province or any successor trustee, such retiring Trustee shall duly assign, transfer and deliver to such successor trustee all property and money held by such retiring Trustee hereunder with respect to the Debt Securities of that or those Series to which the appointment of such successor trustee relates.

Upon request of any such successor trustee, the Province shall execute any and all instruments in writing for more fully and certainly vesting in and confirming to such successor trustee all such rights, powers and trusts referred to in the first or second preceding paragraph, as the case may be.

(c)    No successor trustee shall accept its appointment unless at the time of such acceptance such successor trustee shall be eligible under this Article Five.

(d)    Upon acceptance of appointment by a successor trustee as provided in this Section 5.10, the Province shall provide notice thereof to the affected Holders as provided in Paragraph 9 of the Terms.  If the acceptance of appointment is substantially contemporaneous with the resignation, then the notice called for by the preceding sentence may be combined with the notice called for by Section 5.9.  If the Province fails to provide such notice within 10 days after acceptance of appointment by the successor trustee, the successor trustee shall cause such notice to be provided at the expense of the Province.

SECTION 5.11.   Merger, Conversion, Consolidation or Succession to Business of Trustee.  Any corporation into which a Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which a Trustee shall be a party, or any corporation succeeding to the corporate trust business of a Trustee, shall be the successor of such Trustee hereunder, provided that such corporation shall be eligible under the provisions of Section 5.8, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

In case a successor to the Trustee succeeds to the trusts created by this Indenture at a time when any of the affected Debt Securities shall have been authenticated but not delivered, any such successor to the Trustee may adopt the certificate of authentication of the predecessor

trustee and deliver such Debt Securities so authenticated; and, in case at that time any of the affected Debt Securities shall not have been authenticated, any successor to the Trustee may authenticate such Debt Securities either in the name of any predecessor trustee hereunder or in the name of the successor trustee; and in all such cases such certificate shall have the full force provided in the Debt Securities or in this Indenture for a certificate of the Trustee; provided that the right to adopt the certificate of authentication of a predecessor trustee or to authenticate Debt Securities in the name of a predecessor trustee shall apply only to its successor or successors by merger, conversion or consolidation.

SECTION 5.12.   Appointment of Co-Trustee.  It is the purpose of this Indenture that there shall be no violation of any law of any jurisdiction denying or restricting the right of banking corporations or associations to transact business as trustee in such jurisdiction.  It is recognized that in case of litigation under this Indenture, and in particular in case of the enforcement thereof on default, or in the case the Trustee deems that by reason of any present or future law of any jurisdiction it may not exercise any of the powers, rights or remedies herein granted to the Trustee or hold title to the properties, in trust, as herein granted or take any action which may be desirable or necessary in connection therewith, it may be necessary that the Trustee appoint an individual or institution as a separate or co-trustee.  The following provisions of this Section are adopted to these ends.

In the event that the Trustee appoints an additional individual or institution as a separate or co-trustee, each and every remedy, power, right, claim, demand, cause of action, immunity, estate, title, interest and lien expressed or intended by this Indenture to be exercised by or vested in or conveyed to the Trustee with respect thereto shall be exercisable by and vest in such separate or co-trustee but only to the extent necessary to enable such separate or co-trustee to exercise such powers, rights and remedies, and only to the extent that the Trustee by the laws of any jurisdiction is incapable of exercising such powers, rights and remedies, and every covenant, duty and obligation necessary to the exercise thereof by such separate or co-trustee shall run to and be enforceable by either of them.

Should any instrument in writing from the Province be required by the separate or co-trustee so appointed by the Trustee for more fully and certainly vesting in and confirming to him or it such properties, rights, powers, trusts, duties and obligations, any and all such instruments in writing shall, on request, be executed, acknowledged and delivered by the Province; provided that if an Event of Default shall have occurred and be continuing and the Province does not execute any such instrument within fifteen (15) days after request therefor, the Trustees shall be empowered as an attorney-in-fact for the Province to execute any such instrument in the Province's name and stead.  In case any separate or co-trustee or a successor to either shall die, become incapable of acting, resign or be removed, all the estates, properties, rights, powers, trusts, duties and obligations of such separate or co-trustee, so far as permitted by law, shall vest in and be exercised by the Trustee until the appointment of a new trustee or successor to such separate or co-trustee.

Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i)    All rights and powers, conferred or imposed upon the Trustee shall be conferred or imposed upon and may be exercised or performed by such separate trustee or co-trustee; and

(ii)    no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder.

Any notice, request or other writing given to the Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them.  Every instrument appointing any separate trustee or co-trustee shall refer to this Indenture and the conditions of this Section 5.12.

Any separate trustee or co-trustee may at any time appoint the Trustee as its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its behalf and in its name.  If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

## ARTICLE SIX

## CONCERNING THE HOLDERS

SECTION 6.1.    <u>Evidence of Action Taken by Holders</u>.  Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Holders of any Series of Debt Securities may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by an agent duly appointed in writing; and, except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments is or are received by the Trustee for such series.  Proof of execution of any instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 5.1 and Section 5.2) conclusive in favor of the Trustee and the Province, if made in the manner provided in this Article Six.

SECTION 6.2.    <u>Proof of Execution of Instruments and of Holding of Debt Securities</u>.  Subject to Section 5.1 and Section 5.2, the execution of any instrument by a Holder or his agent or proxy may be proved in accordance with such reasonable rules and regulations as may be prescribed by the Trustee or in such manner as shall be satisfactory to the Trustee.  The holding of Debt Securities for purposes of this Indenture shall be proved by the Register or by a certificate of the Trustee.

SECTION 6.3.    <u>Holders to Be Treated as Owners</u>.  The Province, the Trustee, any Trustee Paying Agent and any agent of the Province or the Trustee may deem and treat any Person in whose name any Debt Securities shall be registered upon the Register as the absolute owner of such Debt Security (whether or not such Debt Security shall be overdue and notwithstanding any notation of ownership or other writing thereon) for the purpose of receiving payment of or on account of the principal of and, subject to the provisions of this Indenture,

interest (including Additional Amounts) on such Debt Security and for all other purposes; and none of the Province, the Trustee, any Trustee Paying Agent or any agent of the Province or the Trustee shall be affected by any notice to the contrary.  All such payments so made to any such Person, or upon his order, shall be valid, and, to the extent of the sum or sums so paid, effectual to satisfy and discharge the liability for monies payable upon any such Debt Security.

SECTION 6.4.    Debt Securities Owned by the Province or Any Public Sector Instrumentalities Deemed Not Outstanding.  (a)  In determining whether the Holders of the requisite principal amount of Debt Securities Outstanding have consented to or voted in favor of any Modification or other action or instruction hereunder or, in the case of a meeting, whether sufficient Holders are present for quorum purposes, any Debt Securities owned or controlled, directly or indirectly, by the Province or by any Public Sector Instrumentality of the Province shall be disregarded and deemed not to be Outstanding.  As used herein, the term "Public Sector Instrumentality" means the *Banco de la Provincia de Buenos Aires*, any department, ministry or agency of the government of the Province or any corporation, trust, financial institution or other entity owned or controlled by the government of the Province or any of the foregoing, and the term "control" means the power, directly or indirectly, through the ownership of voting securities or other ownership or other ownership interests or otherwise, to direct the management of or elect or appoint a Majority of the board of directors or other persons performing similar functions in lieu of, or in addition to, the board of directors of a corporation, trust, financial institution or entity.  In determining whether the Trustee shall be protected in relying upon any such Modification or other action or instruction, only Debt Securities that the Trustee knows to be so owned or controlled shall be so disregarded.

(b)    Debt Securities so owned which have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right so to act with respect to such Debt Securities and that the pledgee is not the Province or a Public Sector Instrumentality.  In case of a dispute concerning such right, the advice of counsel shall be full protection in respect of any decision made by the Trustee in accordance with such advice.  Any certificate, statement or opinion of counsel may be based, insofar as it relates to factual matters or information which is in the possession of the Trustee, upon the certificate, statement or opinion of or representations by the Trustee, unless such counsel knows, or in the exercise of reasonable care should know, that such certificate, statement or opinion or representations is erroneous.

(c)    The Province shall furnish to the Trustee promptly one or more Official's Certificates listing and identifying all Debt Securities, if any, known by the Province to be owned or held by or for the account of the Province or a Public Sector Instrumentality; and, subject to Section 5.1 and Section 5.2, the Trustee shall be entitled to accept such Official's Certificate or Certificates as conclusive evidence of the facts therein set forth and of the fact that all Debt Securities not listed therein are Outstanding for the purpose of any such determination.

SECTION 6.5.    Right of Revocation of Action Taken.  At any time prior to (but not after) the evidencing to the Trustee, as provided in Section 6.1, of the taking of any action by the Holders of the percentage in aggregate principal amount of the Debt Securities of any Series or of the percentage of votes cast required in this Indenture in connection with such action, any Holder of a Debt Security the serial number of which is shown to be included among the serial

numbers of the Debt Securities of Holders that have consented to such action may, by filing written notice at the Corporate Trust Office and upon proof of holding as provided in this Article Six, revoke such action so far as concerns such Debt Security. Except as aforesaid, any such action taken by a Holder shall be conclusive and binding upon such Holder and upon all future Holders and owners of such Debt Security and of any Debt Securities issued in exchange or substitution therefor, irrespective of whether or not any notation in regard thereto is made upon any such Debt Security.

ARTICLE SEVEN

SUPPLEMENTAL INDENTURES

SECTION 7.1.    <u>Supplemental Indentures Without Consent of Holders</u>. The Province and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto for one or more of the following purposes:

(a)    to add to the covenants of the Province for the benefit of the Holders of Debt Securities of any Series;

(b)    to surrender any of the rights or powers of the Province set forth herein or in the Debt Securities of any Series;

(c)    to convey, transfer, assign, mortgage or pledge any property or assets to the Trustee as security or collateral for the Debt Securities of any Series;

(d)    to modify the restrictions on, and procedures for, resale and other transfers of the Debt Securities of any Series to the extent required by any change in applicable law or regulation (or the interpretation thereof) or in practices relating to the resale or transfer of restricted debt securities generally;

(e)    to accommodate the issuance, if any, of Debt Securities of any Series in book-entry or definitive form and matters related thereto;

(f)    to cure any ambiguity or to correct or supplement any provision contained herein or in the Debt Securities of any Series or in any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in the affected Debt Securities or in any supplemental indenture; or

(g)    to make such other provisions in regard to matters or questions arising under this Indenture, the Debt Securities of any Series or any supplemental indenture as the Province and the Trustee may deem necessary or desirable and which does not, and will not, adversely affect the interests of the Holders of the Debt Securities of the affected Series.

The Trustee is hereby authorized to join in the execution of any such supplemental indenture, to make any further appropriate agreements and stipulations which may be therein contained and to accept the conveyance, transfer, assignment, mortgage or pledge of any property thereunder, but the Trustee shall not be obligated to enter into any such supplemental

indenture which affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

Any supplemental indenture authorized by the provisions of this Section 7.1 may be executed without the consent or vote of the Holders of any of the Debt Securities of the affected Series, notwithstanding any of the provisions of Section 7.2 or Article Eleven.

SECTION 7.2.    Supplemental Indentures with Consent of Holders.  Upon approval of a Modification pursuant to Section 11.2 or Section 11.3, the Province and the Trustee may enter into an indenture or indentures supplemental hereto for the purpose of changing in any manner or eliminating any of the provisions of this Indenture (or the terms and conditions of the Debt Securities of a Series affected by such Modification pursuant to such approved Modification).

