# EXHIBIT 3

**DECRETO LEY 9434/79**

**Texto actualizado del Decreto Ley 9.434/79 - ORGANICA DEL BANCO DE LA PROVINCIA DE BUENOS AIRES – que contiene el Texto Ordenado por Decreto N° 9.166/86 con las modificaciones posteriores introducidas por las Leyes 10534, 10766 , 12354 ,12695 , 12726,  13072,  13174, 13786, 13929, 14062, 14199, 14331, 14393, 14552, 14879,15225, 15310, 15394 y 15480**

**PARTE GENERAL**

**CAPITULO I**

**DISPOSICIONES GENERALES**

**ARTICULO 1°:** El Banco de la Provincia de Buenos Aires es institución autárquica de derecho público, en su carácter de Banco de Estado, con el origen; garantías y privilegios declarados en el preámbulo y en los artículos 31° y 104° de la Constitución Nacional, en la Ley Nacional de origen contractual número 1.029 y en las leyes de la Provincia.

**ARTICULO 2°:** El Banco tendrá su domicilio legal en la Capital de la Provincia de Buenos Aires. Podrá establecer casas, sucursales, agencias y corresponsalías en el país o en el extranjero, por resolución de su Directorio.

**ARTICULO 3°:** El Banco está integrado por la Sección Bancaria propiamente dicha, la Sección Crédito Hipotecario y la Sección Crédito de Inversión, cada una de las cuales funciona con su propio régimen financiero, capital, reservas, activo y pasivo, por separado, pero sometidas todas a la Dirección y contralor comunes del Directorio y de la Administración Central de la Institución.

**ARTICULO 4°:** El Banco, sus bienes, actos, contratos y operaciones y derechos que de ellos emanen a su favor, están exentos de todo gravamen, impuesto, carga o contribución de cualquier naturaleza. El Banco abonará exclusivamente el servicio de obras sanitarias, la tasa por alumbrado, limpieza y conservación de la vía pública y la contribución de mejoras. (*)

(*)Ver ley 11.802.

**ARTICULO 5°:** Los créditos del Banco no podrán ser inferiores en prelación a los de cualquier otro Banco autorizado por Leyes especiales.

**ARTICULO 6°:** (Texto según Decreto Ley 9.840/82) Se depositarán a título gratuito en el Banco las rentas fiscales, los depósitos judiciales y los de todas las administraciones, dependencias o reparticiones públicas de la Provincia, aún cuando hayan sido creadas por leyes especiales.

No obstante lo dispuesto en el párrafo anterior, el Banco recibirá depósitos judiciales a interés, en las condiciones que establezca el Directorio, cuando los jueces, a pedido de parte, dispongan el reconocimiento de intereses.

**ARTICULO 7°: (Texto según Ley 14393)** El Banco es la Tesorería obligada de las municipalidades de la Provincia, en todas las ciudades o localidades donde haya sucursal, de las empresas o compañías a las que se acordare exención de impuestos de carácter permanente o transitorio así como de los fondos de reserva o previsión de las sociedades anónimas siempre que estén obligadas a mantenerlos en efectivo.

Las Municipalidades deberán implementar el pago de haberes al personal mediante el Banco de la Provincia de Buenos Aires, a través de la apertura de cajas de ahorro común para cada uno de los agentes.

## CAPITULO II

## RELACIONES CON LAS AUTORIDADES DE LA PROVINCIA

**ARTICULO 8°:** En concordancia con lo dispuesto en el artículo 1° la Provincia acuerda al Banco completa autonomía, quedando el gobierno de éste a cargo exclusivo del Directorio.

**ARTICULO 9°:** El Banco será el agente financiero del Gobierno de la Provincia. Actuará en todas las operaciones de índole bancaria que éste realice y por cuenta del mismo le corresponde:

a)      Realizar en la Capital Federal y en todo el territorio de la Provincia en que tenga establecidas casas y filiales, la percepción de las rentas e impuestos fiscales con arreglo a lo dispuesto por convenio. El Gobierno de la Provincia abonará al Banco en concepto de comisión por la recaudación de las rentas e impuestos fiscales el costo del servicio.

b)      Hacer los servicios de la deuda pública de la Provincia ajustándose a las instrucciones que le imparta anualmente el Ministerio de Economía. Para cumplir esa misión, el Banco retendrá, de las sumas que perciba en concepto de impuestos, rentas fiscales o participaciones que correspondan a la Provincia en impuestos nacionales, los importes que según comunicaciones de dicho Ministerio insuma el pago de intereses, amortizaciones y otros gastos de los empréstitos que deban ser atendidos de acuerdo con las obligaciones y plazos establecidos en los contratos. Cuando el volumen de la recaudación no permita reunir las cantidades necesarias para la atención de los servicios, el Banco podrá adelantar los fondos indispensables reembolsándose de las sumas que ingresen posteriormente por los conceptos expresados en este inciso, de modo que los adelantos hechos para estos fines queden cancelados el último día hábil de cada año. Si cualquier adelanto de

esta naturaleza a quedase impago a esa fecha, no podrá volver a usarse esta facultad del Banco mientras la cantidad adeudada no haya sido cancelada. El manejo y disposición de los fondos o adelantos destinados al pago de los servicios de la deuda pública estarán a cargo exclusivo del Banco que comunicará en cada caso al Ministerio de Economía los movimientos que se produzcan en la cuenta fiscal respectiva por estas operaciones;

c)    Dentro del trescientos (300) por ciento del capital y reservas podrá otorgar avales o realizar operaciones que en substancia impliquen una garantía sin utilización de fondos, sea en el país o en el exterior para operaciones que realice la Provincia, con destino a la ejecución de trabajos previstos en el Plan Anual de Obras Públicas, y/o adquisición de equipos o elementos para las mismas, quedando facultado el Banco, en caso de tener que hacer frente a los compromisos derivados de su garantía, a tomar los fondos respectivos del producido de la percepción de impuestos y rentas fiscales.

**ARTICULO 10°:** Además de lo previsto en el artículo 9° inciso b), el Banco podrá conceder a la Provincia, en una o varias partidas, como anticipo de la recaudación fiscal, hasta la suma igual al VEINTE POR CIENTO (20 %) de los recursos previstos en el Presupuesto Vigente para la Administración Central, excluidos los del uso del crédito. El total de los anticipos no podrá exceder en ningún caso del VEINTE POR CIENTO (20 %) del saldo de la cartera de préstamos en australes, de la Sección Bancaria que registre el Banco en su último Balance mensual.(Párrafo incorporado por Ley 10.766).

(Texto según Ley 9.434/79) Los saldos resultantes deberán cancelarse dentro de los doce (12) meses siguientes al de la fecha de efectivización de la o de las partidas respectivas, no siendo necesario contar con nueva autorización del Directorio para la utilización de partidas parciales, incluso por las sumas que hubiesen sido amortizadas. No podrán acumularse anticipos de más de un ejercicio.

Estos anticipos no devengarán intereses, en tanto su total no supere el ochenta (80) por ciento de las cuentas fiscales de depósitos a la vista, excluidas las del Instituto de Previsión Social, Municipalidades y de la Tesorería General -Cuenta Central- considerado en base al promedio diario del último mes calendario. De superar dicha relación, por el exceso, la Provincia abonará al Banco intereses compensatorios que se convengan.

Utilizado total o parcialmente el margen determinado en el presente artículo, la Provincia no podrá obtener del Banco tipo alguno de financiación o adelanto sobre depósitos, salvo los expresamente determinados en su Carta Orgánica.

**ARTICULO 11°:** El Banco podrá conceder préstamos o adelantos al Gobierno de la Provincia con garantía y orden de venta de títulos de su Deuda Pública, por un importe de hasta el quince (15) por ciento del Presupuesto vigente de la Administración General para Erogaciones de Capital. El total de esta financiación no podrá exceder en caso alguno del siete (7) por ciento del saldo de la cartera de préstamo en pesos, de la Sección Bancaria, que registre el Banco en su último Balance Mensual.

El Directorio fundará la resolución afirmativa en su juicio de que la plaza de valores, permite la colocación de dichos títulos a los precios establecidos y en un plazo prudencial. Si circunstancias adversas sobrevinientes

hicieran aconsejable que el Banco mantuviera los títulos en cartera, no podrá el Directorio dar curso a otra operación de esta naturaleza hasta liquidada totalmente la anterior.

**ARTÍCULO 11 BIS: (Artículo Incorporado por Ley 14331)** El Banco podrá otorgar a la Provincia líneas de crédito para hacer frente a erogaciones de interés social para sus habitantes y/o a inversiones en infraestructura que permitan promover el bienestar de la población hasta la suma igual al VEINTE POR CIENTO (20 %) de los recursos previstos en el Presupuesto Vigente para la Administración General, excluidos los del uso del crédito.

El total de los créditos no podrá exceder en ningún caso del VEINTE POR CIENTO (20%) del saldo de la cartera de préstamos en pesos, de la Sección Bancaria que registre el Banco en su último Balance mensual, en la medida que para ello utilice:

a)    fondos originados en operaciones financieras de mercado a partir de títulos públicos cuyo deudor o garante sea el Estado Nacional,

b)    fondos obtenidos de otras entidades u organismos del estado nacional o provincial, agencias o entidades de desarrollo públicas o privadas del país o exterior,

c)    fondos captados especialmente para dicho fin, a través de oferta pública de títulos o directamente de inversores institucionales.

El Banco sólo podrá otorgar tales créditos, en la medida que la Provincia afecte en garantía de los mismos cualquier recurso de origen provincial sin afectación específica y/o los recursos provenientes del Régimen de Coparticipación Federal de Impuestos, de acuerdo a lo establecido por los artículos 1º, 2º y 3º del Acuerdo Nación - Provincias sobre Relación Financiera y Bases de un Régimen de Coparticipación Federal de Impuestos, ratificado por la Ley Nº 12.888, o aquél que en el futuro lo sustituya y autorice al Banco a retener, de las sumas que perciba por tales conceptos, los importes correspondientes que aseguren el reembolso automático de dicho financiamiento.

El plazo y monto de las líneas otorgadas según este artículo, en ningún caso, podrán superar los montos y plazos de los acuerdos que dieron origen a los fondos utilizados para esta financiación."

**ARTICULO 12°:** Las disposiciones de la Ley de Contabilidad serán observadas por el Banco en la ejecución de su presupuesto anual.

**ARTICULO 13°:** Las relaciones del Banco con el Poder Ejecutivo se mantendrán por intermedio del Ministerio de Economía.

**ARTICULO 14°:** La Provincia garantiza los depósitos recibidos, bonos y demás obligaciones emitidas por el Banco de la Provincia de Buenos Aires.

## CAPITULO III

## CAPITAL Y UTILIDADES

**ARTICULO 15°:** El capital del Banco será determinado anualmente por el Directorio, para cada una de las tres (3) Secciones, en las sumas que aquél les fije por aplicación del artículo 17°.

**ARTICULO 16°:** El ejercicio financiero del Banco se cerrará el 31 de diciembre de cada año, debiendo publicarse el Balance General y la Cuenta de Ganancias y Pérdidas en el Boletín Oficial de la Provincia y en, por lo menos, dos (2) diarios que se editen en jurisdicción provincial y dos (2) en la Capital Federal.

**ARTICULO 17°:** Cada una de las Secciones que constituyen el Banco, liquidará separadamente sus utilidades al cierre del ejercicio y las transferirá al fondo común de beneficios.

Previa deducción de las sumas necesarias para saneamiento del activo y del diez (10) por ciento de los respectivos beneficios netos para reserva legal de cada Sección, las utilidades realizadas se destinarán:

-A Capital de la Sección Crédito de Inversión, el remanente neto de utilidades producida por la misma.

-Para aumento de capital y reservas de cualquiera de las Secciones y para fondos de previsión, previsión social e inversiones, en las proporciones que determine el Directorio.

## CAPITULO IV

## GOBIERNO DEL BANCO

**ARTICULO 18°: (Texto según Ley 13174)** El Banco será gobernado por un Directorio compuesto por un (1) Presidente y ocho (8) vocales argentinos designados por el Poder Ejecutivo con acuerdo del Senado.

Los miembros durarán cuatro (4) años en sus funciones pudiendo ser reelectos. El Presidente y los vocales, deberán contar con antecedentes de reconocida idoneidad. Los vocales se renovarán por mitades cada dos (2) años.

**ARTICULO 19°:** No podrán ser Presidente o Directores:

a)    Los legisladores, los magistrados, los intendentes municipales y miembros de los concejos deliberantes;

b)       Los funcionarios o empleados a sueldo, sean de los gobiernos de la Nación, de las provincias o municipalidades;

c)    Los administradores, presidentes, directores, gerentes o empleados de otros Bancos.

Las personas que desempeñando el cargo de presidente o director llegaren a encontrarse comprendidas en algunas de las disposiciones enumeradas en este artículo cesarán inmediatamente en sus funciones. Quedan exceptuados de las inhabilitaciones precedentes los que desempeñen cargos en organismos oficiales de coordinación económica o financiera de orden nacional, provincial o interprovincial y los que desempeñen cargos docentes.