Upon the request of the Province, accompanied by a copy of the supplemental indenture, and upon the filing with the Trustee of evidence of the consent of Holders and other documents, if any, required by Section 6.1, the Trustee shall join with the Province in the execution of such supplemental indenture unless such supplemental indenture affects the Trustee's own rights, duties or immunities under this Indenture or otherwise, in which case the Trustee may in its discretion, but shall not be obligated to, enter into such supplemental indenture.

It shall not be necessary for the vote or consent of the Holders of the Debt Securities of any Series under this Section 7.2 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such vote consent shall approve the substance thereof.

Promptly after the execution by the Province and the Trustee of any supplemental indenture pursuant to the provisions of this Section 7.2, the Province shall, at its own expense, provide notice thereof to the affected Holders as provided in Paragraph 9 of the Terms, setting forth in general terms the substance of such supplemental indenture.  Any failure of the Province to publish such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

SECTION 7.3.    Effect of Supplemental Indenture.  Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture and the Debt Securities of the affected Series shall be and be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Indenture of the Trustee, the Province and the Holders of the Debt Securities of the affected Series shall thereafter be determined, exercised and enforced hereunder subject in all respects to such Modifications and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

SECTION 7.4.    Documents to Be Given to Trustee.  The Trustee, subject to the provisions of Section 5.1 and Section 5.2, shall be entitled to receive one or more Official's Certificate or Certificates and Opinion or Opinions of Counsel addressed to the Trustee as conclusive evidence that any such supplemental indenture complies with the applicable provisions of this Indenture.

SECTION 7.5.    <u>Notation on Debt Securities in Respect of Supplemental Indentures</u>. Debt Securities authenticated and delivered after the execution of any supplemental indenture pursuant to the provisions of this Article Seven may bear a notation in form and manner approved by the Trustee as to any matter provided for by such supplemental indenture.  If the Province or the Trustee shall so determine, new Debt Securities so modified as to conform, in the opinion of the Trustee, to any modification of this Indenture contained in any such supplemental indenture may be prepared by the Province at the expense of the Province, authenticated by the Trustee and delivered in exchange for the Debt Securities of the affected Series.

ARTICLE EIGHT

SATISFACTION AND DISCHARGE OF INDENTURE; UNCLAIMED MONIES

SECTION 8.1.    <u>Satisfaction and Discharge of Indenture</u>.  If at any time (a) the Province shall have paid or caused to be paid the principal of and interest (including Additional Amounts) on all of the Debt Securities of any Series Outstanding hereunder, as and when the same shall have become due and payable, or (b) the Province shall have delivered to the Trustee for cancellation all Debt Securities of any Series theretofore authenticated (other than any Debt Securities which shall have been destroyed, lost or stolen and which shall have been replaced or paid as provided in Section 2.7) or (c) (i) all the Debt Securities of any Series not theretofore delivered to the Trustee for cancellation shall have become due and payable within one year and (ii) the Province shall have irrevocably deposited or caused to be deposited with the Trustee the entire amount (other than monies repaid by the Trustee or any Trustee Paying Agent to the Province in accordance with Section 8.3 and Section 8.4) sufficient to pay at maturity all Debt Securities of that Series not theretofore delivered to the Trustee for cancellation, including principal and interest (including Additional Amounts) due or to become due to such date of maturity, as the case may be, and if, in any such case, the Province shall also pay or cause to be paid all other sums payable hereunder by the Province, then this Indenture shall cease to be of further effect with respect to the Debt Securities of that Series (except as to (i) rights of registration of transfer and exchange, (ii) substitution of apparently mutilated, defaced, destroyed, lost or stolen Debt Securities, (iii) rights of Holders to receive payments of principal thereof and interest (including Additional Amounts) thereon, (iv) the rights, obligations and immunities of the Trustee hereunder and (v) the rights of the Holders as beneficiaries hereof with respect to the property so deposited with the Trustee payable to all or any of them), and the Trustee, on demand of the Province accompanied by an Official's Certificate of the Province and an Opinion of Counsel addressed to the Trustee and at the cost and expense of the Province, shall execute proper instruments acknowledging such satisfaction of and discharging this Indenture with respect to the Debt Securities of that Series.  The Province agrees to reimburse or cause the reimbursement of the Trustee for any documented costs or expenses thereafter reasonably and properly incurred and to compensate the Trustee for any services thereafter reasonably and properly rendered by the Trustee in connection with this Indenture or the Debt Securities.

SECTION 8.2.    <u>Application by Trustee of Funds Deposited for Payment of Debt Securities</u>.  Subject to Section 8.4, all monies deposited with the Trustee pursuant to Section 8.1 shall be held in trust by the Trustee for the benefit of the Holders and applied by it to the payment, either directly or through any Trustee Paying Agent, to the Holders of the particular Debt Securities for the payment of which such monies have been deposited with the Trustee, of

all sums due and to become due thereon as principal and interest (including Additional Amounts); but such money need not be segregated from other funds except to the extent required by law.

SECTION 8.3.    Repayment of Monies Held by Trustee Paying Agent.  In connection with the satisfaction and discharge of this Indenture with respect to any Series of Debt Securities, all monies then held by any Trustee Paying Agent under the provisions of this Indenture for such Series shall, upon written demand of the Province, be repaid to the Province or transferred to the Trustee for the benefit of the Holders, and thereupon such Trustee Paying Agent shall be released from all further liability with respect to such monies.

SECTION 8.4.    Return of Monies Held by Trustee or Any Trustee Paying Agent.  Any monies deposited with or paid to the Trustee or to any Trustee Paying Agent for the payment of the principal of or interest (including Additional Amounts) on any Debt Securities and not applied but remaining unclaimed for ten years (in the case of principal) or five years (in the case of interest) or, in either case, any shorter prescription period provided by law after the date upon which such principal or interest shall have become due and payable shall be repaid to or for the account of the Province by the Trustee or such Trustee Paying Agent, the receipt of such repayment to be confirmed promptly in writing by or on behalf of the Province and the Holder of such Debt Security shall thereafter look only to the Province for any payment to which such Holder may be entitled.

ARTICLE NINE

MISCELLANEOUS PROVISIONS

SECTION 9.1.    Officials of the Province Exempt from Individual Liability.  No recourse under or upon any obligation, covenant or agreement contained in this Indenture, or in any Debt Security, or because of any indebtedness evidenced thereby, shall be had against any official of the Province, either directly or through the Province, under any rule of law, statute or constitutional provision or by the enforcement of any assessment or by any legal or equitable proceeding or otherwise, all such liability being expressly waived and released by the acceptance of the Debt Securities by the Holders thereof and as part of the consideration for the issue of the Debt Securities.

SECTION 9.2.    Provisions of Indenture for the Sole Benefit of Parties and Holders.  Nothing in this Indenture or in the Debt Securities, expressed or implied, shall give or be construed to give to any Person, firm or corporation, other than the parties hereto and their successors and the Holders, any legal or equitable right, remedy or claim under this Indenture, the Debt Securities of any Series or under any covenant or provision contained herein or therein, all such covenants and provisions being for the sole benefit of the parties hereto and their successors and of the Holders.

SECTION 9.3.    Successors and Assigns of the Province Bound by Indenture.  All the covenants, stipulations, promises and agreements in this Indenture contained by or on behalf of the Province shall bind its successors and assigns, whether so expressed or not.

35

SECTION 9.4.    Notices and Demands on Trustee and Holders.  Any notice or demand which by any provision of this Indenture is required or permitted to be given or served by the Trustee or by the Holders to or on the Province shall be given or served by facsimile transmission (except as otherwise specifically provided herein) addressed (until another address of the Province is filed by the Province with the Trustee) to Ministry of Economy of the Province of Buenos Aires, 8th Street between 45th and 46th, P.B. Of. 14, La Plata, Buenos Aires 1900, Argentina, (fax: +5422 1429 4506), attention: Provincial Director of Financial Policy and Public Credit.  Any notice, direction, request or demand by or on behalf of the Province or any Holder to or upon the Trustee shall be deemed to have been sufficiently given or made, for all purposes, if given or made at the Corporate Trust Office (fax: 212-815-5802/5803), attention: Corporate Trust Department, Global Structured Finance Unit.  Any aforementioned notice shall be deemed to have been given, made or served, if mailed, five Business Days after having been sent out, if given by facsimile transmission, when such facsimile is transmitted to the telephone number specified in this paragraph and telephonic confirmation of receipt thereof is received.

All notices delivered to the Trustee shall be in English and shall be deemed effective upon actual receipt.

Where this Indenture provides for notice to Holders of any or all Series of Debt Securities, such notice shall be sufficiently given (unless otherwise herein expressly provided) if given in accordance with Paragraph 9 of the Terms.  Where this Indenture provides for notice in any manner, such notice may be waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.  Waivers of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

In case, by reason of the suspension of or irregularities in regular mail service or otherwise, it shall be impracticable to mail or publish notice to the Province or the Holders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be deemed reasonable by the Trustee shall be deemed to be a sufficient giving of such notice.

SECTION 9.5.    Official's Certificates and Opinions of Counsel; Statements to Be Contained Therein.  Upon any application or demand by or on behalf of the Province to the Trustee to take any action under any of the provisions of this Indenture, at the written request of the Trustee, the Province shall furnish to the Trustee an Official's Certificate stating that all conditions precedent provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel addressed to the Trustee stating that, in the opinion of such counsel, all such conditions precedent have been complied with, except that in the case of any such application or demand as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or demand, no additional certificate or opinion need be furnished.

Each certificate or opinion provided for in this Indenture and delivered to the Trustee with respect to compliance with a condition or covenant provided for in this Indenture shall include (a) a statement that the person making such certificate or opinion has read such covenant or condition, (b) a brief statement as to the nature and scope of the examination or investigation

36

upon which the statements or opinions contained in such certificate or opinion are based, (c) a statement that, in the opinion of such person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with and (d) a statement as to whether or not, in the opinion of such person, such condition or covenant has been complied with.

Any certificate, statement or opinion of an official of the Province may be based, insofar as it relates to legal matters, upon a certificate or opinion of or representations by counsel, unless such official knows that the certificate or opinion or representations with respect to the matters upon which his certificate, statement or opinion may be based as aforesaid are erroneous, or in the exercise of reasonable care should know that the same are erroneous. Any certificate, statement or opinion of counsel may be based, insofar as it relates to factual matters, upon the certificate, statement or opinion of or representations by an officer or officers of the Province, as the case may be, unless such counsel knows that the certificate, statement or opinion or representations with respect to the matters upon which his certificate, statement or opinion may be based as aforesaid are erroneous, or in the exercise of reasonable care should know that the same are erroneous.

Any certificate, statement or opinion of an official of the Province or of counsel may be based, insofar as it relates to accounting matters, upon a certificate or opinion of or representations by an accountant or firm of accountants in the employ of the Province, unless such official or counsel knows that the certificate or opinion or representations with respect to the accounting matters upon which his certificate, statement or opinion may be based as aforesaid are erroneous, or in the exercise of reasonable care should know that the same are erroneous.

Any certificate or opinion of any independent firm of public accountants filed with the Trustee shall contain a statement that such firm is independent.