**ARTICULO 20°:** En la primera sesión que realice cada año el Directorio nombrará de su seno al Vicepresidente y al Secretario. Por ausencia o impedimento del Presidente lo reemplazará el Vicepresidente. En ausencia de ambos el Directorio será presidido por el Director de más edad. En caso de ausencia o impedimento del Secretario lo reemplazará el miembro que designe el Directorio.

**ARTICULO 21°:** Si el cargo de Presidente o Director quedara vacante será provisto nombrándose reemplazante para completar el período.

**ARTICULO 22°: (Texto según Ley 13174)** El Directorio se reunirá por lo menos dos (2) veces por semana con "quórum " de cinco (5) miembros incluido el Presidente. Las decisiones se tomarán por mayoría de votos y el Presidente, en caso de empate, tendrá doble voto.

**ARTICULO 23°:** El Directorio no puede delegar ninguna de sus facultades en el Presidente. Los Directores que autoricen operaciones prohibidas en la Ley Orgánica serán responsables personal y solidariamente.

**ARTICULO 24°:** Son facultades y obligaciones del Directorio:

a) Hacer cumplir la Ley Orgánica y demás leyes relacionadas con el funcionamiento del Banco;

b) Acordar, establecer, autorizar y reglamentar todas las operaciones, servicios y gastos del establecimiento;

c) Reglamentar los créditos que puedan acordarse;

d) Establecer los márgenes dentro de los cuales la Gerencia General, Gerencias Departamentales y Gerencias de Sucursales podrán acordar los créditos;

e) (Texto Ley 12.354) Convocar a sesión extraordinaria al Directorio cuando lo crea conveniente o lo soliciten por lo menos cinco (5) Directores.

f)  Designar el Gerente General, Subgerente General y Gerentes Departamentales a propuesta del Presidente;

g) Aprobar anualmente el Balance General, la Cuenta de Ganancias y Pérdidas, el plan de destino de las utilidades del Ejercicio y la Memoria, todo lo cual será informado al Poder Ejecutivo;

h) Crear las reservas y fondos de previsión que juzgue convenientes para la consolidación de la situación financiera del Banco;

i) Dictar los reglamentos internos;

j) Establecer filiales o representaciones en la República y en el extranjero;

k) Designar corresponsales en el interior y en el extranjero, reglamentando sus relaciones con el Banco;

l) Autorizar el otorgamiento de poderes generales y especiales fijando las facultades y atribuciones conferidas;

m) Proyectar el presupuesto anual de gastos, que será elevado a sus efectos, al Poder Ejecutivo;

n) Remover al personal, previo sumario, y reglamentar las medidas disciplinarias respecto al mismo;

o) Reunirse en sesiones ordinarias y extraordinarias en cualquiera de las casas del Banco y todas las veces que estime necesarias;

p) Ejercer las acciones judiciales con todas las facultades de ley sin limitación;

q) Acordar quitas, conceder esperas o concertar arreglos con los deudores de cualquiera de las secciones y aceptar o adquirir inmuebles u otros bienes o valores en pago o defensa de los créditos del Banco;

r) Adquirir los inmuebles indispensables para el funcionamiento de las casas, filiales o dependencias del Banco y enajenarlos cuando así convenga. Vender los bienes raíces, muebles u otros valores que el establecimiento haya recibido en pago o se le hayan adjudicado en defensa de sus créditos o que por otro título lo adquiriere.

s) **(Texto según Ley 15480)** el Directorio no podrá otorgar préstamos a personas jurídicas del Sector Privado superiores a pesos DOS MIL MILLONES ($2.000.000.000), en los cuales el monto a desembolsar supere el CINCUENTA POR CIENTO (50%) de sus deudas bancarias con el Sistema Financiero, excepto que se trate de proyectos de inversión que cuenten con calificación de al menos DOS (2) compañías calificadoras de Riesgo de primera línea, que confirmen la capacidad de repago. Tampoco podrá otorgar préstamos a personas jurídicas del Sector Privado, cuyo monto supere el OCHO POR CIENTO (8%) del Patrimonio Neto del Banco, ni otorgar préstamos a personas humanas, superiores a pesos CUATROCIENTOS MILLONES ($400.000.000).

Los límites del párrafo anterior podrán incrementarse hasta DOSCIENTOS POR CIENTO (200%), siempre que el complemento sea garantizado con garantías preferidas clases "A" o "B", según la reglamentación del Banco Central de la República Argentina. Podrán computarse a estos efectos las garantías ya constituidas para tramos de créditos que originalmente no superen los límites aquí establecidos. El incremento de límite admitido para los préstamos respaldados con garantías preferidas clases "A" o "B", será de aplicación a los préstamos a empresas constructoras destinados a la financiación de obra pública de la Provincia de Buenos Aires y a proveedores del mismo Estado, cuando estén garantizados por cesión o caución de derechos respecto de títulos o documentos de cualquier naturaleza que, fehacientemente instrumentadas, aseguren que el Banco podrá disponer de los fondos en concepto de cancelación de la obligación contraída por el cliente, sin necesidad de requerir previamente el pago al deudor.

Cuando la operación de crédito esté destinada a financiar operaciones en exportaciones, los préstamos a otorgar a personas jurídicas del Sector Privado no podrán superar, por todo concepto, el monto de SESENTA MILLONES DE DÓLARES ESTADOUNIDENSES (U$S 60.000.000), y para las personas humanas SETECIENTOS CINCUENTA MIL DÓLARES ESTADOUNIDENSES (U$S 750.000).

Quedan excluidas de los límites establecidos en los párrafos precedentes las financiaciones que se realicen con empresas vinculadas o pertenecientes al Grupo Provincia y a Provincia Servicios Financieros.

Los montos consignados en este inciso podrán ser modificados anualmente por la Ley de Presupuesto, en caso de necesidad de adaptar los mismos a una nueva realidad macroeconómica nacional.

Los miembros del Directorio serán solidariamente responsables por el incumplimiento de lo dispuesto en el presente artículo y patrimonialmente por los daños que sufriere el Banco como consecuencia de tal incumplimiento, sin perjuicio del resto de las responsabilidades civiles y penales que pudieran corresponderles.

t)      **(Incorporado por Ley 12.726)** Informar trimestralmente y dentro del mes siguiente al de finalizado cada período, a las Comisiones de Presupuesto e Impuestos de la Cámara de Diputados y de la Cámara de Senadores, sobre la evolución y situación de los deudores clasificados en situación irregular y en forma analítica para aquéllos que además fueran superiores a un millón (1.000.000) de pesos, junto con la presentación de los estados contables trimestrales.

u)      **(incorporado por Ley 12.726**) Supervisar el estricto cumplimiento por parte de las diferentes jerarquías del Banco de las disposiciones de la Carta Orgánica y de las políticas, normas, manuales e instructivos que sobre la aprobación y recuperación de créditos apruebe el cuerpo, así como del adecuado diseño y eficaz aplicación de los sistemas de control interno sobre el particular.

**ARTICULO 25°:** Cada Director podrá examinar los libros del Banco y pedir que se le suministren todos los datos o esclarecimiento sobre cualquier operación realizada o a realizarse, debiendo en todos los casos manifestar su deseo en las reuniones del Directorio.

**ARTICULO 26°:** El Directorio percibirá como remuneración las sumas que se fijen en el Presupuesto.

## CAPITULO V

### PRESIDENTE

**ARTICULO 27°:** El Presidente del Banco asistirá diariamente al establecimiento y sus facultades y obligaciones son:

a)      Cumplir y hacer cumplir la Ley Orgánica y Reglamento del Banco y ejecutar las resoluciones del Directorio;

b)      Presidir las sesiones del Directorio; llevar a su conocimiento todas las disposiciones o asuntos que interesen al Banco; firmar conjuntamente con el Secretario las actas respectivas;

c)      Nombrar, promover y trasladar los funcionarios y empleados del Banco, dando cuenta al Directorio, con excepción del Gerente General, del Subgerente General y Gerentes Departamentales que serán designados de acuerdo con lo establecido en el artículo 24°, inciso f);

d)    Representar al Banco y firmar las comunicaciones oficiales y correspondencia del Directorio; suscribir con el Gerente General y el Contador General los balances; firmar los poderes que hubieren de otorgarse a empleados de la institución o a terceros, según acuerdo del Directorio;

e)    **(Texto según Ley 13174)** Convocar a sesión extraordinaria al Directorio cuando lo crea conveniente o lo soliciten por lo menos cuatro (4) Directores;

f)    Observar los acuerdos de créditos hechos por el Directorio cuando los considere inconvenientes. En tales casos, para que prevalezca la resolución del Directorio, éste deberá insistir por el voto de los dos tercios (2/3) de los Directores presentes citados especialmente a ese objeto;

g)    Absolver por escrito posiciones en juicio, no estando obligado a comparecer personalmente;

h)    Designar los vocales que compondrán las comisiones;

i)    Resolver los asuntos internos de urgencia, dando cuenta al Directorio en su primera sesión;

j)    No otorgar préstamos o renovaciones ni contraer compromisos que obliguen al Banco sin la previa autorización del Directorio.

## CAPITULO VI

## GERENCIA GENERAL

**ARTICULO 28°:** La administración del Banco será ejercida por intermedio del Gerente General y en lo que se le asigne, por el Subgerente General, que deberán ser argentinos.

**ARTICULO 29°:** Las funciones del Gerente General y del Subgerente General serán reglamentadas por el Directorio, siendo los asesores directos del Presidente y Directores.

**ARTICULO 30°:** En dicho carácter de asesores, el Gerente General y en su ausencia el Subgerente General, asistirán a las reuniones del Directorio, cuando éste lo requiera, con voz pero sin voto, pudiendo solicitar se deje constancia en actas de su opinión cuando así lo estimen conveniente en algún asunto.

**PRIMERA PARTE**

**SECCION BANCARIA**

**CAPITULO VII**

**OPERACIONES**

**ARTICULO 31°:** El Banco en su Sección Bancaria, podrá realizar toda las operaciones que el Directorio juzgue convenientes y que no estando prohibidas por ésta u otras leyes pertenezcan por su naturaleza al giro común de los establecimientos bancarios.

Promoverá la economía nacional, preferentemente de las industrias fundamentales de la Provincia y la estabilidad monetaria en cuando pueda gravitar su acción.

Pero no podrá:

a)    Adquirir bienes raíces, salvo aquéllos indispensables para uso propio del Banco, o los que se viere obligado a adquirir en defensa de sus créditos o a recibir en pago o garantía de lo que se le adeude, con cargo de enajenar estos últimos a la mayor brevedad;

b)    Participar, directa o indirectamente en empresas comerciales, agrícolas, ganaderas, industriales o de cualquier otro tipo, salvo que se tratare de entidades financieras, cualquiera sea su clase; nacionales o internacionales, o cuando se viera obligado a intervenir en defensa de sus créditos;

c)    Adquirir para sí fondos públicos o municipales, hacer préstamos a gobiernos o administraciones públicas, salvo lo dispuesto en los artículos 9°, 10°, 11° y 32°, de esta Ley Orgánica.

**ARTICULO 32°:** La prohibición que establece el artículo 31° inciso c) y limitaciones del artículo 11°, no incluyen las siguientes operaciones:

a)    Préstamos a reparticiones públicas, comerciales o industriales, de la Nación o de la Provincia y entidades de derecho público no estatales, que tengan patrimonio propio y una dirección o administración autárquica y a sociedades comerciales con participación de los Estados Nacional o Provincial, cuyas explotaciones en todos los

casos hayan devengado beneficio en los dos últimos ejercicios, de acuerdo a los siguientes márgenes independientes:

1.    Reparticiones Provinciales: hasta el veinticinco (25) por ciento del Capital y Reservas del Banco;

2.    Reparticiones Nacionales: hasta el veinte (20) por ciento del Capital y Reservas del Banco;

3.    Sociedades comerciales con participación de los Estados Nacional o Provincial y entidades de derecho público no estatales, hasta el veinte (20) por ciento del Capital y Reservas del Banco.

b)    Avales que se concedan a entidades nacionales del carácter indicado en el inciso precedente. Estas operaciones se regirán por las normas generales de la actividad comercial del Banco;

c)    Préstamos, avales y fianzas que se acordaren a las Municipalidades de la Provincia de Buenos Aires, con destino a la ejecución de trabajos de infraestructura urbana, edificios públicos, compra y refacción de maquinarias e implementos para prestar servicios públicos y obras de interés general y social.

El total de estos préstamos, no podrá exceder en conjunto, del doscientos (200) por ciento del saldo promedio de las cuentas de éstas en el Banco, en los últimos doce meses anteriores a contar desde la fecha de concesión del préstamo. El plazo máximo de estas operaciones, será excepcionalmente hasta diez (10) años, con amortizaciones proporcionales que deben comenzar no más tarde del segundo año;

d)    Comprar, caucionar, descontar y vender letras de tesorería y otros títulos públicos, que permitan la colocación transitoria de fondos disponibles o posibiliten una mayor seguridad en sus operaciones.