SECTION 9.6.    Payments Due on Non-Business Days.  In any case where the Payment Date shall not be a Business Day, then payment of principal or interest need not be made on such date, but may be made on the next succeeding Business Day.  Any payment so made on such next succeeding Business Day shall have the same force and effect as if made on such Payment Date, and no interest shall accrue for the period after such Payment Date.

SECTION 9.7.    Governing Law; Consent to Jurisdiction; Waiver of Immunities; Currency Indemnity.  THIS INDENTURE AND THE DEBT SECURITIES OF ALL SERIES SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

The Province irrevocably submits to the non-exclusive jurisdiction of any U.S. federal or New York state court sitting in the Borough of Manhattan, the City of New York, and any appellate court from any court thereof, in any suit, action or proceeding arising out of or relating to the Debt Securities of a Series or the Indenture and irrevocably agrees that all claims in respect of any such suit, action or proceeding may be heard and determined in such U.S. federal or New York state court.  The Province also irrevocably waives, to the fullest extent that it may effectively do so, any objection to venue or defense of an inconvenient forum to the

37

maintenance of any such suit, action or proceeding in such jurisdiction.  The Province has appointed *Banco de la Provincia de Buenos Aires*, with an office on the date hereof at 609 Fifth Avenue, New York, New York 10017, United States of America, as its agent (the "Authorized Agent"), to receive on behalf of itself and its property service of any summons and complaint and other process which may be served in any such suit, action or proceeding, except any suit, action or proceeding arising out of U.S. federal or state securities laws.  Such service may be made by delivering or mailing a copy of such process to the Province in care of the Authorized Agent at the above specified address, and the Province authorizes and directs such Authorized Agent to accept such service on its behalf.  In addition to the foregoing, any Holder may serve legal process in any other manner permitted by applicable law.  A final judgment that is not appealable in any such suit, action or proceeding shall be conclusive and may be enforced to the extent permitted under applicable law in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.  The Province agrees that, if the Authorized Agent shall for any reason cease to act as such agent, it shall promptly appoint a substitute Authorized Agent in the Borough of Manhattan, the City of New York.

The above provisions do no limit the right of the Trustee or any Holder to bring any action or proceeding against the Province or its property in other courts where jurisdiction is independently established.

To the extent that the Province may in any jurisdiction claim for itself or its assets or revenues (except for properties of the public domain located in the Republic of Argentina or dedicated to the purpose of an essential public service) sovereign or other immunity from suit, execution, attachment (whether in aid of execution, before judgment or otherwise) or other legal process, the Province agrees not to claim and irrevocably waives such immunity in respect of its obligations under this Indenture or the Debt Securities of any Series to the fullest extent permitted by the laws of such jurisdiction.  Without limiting the generality of the foregoing, the Province agrees that the foregoing waiver of immunity shall have the fullest scope permitted under the United States Foreign Sovereign Immunities Act of 1976, as amended (the "Immunities Act"), and is intended to be irrevocable for purposes of such Act.  Notwithstanding the foregoing, the Province reserves the right to plead sovereign immunity under the Immunities Act with respect to actions or proceedings brought against it under the U.S. federal securities laws or any state securities laws, and the Province's appointment of an Authorized Agent is not intended to extend to such actions or proceedings.

The Province shall comply with the provisions of Paragraph 14(b) of the Terms relating to payments on any judgments in the Judgment Currency (as defined therein).

Holders may be required to post a bond or other security with the courts of the Republic of Argentina as a condition to the institution, prosecution or completion of any action or proceeding (including appeals) arising out of or relating to this Indenture or the Debt Securities of any Series in those courts.

SECTION 9.8.    Counterparts.  This Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

SECTION 9.9.    Waiver of Jury Trial.  EACH OF THE PROVINCE AND THE TRUSTEE HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS INDENTURE OR THE DEBT SECURITIES OF ANY SERIES.

SECTION 9.10.    Effect of Headings.  The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

ARTICLE TEN

PROVISIONS FOR MEETINGS OF HOLDERS

SECTION 10.1.    Purposes for Which Meetings May Be Called; Call and Notice Meeting of Holders.  The Province or the Trustee may at any time ask for written consents or call a meeting of Holders of the Debt Securities of any Series at any time and from time to time to make, give or take any Modification to this Indenture or the Terms of the Debt Securities of any Series as provided herein or therein.  Any such meeting shall be held at such time and at such place as the Trustee shall determine and as shall be specified in a notice of such a meeting that shall be furnished to the Holders of the Debt Securities of such Series not less than 30 nor more than 60 days prior to the date fixed for the meeting.  If the Holders of at least 10% in aggregate principal amount of the Outstanding Debt Securities of any Series shall have requested the Trustee to call a meeting of the Holders of the Debt Securities of such Series for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Trustee shall call such meeting, to be held at such time and at such place as the Trustee shall determine for such purposes by giving notice thereof.  Such notice shall be given not less than 30 nor more than 60 days prior to the meeting.  Notice of every meeting of Holders of the Debt Securities of such Series shall set forth in general terms the action proposed to be taken at such meeting.

SECTION 10.2.    Persons Entitled to Vote; Quorum.  (a)  To be entitled to vote at any meeting of Holders of the Debt Securities of any Series, a person shall be a Holder of Outstanding Debt Securities of any Series or a person duly appointed by an instrument in writing as proxy for such a Holder.  At any meeting of Holders, other than a meeting to discuss a Reserved Matter, the persons entitled to vote a majority in aggregate principal amount of the Outstanding Debt Securities of any Series shall constitute a quorum, and at the reconvening of any such meeting adjourned for a lack of a quorum, any number of persons holding or representing interests on an Outstanding Debt Security of the relevant Series shall constitute a quorum for the taking of any action set forth in the notice of the original meeting.  At any meeting of Holders held to discuss a Reserve Matter, the persons entitled to vote 75% in aggregate principal amount of the Outstanding Debt Securities of each affected Series (66 2/3% of the aggregate principal amount of the Outstanding Debt Securities of each affected Series and 85% of the aggregate principal amount of the Outstanding Debt Securities of all affected Series in the case of Reserve Matters affecting more than one Series) shall constitute a quorum.  The Trustee may make such reasonable and customary regulations, consistent therewith, as it shall deem advisable for any meeting of Holders of Debt Securities of any Series with respect to the appointment of proxies in respect of Holders of registered Debt Securities of any Series, the

39

record date for determining the registered Holders of registered Debt Securities of any Series who are entitled to vote at such meeting (which date shall be set forth in the notice calling such meeting hereinabove referred to and which shall be not less than 30 nor more than 60 days prior to such meeting), the adjournment and chairmanship of such meeting, the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.

(b)    No business shall be transacted in the absence of a quorum, unless a quorum is present when the meeting is called to order.  In the absence of a quorum within 30 minutes of the time appointed for any such meeting, the meeting may be adjourned for a period of not less than 10 days as determined by the chairman of the meeting.  Notice of the reconvening of any adjourned meeting need be given only once but must be given not less than 30 days nor more than 60 days prior to the date on which the meeting is scheduled to be reconvened.  Notice of the reconvening of an adjourned meeting shall state expressly the percentage of the aggregate principal amount of Debt Securities of such Series at the time Outstanding that shall constitute a quorum in accordance with the provisions of this Section 10.

SECTION 10.3.    Proxy.  (a) Any Holder of a Debt Security of the Series with respect to which such meeting is being held who has executed an instrument in writing appointing a Person as proxy shall be deemed to be present for the purposes of determining a quorum and be deemed to have voted; provided that such Holder shall be considered as present or voting only with respect to the matters covered by such instrument in writing.  Any resolution passed or decision taken at any meeting of Holders of Debt Securities of any series duly held in accordance with this Article Ten shall be binding on all the Holders of Debt Securities of such Series whether or not present or represented at the meeting.

(b)    The appointment of any proxy shall be proved by having the signature of the person executing the proxy guaranteed by any bank, banker, trust company or New York Stock Exchange or London Stock Exchange member firm satisfactory to the Province.  The holding of Debt Securities shall be proved by the Register maintained in accordance with Section 2.6, provided that the holding of a beneficial interest in a Global Security shall be proved by a certificate or certificates of the Depositary.

SECTION 10.4.    Chairman; Voting.  The Trustee shall appoint a temporary chairman of the meeting.  A permanent chairman and a permanent secretary of the meeting shall be elected by vote of the Holders of a Majority in aggregate principal amount of the Debt Securities of such Series represented at the meeting.  At any meeting, each Holder of Debt Securities of such Series or proxy shall be entitled to one vote for each US$1.00 (or, in the case of Debt Securities denominated in any other currency, one unit of the currency in which such Debt Securities are denominated) principal amount of Debt Securities of such Series held or represented by that Holder; provided that no vote shall be cast or counted at any meeting in respect of any Debt Security challenged as not Outstanding and ruled by the chairman of the meeting to be not Outstanding.  The chairman of the meeting shall have no right to vote except as a Holder of Debt Securities of such Series or proxy.  Any meeting of Holders duly called at which a quorum is present may be adjourned from time to time, and the meeting may be held as so adjourned without further notice.

SECTION 10.5.   Counting Votes; Recording Actions or Meetings.  The vote upon any resolution submitted to any meeting of Holders of one or all Series shall be by written ballot on which shall be subscribed the signatures of the Holders of Debt Securities of such Series or proxies and on which shall be inscribed the serial number or numbers of the Debt Securities held or represented by them.  Except as provided in Section 11.3, the permanent chairman of the meeting shall appoint two inspectors of votes who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the secretary of the meeting their verified written reports in duplicate of all votes cast at the meeting.  A record in duplicate of the proceedings of each meeting of such Holders shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the inspectors of votes on any vote by ballot taken there and affidavits by one or more persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was published as provided above.  The record shall be signed and verified by the permanent chairman and secretary of the meeting and one of the duplicates shall be delivered to the Province and the other to the Trustee to be preserved by the Trustee, the latter to have attached thereto the ballots voted at the meeting.  Any record so signed and verified shall be conclusive evidence of the matters therein stated.

ARTICLE ELEVEN

MODIFICATIONS

SECTION 11.1.   Modifications.  Any modification, amendment, supplement or waiver (each, a "Modification") to this Indenture or the terms and conditions of the Debt Securities of one or more Series may be made or (a) given pursuant to a written action of the Holders of the Debt Securities of that Series without the need for a meeting, or (b) by vote of the Holders of the Debt Securities of that Series taken at a meeting of Holders thereof, in each case in accordance with the terms of this Article Eleven and the other applicable provisions of this Indenture and the Debt Securities of such affected Series.

SECTION 11.2.   Modifications Affecting Debt Securities of a Single Series.  Modifications to the terms and conditions of the Debt Securities of any Series, or to the Indenture insofar as it affects the Debt Securities of such Series, may be made, and future compliance therewith may be waived,

(a)    in the case of any Non-Reserve Matter (as defined below), with the consent of the Issuer and the Holders of not less than a majority in aggregate principal amount of the Debt Securities of such Series at the time Outstanding, or

(b)    in the case of any Reserve Matter (as defined below), with the consent of the Issuer and the Holders of not less than 75% in aggregate principal amount of the Debt Securities of such Series at the time Outstanding.