**ARTICULO 33°:** (Texto según Ley 12.695) El Banco podrá otorgar tipos especiales de préstamos destinados al incremento de la agricultura, forestación, ganadería, industria, pesca, infraestructura en turismo, construcción de silos y elevadores y otras actividades de interés para el desarrollo de la economía provincial, aplicando tasas y plazos preferenciales en las condiciones que determine el Directorio.

 En las mismas condiciones y con carácter de reparación o asistencia podrá hacerlo frente a casos de emergencia o desastre declarados formalmente en la Provincia.

**ARTICULO 34°:** De acuerdo con lo establecido en el artículo 1° de esta Ley Orgánica y artículo 69° de la Ley Nacional número 1.804, el Banco, al efectuar operaciones de garantías hipotecarias, podrá disponer su preanotación por oficio a los Registros Inmobiliarios, antes de efectuar el préstamo y comprobado el dominio y la libertad de disposición de la finca ofrecida;

a)    La preanotación de la hipoteca originará una carga real sobre el inmueble, con privilegio especial sobre éste por el importe del anticipo, sus intereses y gastos, el que durará cuarenta y cinco (45) días corridos desde la inscripción y será prorrogable a pedido del Banco, por el mismo lapso y en la misma forma cuantas veces sea necesario;

b)    La preanotación caducará en cualquiera de los siguientes pasos:

- Por el mero vencimiento del término fijado en el inciso anterior;

- Por el pago del crédito y de sus intereses y gastos, que comunicará al Banco por oficio directo;

- Por la inscripción de la escritura pública de la hipoteca que garantice el crédito total;

c)    Si por incumplimiento del contrato, por fallecimiento o por cualquier otra causa no se formalizará la escritura pública de la hipoteca, el Directorio podrá disponer la inmediata ejecución del inmueble como si se tratara de una deuda de plazo vencido, garantizada con derecho real de hipoteca en el grado que se haya preanotado y conforme a sus procedimientos especiales de ejecución, si los hubiere, con la base del crédito más los intereses, impuestos, tasas y gastos;

d)    Las inscripciones en los Registros de la Propiedad de estas preanotaciones, pagarán los derechos correspondientes a la hipoteca sobre la base del crédito acordado, debiendo deducirse posteriormente, al realizarse la hipoteca, del monto del impuesto correspondiente a ésta, el importe ya pagado.

**ARTICULO 35°:** En caso de urgencia las escrituras de constitución de hipotecas a favor del Banco sobre inmuebles situados en la Provincia, podrán otorgarse sin certificados que acrediten el pago de los impuestos y de tasas de servicios o de mejoras, provinciales o municipales, sin perjuicio de los derechos del fisco y de la municipalidad respectiva, para hacer efectivos los importes que por esos conceptos se les adeudare a la fecha de la escrituración.

**ARTICULO 36°:** La Provincia se constituye en garante subsidiario ante el Banco de los saldos no cancelados por los empleados de la Administración Provincial correspondientes a los anticipos de sueldos que las Institución les otorgue. Igualmente responderá de los quebrantos que el Banco tuviese en la ejecución de los créditos hipotecarios provenientes de la cartera transferida por la ex Caja Popular de Ahorros y los que efectuase en virtud de las disposiciones de la Ley número 4.858.

**ARTICULO 37°:** En los préstamos especiales para empleados públicos u otros afiliados a Cajas de Previsión Social, los tesoreros o habilitados de sus oficinas respectivas, los empleadores o las Cajas de Jubilaciones, según corresponda, descontarán mensualmente o en ocasión de todo pago de remuneraciones, de los haberes del empleado, a simple requerimiento del Banco, las cantidades necesarias para el pago de los servicios del préstamo

seguros, gastos, impuestos, tasas y atrasos y las transferirán al Banco hasta la cancelación de la deuda. En caso de incumplimiento se procederá a la ejecución del préstamo.


## SEGUNDA PARTE


## SECCION CREDITO HIPOTECARIO


## CAPITULO VIII


## ORGANIZACION


**ARTICULO 38°:** El capital de la Sección Crédito Hipotecario está constituido según las prescripciones del artículo 15° de esta Ley Orgánica.


**ARTICULO 39°:** El activo de la Sección Crédito Hipotecario está formado por el monto de los préstamos hipotecarios concedidos sea en dinero efectivo o en bonos, con más sus accesorios.


**ARTICULO 40°:** El pasivo de la Sección Crédito Hipotecario está constituido:


a)     Por los bonos hipotecarios y obligaciones en circulación;


b)     Por las sumas recibidas para invertir en préstamos hipotecarios, suministradas por el Banco Central de la República Argentina, por el Instituto de Previsión Social de la Provincia y otras reparticiones o por terceros.


**ARTICULO 41°:** El capital, la reserva y al activo de la Sección Crédito Hipotecario garantizan y están afectados al pago de su pasivo.


## CAPITULO IX


## OPERACIONES

**ARTICULO 42°:** La Sección Crédito Hipotecario puede realizar, en general, préstamos hipotecarios garantizados con primera hipoteca en dinero efectivo y en bonos hipotecarios, a corto o largo plazo, con o sin amortización acumulativa. En particular puede realizar las siguientes operaciones.

a)    Acordar créditos para la adquisición y para promover la subdivisión de la tierra, cuidando de preservar la medida que constituya una unidad económica;

b)    Acordar créditos para forestación y electrificación, promoción y descentralización industrial, especialmente lechera, pesquera, siderúrgica y de celulosa, construcción y ampliación de edificios, destinados a instalación de fábricas, hoteles, hosterías, silos, mercados y cámaras frigoríficas en el territorio provincial;

c)    Acordar créditos para la construcción de edificios destinados a viviendas;

d)    Programar y construir unidades de vivienda y/o barrios para arrendar o enajenar, a fin de eliminar gradualmente, en las áreas urbanas, las viviendas insalubres, ejecutando dentro de sus planes las obras de urbanización y saneamiento que sean necesarias, creando organismos que estimulen el progreso vecinal, pudiendo a tales fines comprar y vender toda clase de bienes inmuebles y muebles;

e)    Acordar créditos para la construcción, por parte de cooperativas agrarias, de elevadores de granos y edificios para almacenes;

f)    Emitir bonos hipotecarios que devenguen interés y amortizables a corto o largo plazo;

g)    Emitir bonos hipotecarios que den derecho a premios adjudicados por sorteo. Estos bonos podrán ser rescatables transcurrido el plazo establecido o bien podrán ser emitidos amortizables en las condiciones previstas en el inciso anterior;

h)    Efectuar acuerdos financieros para facilitar en el extranjero la colocación y atención de los servicios de los bonos hipotecarios u otras obligaciones;

i)    Emitir otras obligaciones y obtener créditos dentro o fuera del país en moneda nacional o extranjera para invertir su importe en préstamos en efectivo, garantizados con primera hipoteca o bajo las condiciones y garantías especiales que determine el Directorio;

j)    Organizar cajas de ahorro, sobre la base de invertir los fondos depositados en préstamos hipotecarios;

k)    Encargarse, por cuenta de terceros, de la colocación de dinero en hipoteca en calidad de mandatario;

l)    Recibir depósitos destinados a crear un fondo para Préstamos y Ahorro, que tributará los intereses a fijar por el Directorio;

m)    Acordar créditos para adquirir, construir y ampliar unidades de vivienda individuales o colectivas y/o barrios, por el sistema de ahorro y préstamo, con facultad de reajuste de los saldos deudores de los préstamos, proporcionalmente a la desvalorización monetaria y al acrecentamiento de las retribuciones, sueldos y jornales de los "Prestatarios", con los planes que establezca el Directorio;

n)    Efectuar inversiones de carácter transitorio en colocaciones fácilmente liquidables.

  Las operaciones a que se hace referencia en los incisos a), b), c), d) y e), se realizarán siempre en primera hipoteca, en dinero efectivo o en bonos hipotecarios, bajo las condiciones que determine el Directorio.

**ARTICULO 43°:** El Banco pagará con puntualidad el servicio de las obligaciones y bonos hipotecarios que emita, y efectuará igualmente las amortizaciones correspondientes.

**ARTICULO 44°:** Las hipotecas constituidas a nombre del Banco serán sobre inmuebles libre de todo gravamen. Los títulos de dominio serán perfectos, no debiendo adolecer de vicio o defecto legal.

## CAPITULO X

## BONOS HIPOTECARIOS

**ARTICULO 45°:** El Directorio del Banco fijará los tipos de interés y amortización ordinaria de los bonos hipotecarios, la división y fechas de sus servicios y las bases de su emisión, pudiendo efectuar amortizaciones extraordinarias cuando lo considere conveniente.

**ARTICULO 46°:** Los bonos hipotecarios se emitirán formando series. Pertenecen a una misma serie los que devengan un mismo interés, tienen el mismo fondo de amortización y un término igual para el pago del interés y amortización.

**ARTICULO 47°:** El Banco emitirá los bonos hipotecarios en los valores que crea conveniente y por los totales que para cada serie resuelva el Directorio.

**ARTICULO 48°:** Los bonos hipotecarios expresarán en su texto la tasa de interés que será abonada por el Banco y el tanto por ciento de la amortización.

**ARTICULO 49°:** Los tenedores de bonos hipotecarios sólo tienen acción contra el Banco. Este deberá abonar en las épocas respectivas los intereses y el capital de los bonos amortizables sorteados y los premios que se hubiesen adjudicado a los bonos emitidos en ese plan, no admitiendo para su pago oposición de terceros, salvo el caso de que medie orden de autoridad competente.

**ARTICULO 50°:** El pago de la renta de los bonos hipotecarios se hará en todas las casas y sucursales del Banco y será satisfecho en dinero efectivo al expirar el respectivo periodo. El Banco fijará las fechas de los pagos, que serán comunes para los tenedores de una misma serie.

**ARTICULO 51°:** Los bonos hipotecarios en vigor no podrán superar el importe de los préstamos de esa clase.

**ARTICULO 52°:** Los bonos hipotecarios llevarán en facsímil la firma del Presidente del Banco y del Director Secretario y serán suscriptos por el Gerente o subgerente de la Sección y por él o los escribanos del Banco que el Directorio expresamente autorice.

**ARTICULO 53°:** Las cantidades percibidas en concepto de cuotas de amortización y los intereses devengados por los bonos rescatados constituyen el fondo amortizante de cada serie, en el cual se incluirán, además, los importes que se reciban en efectivo por anticipo o cancelación de préstamo. Con las sumas disponibles de cada fondo amortizante, se rescatarán por sorteo y a la par los bonos correspondientes. Los sorteos se realizarán con anticipación de un trimestre al día designado para su pago.

**ARTICULO 54°:** Los bonos sorteados no devengarán interés a favor de los tenedores desde el día señalado para su pago.

**ARTICULO 55°:** A efecto contable, los bonos sorteados continuarán devengando interés para el Banco, mientras no se apliquen a la cancelación de las hipotecas redimidas por el transcurso natural del tiempo o por pago anticipado.

**ARTICULO 56°:** Sin perjuicio de los rescates que prescribe el artículo 53°, el Banco tiene derecho a efectuar rescates extraordinarios también a la par, empleando el sorteo en la cantidad que acuerde el Directorio.

## CAPITULO XI

## PRESTAMOS

**ARTICULO 57°:** No podrán acordarse préstamos hipotecarios sobre los siguientes inmuebles:

a)    Minas y canteras;

b)    Porciones indivisas, salvo el caso que la hipoteca sea constituida sobre la totalidad del inmueble;

c)    Inmuebles que no produzcan renta cierta y permanente o no sean aptos para producirla.

**ARTICULO 58°:** La hipoteca y su inscripción en el Registro de Hipotecas conservan su eficacia legal durante el tiempo de vigencia del contrato de acuerdo al artículo 69° de la ley nacional número 1.804. No obstante, el Banco tiene facultad de pedir directamente y cuantas veces lo estime necesario, la renovación de la inscripción, la que se efectuará por el Registro de Hipotecas a la sola presentación por el Banco de un testimonio de la escritura originaria del préstamo.

**ARTICULO 59°:** Los contratos de préstamos hipotecarios serán libres de impuestos en la medida que lo establezcan las leyes vigentes. En tal caso se expedirán los testimonios de las escrituras en papel sellado de actuación.

**ARTICULO 60°:** El deudor no podrá transferir el inmueble hipotecado mientras el Banco no haya aceptado el nuevo deudor, sin cuyo requisito no se libera de las obligaciones contraídas en el contrato de préstamo. El respectivo testimonio de traspaso de dominio debe depositarse en el Banco dentro de los treinta (30) días siguientes a la fecha de la aceptación y hasta su entrega, el deudor primitivo no queda desligado de su obligación.

**ARTICULO 61°:** El Banco podrá asegurar contra incendio en la Caja de Jubilaciones, Subsidios y Pensiones del Personal del Banco de la Provincia de Buenos Aires y por cuenta del deudor las construcciones que existan o que se levanten en el bien hipotecado. En los préstamos de fomento de edificación o adquisición de vivienda podrá exigir, además que el deudor contrate un seguro de vida habitación en la citada institución. En caso de que la Caja de Jubilaciones, Subsidios y Pensiones del Personal del Banco de la Provincia de Buenos Aires no tomare el seguro, el Banco podrá designar la compañía aseguradora, cuya póliza aceptará.