SECTION 11.3.   Reserve Matter Modifications Affecting Debt Securities of Multiple Series.  If the Province proposes any Reserve Matter Modification to the terms and conditions of the Debt Securities of two or more Series, or to the Indenture insofar as it affects the Debt Securities of two or more Series, in either case as part of a single transaction, the Province may

41

elect to proceed pursuant to this Section 11.3 instead of Section 11.2. Such Modifications may be made, and future compliance therewith may be waived, for any affected series if made with the consent of the Province and

(a)    the Holders of not less than 85% in aggregate principal amount of the Outstanding Debt Securities of all Series that would be affected by that Modification (taken in aggregate), and

(b)    the Holders of not less than 66 2/3% in aggregate principal amount of the Outstanding Debt Securities of each Series (taken separately).

If the Debt Securities of an affected Series are denominated in a currency other than Dollars, the Trustee shall specify a commercially reasonable method (in the Trustee's sole discretion) for determining the Dollar equivalent of such Debt Securities for purposes of voting pursuant to clause (a). If, at the time a vote is solicited pursuant to this Section 11.3, separate Trustees have been appointed for two or more of the series affected by that vote, the Trustee acting for the series (or multiple series) having the greatest aggregate principal amount of the Outstanding Debt Securities affected by that vote shall be responsible for administering the voting procedures contemplated by this Section 11.3.

SECTION 11.4.    Binding Effect.  Any Modification consented to or approved by the Holders of the Debt Securities of one or more series pursuant to this Article Eleven shall be conclusive and binding on all Holders of the Debt Securities of that Series, whether or not such Holders have given such consent or were present at a meeting of Holders at which such action was taken, and on all future Holders of the Debt Securities of that Series, whether or not notation of such Modification is made upon the Debt Securities of that Series. Any instrument given by or on behalf of any Holder of a Debt Security in connection with any consent to or approval of any such Modification shall be conclusive and binding on all subsequent Holders of such Debt Security.

SECTION 11.5.    Certain Definitions.  As used herein, the following terms shall have the specified meanings for purposes of this Article Eleven and, more generally, the Indenture and the Debt Securities of any Series:

(a)    "Non-Reserve Matter" means any Modification other than a Modification constituting a Reserve Matter.

(b)    "Outstanding" means, in respect of the Debt Securities of any Series, the Debt Securities of that Series authenticated and delivered pursuant to this Indenture except:

(i)    Debt Securities of that Series theretofore canceled by the Trustee or delivered to the Trustee for cancellation;

(ii)    Debt Securities of that Series, or portions thereof, that have been called for purchase or redemption in accordance with their terms or which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof (and premium, if any) and any interest thereon shall have been made available to the Trustee or any Trustee Paying Agent, provided that if such Debt

Securities are to be redeemed, notice of such redemption has been duly given pursuant to the terms of this Indenture or provision therefor satisfactory to the Trustee has been made;

(iii)    Debt Securities of a Series in exchange for or in lieu of which other Debt Securities of a Series shall have been authenticated and delivered pursuant to this Indenture; and

(iv)    Debt Securities owned or controlled by the Province or by any Public Sector Instrumentality as provided in Section 6.4(a).

(c)    "Reserve Matter" means any Modification that would:

(i)    change the date for payment of principal or premium of, or any installment of interest on, the Debt Securities of a Series;

(ii)    reduce the principal amount or redemption price or premium, if any, payable under the Debt Securities of a Series;

(iii)    reduce the portion of the principal amount which is payable in the event of an acceleration of the maturity of the Debt Securities of a Series;

(iv)    reduce the interest rate on the Debt Securities of a Series;

(v)    change the currency of any amount payable under the Debt Securities of a Series;

(vi)    change the obligation of the Province to pay Additional Amounts in respect of the Debt Securities of a Series;

(vii)    change the definition of "Outstanding" or the percentage of votes required for the taking of any action pursuant to this Article 11 (and the corresponding provision of the terms and conditions of the Debt Securities) in respect of the Debt Securities of a Series;

(viii)    authorize the Trustee, on behalf of all Holders of the Debt Securities of a Series, to exchange or substitute all the Debt Securities of that Series for, or convert all the Securities of that series into, other obligations or securities of the Province or any other Person;

(ix)    change the ranking, governing law, submission to jurisdiction or waiver of immunities provisions of the terms and conditions of the Debt Securities of a Series; or

(x)    in connection with an exchange offer for the Debt Securities of any Series, amend any Event of Default.

43

(d)     "<u>Reserve Matter Modification</u>" means any Modification constituting a Reserve Matter.

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed as of January 12, 2006.

THE PROVINCE OF BUENOS AIRES

By: _____
    Name: Gerardo Adrian Otero
    Title: Minister of Economy

By: _____
    Name:
    Title:

THE BANK OF NEW YORK, as Trustee

By: _____
    Name:
    Title:

45

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed as of January 12, 2006.

THE PROVINCE OF BUENOS AIRES

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

THE BANK OF NEW YORK, as Trustee

By: _____
    Name:
    Title:    DAVID ROCCO
        ASSISTANT TREASURER

45

**SCHEDULE I**

<u>Existing Bonds</u>

U.S. dollar-denominated Zero Coupon Notes due 2002

U.S. dollar-denominated 12.50% Notes due 2002

Euro-denominated 7.875% Notes due 2002

Euro-denominated 9.0% Notes due 2002

Euro-denominated 10.25% Notes due 2003

Yen-denominated 4.25% Notes due 2003

U.S. dollar-denominated 12.75% Notes due 2003

Swiss franc-denominated 7.75% Notes due 2003

Euro-denominated 10.375% Notes due 2004

Euro-denominated 9.75% Notes due 2004

Euro-denominated 10.0% Notes due 2004

Euro-denominated 10.75% Notes due 2005

Euro-denominated 10.625% Notes due 2006

U.S. dollar-denominated Floating Rate Notes due 2006

U.S. dollar-denominated 13.75% Notes due 2007

U.S. dollar-denominated 13.25% Notes due 2010

<div align="right"><b>EXHIBIT A</b></div>

<div align="center">FORM OF FACE OF GLOBAL SECURITY</div>

[Insert legends relating to limitations on the transferability in the form set forth in Section 2.5 of the Indenture, the Authorization or in such other form as may be required by the Depositary]

[Insert any legend required by the Internal Revenue Code and the regulations thereunder]

<div align="center">THE PROVINCE OF BUENOS AIRES

REGISTERED GLOBAL DEBT SECURITY

representing</div>

No.____                              [U.S.$] [€]_____

<div align="center">[_____%] [Type of Security] Due _____</div>

 

THE PROVINCE OF BUENOS AIRES (the "<u>Province</u>"), for value received, hereby promises to pay to _____, or registered assigns, upon surrender hereof of the principal sum of _____ [UNITED STATES DOLLARS] [EURO] ([U.S.$] [€] _____) or such amount as shall be the outstanding principal amount hereof on _____, _____, together with interest accrued from the issue date to, but excluding, the maturity date, or on such earlier date as the principal hereof may become due in accordance with the provisions hereof.  The Province further unconditionally promises to pay interest in arrears on _____ and _____ of each year (each an "<u>Interest Payment Date</u>"), commencing _____, on any outstanding portion of the unpaid principal amount hereof at _____% per annum.  Interest shall accrue from and including the most recent date to which interest has been paid or duly provided for, or, if no interest has been paid or duly provided for, from _____, ____ until payment of said principal sum has been made or duly provided for.  This is a Global Security (as that term is defined in the Indenture referred to below) deposited with the Depositary, and registered in the name of the Depositary or its nominee or common custodian, and, accordingly, the Depositary or its nominee or common custodian, as holder of record of this security, shall be entitled to receive payments of principal and interest, other than principal and interest due at the maturity date, by wire transfer of immediately available funds.  Such payment shall be made exclusively in such coin or currency of the [United States of America] [Other Country] as at the time of payment shall be legal tender for payment of public and private debts.

[Insert step-up interest rate provisions, as applicable.]

<div align="center">A-1</div>

The statements in the legend relating to the Depositary set forth above are an integral part of the terms of this Security and by acceptance hereof each Holder of this Security agrees to be subject to and bound by the terms and provisions set forth in such legend, if any.

This Global Security is issued in respect of an issue of [U.S.$] [€] _____ principal amount of [_____%] [Type of Securities] Due _____ of the Province and is governed by (i) the Trust Indenture dated as [                    ], as amended from time to time, (the "Indenture") between the Province and [                    ], as trustee (the "Trustee"), the terms of which Indenture are incorporated herein by reference, and (ii) by the terms and conditions of the Security set forth on the reverse of this Global Security (the "Terms"), as supplemented or amended by the Authorization (as defined in the Indenture) of the Province for this Global Security, the terms of which are incorporated herein by reference.  This Global Security shall in all respects be entitled to the same benefits as other Debt Securities under the Indenture and the Terms.

Upon any exchange of all or a portion of this Global Security for Certificated Debt Securities in accordance with the Indenture, this Global Security shall be endorsed on Schedule A to reflect the change of the principal amount evidenced hereby.

Unless the certificate of authentication hereon has been executed by the Trustee, this Global Security shall not be valid or obligatory for any purpose.

*[Remainder of page left blank intentionally]*

A-2

IN WITNESS WHEREOF, the Province has caused this instrument to be duly executed.

Dated: _____

THE PROVINCE OF BUENOS AIRES

By:_____
       Title

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

This is one of the Debt Securities of the Series designated therein issued under the within-mentioned Indenture.

_____
as Trustee

Dated: _____                By:_____

A-3

SCHEDULE A

| Date | Principal Amount of Certificated Securities | Remaining Principal Amount of this Global Security | Notation Made By |
|------|---------------------------------------------|---------------------------------------------------|------------------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

A-4

**EXHIBIT B**

FORM OF FACE OF CERTIFICATED DEBT SECURITY

[Insert any legend required by the Internal Revenue Code and the regulations thereunder]

No.

[U.S.$] [€]

THE PROVINCE OF BUENOS AIRES


[_____%] [TYPE OF SECURITIES] DUE _____


THE PROVINCE OF BUENOS AIRES (the "<u>Province</u>"), for value received, hereby promises to pay to _____, or registered assigns, upon surrender hereof of the principal sum of _____ [UNITED STATES DOLLARS] [EURO] ([U.S.$] [€] _____) or such amount as shall be the outstanding principal amount hereof on _____, _____, together with interest accrued from the issue date to, but excluding, the maturity date, or on such earlier date as the principal hereof may become due in accordance with the provisions hereof.  The Province further unconditionally promises to pay interest in arrears on _____ and _____ of each year (each an "<u>Interest Payment Date</u>"), commencing _____, on any outstanding portion of the unpaid principal amount hereof at _____% per annum.  Interest shall accrue from and including the most recent date to which interest has been paid or duly provided for, or, if no interest has been paid or duly provided for, from _____, ____ until payment of said principal sum has been made or duly provided for.  The interest payable on any such _____ and _____ will, subject to certain conditions set forth in the Terms hereinafter referred to, be paid to the person in whose name this [Type of Security] is registered at the end of the fifteenth day next preceding each Interest Payment Date.]  Such payment shall be made exclusively in such coin or currency of [the United States of America] [Other Country] as at the time of payment shall be legal tender for payment of public and private debts.

[Insert step-up interest rate provisions, as applicable.]

This Certificated Security is issued in respect of an issue of [U.S.$] [€] _____ principal amount of [_____%] [Type of Securities] Due _____ of the Province and is governed by (i) the Trust Indenture dated as of [            ], as amended from time to time, (the "<u>Indenture</u>") between the Province and [            ], as trustee (the "<u>Trustee</u>"), the terms of which Indenture are incorporated herein by reference, and (ii) the terms and conditions of the Security set forth on the reverse of this Certificated Security (the "<u>Terms</u>"), as supplemented or amended by the Authorization (as defined in the Indenture) of the Province for this Certificated Security, the terms of which are incorporated herein by reference.  This Certificated Security shall in all respects be entitled to the same benefits as other Debt Securities under the Indenture and the Terms.