**ARTICULO 62°:** El deudor hipotecario no podrá realizar los siguientes actos o contratos:

a)    Arrendar, locar o conceder el uso o explotación de los inmuebles hipotecados sin consentimiento expreso y por escrito del Banco;

b)      Constituir sobre los inmuebles hipotecados a favor del Banco ulteriores hipotecas o derecho real de anticresis;

La infracción de estas disposiciones da derecho al Banco para:

- Exigir la inmediata cancelación del préstamo;

- Aplicar sobre la deuda un interés penal desde el momento de la infracción;

- Proceder a la venta de los bienes en la forma y condiciones establecidas en el artículo 65°.

**ARTICULO 63°:** En los préstamos hipotecarios, el deudor que demore el pago del servicio abonará sobre el importe de éste y por todo el tiempo de la mora, el interés punitorio que se establezca en el contrato, el que será fijado por el Directorio.

**ARTICULO 64°:** El Banco podrá proceder por sí, sin forma alguna de juicio, al embargo de la renta de la propiedad hipotecada para aplicarla al pago de los servicios y conservación de la propiedad, si el deudor dejase pasar noventa (90) días desde la fecha en que debió pagar el servicio respectivo. Esta facultad no impedirá que el Banco, si lo estima conveniente, proceda a la venta de la propiedad hipotecada de conformidad con el artículo 65°. Si la propiedad no produjera arrendamiento el Banco lo fijará, procediendo enseguida en la forma anteriormente indicada.

**ARTICULO 65°:** En todos los casos en que el Banco tenga derecho a ordenar la venta en remate del inmueble hipotecado procederá a ello por sí, sin forma alguna de juicio, al mayor postor y con base de la deuda por todo concepto y otorgará, llegado el caso, la correspondiente escritura a favor del comprador, colocándolo, si así lo estimare, en posesión del inmueble libre de ocupantes, ya sean éstos el propietario o terceros a nombre del mismo, cualesquiera sean sus títulos, quedando subrogado el comprador en todos los derechos que correspondan al deudor sobre dichos inmuebles. En el contrato de préstamo el deudor conferirá mandato irrevocable al Banco para otorgar y firmar la escritura traslativa de dominio, el que podrá ejercitar aún en el caso de concurso, quiebra o fallecimiento del deudor. El mismo mandato comprenderá la facultad de dar posesión al comprador y representar al deudor en cualquier juicio que pueda promoverse contra él y que afecte la propiedad hipotecada, así como para iniciarlos contra terceros detentadores de la misma.

**ARTICULO 66°:** Cuando los bienes hipotecados estuviesen en situación de venta, en virtud de las disposiciones de esta Ley Orgánica, el Banco podrá:

a)      Proceder a su venta en conjunto o divididos en lotes, según lo considere más ventajoso, pudiendo ceder al Estado o a las municipalidades, al precio que se convenga, o gratuitamente, las extensiones necesarias para abrir calles o caminos;

b)     Representar al deudor en todo juicio que se promueva contra la propiedad hipotecada o iniciarlos contra terceros detentadores y convenir transacciones, firmando los documentos correspondientes;

c)     Tomar posesión de los bienes hipotecados en la forma y condiciones determinadas en el artículo 71°;

d)     Una vez aprobado el remate de los bienes hipotecados o cuando le hayan sido adjudicados, desalojar por sí solo y sin intervención de los jueces, requiriendo directamente el auxilio de la fuerza pública, a los locatarios u ocupantes de los inmuebles, salvo el caso que tuvieren aquél carácter a consecuencia de contratos de locación celebrados con autorización expresa y por escrito del Banco;

e)     Efectuar por cuenta del deudor, en la propiedad hipotecada, las reparaciones que estime necesarias y tomar las medidas conducentes a la conservación del inmueble.

**ARTICULO 67°:** Los remates serán anunciados, cuando menos, durante tres (3) días consecutivos en dos (2) diarios que designará el Directorio.

 Los anuncios se harán con una anticipación mínima de ocho (8) días a la fecha de realización del remate, a contar desde la última publicación.

**ARTICULO 68°:** Los remates ordenados por el Banco serán realizados por un martillero público de la matrícula o por empleado del Banco que el Directorio designará donde no hubiere martillero. En el primer caso el martillero solamente podrá cobrar la comisión que establezca el Directorio. En el segundo caso el empleado no percibirá comisión y el Banco cobrará únicamente los gastos que hubiere. Cuando no se efectuare el remate no se cobrará comisión alguna pero se reembolsarán los gastos realizados.

**ARTICULO 69°:** El Directorio, en todos los casos en que el Banco tenga derecho a vender él o los inmuebles hipotecados, está facultado, a su exclusiva elección, para disponer el remate:

En la casa Matriz, sita en la Capital de la Provincia;

En la Casa Central, establecida en la ciudad de Buenos Aires;

En la sucursal donde se solicitó el préstamo o en la que se escrituró el mismo.

En la localidad donde esté situado el inmueble.

**ARTICULO 70°:** Toda venta está sujeta a la aprobación del Directorio.

El comprador deberá abonar el precio dentro de los diez (10) días de la aprobación. Si no lo abonare, el Banco podrá dejar sin efecto la venta con pérdida de la seña entregada, o bien, podrá permitirse que el comprador continúe con la deuda hipotecaria en las condiciones que se establezcan en la reglamentación en vigor y que se fijen en el aviso de remate.

**ARTICULO 71°:** El Banco podrá por sí solo requerir el auxilio de la fuerza pública para tomar posesión del inmueble hipotecado; para colocar banderas y carteles de remate; para hacer que los interesados y rematadores lo examinen y para dar, en caso de venta, la posesión a los compradores, no obstante la oposición de los propietarios u ocupantes, cualquiera sean sus títulos.

**ARTICULO 72°:** Si la venta no se realizare en el primer remate, el Directorio ordenará, dentro de los ciento ochenta (180) días siguientes, nuevo remate con una base no menor del importe del capital adeudado. Cuando el segundo remate no tuviere éxito, queda facultado el Directorio para fijar las bases de los subsiguientes y las fechas en que se realizarán, sin perjuicio de que cuando así lo estime conveniente, resuelva prescindir de ulteriores remates y pedir la adjudicación del inmueble hipotecado. Los jueces deberán decretarla inmediatamente y sin más recaudos que la constancia de haber fracasado los remates ordenados, otorgando la respectiva escritura a favor del Banco por el importe que hubiese servido de bases para el último remate, quedando de este modo, aquél, en condiciones de liquidar la cuenta para el cobro del saldo personal.

**ARTICULO 73°:** Si en los dos (2) primeros remates no fuere posible vender el inmueble hipotecado por falta de postores y mientras el deudor esté en mora, el Banco podrá tomar posesión del inmueble a efectos de percibir su renta o producido, o alquilarlo como lo juzgare más conveniente hasta sacarlo nuevamente a remate cuando lo creyere oportuno. Las sumas así obtenidas serán aplicadas al pago de los impuestos, al de los servicios y a los gastos de conservación que el Banco considere conveniente realizar. Los jueces harán efectiva la posesión que pida el Banco a la sola presentación de su solicitud.

**ARTICULO 74°:** El Banco podrá ordenar el remate de los inmuebles hipotecados aunque se encuentren embargados en virtud de orden judicial por ejecución de otros créditos y aún cuando el deudor esté concursado o haya sido declarado en quiebra, sea cual fuere la jurisdicción en que se hayan tomado esas providencias. En estos casos, una vez hecha la liquidación de la deuda y cubierto que sea el crédito a su favor y todos los gastos e intereses producidos, el Banco pondrá a disposición de la autoridad judicial respectiva, el sobrante que resultare. En los casos de ejecución, concurso o quiebra del deudor, deberá el Banco, aunque la deuda esté servida con regularidad, hacer uso de su derecho inmediatamente de quedar ejecutoriado el auto que ordene la venta judicial, a cuyo efecto dicho auto le será notificado. Si el banco no ordenare el remate dentro de los sesenta (60) días hábiles, contados desde la notificación judicial, el juez podrá disponerlo en la forma ordinaria a pedido de la parte interesada en el juicio.

**ARTICULO 75°:** Los jueces bajo ningún motivo podrán suspender o trabar el procedimiento del Banco para la venta en remate de los inmuebles hipotecados, a menos que se tratare de tercerías de dominio, ni acordar término al deudor; ni detener por oposición de un tercero la percepción del crédito del Banco.

**ARTICULO 76°:** Los Registros de Hipotecas, embargos e inhibiciones levantarán sin más trámite, a pedido del Banco y bajo su responsabilidad, toda inhibición, embargo, segunda hipoteca o cualquier otro gravamen que pese sobre el inmueble vendido, al solo efecto de la escrituración, quedando dicho inmueble sin otro gravamen que el que reconozca a favor del Banco. Para el otorgamiento de la escritura de venta, si el deudor se negara a entregar al Banco el Título de dominio del bien hipotecado, hará las veces de tal, a los efectos de lo prescripto por el artículo 6° de la Ley número 2.378, el certificado relativo al mismo que, autenticado por el escribano de la institución, obre en el archivo de ésta y al cual habrá de ponérsele la nota de ley.

**ARTICULO 77°:** Liquidada la garantía real del préstamo y cuando el precio de venta del inmueble no alcanzare a cubrir íntegramente la deuda por todo concepto, el Banco podrá exigir al deudor, por la vía ejecutiva, el pago del saldo resultante según sus libros. Será documento ejecutivo la escritura de obligación hipotecaria, junto con la liquidación de la deuda que presente el Banco.

**ARTICULO 78°:** El Directorio está facultado para disponer la venta en remate o privadamente, en block o divididos, de los bienes raíces que se adjudiquen al Banco o que por cualquier otro título adquiriese y cuando se trate de inmuebles rurales, podrá formular planes de venta que faciliten la mejor forma de distribuirlos entre agricultores y ganaderos que exploten personalmente los lotes que adquieran. También para conceder a los adquirentes de los inmuebles a que se refiere el presente artículo, facilidades de pago. Las hipotecas que se constituyan a favor del Banco en garantía de saldo de precio de los bienes así enajenados, serán regidas por las disposiciones de esta Ley Orgánica para los préstamos que realiza la Sección Crédito Hipotecario.

## CAPITULO XII

## EMISION DE OBLIGACIONES Y OTROS CREDITOS

**ARTICULO 79°:** Las sumas provenientes de préstamos obtenidos por el Banco dentro o fuera del país mediante la emisión de obligaciones o títulos, serán invertidas exclusivamente en préstamos garantizados con primera hipoteca y de acuerdo con las condiciones generales establecidas en la segunda parte de esta ley Orgánica.

**ARTICULO 80°:** Las obligaciones emitidas o a emitirse deberán estar en todo momento representadas por una cantidad igual o mayor de préstamos hipotecarios.

**ARTICULO 81°:** Las sumas provenientes de amortización o cancelación de préstamos hipotecarios en dinero, serán empleadas inmediatamente en nuevos préstamos de igual clase o en amortizaciones de las obligaciones, de modo que no disminuya en ningún momento la equivalencia entre el activo de la Sección Crédito Hipotecario y las obligaciones en circulación.

**ARTICULO 82°:** Las obligaciones pueden emitirse en moneda nacional o en moneda extranjera; los documentos representativos de las obligaciones se extenderán en idioma nacional, pudiendo tener traducción a otros idiomas y transcribirán las partes pertinentes de la presente Ley Orgánica.

**ARTICULO 83°:** El interés y amortización de las obligaciones y las demás condiciones de la emisión, serán determinadas en cada caso por el Directorio. El pago de estas obligaciones se efectuará en moneda nacional.

**ARTICULO 84°:** El Directorio queda autorizado para otorgar las fianzas o garantías reales; abonar los gastos y comisiones que sean necesarias para la emisión y para obtener la admisión de las obligaciones en los mercados y plazas del exterior. Queda asimismo autorizado para observar los reglamentos de las bolsas extranjeras.

**ARTICULO 85°:** El Banco podrá obtener créditos que no estén representados por obligaciones o títulos al portador. Las disposiciones de este título serán aplicadas a esta clase de créditos siempre que sean compatibles con su naturaleza y condiciones.