Unless the certificate of authentication herein has been executed by the Trustee, this Certificated Security shall not be valid or obligatory for any purpose.

*[Remainder of page left blank intentionally]*

B-1

IN WITNESS WHEREOF, the Province has caused this instrument to be duly executed.

Dated:

<div style="margin-left: 40%;">

THE PROVINCE OF BUENOS AIRES
By:_____
Title:

</div>

<div style="text-align: center;">

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

</div>

This is one of the Debt Securities of the Series designated therein issued under the within-mentioned Indenture.

<div style="margin-left: 40%;">

THE BANK OF NEW YORK
as Trustee

</div>

Dated:                              By:_____

<div style="text-align: center;">

B-2

</div>

**EXHIBIT C**

[FORM OF REVERSE OF SECURITY]

TERMS AND CONDITIONS OF THE SECURITIES

1.  General.  (a)  This Security is one of a duly authorized series of debt securities (each, a "Series") of The Province of Buenos Aires (the "Province"), designated as its [_____%] [Title of Securities] Due _____ (each Security of this Series a "Security", and collectively, the "Securities"), and issued or to be issued in one or more Series (such Series collectively, the "Debt Securities") pursuant to a Trust Indenture dated as of _____, between the Province and [                ], as Trustee (the "Trustee"), as amended from time to time (the "Indenture"). The Holders (as defined below) of the Securities will be entitled to the benefits of, be bound by, and be deemed to have notice of, all of the provisions of the Indenture.  A copy of the Indenture is on file and may be inspected at the Corporate Trust Office of the Trustee in the City of New York.  Subject to Paragraph 2, the Province hereby certifies and warrants that all acts, conditions and things required to be done and performed and to have happened precedent to the creation, execution and, as applicable, issuance of the Indenture and the Securities and to constitute the same legal, valid and binding obligations of the Province enforceable in accordance with their terms, have been done and performed and have happened in due and strict compliance with all applicable laws.  All capitalized terms used in this Security but not defined herein shall have the meanings assigned to them in the Indenture.  Insofar as the provisions of the Indenture may conflict with the provisions set forth in this Security, the latter shall control for purposes of this Security.

(b)  The Securities are issuable only in fully registered form without coupons. Securities may be issued in certificated form (the "Certificated Securities"), or may be represented by one or more registered global securities (each, a "Global Security") held by or on behalf of the Person or Persons that are designated, pursuant to the Indenture, by the Province to act as depositary for such Global Securities (the "Depositary").  Certificated Securities will be available only in the limited circumstances set forth in the Indenture.  The Securities, and transfers thereof, shall be registered as provided in Section 2.6 of the Indenture.  Any person in whose name a Security shall be registered (each, a "Holder") may (to the fullest extent permitted by applicable law) be treated at all times, by all persons and for all purposes as the absolute owner of such Security regardless of any notice of ownership, theft, loss or any writing thereon.

(c)  The Securities are issuable in authorized denominations of [U.S.$] [€] 1.00 and integral multiples of [U.S.$] [€] 1.00 in excess thereof.

(d)  As used herein, the following terms have the meanings set forth below:

"Business Day" means any day other than (i) a Saturday or a Sunday, (ii) a day on which banking institutions or trust companies are authorized or obligated by law, regulation or executive order to close in the City of New York or in the City of Buenos Aires [If the Securities are denominated in euro, insert: or (iii) a day on which the Trans-European Automated Real-Time Gross Settlement Express Transfer ("TARGET") System, or any successor thereto, is closed for business.]  "Payment Date" means [ ] and [ ] of each year, commencing [ ] and ending on [ ].

C-1

2. <u>Payments and Trustee Paying Agents</u>. (a) Principal of and interest on the Securities will be payable in [U.S. dollars] [euro].  Principal of each Security and interest payable on the Maturity Date will be payable in [U.S. dollars] [euro] in immediately available funds to the person in whose name such Security is registered on the Maturity Date, upon presentation and surrender of the Security at the Corporate Trust Office of the Trustee in the City of New York or, subject to applicable laws and regulations, at the office of any paying agent that shall be appointed by the Trustee, at the expense of the Province (each, a "<u>trustee paying agent</u>"). [Principal and] [I] interest on each Security (other than principal and interest payable on the Maturity Date) will be payable to the person in whose name such Security is registered at the close of business on the Record Date (as defined below) for the relevant Payment Date.  The Province will make payments of principal of and interest on the Securities by providing the Trustee or trustee paying agent the amount of such payment, in [U.S. dollars] [euro] in immediately available funds, not later than 1:00 P.M. local time on the Business Day prior to the Payment Date, and directing the Trustee to hold these funds in trust for the Trustee and the beneficial owners of the Securities in accordance with their respective interests and to make a wire transfer of such amount in [U.S. dollars] [euro] to the [                ] as the registered owner of the Securities, which will receive the funds in trust for distribution to the beneficial owners of the Securities; <u>provided</u> that the Province may, subject to applicable laws and regulations, make payments of principal of and interest on the Securities by mailing, or directing the Trustee to mail, from funds made available by the Province for such purpose, a check to the person entitled thereto, on or before the due date for the payment at the address that appears on the security register maintained by the Registrar on the applicable record date.  The record date with respect to any Payment Date will be the 15th day prior to such date (each such day, a "<u>Record Date</u>"), whether or not such day is a Business Day notwithstanding the cancellation of such Securities upon any transfer or exchange thereof subsequent to the Record Date and prior to such interest payment date.  Notwithstanding anything herein to the contrary, the Province's obligation to make payments of principal of and interest on the Securities shall not have been satisfied until such payments are received by the Holders of the Securities.

None of the Province, the Trustee or any trustee paying agent will have any responsibility or liability for any aspect of the records relating to, or payments made on account of, beneficial ownership interests in the Securities or for maintaining, supervising or reviewing any records relating to such beneficial ownership interests.

[Insert for amortizing securities: (b)   The Province shall make payments of principal in [ ] semi-annual installments, the first [ ] installments on [ ] and [ ] of each year commencing on [ ], and the last installment on [ ] (each such date, a "<u>Principal Payment Date</u>").  The amount of each such principal payment shall equal the principal amount of this Security outstanding as of any such Principal Payment Date, divided by the number of principal installments from and including such Principal Payment Date to and including [ ].]

[(c)]   Any payment of principal or interest required to be made on a Payment Date that is not a Business Day (or, in the case of the Luxembourg Trustee Paying Agent, as defined in Paragraph 2(e), that is a day on which banking institutions or trust companies in Luxembourg are required or authorized by law to close) need not be made on such day, but may be made on the next succeeding Business Day (or, in the case of a Luxembourg Trustee Paying Agent, the next succeeding day on which banking institutions or trust companies in Luxembourg are not required or authorized by law to close) with the same force and effect as if made on such Payment Date,

and no interest will accrue with respect to such payment for the period from and after such Payment Date.

[(d)]    Interest shall be calculated on the basis of a 360-day year of twelve 30-day months.

[(e)]    So long as any of the Securities are outstanding, the Trustee shall appoint, at the expense of the Province, a trustee paying agent and a transfer agent in a Western European city for payment on and transfers of the Securities (which will be Luxembourg, so long as the Securities are listed on the Luxembourg Stock Exchange and the rules of such Exchange so require), a Registrar having a specified office in the City of New York and a trustee paying agent having a specified office in the City of New York. The Trustee has initially appointed The Bank of New York (Luxembourg) S.A. as Luxembourg Trustee Paying Agent and Transfer Agent for the Securities and [  ] as Registrar and trustee paying agent. The Trustee shall also maintain a trustee paying agent in a member state of the European Union that is not obliged to deduct or withhold tax pursuant to European Council Directive 2003/48/EC or any other Directive implementing the conclusions of the ECOFIN Council meeting of November 26-27, 2002 on the taxation of savings income or any law implementing or complying with, or introduced in order to conform to, such Directive. Subject to the foregoing, the Province shall have the right at any time to instruct the Trustee to terminate any such appointment and to appoint any other paying agents or transfer agents in such other places as it may deem appropriate for the purpose of making payments for the exclusive benefit of Holders. Notwithstanding the foregoing, the trustee paying agent and any trustee paying agent appointed hereunder shall be agents solely of the Trustee, and the Province shall have no authority over or any direct relationship with the trustee paying agent or any such trustee paying agent.

[(f)]    All money paid to the Trustee pursuant to these Terms shall be held by it in trust exclusively for itself and the Holders of the Securities in accordance with their respective interests to be applied by the Trustee to payments due on the Securities or to the Trustee at the time and in the manner provided for in these Terms and in the Indenture, and the Holders of the Securities may, subject to the next sentence, look only to the Trustee for any payment to which the Holders may be entitled. Any monies deposited with the Trustee for the payment of the principal of or interest (including Additional Amounts) on any Security remaining unclaimed for ten years (in the case of principal) or five years (in the case of interest) or, in either case, any shorter prescription period provided by law after such principal or interest shall have become due and payable shall be repaid to the Province upon written request without interest, and the Holder of any such Security may thereafter look only to the Province for any payment to which such Holder may be entitled.

3.    Taxation. All payments of principal, premium, if any, and interest in respect of this Security by the Province shall be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or within the Province or the Republic of Argentina ("Argentina") or any authority therein or thereof having power to tax (together "Taxes"), unless such withholding or deduction is required by law. In such event, the Province shall pay to the registered Holders of this Security such additional amounts ("Additional Amounts") as will result in receipt by such Holders of such amounts of principal, premium and interest as would have been received by them had no such withholding or

deduction been required; except that no such Additional Amounts shall be payable with respect to any Security (i) to a Holder (or to a third party on behalf of a Holder) where such Holder is liable for such Taxes in respect of this Security by reason of his having some connection with the Province or Argentina other than the mere holding of such Security or the receipt of principal, premium or interest in respect thereof; (ii) where such withholding or deduction is imposed on a payment to an individual and is required to be made pursuant to European Council Directive 2003/48/EC or any other directive implementing the conclusions of the ECOFIN Council meeting of November 26-27, 2002 on the taxation of savings income or any law implementing or complying with, or introduced in order to conform to, such Directive; (iii) presented for payment by or on behalf of a Holder who would have been able to avoid the withholding or deduction by presenting the relevant Debt Security to another trustee paying agent in a member state of the European Union; or (iv) presented for payment more than 30 days after the Relevant Date, as defined herein, except to the extent that the Holder thereof would have been entitled to Additional Amounts on presenting the same for payment on the last day of such period of 30 days.

"Relevant Date" in respect of any Security means the date on which payment in respect thereof becomes due or (if the full amount of the money payable on such payment has not been received by the Trustee on or prior to such due date) the date on which notice is duly given to the Holders that such moneys have been so received and are available for payment. Any reference herein to "principal" and/or "interest" shall be deemed to include any Additional Amounts which may be payable on this Security.

4.    Status and Negative Pledge Covenant.  (a)  The Securities will constitute the direct, unconditional, unsecured and unsubordinated obligations of the Province.  Each Series will rank *pari passu* with each other Series, without any preference one over the other by reason of priority of date of issue or currency of payment or otherwise, and at least equally with all other present and future unsecured and unsubordinated Indebtedness (as defined herein) of the Province.