**TERCERA PARTE**

**SECCION CREDITO DE INVERSION**

**CAPITULO XIII**

**OPERACIONES**

**ARTICULO 86°:** Las operaciones de la Sección Crédito de Inversión comprenderán la financiación a mediano y largo plazo. Asimismo podrá acordar financiación complementaria y limitadamente a corto plazo, y realizar las operaciones que por su naturaleza son inherentes a los bancos de inversión, tales como:

a)     Recibir depósitos a plazo;

b)     Emitir bonos, obligaciones y certificados de Participación en los préstamos que otorgue u otros instrumentos negociables en el mercado local o en el exterior;

c)     Otorgar avales, fianzas u otras garantías, y aceptar y colocar letras y pagarés de terceros vinculados con operaciones en que interviniere;

d)     Realizar inversiones en valores mobiliarios vinculados con las operaciones en que interviniere, prefinanciar sus emisiones y colocarlos;

e)      Efectuar inversiones de carácter transitorio en operaciones fácilmente liquidables, como colocaciones en títulos públicos y operaciones de evolución del sector industrial, agroindustrial y/o de infraestructura;

f)      Actuar como fideicomisario y depositario de fondos comunes de inversión, administrar carteras de valores mobiliarios y cumplir otros encargos fiduciarios;

g)      Obtener créditos del exterior y actuar como intermediario de créditos obtenidos en moneda nacional o extranjera;

h)      Realizar operaciones en moneda extranjera;

i)      Dar en locación bienes de capital adquiridos con tal objeto;

j)      Cumplir mandatos y comisiones conexos con sus operaciones.

**ARTICULO 87°:** Los créditos que se acuerden podrán destinarse a financiar proyectos de Promoción Industrial, Agro Industrial y/o infraestructura en el territorio de la Provincia de Buenos Aires, en concordancia con las políticas de desarrollo que establezca el Poder Ejecutivo. Cuando razones de interés general lo justifiquen, a juicio del Directorio, los créditos podrán orientarse a financiar inversiones en territorio argentino fuera de los límites de la Provincia de Buenos Aires.

## CUARTA PARTE

## CAPITULO XIV

## DISPOSICIONES VARIAS

**ARTICULO 88°:** El Banco continuará encargado por cuenta y orden del Gobierno de la liquidación de los valores del Activo correspondiente a operaciones anteriores al 1 de Junio de 1.906.

**ARTICULO 89°:** El Banco contribuirá mensualmente a la Caja de Jubilaciones, Subsidios y Pensiones de su personal, con el porcentaje que determine la ley respectiva como aporte jubilatorio patronal. Además contribuirá hasta con un cinco (5) por ciento del total de las remuneraciones que abone a su personal por todo concepto, para la formación de un fondo de acumulación destinado a mejorar beneficios jubilatorios y pensionarios de aquélla, conforme a las disposiciones estatales que se dicten en la Provincia para los beneficiarios del Instituto de

Previsión Social. Queda autorizado el Directorio para fijar, con destino a cubrir el déficit potencial de la Caja resultante de estudios actuariales, la contribución anual del Banco, la que se tomará de sus utilidades líquidas.

**ARTICULO 90°:** La Provincia de Buenos Aires restituirá al Banco con fondos del producido de la percepción de impuestos y demás rentas fiscales, las pérdidas de las operaciones de fomento que realice, previo convenio con el Poder Ejecutivo.

**ARTICULO 91°:** Los honorarios de los abogados, escribanos y otros profesionales del Banco, serán fijados por el Directorio con exclusión de la ley que rija la materia.

**ARTICULO 92°:** Los actos y contratos que realice el Banco podrán ser protocolizados, cuando así lo disponga el mismo, en la Escribanía General de Gobierno y en la forma que reglamente el Poder Ejecutivo.

**ARTICULO 93°:** El Banco podrá, previa conformidad del Poder Ejecutivo, conceder préstamos para construcción, adquisición o reparación de edificios destinados a entidades subvencionadas por la Provincia, afectándose el importe anual de la subvención a la amortización e intereses de aquéllos préstamos. Su monto no podrá exceder de la suma que resulte de multiplicar el importe de la subvención anual por el plazo máximo de diez (10) años que se fija para la amortización de dicho préstamo. También podrán acordarse estos mismos préstamos a las municipalidades de la Provincia, afectándose el importe de la participación acordada a la respectiva municipalidad por impuestos que percibe la Provincia, siendo el plazo máximo de amortización el señalado precedentemente.

**ARTICULO 94°:** Quedan derogadas todas las disposiciones que se opongan a la presente Ley Orgánica.

**QUINTA PARTE**

**CAPITULO XV**

**DISPOSICION TRANSITORIA**

**ARTICULO 95°:** A fin de cumplir con las disposiciones de esta Ley Orgánica en lo relacionado con los préstamos acordados a la Nación y provincias, el Directorio queda facultado:

a)    Para convenir con el Poder Ejecutivo la amortización de la deuda que exceda a lo establecido en el artículo 11°, segunda parte;

b)     Para rebajar lo que corresponda sobre el saldo excedido que se registra en las cuentas del Gobierno de la Nación, en cuanto se convenga con las respectivas autoridades;

c)     Para convenir el régimen de amortización de otras deudas oficiales.

**ARTICULO 96°:** Deróganse los Decretos-Leyes 7.353/57 y 13.723/57, las Leyes 6.050, 6.233, 7.002, 7.361, 7.400, 7.525, 7.552, 7.668, 7.902, 7.995, 8.108, 8.646, 8.741, 8.844, 9.051, 9.135 y 9.244 y los artículos 68° y 69° de la Ley 6.757, 13° de la Ley 7.165 y 1° de la Ley 7.537.

**ARTICULO 97º.-** Cúmplase, comuníquese, publíquese, dése al Registro y Boletín Oficial y archívese**.**

TRANSLATION

**DECREE-LAW 9434/79**

**Updated text of Decree-Law 9,434/79 – IMPLEMENTING ACT OF THE BANK OF THE PROVINCE OF BUENOS AIRES – containing the Amended Text pursuant to Decree No. 9,166/86 with the subsequent amendments introduced by Laws 10534, 10766, 12354, 12695, 12726, 13072, 13174, 13786, 13929, 14062, 14199, 14331, 14393, 14552, 14879, 15225, 15310, 15394, and 15480**

**GENERAL PART**

**CHAPTER I**

**GENERAL PROVISIONS**

**ARTICLE 1:** The Bank of the Province of Buenos Aires is an autonomous public law institution in its character as a state bank, with the origin, guarantees, and privileges stated in the preamble and Articles 31 and 104 of the National Constitution, in National Law of contractual origin No. 1,029 and in the laws of the Province.

**ARTICLE 2:** The Bank will have its legal domicile in the capital city of the Province of Buenos Aires. It may establish offices, branches, agencies, and correspondent banks within the country or abroad, through a resolution of its Board of Directors.

**ARTICLE 3:** The Bank is composed of the Banking Section itself, the Mortgage Loan Section, and the Investment Credit Section, each of which functions separately under its own financial regulatory framework, capital, reserves, assets, and liabilities, but all are subject to the Office of the Director and the common control of the institution's Board of Directors and Central Administration.

**ARTICLE 4:** The Bank, its property, acts, contracts, and operations and the rights arising therefrom in its favor are exempt from all liens, taxes, encumbrances, or fees of any nature. The Bank will solely pay for the public services of water, street lighting, street cleaning and upkeep, and contributions to improvements. (*)

(*) See Law 11,802.

**ARTICLE 5:** The Bank's loans may not be lower in priority than those of any other bank authorized by special laws.

### TRANSLATION

**ARTICLE 6: (Text pursuant to Decree-Law 9,840/82)** Tax revenue, court-ordered deposits, and those of all public administrations, agencies, or departments of the Province will be deposited in the Bank at no charge, even when they have been created by special laws.

Notwithstanding the provisions in the foregoing paragraph, the Bank will receive court-ordered deposits for interest under the conditions to be established by the Board of Directors when, at the request of one of the parties, judges order payment of interest.

**ARTICLE 7: (Text pursuant to Law 14,393)** The Bank is the mandatory treasury of the municipal governments of the Province, in all cities or localities where there is a branch, of businesses or companies that are to be exempt from taxes either permanently or temporarily, as well as of the reserve funds or contingency funds of corporations that are required to maintain them in cash.

Municipal governments must process their personnel payroll through the Bank of the Province of Buenos Aires by opening savings banks for each agent.

### CHAPTER II

### RELATIONS WITH THE AUTHORITIES OF THE PROVINCE

**ARTICLE 8:** In accordance with the provisions of Article 1, the Province grants the Bank complete autonomy, with the Bank's governance entrusted solely to the Board of Directors.

**ARTICLE 9:** The Bank will be the financial agent of the Government of the Province. It will act in all banking-type transactions that the latter undertakes and, acting for it, the Bank shall:

a)      Undertake, in the Federal Capital and throughout the territory of the Province in which it has established offices and branches, the collection of revenue and taxes as provided for by agreement. The Government of the Province will pay the Bank a commission for the collection of revenue and taxes to cover the cost of the service.

b)      Handling servicing of the Province's public debt, following the instructions given annually by the Ministry of the Economy. To fulfill this mission, the Bank will withhold from the amounts it receives as taxes, tax revenue, or contributions paid to the Province in national taxes the sums that it expends for interest payments, amortizations, and other expenses of the public loans—following written instructions from that Ministry—that must be covered in keeping with the obligations and terms established in the contracts. When the volume of the collection does not provide the necessary amounts to cover the services, the Bank may advance the necessary funds and reimburse itself from the sums that enter afterwards for the items stated in this paragraph, so that advances made for these purposes are paid on the last business day of each year. If any advance of

**TRANSLATION**

this nature remains unpaid by that date, the Bank may not use this authority again as long as the amount owed remains unpaid. Management and disposal of the funds or advances allocated to public debt servicing payments will be solely the Bank's responsibility, and in each case, the Bank will report to the Ministry of the Economy the movements that are made in the respective tax account for these operations.

c)       Within three hundred (300) percent of the capital and reserves, [the Bank] may grant guarantees or undertake transactions that in substance imply a guarantee without use of funds, either within the country or abroad, for transactions undertaken by the Province, allocated for execution of works provided for in the Annual Public Works Plan and/or acquisition of equipment or elements for it, and if the Bank has to meet the commitments entailed in its guarantee, it will be authorized to take the respective funds from the taxes and revenue received.

**ARTICLE 10:** In addition to the provisions in Article 9, Letter b, the Bank may grant the Province, in one or several budget entries, as an advance on the tax collection, up to the sum equal to TWENTY PERCENT (20%) of the funds provided for in the Current Budget for the Central Administration, excluding those used for the loan. The total of the advances may not, under any circumstances, exceed TWENTY PERCENT (20%) of the balance of the Banking Section's loan portfolio in Argentine australs, as recorded by the Bank in its latest monthly balance sheet. (Paragraph incorporated through Law 10,766.)

**(Text pursuant to Law 9,434/79)** The resulting balances must be paid within the twelve (12) months following the date of disbursement of the respective budget item or items, and it will not be necessary to obtain new authorization from the Board of Directors for use of partial budget items, even for the amounts that have been amortized. Advances of more than one fiscal year may not be accumulated.

These advances will not accrue interest as long as their total does not exceed eighty (80) percent of the revenue from demand deposits, excluding those of the Social Security Institute [*Instituto de Previsión Social*], Municipal Governments, and the General Treasury Central Account, considered on the basis of the daily average of the last calendar month. If that ratio is exceeded, the Province will pay the Bank the agreed compensatory interest for the excess.

Whether all or part of the margin established in this article is used, the Province may not obtain from the Bank any type of financing or advance on deposits, excepting those expressly established in its Charter.

**ARTICLE 11:** The Bank may grant loans or advances to the Government of the Province with a guarantee and a sale order for its public debt instruments for an amount of up to fifteen (15) percent of the current budget of the General Administration for Capital Expenditures. The total of this financing may not in any event exceed seven (7) percent of the balance of the Banking Section's loan portfolio in pesos, as recorded by the Bank in its latest monthly balance sheet.

The Board of Directors will issue a reasoned affirmative resolution if it deems that the securities market will allow placement of those instruments at the established prices within a reasonable time period. If adverse circumstances arise

**TRANSLATION**

that make it advisable for the Bank to retain the instruments in portfolio, the Board of Directors may not undertake another operation of this nature until the former operation is paid in full.

**ARTICLE 11 BIS: (Article incorporated through Law 14331)** The Bank may grant lines of credit to the Province to pay for outlays for social benefits for its inhabitants and/or investments in infrastructure that help promote the wellbeing of the population, up to the sum equal to TWENTY PERCENT (20%) of the funds provided for in the current budget for the General Administration, excluding those to be used for the credit.

The total credits may not under any circumstances exceed TWENTY PERCENT (20%) of the balance of the Banking Section's loan portfolio in pesos, as recorded by the Bank in its latest monthly balance sheet, to the extent that it uses for the purpose:

a)     funds originating in financial market transactions based on public securities whose debtor or guarantor is the National State;

b)     funds obtained from other national or provincial state entities or bodies and national or international public or private development agencies or entities;

c)     funds obtained especially for that purpose, through the public offer of instruments or directly from institutional investors.

The Bank may only grant such credits, to the extent that the Province guarantees them by furnishing as collateral any resource of provincial origin not specifically encumbered and/or funds from the Federal Coparticipation Tax Regime, as established by Articles 1, 2, and 3 of the Nation-Provinces Agreement on a Financial Relationship and Basis for a Federal Tax Co-Participation Regime, ratified by Law No. 12,888, or any that replace it in the future, and authorizes the Bank to retain, from the amount it receives for those concepts, the corresponding amounts that will ensure the automatic reimbursement of that financing.