(b) So long as any Security remains Outstanding (as defined in Paragraph 15 hereof), the Province will not create or permit to subsist any Lien (as defined below) upon the whole or any part of its property or assets to secure any Indebtedness of the Province unless (i) at the same time or prior thereto, the Province's obligations under the Securities either (A) are secured equally and ratably therewith or (B) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by the Holders of Securities (as provided in Paragraph 15 hereof) or (ii) after giving effect thereto, the aggregate amount then outstanding of all such Indebtedness so secured would not exceed 8% of the Province's annual revenues for the fiscal year most recently ended prior to the incurrence of the Lien.

Notwithstanding the foregoing, the Province may create or permit to subsist:

(i)    any Lien in existence on the date of the Indenture;

(ii)    any Lien upon bank accounts, deposits or proceeds thereof (or arising from the existence of rights of set-off against such accounts, deposits or proceeds) securing Indebtedness of the Province incurred in connection with letters of credit issued by, or trade finance transactions with, a bank to which such Lien is granted or holding such rights, and which Indebtedness has a final maturity of not greater than 180 days from the date on which payment

under such letter of credit or in connection with such trade finance transactions is due and payable;

(iii)    any Lien upon any property to secure Indebtedness of the Province incurred specifically for the purpose of financing the acquisition of the property subject to such Lien;

(iv)    any Lien existing on any property at the time of its acquisition to secure Indebtedness of the Province;

(v)    any Lien securing Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project, provided that the property over which such Lien is granted consists solely of the assets and revenues of such project or the ownership interest therein;

(vi)    any Lien securing Indebtedness incurred for the purpose of financing all or part of the cost of personal property sold or services provided to the Province;

(vii)    any replacement, renewal or extension of any Lien permitted by clauses (i) through (vi) above upon the same property theretofore subject to such Lien, including any replacement, renewal or extension of such Lien resulting from the refinancing (without increase in the principal amount) of the Indebtedness secured by such Lien; _provided_ that the Province shall not be permitted to replace, renew or extend any Lien in respect of Indebtedness to the federal government unless the federal government remains the creditor;

(viii)    any Lien to secure public or statutory obligations or otherwise arising by law to secure claims other than for borrowed money; and

(ix)    any Lien securing Indebtedness of the Province to the federal government of Argentina encumbering the right of the Province to receive Co-Participation Payments; _provided_ that the incurrence of such Indebtedness so secured will not cause the Co-Participation Secured Indebtedness Ratio to exceed 50% in any fiscal year;

_provided_ that any Lien described in clauses (i) through (ix) above may not secure any payment obligation, including any contingent liability of any Person, arising from Securities, debentures, notes or other securities which are, or were intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system, or over-the-counter or other securities market or sold in whole or in part pursuant to a private placement exemption in any jurisdiction.

For Purposes of these Terms:

"Co-Participation Payments" means any transfers made by the federal government of Argentina to the Province pursuant to federal law No. 23,548, as amended or replaced from time to time, and any other law, decree or regulation governing the obligation of the federal government of Argentina to distribute taxes collected by it to the Argentine provinces.

"Co-Participation Secured Indebtedness Ratio" means the percentage that is equal to (A) in any fiscal year, the aggregate amount of payments of principal and interest that will become due in such fiscal year (after giving pro forma effect to the incurrence of Indebtedness secured by a Lien on the Province's right to receive Co-Participation Payments) in respect of

Indebtedness that is secured by a Lien on the Province's right to receive Co-Participation Payments, divided by (B) the aggregate amount of Co-Participation Payments actually received by the Province for the fiscal year most recently ended prior to the incurrence of the Lien, (C) multiplied by 100, underlined provided that, with respect to the calculation of payments to be made in respect of principal and interest, inflation adjustment accrued through the most recent fiscal year on such principal and interest shall be given effect, but no effect shall be given for inflation adjustment for the current and any future fiscal years; provided further that the Co-Participation Secured Indebtedness Ratio is to be calculated for each future fiscal year on a stand-alone basis and not by aggregating the principal and interest payments for more than one fiscal year.

"Indebtedness" means, with respect to any Person, whether outstanding on the original issuance date of a series of New Securities or at any time thereafter:  (i) all indebtedness of such Person for borrowed money; (ii) all reimbursement obligations of such Person (to the extent no longer contingent) under or in respect of letters of credit or bankers' acceptances; (iii) all obligations of such Person to repay deposits with or advances to such Person; (iv) all obligations of such Person (other than those specified in clauses (i) and (ii) above) evidenced by Securities, debentures, notes or similar instruments; and (v) to the extent no longer contingent, all direct guarantees, endorsements, *avales* or similar obligations of such Person in respect of, and all direct obligations of such Person to purchase or otherwise acquire, or otherwise to assure a creditor against loss in respect of, indebtedness or obligations of any other Person specified in clause (i), (ii), (iii) or (iv) above.

"Lien" means any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance on or with respect to, or any preferential arrangement which has the practical effect of constituting a security interest with respect to the payment of any obligation with or from the proceeds of, any currently existing or future asset or revenues of any kind under the laws of Argentina.

"Public Sector Instrumentality" means the *Banco de la Provincia de Buenos Aires*, any department, ministry or agency of the government of the Province or any corporation, trust, financial institution or other entity owned or controlled by the government of the Province or any of the foregoing, and the term "control" means the power, directly or indirectly, through the ownership of voting securities or other ownership or other ownership interests or otherwise, to direct the management of or elect or appoint a Majority of the board of directors or other persons performing similar functions in lieu of, or in addition to, the board of directors of a corporation, trust, financial institution or entity.

5.    Default; Acceleration of Maturity.  (a)  Each of the following events will constitute an "Event of Default" under the Securities:

(i)    The Province fails to pay any principal due on any Securities when due and payable for 10 days after the applicable Payment Date; or

(ii)    The Province fails to pay any interest or Additional Amounts due on any Securities when due and payable for 30 days after the applicable Payment Date; or

(iii)    The Province fails to duly perform or observe any term or obligation contained in the Securities or in the Indenture, which failure continues

C-6

unremedied for 60 days after written notice thereof has been given to the Province by the Trustee; or

(iv)    The Province fails to make any payment when due, after any applicable grace periods, on any of its Indebtedness (other than Excluded Indebtedness) having an aggregate principal amount greater than or equal to U.S.$15,000,000 (or its equivalent in other currencies); or

(v)    Any Indebtedness of the Province (other than Excluded Indebtedness) having an aggregate principal amount greater than or equal to U.S.$15,000,000 (or its equivalent in other currencies) is accelerated due to an event of default, unless the acceleration is rescinded or annulled; or

(vi)    The Province declares a moratorium of payment of its Indebtedness (other than Excluded Indebtedness);

(vii)    There has been entered against the Province or a provincial agency a final judgment, decree or order by a court of competent jurisdiction from which no appeal may be or is taken for the payment of money in excess of U.S.$15,000,000 (or the equivalent thereof in another currency or currencies) (other than a final judgment, decree or order in respect of any Excluded Indebtedness) and 90 days shall have passed since the entry of such final judgment, decree or order without it having been satisfied or stayed;

(viii)    The validity of the Securities or of the Indenture is contested by the Province; or

(ix)    (A) Any constitutional provision, law, regulation, ordinance or decree necessary to enable the Province to perform its obligations under the Securities or the Indenture, or for the validity or enforceability thereof, shall expire, is withheld, revoked or terminated or otherwise ceases to remain in full force and effect, or is modified in a manner which materially adversely affects, or may reasonably be expected to materially adversely affect, any rights or claims of any of the Holders of Securities, or (B) any final decision by any court in Argentina having jurisdiction from which no appeal may be or is taken shall purport to render any material provision of the Securities or the Indenture invalid or unenforceable or purport to prevent or delay the performance or observance by the Province of its obligations under such Securities or the Indenture, and, in each case, such expiration, withholding, revocation, termination, cessation, invalidity, unenforceability or delay shall continue in effect for a period of 90 days.

(b)    Upon the occurrence and during the continuance of an Event of Default, the Holders of at least 25% in aggregate principal amount of the Securities then Outstanding may by written notice given to the Province (with a copy to the Trustee) declare the Securities to be immediately due and payable; and upon such declaration the principal amount of the Securities and the accrued interest on the Securities will become immediately due and payable upon the date that such written notice is received at the office of the Trustee, unless prior to such date the event giving rise to such Event of Default has been cured before such declaration is made. Holders holding in the aggregate at least 50% in principal amount of the then Outstanding Securities may waive any existing defaults, and rescind or annul any notice of acceleration, on behalf of all Holders of Securities, if (A) following the declaration of the Securities due and

payable immediately, the Province has deposited with the Trustee or a trustee paying agent an amount sufficient to pay all overdue installments of principal, interest and Additional Amounts in respect of the Securities (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal of each of the Securities at the rate of interest applicable thereto, to the date of such payment or interest) as well as the reasonable fees and compensation of the Trustee; and (B) all other Events of Default with respect to such Securities have been remedied. In the event of a declaration of acceleration because of an Event of Default set forth in clause (iii) or (iv) above, such declaration of acceleration shall be automatically rescinded and annulled if the event triggering such Event of Default pursuant to such clause (iii) or (iv) above shall be remedied, cured or waived by the Holders of the relevant indebtedness, within 60 days after such event.

(c)     Upon the occurrence of an Event of Default under Paragraph 5(a), the Province shall give written notice promptly after becoming aware thereof to the Trustee. Within 15 days after becoming aware of the occurrence of an event which with the giving of notice or lapse of time or both would, unless remedied, cured or waived, become an Event of Default under Paragraph 5(a), the Province shall give written notice thereof to the Trustee.

6.     <u>Purchase of the Securities by the Province</u>. The Province may at any time purchase or acquire any of the Securities in any manner and at any price in the open market, in privately negotiated transactions or otherwise. Securities that are purchased or acquired by the Province may, at the Province's discretion, be held, resold or surrendered to the Trustee for cancellation, but any Security so purchased by the Province may not be re-issued or resold except in compliance with the Securities Act and other applicable law.

7.     <u>Replacement, Exchange and Transfer of Securities</u>.

(a)     If any Security becomes mutilated or is defaced, destroyed, lost or stolen, the Trustee shall authenticate and deliver a new Security, on such terms as the Province and the Trustee may require, in exchange and substitution for the mutilated or defaced Security or in lieu of and in substitution for the destroyed, lost or stolen Security. In every case of mutilation, defacement, destruction, loss or theft, the applicant for a substitute Security must furnish to the Province and the Trustee such indemnity as the Province and the Trustee may require and evidence to their satisfaction of the destruction, loss or theft of such Security and of the ownership thereof. In every case of mutilation or defacement of a Security, the Holder must surrender to the Trustee the Security so mutilated or defaced. In addition, prior to the issuance of any substitute Security, the Province may require the payment of a sum sufficient to cover any stamp or other tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith. If any Security that has matured or is scheduled to mature within 15 days becomes mutilated or defaced or is apparently destroyed, lost or stolen, the Province may pay or authorize payment of such Security without issuing a substitute Security.

(b)     Upon the terms and subject to the conditions set forth in the Indenture, a Security or Securities may be exchanged for a Security or Securities of equal aggregate principal amount in such same or different authorized denominations as may be requested by the Holder, by surrender of such Security or Securities at the office of the Registrar, or at the office of any trustee paying agent, together with a written request for the exchange. Any registration of transfer or exchange shall be effected upon the Province being satisfied with the documents of

title and identity of the person making the request and subject to such reasonable regulations as the Province may from time to time agree with the Trustee.