The term and amount of the lines granted under this article may not under any circumstances exceed the amounts and terms of the agreements that gave rise to the funds used for this financing." [*no initial quotation mark in the original*]

**ARTICLE 12:** The provisions of the Accounting Act will be observed by the Bank in implementing its annual budget.

**ARTICLE 13:** The Bank's relations with the Executive Branch will take place through the Ministry of the Economy.

**ARTICLE 14:** The Province guarantees the deposits received, bonds, and other obligations issued by the Bank of the Province of Buenos Aires.

**CHAPTER III**

**CAPITAL AND EARNINGS**

**TRANSLATION**

**ARTICLE 15:** The Bank's capital will be determined annually by the Board of Directors for each of the three (3) Sections, at the amounts that the Board sets in application of Article 17.

**ARTICLE 16:** The Bank's fiscal year will close on December 31 of each year, and the Balance Sheet and Profit and Loss Statement must be published in the Official Gazette of the Province, in at least two (2) journals published within the provincial jurisdiction, and in two (2) in the Federal Capital.

**ARTICLE 17:** Each of the Sections comprising the Bank will liquidate its earnings at the close of the financial year and transfer them to the common benefits fund.

After deducting the necessary sums for write-down of the assets and the ten (10) percent of the respective net benefits for each section's legal reserve, the earnings obtained will be allocated to:

- To Capital of the Investment Credit Section, the remaining net earnings that it produces.

- To increasing the capital and reserves of any of the sections and for contingency funds, retirement funds, and investment funds, in the proportions determined by the Board of Directors.

**CHAPTER IV**

**GOVERNANCE OF THE BANK**

**ARTICLE 18: (Text pursuant to Law 13,174)** The Bank will be governed by a Board of Directors consisting of one (1) President and eight (8) Argentine members appointed by the Executive Branch with the approval of the Senate.

Members will serve terms of four (4) years and may be reelected. The President and the members must have a history of recognized aptitude. Half of the members will be renewed every two (2) years.

**ARTICLE 19:** The following may not be President or Directors:

a)       Legislators, judges, municipal mayors, or members of the deliberating councils;

b)       Salaried officials or employees, whether of the national, provincial, or municipal governments;

### TRANSLATION

c)      Administrators, presidents, directors, managers, or employees of other Banks.

Individuals who, while they hold the position of president or director, come to be involved in any of the situations listed in this article will immediately resign from their position. Individuals who hold positions in official bodies of national, provincial, or interprovincial economic or financial coordination and those who hold teaching positions are exempt from the preceding disqualifications.

**ARTICLE 20:** In its first session of each year, the Board of Directors will appoint a Vice President and Secretary from among its members. In the absence or disqualification of the President, the Vice President will act for him or her. In the absence of both, the Board of Directors will be presided over by the director who is oldest in age. In the absence or disqualification of the Secretary, a member designated by the Board of Directors will act in his or her place.

**ARTICLE 21:** If a position of President or Director becomes vacant, it will be filled by appointing a replacement for the remainder of the term of office.

**ARTICLE 22: (Text according to Law 13,174)** The Board of Directors will meet at least two (2) times per week, with a quorum of five (5) members, including the President. Decisions will be reached by a majority vote, and in the event of a tie, the President will have two votes.

**ARTICLE 23:** The Board of Directors may not delegate any of its functions to the President. Directors who authorize operations prohibited by the Implementing Act will be personally and jointly liable.

**ARTICLE 24:** The following are the powers and obligations of the Board of Directors:

a)      Enforce compliance with the Implementing Act and other laws related to the Bank's operation;

b)      Agree, establish, authorize, and regulate all the operations, services, and expenditures of the establishment;

c)      Regulate the credits that may be approved;

d)      Establish the margins within which the General Management, Department Managers, and Branch Managers may approve credits;

e)      **(Text according to Law 12,354)** Convene a special session of the Board of Directors when it deems it appropriate or when requested by at least five (5) directors.

f)      Appoint the General Manager, Assistant General Manager, and Department Managers at the proposal of the President;

g)      Annually approve the Balance Sheet, the Profit and Loss Statement, the plan for allocation of the year's earnings, and the Annual Report, all of which will be reported to the Executive Branch;

### TRANSLATION

h)      Create the reserves and contingency funds it considers fitting for the consolidation of the Bank's financial situation;

i)      Establish the internal regulations;

k)      Designate correspondent banks domestically and abroad, setting regulations for their relations with the Bank;

l)      Authorize the granting of general and special powers of attorney, establishing the powers and authority to be granted;

m)      Plan the annual budget of expenditures to be presented to the Executive Branch for its purposes;

n)      Remove personnel, following required procedure, and establish the disciplinary measures for that purpose;

o)      Meet in regular and special meetings at any of the Bank's offices, as many times as it considers necessary;

p)      Undertake legal actions with all the powers allowed by law, without restriction;

q)      Decide on debt reductions and grace periods, reach arrangements with the debtors of any of the sections, and accept and acquire real estate properties or other goods or instruments in payment or defense of the Bank's credits;

r)      Acquire the real estate properties that are essential to the operation of the offices, subsidiaries, or branches of the Bank and dispose of them when so agreed. Sell the real estate, movable property, and other assets that the establishment has received in payment or which have been awarded to it in defense of its credits or which it has acquired through any other consideration.

s)      **(Text pursuant to Law 15,480)** The Board of Directors may not grant loans to legal entities of the private sector greater than TWO BILLION Argentine pesos (ARS 2,000,000,000), in which the amount to disburse exceeds FIFTY PERCENT (50%) of their bank debts to the Financial System, excepting if they are investment projects that have a rating from at least TWO (2) first-rate risk rating companies that confirm the ability to repay. Neither may it grant loans to legal entities of the private sector in amounts exceeding EIGHT PERCENT (8%) of the Bank's net equity, or grant loans to individuals in excess of FOUR HUNDRED MILLION pesos (ARS 400,000,000).

The limitations in the preceding paragraph may be increased TWO HUNDRED PERCENT (200%), providing that the additional amount is guaranteed with Class "A" or "B" preferred guarantees, according to the regulations of the Central Bank of the Republic of Argentina. Guarantees already constituted for credit tranches that did not originally exceed the limit established here may be computed for this purpose. The increase in the limit allowed for loans backed by Class "A" or "B" preferred guarantees will be applicable to the loans to construction companies for financing of public works of the Province of Buenos Aires and to providers of the same State, when they are guaranteed through the assignment or pledge of rights to instruments or documents of any nature that are reliably formalized and ensure the Bank may access the funds for payment of the obligation contracted by the client without needing to previously request payment from the borrower.

When the credit operation is allocated to financing export operations, the loans to be granted to private-sector legal entities may not, for any reason, exceed SIXTY MILLION U.S. DOLLARS (USD 60,000,000), and for individuals, SEVEN HUNDRED FIFTY THOUSAND U.S. DOLLARS (USD 750,000).

Financing done with companies related to or belonging to Grupo Provincia and to Provincia Servicios Financieros are excluded from the limitations established in the preceding paragraphs.

The amounts addressed in this item may be modified annually through the Budget Law in the event of a need to adapt them to a new national macroeconomic situation.

**TRANSLATION**

The members of the Board of Directors will be jointly and severally liable for breach of the provisions of this article, and monetarily liable for damages the Bank suffers as a consequence of such a breach, without prejudice to other civil and criminal liability they may have.

t)        **(Incorporated through Law 12,726)** Report quarterly, within the month following the end of each period, to the Budget and Tax Commissions of the Chamber of Deputies and of the Chamber of Senators concerning the evolution and status of those borrowers classified as in irregular situations and analytically for those who are also in excess of one million (1,000,000) pesos, along with the presentation of the quarterly accounting statements.

u)        **(Incorporated through Law 12,726)** Oversee strict compliance, by the different hierarchies of the Bank, with the provisions of the Charter and with the policies, standards, manuals, and instructions that the Board approves concerning approval and recovery of loans, as well as with appropriate design and effective application of the internal control systems on the matter.


**ARTICLE 25:** Each director may examine the Bank's books and ask to be provided with all the data and explanations concerning any operation conducted or to be conducted, and in all cases, [that director] must express his or her desire at a Board of Directors meeting.


**ARTICLE 26:** As remuneration, the Board of Directors will receive the sums established in the Budget.


**CHAPTER V**


**PRESIDENT**


**ARTICLE 27:** The President of the Bank will be present at the establishment on a daily basis, and his or her powers and obligations are:


a)        Comply with and ensure compliance with the Bank's Implementing Act and Regulations and carry out the resolutions of the Board of Directors;


b)        Preside over the Board of Directors meetings; make it aware of all provisions or matters that are in the Bank's interest; sign the respective minutes along with the Secretary;


c)        Appoint, promote, and transfer officers and employees of the Bank, reporting to the Board of Directors, with the exception of the General Manager, the Assistant General Manager, and the department managers, who will be appointed as established in Article 24, Letter f;

## TRANSLATION

d)      Represent the Bank and sign the official communications and correspondence of the Board of Directors; sign the balance sheets with the General Manager and the General Accountant; sign the powers of attorney that are granted to employees of the institution or to third parties, as the Board of Directors decides;

e)      **(Text pursuant to Law 13,174)** Convene special meetings of the Board of Directors when deemed appropriate or when requested by at least four (4) Directors;

f)      Object to the credit decisions made by the Board of Directors when it considers it appropriate. In such cases, in order for the Board's decision to prevail, the Board must enforce it through a vote of two thirds (2/3) of the directors present, who were summoned especially for that reason;

g)      Answer requests for oral admissions in lawsuits, but not being required to appear in person;

h)      Appoint members to serve on commissions;

i)      Decide urgent internal matters, reporting to the Board of Directors in its first meeting;

j)      Not grant loans or renewals or enter into commitments that obligate the Bank without prior authorization from the Board of Directors.

### CHAPTER VI

### GENERAL MANAGEMENT

**ARTICLE 28:** The Bank's administration will be exercised through its General Manager and, in matters assigned to him or her, by the Assistant General Manager, who must both be Argentine citizens.

**ARTICLE 29:** The functions of the General Manager and the Assistant General Manager will be regulated by the Board of Directors, being direct advisors to the President and Directors.

**ARTICLE 30:** In the capacity of advisors, the General Manager and, in his or her absence, the Assistant General Manager, will attend the meetings of the Board of Directors when the Board asks them to, having the right to speak but not to vote, though they may ask to have their opinion entered into the minutes when they consider it fitting in any matter.

**TRANSLATION**

**PART ONE**

**BANKING SECTION**

**CHAPTER VII**

**OPERATIONS**

**ARTICLE 31:** In its Banking Section, the Bank may undertake all operations that the Board of Directors considers appropriate that are not prohibited by the Board or other laws that by nature govern the common business of banking institutions.

It will promote the national economy, preferably of the fundamental industries of the Province, and the stability of the currency when it could affect its actions.

But it may not:

a)      Acquire real estate, excepting properties essential for the Bank's own use or those it is obligated to acquire in defense of its credits or to receive in payment for or as collateral for debt owed to it, being responsible for disposing of them as soon as possible;

b)      Participate, directly or indirectly, in commercial, agricultural, livestock, industrial, or any other type of companies, except when they are financial institutions, whatever their type, whether they are national or international, or when it is required to intervene in defense of its credits;

c)      Acquire for itself public or municipal funds or make loans to governments or public administrations, except as provided for in Articles 9, 10, 11, and 32 of this Implementing Act.

**ARTICLE 32:** The prohibition established by Article 31, Letter c, and restrictions in Article 11 do not include the following operations:

a)      Loans to public, commercial, or industrial agencies of the Nation or of the Province and non-state public law entities that have their own equity and autonomous direction or administration, or to commercial companies partly held by the National or Provincial States, whose operations in all

**TRANSLATION**

cases have yielded profits in the last two business years in line with the following independent margins:

1.        Provincial agencies: up to twenty-five (25) percent of the Bank's Capital and Reserves;

2.        National agencies: up to twenty (20) percent of the Bank's Capital and Reserves;

3.        Commercial companies partly held by the National or Provincial States and non-state public law entities, up to twenty (20) percent of the Bank's Capital and Reserves.

b)        Guarantees granted to national entities of the nature stated in the preceding letter. These operations will be governed by the general regulations governing the Bank's commercial activity;

c)        Loans, guarantees, and bonds granted to the municipalities of the Province of Buenos Aires, allocated to the execution of works of urban infrastructure, public buildings, purchase and repair of machinery and tools for providing public services, and works of general and social interest.

The total of these loans may not jointly exceed two hundred (200) percent of these clients' average balance in the Bank in the two months prior to the date the loan is granted. The maximum term of these operations will be, exceptionally, up to ten (10) years, with proportional amortizations that must begin no later than the second year;

d)        Buy, pledge, discount, and sell treasury bills and other public instruments that allow the temporary placement of available funds or facilitate greater security in its operations.