(c)    Upon the terms and subject to the conditions set forth in the Indenture, a Security may be transferred in whole or in part by the Holder or Holders surrendering the Security for registration of transfer at the Corporate Trust Office of the Trustee in the City of New York [City in European Union for securities denominated in euros] or at the office of any trustee paying agent, duly endorsed by or accompanied by a written instrument of transfer in form satisfactory to the Province and the Registrar or any such trustee paying agent, as the case may be, duly executed by the Holder or Holders thereof or its attorney-in-fact or attorneys-in-fact duly authorized in writing.

(d)    No service charge will be imposed upon the Holder of a Security in connection with exchanges for Securities of a different denomination or for registration of transfers thereof, but the Province and the Trustee may charge the party requesting any registration of transfer, exchange or registration of Securities a sum sufficient to reimburse it for any stamp or other tax or other governmental charge required to be paid in connection with such transfer, exchange or registration.

8.    <u>Meetings</u>.  The Province or the Trustee at any time may, and upon a request in writing to the Trustee made by Holders holding not less than 10% in aggregate principal amount of the Securities the Trustee shall, convene a meeting of Holders of the Securities. The Trustee shall give notice of each meeting of Holders of the Securities, setting forth the time and place of the meeting and in general terms the topics to be discussed, or the action to be taken, at that meeting, not less than 30 nor more than 60 days prior to the date fixed for the meeting. To be entitled to vote at any meeting of Holders of Securities, a Person shall be, as of the date reasonably set by the Trustee, (i) a Holder of one or more Securities or (ii) a Person appointed by an instrument in writing as proxy by the Holder of one or more Securities. The only Persons who shall be entitled to be present or to speak at any meeting of Holders shall be the Persons entitled to vote at such meeting and their counsel, the Trustee and its counsel, and any representatives of the Province and its counsel.

At any meeting of Holders, other than a meeting to discuss a Reserved Matter, the persons entitled to vote a majority in aggregate principal amount of the Securities shall constitute a quorum, and at the reconvening of any such meeting adjourned for a lack of a quorum, any number of persons holding or representing interests on the Securities shall constitute a quorum for the taking of any action set forth in the notice of the original meeting.  At any meeting of Holders held to discuss a Reserve Matter, the persons entitled to vote 75% in aggregate principal amount of the Securities shall constitute a quorum.

In the absence of a quorum at any such meeting, the meeting may be adjourned for a period of not less than ten days.  Notice of reconvening of any such meeting need be given only once but must be given not less than 30 days nor more than 60 days prior to the date on which the meeting is scheduled to be reconvened.  Notice of the reconvening of an adjourned meeting shall state expressly the percentage of the aggregate principal amount the Securities that shall constitute a quorum in accordance with the provisions of this Paragraph 8.

Further provisions for meetings of Holders are contained in Article Ten of the Indenture.

C-9

9.    <u>Notices</u>.  The Province shall mail notices to the Holders at their registered addresses.  The Province shall consider any mailed notice to have been given five Business Days after it has been sent.

The Province shall also publish notices to the Holders in leading newspapers having general circulation in Buenos Aires and London.  The Province anticipates that it shall make such publications in *La Nación* or *Ambito Financiero*.  In addition, so long as the Securities are listed on the Luxembourg Stock Exchange and the rules of the Exchange so require, the Province shall publish notices to the Holders in a leading newspaper having general circulation in Luxembourg.  The Province anticipates that it shall initially make such publication in the *Luxemberger d'Wort*.  If publication in a leading newspaper in Luxembourg is not practical, the Province shall publish such notices in one other leading English language daily newspaper with general circulation in Europe.  The Province shall consider any published notice to be given on the date of its first publication.

10.    <u>Trustee</u>.  For a description of the duties and the immunities and rights of the Trustee under the Indenture, reference is made to the Indenture, and the obligations of the Trustee to the Holder hereof are subject to such immunities and rights.

11.    <u>Further Issues of Securities</u>.  The Province may from time to time without the consent of the Holders of the Securities create and issue additional debt securities ranking *pari passu* with the Securities and having terms and conditions which are the same as those of the Securities, or the same except for the amount of the first payment of interest, which additional debt securities may be consolidated and form a single Series with the outstanding Securities; <u>provided</u> that such additional debt securities do not have, for purposes of U.S. federal income taxation (regardless of whether any Holders of such additional debt securities are subject to U.S. federal tax laws), a greater amount of original issue discount than the Securities have as of the date of the issue of such additional Securities.

12.    <u>Authentication</u>.  This Security will not be valid or obligatory for any purpose until the certificate of authentication hereon shall have been executed by manual signature by or on behalf of the Trustee.

13.    <u>Governing Law; Submission to Jurisdiction</u>.  THIS SECURITY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK, UNITED STATES OF AMERICA.

The Province irrevocably submits to the non-exclusive jurisdiction of any U.S. federal or New York state court sitting in the Borough of Manhattan, The City of New York, and any appellate court from any court thereof, in any suit, action or proceeding arising out of or relating to the Securities or the Indenture and irrevocably agrees that all claims in respect of any such suit, action or proceeding may be heard and determined in such U.S. federal or New York state court.  The Province also irrevocably waives, to the fullest extent that it may effectively do so, any objection to venue or defense of an inconvenient forum to the maintenance of any such suit, action or proceeding in such jurisdiction.  The Province has appointed *Banco de la Provincia de Buenos Aires*, with an office on the date hereof at 609 Fifth Avenue, New York, New York 10017, United States of America, as its agent (the "<u>Authorized Agent</u>"), to receive on behalf of itself and its property service of any process which may be served in any such suit, action or proceeding, except any suit, action or proceeding arising out of U.S. federal or state

securities laws.  Such service may be made by delivering or mailing a copy of such process to the Province in care of the Authorized Agent at the above specified address, and the Province authorizes and directs such Authorized Agent to accept such service on its behalf. In addition to the foregoing, any Holder may serve legal process in any other manner permitted by applicable law.  A final judgment that is not appealable in any such suit, action or proceeding shall be conclusive and may be enforced to the extent permitted under applicable law in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.  The Province agrees that, if the Authorized Agent shall for any reason cease to act as such agent, it shall promptly appoint a substitute Authorized Agent in the Borough of Manhattan, The City of New York.

The Province irrevocably waives immunity (including sovereign immunity) from jurisdiction to which it might otherwise be entitled in any such suit, action or proceeding arising out of or relating to the Securities or the Indenture.  Without limiting the generality of the foregoing, the Province agrees that the waivers set forth in this Paragraph 13 shall be to the fullest extent permitted under the U.S. Foreign Sovereign Immunities Act of 1976 and are intended to be irrevocable for purposes of such Act.  Notwithstanding the foregoing, the Province reserves the right to plead sovereign immunity under the U.S. Foreign Sovereign Immunities Act of 1976 with respect to actions or proceedings brought against it under U.S. federal securities laws or any state securities laws, and the Province's appointment of an Authorized Agent is not intended to extend to such actions or proceedings.

14.    Currency Indemnity.  (a)  In the event the Province is unable to obtain the full amount of the specified currency or to transfer such amounts outside of Argentina in order to make a scheduled payment of principal or interest on the Securities due to a restriction or prohibition on access to the foreign exchange market in Argentina, the Province shall, to the extent permitted by such restriction or prohibition, make such scheduled payment by means of (i) purchasing Euro- or U.S. dollar-denominated Argentine Government Bonds traded outside of Argentina or any other securities or public or private bonds issued in Argentina, with Argentine Pesos, and transferring and selling such instruments outside Argentina for the specified currency or (ii) any other legal mechanism for the acquisition of the specified currency in any foreign exchange market.  All costs, including any taxes, relative to such operations to obtain the specified currency will be borne by the Province.

(b)    The obligation of the Province to any Holder of Securities that has obtained a court judgment affecting the Securities shall, notwithstanding any judgment in a currency (the "Judgment Currency") other than the currency in which the Security is denominated (the "Agreement Currency"), be discharged only to the extent that on the Business Day following receipt by such Holder of any amount in the Judgment Currency, such Holder may in accordance with normal banking procedures purchase the Agreement Currency with the Judgment Currency (or, if it is not practicable to make that purchase on that day, on the first Business Day on which it is practicable to do so).  If the amount of the Agreement Currency so purchased is less than the amount originally to be paid to such Holder in the Agreement Currency, the Province agrees, as a separate obligation and notwithstanding such judgment, to pay the difference, and if the amount of the Agreement Currency so purchased exceeds the amount originally to be paid to such Holder, such Holder agrees to pay to or for the account of the Province such excess, provided that such Holder shall not have any obligation to pay any such excess as long as a default by the

Province in its obligations hereunder has occurred and is continuing, in which case such excess may be applied by such Holder to such obligations.

15.    <u>Modifications</u>.  (a)  Any modification, amendment, supplement or waiver (each, a "<u>Modification</u>") to the Indenture or the terms and conditions of the Securities of one or more series may be made or given (i) pursuant to a written action of the Holders of the Securities of that series without the need for a meeting, or (ii) by vote of the Holders of the Securities of that series taken at a meeting of Holders thereof, in each case in accordance with the terms of this Paragraph 15 and the other applicable provisions of the Securities and the Indenture.

(b)  Modifications to the terms and conditions of the Securities of a single series, or to the Indenture insofar as it affects the Securities of a single series, may be made, and future compliance therewith may be waived,

(i)    in the case of any Non-Reserve Matter (as defined below), with the consent of the Issuer and the Holders of not less than a majority in aggregate principal amount of the Securities of such series at the time Outstanding, or

(ii)    in the case of any Reserve Matter (as defined below), with the consent of the Issuer and the Holders of not less than 75% in aggregate principal amount of the Securities of such series at the time Outstanding.

(c)  If the Province proposes any Reserve Matter Modification to these terms and conditions and to those of at least one more series of Securities, or to the Indenture insofar as it affects these Securities and at least one more series of Securities, in either case as part of a single transaction, the Province may elect to proceed pursuant to this Paragraph 15(c) instead of Paragraph 15(b). Such Modifications to these Securities may be made, and future compliance therewith may be waived, if made with the consent of the Issuer and

(i)    the Holders of not less than 85% in aggregate principal amount of the Outstanding Securities of all series that would be affected by that Modification (taken in aggregate), and

(ii)    the Holders of not less than 66 2/3% in aggregate principal amount of the Outstanding Securities (taken individually).

(d)  If any Reserve Matter Modification pursuant to Paragraph 15(b)(ii) or Paragraph 16(c) is sought in the context of simultaneous offer to exchange the Securities of one or more series for new debt instruments of the Province or any other Person, the Province shall ensure that the relevant provisions of the affected Securities, as amended by such Modification, are no less favorable to the Holders thereof than the provisions of the new instrument being offered in the exchange, or if more than one debt instrument is offered, no less favorable than the new debt instrument issued having the largest aggregate principal amount.

(e)  The Province covenants and agrees that it shall not issue new Securities or reopen any existing series of Securities with the intention of placing such Securities with Holders expected to support any Modification proposed by the Province (or that the Province plans to propose) for approval pursuant to this Paragraph 15.