**ARTICLE 33: (Text pursuant to Law 12,695)** The Bank may grant special types of loans for the purpose of increasing agriculture, forestation, livestock farming, industry, fishery, tourism infrastructure, construction of silos and elevators, and other activities of interest to the development of the provincial economy, setting preferential rates and terms in the conditions determined by the Board of Directors.

Under the same conditions and as restoration or assistance, the Bank may do so in the event of formally declared emergencies or disasters in the Province.

**ARTICLE 34:** In accordance with the provisions of Article 1 of this Implementing Act and Article 69 of National Law No. 1,804, the Bank, in conducting mortgage operations, may require that they be pre-entered by official notice in the real estate registries before the loan is made and after verifying the ownership and freedom of disposition of the property offered;

**TRANSLATION**

a)       Pre-entry of the mortgage will result in an encumbrance on the real estate property, with special privilege over the property for the amount of the advance, its interest and expenses, which will last forty-five (45) calendar days from the registration entry, and will be extendible at the request of the Bank for the same time period and in the same form as many times as needed;

b)       The pre-entry will expire upon any of the following events:

- By simple expiration of the term set in the foregoing item;

- By payment of the loan and its interest and expenses, which the Bank will communicate through a direct notice;

- By registration of the public instrument of the mortgage that guarantees the total credit;

c)       If, due to breach of contract, death or any other cause, the public instrument of the mortgage is not formalized, the Board of Directors may order an immediate foreclosure on the real estate property as if it were an overdue debt guaranteed with a mortgage interest in property to the extent that has been pre-entered and in keeping with its special foreclosure procedures, if any, with the base of the credit, plus the interest, taxes, fees, and expenses;

d)       Recording of these pre-entries in the Property Registries will require payment of the fees pertinent to the mortgage based on the agreed-upon loan, and the amount already paid must be deducted later, when the mortgage is contracted, from the tax amount on the mortgage.

**ARTICLE 35:** When urgency is required, instruments constituting mortgages in favor of the Bank on real estate properties located within the Province may be granted without certificates verifying payment of taxes and provincial or municipal service or improvement fees, without prejudice to the rights of the tax authorities and of the respective municipality to collect the moneys owed them for these concepts at the date the instrument is drawn up.

**ARTICLE 36:** The Province acts as guarantor before the Bank for balances not paid by employees of the Provincial Administration on the salary advances that the institution grants them. It will also be accountable for tax losses the Bank may experience in enforcing the mortgage loans arising from the portfolio transferred by the former Caja Popular de Ahorros [savings bank] and those it makes under the provisions of Law No. 4,858.

**ARTICLE 37:** For special loans to public employees or others who are members of the Cajas de Previsión Social [savings banks], the treasurers or authorized persons in their respective offices, the employers or the Cajas de Jubilaciones [savings banks], as the case may be, will, at the simple request of the Bank, withhold from the employee's monthly pay or any other remuneration the amounts necessary for servicing of the loan,

**TRANSLATION**

insurance, expenses, taxes, fees, and late fees, and will transfer them to the Bank until the debt is paid. In the event of default, [the Bank] will initiate collection proceedings.

**PART TWO**

**MORTGAGE LOAN SECTION**

**CHAPTER VIII**

**ORGANIZATION**

**ARTICLE 38:** The capital of the Mortgage Loan Section is constituted as provided in Article 15 of this Implementing Act.

**ARTICLE 39:** The assets of the Mortgage Loan Section comprise the amount of the mortgage loans granted, whether in cash or in bonds, plus their ancillary charges.

**ARTICLE 40:** The liabilities of the Mortgage Loan Section are composed of:

a)      The mortgage-backed securities and obligations in circulation;

b)      The sums received for investment in mortgage loans provided by the Central Bank of the Republic of Argentina, the Province's Social Security Institute, and other bodies or by third parties.

**ARTICLE 41:** The capital, reserves, and assets of the Mortgage Loan Section guarantee and are encumbered for payment of its liabilities.

**CHAPTER IX**

**OPERATIONS**

**TRANSLATION**

**ARTICLE 42:** The Mortgage Loan Section may, in general, make mortgage loans guaranteed with a first mortgage in cash and in short- or long-term mortgage-backed securities, with or without accumulated amortization. In particular, it may undertake the following operations:

a)      Approve loans for the acquisition and promotion of land subdivision, taking care to preserve the measure that constitutes an economic unit;

b)      Approve loans for forestation; electrification, promotion, and decentralization of industry, especially the dairy, fishing, iron and steel, and cellulose industries; and construction and expansion of buildings to be used for the installation of factories, hotels, inns, silos, markets, and refrigerated rooms within the provincial territory;

c)      Approve loans for the construction of buildings to be used for housing;

d)      Schedule and build housing units and/or neighborhoods for lease or sale, for the purpose of gradually eliminating unhealthy housing in urban areas, through plans that include the necessary urbanization, water, and sewage works, creating entities to stimulate neighborhood development, and for this purpose, it may buy and sell all types of real estate and movable property;

e)      Approve loans for agricultural cooperatives to build grain elevators and warehouses;

f)      Issue mortgage-backed securities that accrue interest and are amortizable in the short or long term;

g)      Issue mortgage-backed securities that include the right to prizes awarded by lottery. These bonds may be callable upon lapse of the time period established or may be issued as amortizable under the conditions established in the preceding letter;

h)      Enter into financial agreements to facilitate the placement and handling, outside the country, of the services of the mortgage-backed securities or other obligations;

i)      Issue other obligations and obtain loans within or outside of the country, in national or foreign currency, to be invested in cash loans guaranteed with a first mortgage or under the special conditions and guarantees determined by the Board of Directors;

j)      Organize savings banks, based on investment of funds deposited in mortgage loans;

**TRANSLATION**

k)      Handle, for the account of third parties, the placement of money in mortgage loans in the capacity of legal representative;

l)      Receive deposits to be used to create a savings and loan fund, which will pay the interest rates set by the Board of Directors;

m)     Approve loans for acquiring, building, and expanding individual or collective housing units and/or neighborhoods, through the savings and loan system, with the authority to readjust the outstanding balances of the loans in proportion to the currency devaluation and growth in the compensation, salaries, and day wages of the "Borrowers," with the plans established by the Board of Directors;

n)      Make investments of a temporary nature in easily liquidated placements.

The operations referred to in Letters a, b, c, d, and e will always be conducted as first mortgages, in cash or in mortgage-backed securities, under the conditions to be set by the Board of Directors.

**ARTICLE 43:** The Bank will punctually pay the service on the obligations and mortgage-backed securities it issues and will also make the corresponding amortizations.

**ARTICLE 44:** Mortgages constituted in the name of the Bank will be on real estate properties free of all encumbrances. The title deeds will be perfect and may not contain any legal defect or deficiency.

**CHAPTER X**

**MORTGAGE-BACKED SECURITIES**

**ARTICLE 45:** The Bank's Board of Directors will set the rates of interest and ordinary amortization of the mortgage-backed securities, the division and dates of their servicing, and the base prices for their issue, and may make exceptional amortizations when it deems fitting.

**ARTICLE 46:** The mortgage-backed securities will be issued in series. Those accruing the same rate of interest, having the same amortization fund, and having an equal period for payment of interest and amortization will belong to the same series.

**ARTICLE 47:** The Bank will issue the mortgage-backed securities in the amounts it considers suitable and for the totals that the Board of Directors sets for each series.

**TRANSLATION**

**ARTICLE 48:** In their wording, the mortgage-backed securities will state the interest rate that will be paid by the Bank and the percentage of the amortization.

**ARTICLE 49:** Holders of mortgage-backed securities only have action against the Bank. The Bank must pay, at their respective times, the interest and the capital of the redeemable bonds drawn and the prizes that have been awarded to the securities issued on that plan, and will not admit third-party opposition to their payment, except when ordered by the appropriate authority.

**ARTICLE 50:** Payment of the income on the mortgage-backed securities will be made at all offices and branches of the Bank and will be satisfied in cash upon expiration of the respective period. The Bank will set the dates of the payments, which will be the same for the holders of the same series.

**ARTICLE 51:** The mortgage-backed securities in effect may not exceed the amount of the loans of that class.

**ARTICLE 52:** The mortgage-backed securities will bear a facsimile of the signatures of the Bank President and the Secretary Director and will be signed by the Manager or Assistant Manager of the section and by the Bank's notary or notaries expressly authorized by the Board of Directors.

**ARTICLE 53:** The amounts received as amortization payments and the interest accrued by the called bonds constitute the sinking fund of each series, in which will also be included the amounts received in cash as advances on or payment of the loan. With the sums available from each sinking fund, the pertinent securities will be called by lottery at par. The lotteries will be held one quarter in advance of the day designated for their payment.

**ARTICLE 54:** The drawn bonds will not accrue interest for the holders from the date stated for their payment.

**ARTICLE 55:** For accounting purposes, the bonds drawn will continue to accrue interest for the Bank, as long as they are not applied to settlement of the mortgages redeemed through the natural course of time or through payment in advance.

**ARTICLE 56:** Without prejudice to the bond calls prescribed in Article 53, the Bank has the right to make extraordinary calls, also at par, using a lottery in the amount determined by the Board of Directors.

**CHAPTER XI**

**LOANS**

**TRANSLATION**

**ARTICLE 57:** Mortgage loans may not be contracted on the following real estate properties:

a)        Mines and quarries;

b)        Undividable portions, except if the mortgage is constituted on the entirety of the property;

c)        Properties that do not produce certain, permanent income or are not suitable for producing it.

**ARTICLE 58:** The mortgage and its registration in the Mortgage Registry will remain legally in effect during the duration of the contract, in accordance with Article 69 of National Law No. 1,804. Nevertheless, the Bank has the authority to directly request, as many times as it considers necessary, the renewal of the registration, which will be done by the Mortgage Registry upon sole presentation by the Bank of a certified copy of the loan's original instrument.

**ARTICLE 59:** Mortgage loan contracts will be tax exempt to the extent established by laws in effect. In such cases, the certified copies of the instruments will be issued on lined, stamped paper.

**ARTICLE 60:** The borrower may not transfer the mortgaged property as long as the Bank has not accepted the new borrower, without which requirement, the obligations contracted in the loan contract will not be released. The respective certified copy of transfer of ownership must be deposited with the Bank within the thirty (30) days following the date of acceptance and, until its delivery, the first borrower will not be released from the obligation.

**ARTICLE 61:** The Bank may contract fire insurance on the buildings existing on or that are built on the mortgaged property, through the Retirement, Subsidies, and Pensions Savings Bank [*Caja de Jubilaciones, Subsidios y Pensiones*] of the Personnel of the Bank of the Province of Buenos Aires, at the borrower's expense. In loans for promoting the construction or acquisition of housing, [the Bank] may also require that the borrower contract a life-home insurance policy at the aforesaid institution. If the Retirement, Subsidies, and Pensions Savings Bank of the Personnel of the Bank of the Province of Buenos Aires will not provide the insurance, the Bank may designate the insurance company from which it will accept a policy.

**ARTICLE 62:** The mortgage borrower may not undertake the following acts or contracts:

a)        Lease, rent, or grant the use or exploitation of the mortgaged properties without express written consent from the Bank;

**TRANSLATION**

b)      Take out subsequent mortgages of real right of antichresis on the real estate properties mortgaged to the Bank;

Infraction of these provisions gives the Bank the right to:

- Demand immediate payment of the loan;

- Apply penalty interest to the debt from the moment of the infraction;

- Proceed to sell the properties in the form and conditions established in Article 65.

**ARTICLE 63:** In the mortgage loans, borrowers who are late in paying the service will also pay, in addition to the payment amount and for the entire time of the delay, the penalty interest established in the contract, which will be set by the Board of Directors.

**ARTICLE 64:** The Bank may proceed on its own, without any form of trial, to seize the income from the mortgaged property to be applied to payment of the services and conservation of the property, if the debtor allows ninety (90) days to pass from the date on which the respective service should have been paid. This authority will not prevent the Bank, if it deems it fitting, to proceed to sell the mortgaged property in accordance with Article 65. If the property does not produce any lease income, the Bank will set [the lease income] and immediately proceed in the manner indicated above.

**ARTICLE 65:** In all cases in which the Bank has the right to order the sale at auction of the mortgaged property, it will proceed to do so on its own initiative, without any form of trial, to the highest bidder, based on the debt for all concepts, and, if applicable, will grant the corresponding instrument in favor of the buyer, and, if it so deems, will place the buyer in possession of the property occupant-free, whether they be the owner or third parties under the name of the owner, regardless of their title status, and the buyer will be subrogee of all the rights corresponding to the borrower over those properties. In the loan contract, the borrower will grant the Bank an irrevocable power of attorney to grant and sign the instrument transferring ownership, which it may exercise even in the event of insolvency, bankruptcy, or death of the borrower. The same power of attorney will include the authority to deliver possession to the buyer and to represent the borrower in any legal action that may be filed against him or her that affects the mortgaged property, as well as to file actions against third parties in possession of the property.