C-12

(f)  Any Modification consented to or approved by the Holders of the Securities of one or more series pursuant to this Paragraph 15 shall be conclusive and binding on all Holders of the Securities of that series, whether or not they have given such consent or were present at a meeting of Holders at which such action was taken, and on all future Holders of the Securities of that series whether or not notation of such Modification is made upon the Securities of that series. Any instrument given by or on behalf of any Holder of a Bond in connection with any consent to or approval of any such Modification shall be conclusive and binding on all subsequent Holders of such Bond.

(g) (i)  Before seeking the consent of any Holder of a Bond of any series to a Reserve Matter Modification affecting that series, the Province shall provide to the Trustee (for onward distribution to the Holders of the affected Securities) the following information:

(A)      a description of the economic or financial or other circumstances that, in the Province's view, explain the request for the proposed Modification;

(B)      if the Province shall at the time have entered into a standby, extended funds or similar program with the International Monetary Fund, a copy of that program (including any related technical memorandum); and

(C)      a description of the Province's proposed treatment of its other major creditor groups (including, where appropriate, Paris Club creditors, other bilateral creditors and internal debtholders) in connection with the Province's efforts to address the situation giving rise to the requested Modification.

(ii)      Prior to any vote on a Reserve Matter Modification affecting any series of Securities pursuant to Paragraph 15(b) or Paragraph 15(c), the Province shall deliver to the Trustee a certificate signed by an Authorized Official of the Province specifying, for the Province and each Public Sector Instrumentality, any Securities of that series falling within clause (iv) of the definition of "Outstanding" set forth below or, if no Securities of that series are owned or controlled by the Province or any Public Sector Instrumentality, a certificate signed by an Authorized Official of the Province to this effect.

(h)  For purposes of this Bond, the following terms shall have the following meanings:

(i)      "Non-Reserve Matter" means any Modification other than a Modification constituting a Reserve Matter.

(ii)      "Outstanding" means, in respect of the Securities, the Securities authenticated and delivered pursuant to the Indenture except:

(A)      Securities theretofore canceled by the Trustee or delivered to the Trustee for cancellation or held by the Trustee for reissuance but not reissued by the Trustee;

C-13

(B)     Securities that have been called for redemption in accordance with their terms or which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof (and premium, if any) and any interest thereon shall have been made available to the Trustee or any trustee paying agent;

(C)     Securities in exchange for or in lieu of which other Securities shall have been authenticated and delivered pursuant to the Indenture; and

(D)     Securities owned or controlled by the Province or by any Public Sector Instrumentality.

(iii)     "Reserve Matter" means any Modification that would:

(A)     change the date for payment of principal or premium of, or any installment of interest on, the Securities of a series;

(B)     reduce the principal amount or redemption price or premium, if any, payable under the Securities of a series;

(C)     reduce the portion of the principal amount which is payable in the event of an acceleration of the maturity of the Securities of a series;

(D)     reduce the interest rate on the Securities of a series;

(E)     change the currency of any amount payable under the Securities of a series;

(F)     change the obligation of the Issuer to pay Additional Amounts in respect of the Securities of a series;

(G)     change the definition of "Outstanding" or the percentage of votes required for the taking of any action pursuant to this Paragraph 15 (and the corresponding provision of the Indenture) in respect of the Securities of a series;

(H)     authorize the Trustee, on behalf of all Holders of the Securities of a series, to exchange or substitute all the Securities of that series for, or convert all the Securities of that series into, other obligations or securities of the Province or any other Person; or

(I)     change the ranking, governing law, submission to jurisdiction or waiver of immunities provisions of the terms and conditions of the Securities of a series.

(iv)     "Reserve Matter Modification" means any Modification constituting a Reserve Matter.

C-14

16.    <u>Supplemental Indentures</u>.  The Province and the Trustee may, without the consent or vote of the Holders of any Securities, from time to time and at any time enter into an indenture or indentures supplemental hereto for one or more of the following purposes:

(a) to convey, transfer, assign, mortgage or pledge any property or assets to the Trustee as security or collateral for the Securities;

(b) to modify the restrictions on, and procedures for, resale and other transfers of the Debt Securities of any Series to the extent required by any change in applicable law or regulation (or the interpretation thereof) or in practices relating to the resale or transfer of restricted debt securities generally;

(c) to accommodate the issuance, if any, of Debt Securities of any Series in book-entry or definitive form and matters related thereto;

(d) to add to the covenants of the Province such further covenants, restrictions, conditions or provisions (including, where applicable, provisions for redemption or defeasance) as the Province and the Trustee shall consider to be for the benefit of the Holders of Securities, for the purposes set forth in, and subject to, Section 7.1 of the Indenture;

(e) to surrender any of the rights or powers of the Province set forth in the Securities or the Indenture;

(f)  to cure any ambiguity or to correct or supplement any provision contained in the Securities or the Indenture or any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in the affected Securities or in any supplemental indenture; or

(g) to make such other provisions in regard to matters or questions arising under the Securities or the Indenture or any supplemental indenture as the Province and the Trustee may deem necessary or desirable and which shall not adversely affect the interests of the Holders of the affected Securities.

17.    <u>Enforcement</u>.  Except as provided in Section 4.8 of the Indenture with respect to the right of any Holder of a Security to enforce the payment of the principal of and interest on its Security on the stated maturity date for such payment expressed in such Security (as the Securities may be amended or modified pursuant to Paragraph 15), no Holder of a Security shall have any right by virtue of or by availing itself of any provision of the Indenture or the Securities to institute any suit, action or proceeding in equity or at law upon or under or with respect to the Indenture or the Securities, or for any other remedy hereunder or under the Indenture, unless:

(a) such Holder previously shall have given to the Trustee written notice of default and of the continuance thereof with respect to the Securities;

(b) the Holders of not less than 25% in aggregate principal amount of the Outstanding Securities shall have made written request to the Trustee to institute such action, suit or proceeding in its own name as Trustee under the Indenture;

(c) such Holder or Holders shall have provided to the Trustee such reasonable indemnity and/or security as it may require against the costs, expenses and liabilities to be incurred therein or thereby;

(d) the Trustee for 60 days after its receipt of such notice, request and provision of indemnity and/or security shall have failed to institute any such action, suit or proceeding; and

(e) no direction inconsistent with such written request shall have been given to the Trustee pursuant to Section 4.10 of the Indenture;

it being understood and intended, and being expressly covenanted by every Holder of Securities with every other Holder of Securities and the Trustee, that no one or more Holders shall have any right in any manner whatever by virtue or by availing itself of any provision of the Indenture or of the Securities to affect, disturb or prejudice the rights of any other Holder of Securities or to obtain priority over or preference to any other such Holder, or to enforce any right under the Indenture or under the Securities, except in the manner herein provided and for the equal, ratable and common benefit of all Holders of the Securities.  Subject to the foregoing, for the protection and enforcement of this Paragraph, each and every Holder and the Trustee shall be entitled to such relief as can be given either at law or in equity.  The Province expressly acknowledges, with respect to the right of any Holder to pursue a remedy under the Indenture or the Securities, the right of any beneficial owner of Securities to pursue such remedy with respect to the portion of the Global Security that represents such beneficial owner's interest in this Security as if Certificated Securities had been issued to such beneficial owner.

18.    <u>Prescription</u>.  All claims against the Province for payment of principal of or interest (including Additional Amounts) on or in respect of the Securities shall be prescribed unless made within ten years (in the case of principal) and four years (in the case of interest) from the date on which such payment first became due, or a shorter period if provided by law.

19.    <u>Effect of Headings</u>.  The paragraph headings herein are for convenience only and shall not affect the construction hereof.

**EXHIBIT D**

## AUTHORIZATION

Reference is made to the Trust Indenture dated as of [            ] (the "<u>Indenture</u>") between the Province of Buenos Aires (the "<u>Province</u>") and The Bank of New York, as trustee (the "<u>Trustee</u>"). Terms used but not otherwise defined herein shall have the meanings ascribed to them in the Indenture.

The undersigned, acting on behalf of the Province in the capacity specified below, hereby certifies that:

(A)    Pursuant to Section 2.1 of the Indenture, there is hereby established a Series of Debt Securities, the [Title of Securities] (the "<u>Securities</u>"), to be issued in the initial aggregate principal amount of [U.S.$] [€] _____ and delivered under the Indenture, as described in the Province's Offering Memorandum dated _____, 2005 (the "<u>Offering Memorandum</u>"), prepared in connection with the issuance of the Securities, copies of which Offering Memorandum are attached hereto as Annex A; and

(B)    The Securities shall have the terms and be subject to the conditions set forth in the certificate[s] representing the Securities, [a] true, correct and complete specimen[s] of which [is] [are] attached hereto as Annex B.

This Authorization shall be governed by, and construed in accordance with, the law of the State of New York without regard to principles of conflicts of laws, except with respect to its authorization and execution by the Province, which shall be governed by the laws of the Province.

IN WITNESS WHEREOF, the Province has caused this Authorization to be duly executed.

Dated: _____, 20__

By:_____
Name:
Title:

Annex A        Offering Memorandum
Annex B        Form of Security

**EXHIBIT E**

THE PROVINCE OF BUENOS AIRES

FORM OF INCUMBENCY CERTIFICATE

We [Name] [Title], acting on behalf of THE PROVINCE OF BUENOS AIRES ("Province"), hereby certify that:

(A)     each person listed below is (i) an Authorized Officer or Authorized Representative for purposes of the Trust Indenture (the "Indenture") dated as of [              ] between the Province and [                   ], as trustee (the "Trustee"), (ii) duly elected or appointed, qualified and acting as the holder of the respective office or offices set forth opposite his/her name and (iii) in the case of the [Minister of Finance], the duly authorized person who executed or will execute the [     %] [Type of Securities] Due _____ (the "Securities") by his/her manual or facsimile signature and was at the time of such execution, duly elected or appointed, qualified and acting as the holder of the office set forth opposite his/her name;

(B)     each signature appearing below is the person's genuine signature[; and

(C)     attached hereto as Exhibit A is a true, correct and complete specimen of the certificates representing the Securities.]

Authorized Officers:

| Name | Title | Signature |
|------|-------|-----------|
|  | [Minister of Finance] | _____ |
|  | [                    ] | _____ |

Attachment

E-1

Authorized Representatives:

|        | **Name** | **Title** | SIGNATURE |
|--------|----------|-----------|-----------|
|        |          |           | _____ |
|        |          |           | _____ |
|        |          |           | _____ |

       IN WITNESS WHEREOF, we have hereunto signed our names.

Dated:

                                                  _____
                                                  Name:
                                                  Title:

                                                  _____
                                                  Name:
                                                  Title:

**EXHIBIT F**

FORM OF TRANSFER

FOR VALUE RECEIVED, the undersigned hereby transfers to

_____

_____

(PRINT NAME AND ADDRESS OF TRANSFEREE)

[U.S.$] [€] _____ principal amount of this [Title of Security], and all rights with respect thereto, and irrevocably constitutes and appoints _____ as attorney to transfer this Security on the books kept for registration thereof, with full power of substitution.

Dated _____                    _____

                                       Certifying Signature:

Signed _____

Note:

    (i)     The signature on this transfer form must correspond to the name as it appears on the face of this Security.

    (ii)    A representative of the Holder should state the capacity in which he or she signs (e.g., executor).

    (iii)    The signature of the person effecting the transfer shall conform to any list of duly authorized specimen signatures supplied by the registered Holder or shall be certified by a recognized bank, notary public or in such other manner as the Trustee or a paying agent may require.

F-1