**ARTICLE 66:** When the mortgaged properties are in a sale process, by virtue of the provisions of this Implementing Act, the Bank may:

a)      Proceed to their sale as a whole or divided into lots, whichever it considers more advantageous, and may assign to the State or to the municipal governments, at an agreed price or free of charge, the areas needed to open streets or roads;

**TRANSLATION**

b)      Represent the borrower in all legal actions filed against the mortgaged property, file them against third parties in possession, and agree to transactions, signing the pertinent documents;

c)      Take possession of the mortgaged properties in the form and conditions determined in Article 71;

d)      Once auction of the mortgaged properties has been approved or when they have been awarded to [the Bank], evict the renters or occupants of the properties on its own initiative, without the intervention of judges, directly requesting the aid of the law enforcement agencies, except in the event [the occupants'] status is the result of rental contracts entered into with express written authorization from the Bank;

e)      Make the repairs to the mortgaged property that it considers necessary, at the borrower's expense, and take the measures conducive to preservation of the property.

**ARTICLE 67:** Auctions will be announced for at least three (3) consecutive days in two (2) journals designated by the Board of Directors.

Announcements will be made a minimum of eight (8) days in advance of the date the auction is to be held, counted from the last publication.

**ARTICLE 68:** Auctions ordered by the Bank will be held by a registered public auctioneer, or by an employee of the Bank to be designated by the Board of Directors if there is no auctioneer. In the former case, the auctioneer may only charge the commission established by the Board of Directors. In the latter case, the employee will not receive a commission, and the Bank will only charge any expenses incurred. When the auction does not take place, no commission whatsoever will be charged, but expenses incurred will be reimbursed.

**ARTICLE 69:** In all cases in which the Bank has a right to sell the mortgaged property or properties, the Board of Directors is authorized, at its sole discretion, to arrange the auction:

At the headquarters, located in the capital city of the Province;

At the central office, established in the city of Buenos Aires;

At the branch where the loan was requested, or at the branch where it was entered into an instrument.

In the locality where the property is located.

## TRANSLATION

**ARTICLE 70:** All sales are subject to the approval of the Board of Directors.

The buyer may pay the price within the ten (10) days following the approval. If it does not do so, the Bank may void the sale, with loss of the deposit provided, or else it may allow the buyer to continue with the mortgage debt under the conditions established in regulations in effect, which are set in the auction notice.

**ARTICLE 71:** The Bank may, on its own initiative, request the aid of the law enforcement agencies to take possession of the mortgaged property; to place auction flags and posters; to allow interested parties and auctioneers to examine it; and, in the event of a sale, to give possession to the buyers, regardless of the opposition of the owner or occupants, whatever their title status.

**ARTICLE 72:** If the sale does not take place in the first auction, the Board of Directors will order a new auction within the following one hundred eighty (180) days, with a base price no lower than the amount of the capital owed. When the second auction is unsuccessful, the Board of Directors will have the authority to set the base prices of the subsequent auctions and the dates on which they will take place, without prejudice to resolving, when it considers it fitting, to dispense with the further auctions and request the award of the mortgaged property. The judges must order it immediately, without further requirements than the record showing that the ordered auctions have failed and must grant the respective instrument in the Bank's favor for the amount that would have been the base price for the last auction, and in this way the Bank will be able to liquidate the account for collection of the personal balance.

**ARTICLE 73:** If, in the two (2) first auctions, it is not possible to sell the mortgaged property due to a lack of bidders and while the debtor is delinquent, the Bank may take possession of the property in order to receive its income or proceeds, or rent it as it deems most suitable, until it puts it up for auction again when it believes it opportune. The sums thus obtained will be applied to payment of the taxes and services and to the expenses of conservation that the Bank believes it appropriate to undertake. The judges will enforce the possession requested by the Bank solely upon presentation of its request.

**ARTICLE 74:** The Bank may order the auction of the mortgaged properties even when they have been attached in response to a court order for enforcement of other loans, and even when the borrower is in bankruptcy proceedings or has been declared bankrupt, regardless of the jurisdiction in which those orders were issued. In these cases, once the debt has been liquidated, the loan covered in its favor, and all expenses and interest produced, the Bank may place the remaining amount at the disposal of the respective judicial authority. In cases of enforcement, bankruptcy proceedings, or bankruptcy of the borrower, although the debt is being serviced regularly, the Bank must make use of its right as soon as the court order has been executed and order the judicial sale, for which effect it will be served notice of that court order. If the Bank does not order the auction within the sixty (60) business days following the judicial notice, the judge may arrange it in the regular manner, at the request of the interested party to the legal action.

**ARTICLE 75:** Under no circumstances may judges suspend or hinder the Bank's procedure for sale at auction of the mortgaged properties, unless it involves third-party ownership rights, agree to a term for the borrower, or detain receipt of Bank's loan due to opposition from a third party.

**TRANSLATION**

**ARTICLE 76:** Registries of mortgages, attachments, and orders preventing a debtor from encumbering or selling his property will lift—without any further process and at the Bank's request and under its responsibility—all prevention orders, attachments, second mortgages, or any other encumbrance on the sold property, solely upon being executed in an instrument, and that property will have no other encumbrance than that recognized in the Bank's favor. To grant the instrument of sale, if the borrower refuses to deliver the title deed to the mortgaged property to the Bank, it may be replaced, for the effects of the provisions of Article 6 of Law No. 2,378, by the title deed certificate authenticated by the institution's notary and kept in its archives, to which the legally required note must be added.

**ARTICLE 77:** When the security interest of the loan is paid and the price of the property sale does not fully cover all aspects of the debt, the Bank may demand, through expedited enforcement action, that the borrower pay the balance remaining on its books. The instrument recording the mortgage obligation will be the enforcing document, along with the liquidation of the debt that the Bank presents.

**ARTICLE 78:** The Board of Directors is authorized to arrange the sale at auction or privately, in block or divided, of the real estate properties that are awarded to the bank or which it acquires for any other consideration, and when they are rural properties, it may make sale plans that facilitate the best way to distribute them between crop and livestock farmers who personally use the lands they acquire. Also, to grant payment facilities to the buyers of the properties addressed in this article, the mortgages contracted in favor of the Bank as guarantee for the price balance of the properties thus disposed of will be governed by the provisions of this Implementing Act for the loans made by the Mortgage Loan Section.

**CHAPTER XII**

**ISSUING OF OBLIGATIONS AND OTHER LOANS**

**ARTICLE 79:** The sums from loans obtained by the Bank within or outside of the country through the issue of obligations or instruments will be invested exclusively in loans guaranteed with a first mortgage and in keeping with the general conditions established in Part Two of this Implementing Act.

**ARTICLE 80:** The obligations issued or to be issued must be represented at all times by an equal or greater quantity of mortgage loans.

**ARTICLE 81:** The sums from amortization or settlement of mortgage loans in cash will be used immediately in new loans of the same class or in amortizations of the obligations, such that the equivalence between the assets in the Mortgage Loan Section and the obligations in circulation is not reduced at any time.

**ARTICLE 82:** Obligations may be issued in national or foreign currency. The documents representing the obligations will be written in the national language and may have a translation into other languages, and will contain a transcription of the pertinent parts of this Implementing Act.

TRANSLATION

**ARTICLE 83:** The interest and amortization of the obligations and other issuing conditions will be determined in each case by the Board of Directors. Payment of these obligations will be made in national currency.

**ARTICLE 84:** The Board of Directors is authorized to grant the bonds or security interest; pay the expenses and commission necessary for the issue; and obtain admission of the obligations on the foreign markets and exchanges. It is also authorized to observe the regulations of the foreign exchanges.

**ARTICLE 85:** The Bank may obtain credits that are not represented by obligations or bearer instruments. The provisions of this title will be applied to this class of credits, providing they are compatible with its nature and conditions.

**PART THREE**

**INVESTMENT CREDIT SECTION**

**CHAPTER XIII**

**OPERATIONS**

**ARTICLE 86:** The operations of the Investment Credit Section will include medium- and long-term financing. It may also arrange supplemental financing limited to the short term and conduct the operations that, by their nature, are inherent to investment banks, such as:

a)      Receive time deposits;

b)      Issue bonds, obligations, and certificates of investment in the loans it grants or other negotiable instruments in the local market or abroad;

c)      Grant bill guarantees, bonds, or other guarantees, and accept and place drafts and promissory notes of third parties related to the operations in which it intervenes;

d)      Make investments in securities related to the operations in which it intervenes, pre-finance its issues and place them;

TRANSLATION

e)      Make temporary investments in easily liquidated operations, such as placements in public instruments or operations to develop the industrial, agro-industrial, and/or infrastructure sector;

f)      Act as trustee and depositary of common investment funds, administer portfolios of securities, and fulfill other fiduciary orders;

g)      Obtain credits from abroad and act as intermediary for credits obtained in domestic or foreign currency;

h)      Undertake operations in foreign currency;

i)      Lease capital goods acquired for that purpose;

j)      Carry out mandates and commissions related to its operations.

**ARTICLE 87:** Credits agreed to may be used to finance projects of industrial promotion, agro-industrial, and/or infrastructure projects within the territory of the Province of Buenos Aires, in accordance with the development policies established by the Executive Branch. When reasons of general interest so justify, at the judgment of the Board of Directors, loans may be aimed at financing investments within Argentine territory outside the boundaries of the Province of Buenos Aires.

**PART FOUR**

**CHAPTER XIV**

**MISCELLANEOUS PROVISIONS**

**ARTICLE 88:** At the expense of and by authority of the Government, the Bank will continue to be entrusted with liquidating the instruments of the assets pertaining to operations prior to June 1, 1906.

**ARTICLE 89:** The Bank will contribute monthly to the Caja de Jubilaciones, Subsidios y Pensiones [savings bank] of its personnel, at the percentage established by the respective law, as an employer retirement contribution. It will also contribute up to five (5) percent of the total remunerations it pays to its personnel for all concepts, for the formation of an accumulated fund for the purpose of improving retirement and pension benefits of the personnel, in keeping with state legislation enacted in the Province for the beneficiaries of the Social Security Institute.

**TRANSLATION**

For the purpose of covering the potential cash deficit resulting from actuarial studies, the Board of Directors is authorized to set the Bank's annual contribution, which will be taken from its liquid earnings.

**ARTICLE 90:** With funds from the taxes and other revenue it collects, the Province of Buenos Aires will reimburse the Bank for losses on the development operations it undertakes, subject to prior agreement with the Executive Branch.

**ARTICLE 91:** The fees of attorneys, notaries, and other professionals of the Bank will be established by the Board of Directors, excepting law governing the matter.

**ARTICLE 92:** The acts and contracts undertaken by the Bank may be entered into the notarial record when the Bank so orders, through the Office of the Government Notary and in the manner required by the Executive Branch.

**ARTICLE 93:** With the prior approval of the Executive Branch, the Bank may grant loans for construction, acquisition, or repair of buildings to be used by entities subsidized by the Province, allocating the annual amount of the subsidy for amortization and interest on those loans. The amount may not exceed the amount resulting from multiplying the annual subsidy by the maximum term of ten (10) years that is established for amortization of the loan. These same loans may also be made to the municipal governments of the Province, allocating the amount of the agreed participation of the respective municipality for taxes the Province collects, and the maximum term of amortization will be the amount previously stated.

**ARTICLE 94:** All provisions of law conflicting with this Implementing Act are hereby repealed.

**PART FIVE**

**CHAPTER XV**

**TRANSITIONAL PROVISION**

**ARTICLE 95:** For the purpose of fulfilling the provisions of this Implementing Act as regards the loans granted to the Nation and provinces, the Board of Directors is authorized to:

a)      Reach an agreement with the Executive Branch regarding the amortization of the debt that exceeds the amount established in Article 11, Part Two;

**TRANSLATION**

b)      Reduce as appropriate the excess balance registered in the accounts of the Government of the Nation, as agreed to with the respective authorities;


c)      Reach an agreement on the regime for the amortization of other official debts.


**ARTICLE 96:** Decree-Laws 7,353/57 and 13,723/57; Laws 6,050, 6,233, 7,002, 7,361, 7,400, 7,525, 7,552, 7,668, 7,902, 7,995, 8,108, 8,646, 8741, 8,844, 9,051, 9,135, and 9,244; Articles 68 and 69 of Law 6,757; Article 13 of Law 7,165; and Article 1 of Law 7,537 are hereby repealed.


**ARTICLE 97:** This law shall be announced, published, and enforced, delivered to the Registry and the Official Gazette, and filed.



**WATER STREET TRANSLATIONS, LLC**

10 East 39th Street, 12th Floor
New York, NY 10016                                    (212) 776-1713
www.waterstreettranslations.com          info@waterstreettranslations.com

**CERTIFICATION OF ACCURACY OF TRANSLATION**

This hereby confirms that the foregoing translation was prepared by Laura Pohlig, a linguist with substantial experience in the translation of documents from Spanish into English as certified by the American Translators Association.

Kent G. Heine, Managing Partner of Water Street Translations, LLC, hereby attests to the following:

"To the best of my knowledge and belief, the foregoing translation is a true, accurate, and unbiased translation into English of the Spanish text attached herewith."

_____

Kent G. Heine
Water Street Translations, LLC

10/02/24
_____

Date

