# EXHIBIT 4



# Carta Orgánica del Banco de la Provincia de Buenos Aires

**Carta Orgánica**
del Banco de la Provincia de Buenos Aires



# CAPITULO I

## DISPOSICIONES GENERALES

**ARTÍCULO 1 –**     El Banco de la Provincia de Buenos Aires es institución autárquica de derecho público, en su carácter de Banco de Estado, con el origen, garantías y privilegios declarados en el preámbulo y en los artículos 31 y 104 de la Constitución Nacional, en la Ley Nacional de origen contractual número 1029 y en las Leyes de la Provincia.

**ARTÍCULO 2 –**     El Banco tendrá su domicilio legal en la Capital de la Provincia de Buenos Aires. Podrá establecer casas, sucursales, agencias y corresponsalías en el país o en el extranjero, por resolución de su Directorio.

**ARTÍCULO 3 –**     El Banco está integrado por la Sección Bancaria propiamente dicha, la Sección Crédito Hipotecario y la Sección Crédito de Inversión, cada una de las cuales funciona con su propio régimen financiero, capital, reservas, activo y pasivo, por separado, pero sometidas todas a la Dirección y contralor comunes del Directorio y de la Administración Central de la Institución.

**ARTÍCULO 4 –**     El Banco, sus bienes, actos, contratos y operaciones y derechos que de ellos emanen a su favor, están exentos de todo gravamen, impuesto, carga o contribución de cualquier naturaleza. El Banco abonará exclusivamente el servicio de obras sanitarias, la tasa por alumbrado, limpieza y conservación de la vía pública y la contribución de mejoras.

**ARTÍCULO 5 –**     Los créditos del Banco no podrán ser inferiores en prelación a los de cualquier otro banco autorizado por leyes especiales.

**ARTÍCULO 6 –**     Se depositarán a título gratuito en el Banco las rentas fiscales, los depósitos judiciales y los de todas las administraciones, dependencias o reparticiones públicas de la Provincia, aun cuando hayan sido creadas por leyes especiales. No obstante lo dispuesto en el párrafo anterior, el Banco recibirá depósitos judiciales a interés, en las condiciones que establezca el Directorio, cuando los jueces, a pedido de parte, dispongan el reconocimiento de intereses.

**ARTÍCULO 7 –**     El Banco es la Tesorería obligada de las Municipalidades de la Provincia, en todas las ciudades o localidades donde haya sucursal, de las empresas o compañías a las que se acordare exención de impuestos de carácter permanente o transitorio así como de los fondos de reserva o previsión de las sociedades anónimas siempre que estén obligadas a mantenerlos en efectivo.
Las Municipalidades deberán implementar el pago de haberes al personal mediante el Banco de la Provincia de Buenos Aires, a través de la apertura de cajas de ahorro común para cada uno de los agentes.

# CAPITULO II

## RELACIONES CON LAS AUTORIDADES DE LA PROVINCIA

**ARTÍCULO 8 –**     En concordancia con lo dispuesto en el artículo 1 la Provincia acuerda al Banco completa autonomía, quedando el gobierno de éste a cargo exclusivo del Directorio.

**ARTÍCULO 9 –**     El Banco será el agente financiero del Gobierno de la Provincia. Actuará en todas las operaciones de índole bancaria que éste realice y por cuenta del mismo le corresponde:

a) Realizar en la Capital Federal y en todo el territorio de la Provincia en que tenga establecidascasas y filiales, la percepción de las rentas e impuestos fiscales con arreglo a lo dispuesto por convenio.El Gobierno de la Provincia abonará al Banco en concepto de comisión por la recaudación de las rentase impuestos fiscales el costo del servicio;

b) Hacer los servicios de la deuda pública de la Provincia ajustándose a las instrucciones que leimparta anualmente el



**Carta Orgánica**
del Banco de la Provincia de Buenos Aires

Ministerio de Economía. Para cumplir esa misión, el Banco retendrá, de lassumas que perciba en concepto de impuestos, rentas fiscales o participaciones que correspondan a la Provincia en impuestos nacionales, los importes que según comunicaciones de dicho Ministerio insumael pago de intereses, amortizaciones y otros gastos de los empréstitos que deban ser atendidos de acuerdo con las obligaciones y plazos establecidos en los contratos. Cuando el volumen de la recaudación no permita reunir las cantidades necesarias para la atención de los servicios, el Banco podrá adelantar los fondos indispensables reembolsándose de las sumas que ingresen posteriormente por los conceptos expresados en este inciso, de modo que los adelantos hechos para estos fines queden cancelados el último día hábil de cada año. Si cualquier adelanto de esta naturaleza quedaseimpago a esa fecha, no podrá volver a usarse esta facultad del Banco mientras la cantidad adeudada no haya sido cancelada. El manejo y disposición de los fondos o adelantos destinados al pago de los servicios de la deuda pública estarán a cargo exclusivo del Banco que comunicará en cada caso al Ministerio de Economía los movimientos que se produzcan en la cuenta fiscal respectiva por estasoperaciones;

c) Dentro del trescientos (300) por ciento del capital y reservas podrá otorgar avales o realizaroperaciones que en substancia impliquen una garantía sin utilización de fondos, sea en el país o en elexterior para operaciones que realice la Provincia, con destino a la ejecución de trabajos previstos en el Plan Anual de Obras Públicas, y/o la adquisición de equipos o elementos para las mismas, quedandofacultado el Banco, en caso de tener que hacer frente a los compromisos derivados de su garantía, atomar los fondos respectivos del producido de la percepción de impuestos y rentas fiscales.

**Artículo 10 –**   Además de lo previsto en el artículo 9 inciso b), el Banco podrá conceder a la Provincia, en una o varias partidas, como anticipo de la recaudación fiscal, hasta la suma igual al veinte (20) por ciento de los recursos previstos en el Presupuesto vigente para la Administración Central, excluidos los del uso del crédito. El total de los anticipos no podrá exceder en ningún caso del veinte (20) por ciento del saldo de la cartera de préstamos en pesos, de la Sección Bancaria, que registre el Banco en su último balance mensual.
Los saldos resultantes deberán cancelarse dentro de los doce (12) meses siguientes al de la fecha de efectivización de la o de las partidas respectivas, no siendo necesario contar con nueva autorización del Directorio para la utilización de partidas parciales, incluso por las sumas que hubiesen sido amortizadas. No podrán acumularse anticipos de más de un ejercicio.
Estos anticipos no devengarán Intereses, en tanto su total no supere el ochenta (80) por ciento de las cuentas fiscales de depósitos a la vista, excluidas las del Instituto de Previsión Social, Municipalidades y de la Tesorería General -Cuenta Central- considerado en base al promedio diario del último mes calendario. De superar dicha relación, por el exceso, la Provincia abonará al Banco intereses compensatorios que se convengan.
Utilizado total o parcialmente el margen determinado en el presente artículo, la Provincia no podrá obtener del Banco tipo alguno de financiación o adelanto sobre depósitos, salvo los expresamente determinados en su Carta Orgánica.

**Artículo 11 –**   El Banco podrá conceder préstamos o adelantos al Gobierno de la Provincia con garantía y orden de venta de títulos de su Deuda Pública, por un Importe de hasta el quince (15) por ciento del Presupuesto Vigente de la Administración General para Erogaciones de Capital. El total de esta financiación no podrá exceder en caso alguno del siete (7) por ciento del saldo de la cartera de préstamos en pesos, de la Sección Bancaria, que registre el Banco en su último Balance Mensual.
El Directorio fundará la resolución afirmativa en su juicio de que la plaza de valores, permite la colocación de dichos títulos a los precios establecidos y en un plazo prudencial. Si circunstancias adversas sobrevinientes hicieran aconsejable que el Banco mantuviera los títulos en cartera, no podrá el Directorio dar curso a otra operación de esta naturaleza hasta liquidada totalmente la anterior.

**Artículo 11 bis –** El Banco podrá otorgar a la Provincia líneas de crédito para hacer frente a erogaciones de interés social para sus habitantes y/o a inversiones en infraestructura que permitan promover el bienestar de la población hasta la suma igual al VEINTE POR CIENTO (20%) de los recursos previstos en el Presupuesto Vigente para la Administración General, excluidos los del uso del crédito.
El total de los créditos no podrá exceder en ningún caso del VEINTE POR CIENTO (20%) del saldo de la cartera de préstamos en pesos, de la Sección Bancaria que registre el Banco en su último Balance mensual, en la medida que para ello utilice:

a) fondos originados en operaciones financieras de mercado a partir de títulos públicos cuyodeudor o garante sea el



Estado Nacional;

b) fondos obtenidos de otras entidades u organismos del estado nacional o provincial, agencias oentidades de desarrollo públicas o privadas del país o exterior;

c) fondos captados especialmente para dicho fin, a través de oferta pública de títulos odirectamente de inversores institucionales.

El Banco sólo podrá otorgar tales créditos, en la medida que la Provincia afecte en garantía de los mismos cualquier recurso de origen provincial sin afectación específica y/o los recursos provenientes del Régimen de Coparticipación Federal de Impuestos, de acuerdo a lo establecido por los artículos 1º, 2º y 3º del Acuerdo Nación - Provincias sobre Relación Financiera y Bases de un Régimen de Coparticipación Federal de Impuestos, ratificado por la Ley Nº 12.888, o aquél que en el futuro lo sustituya y autorice al Banco a retener, de las sumas que perciba por tales conceptos, los importes correspondientes que aseguren el reembolso automático de dicho financiamiento.
El plazo y monto de las líneas otorgadas según este artículo, en ningún caso, podrán superar los montos y plazos de los acuerdos que dieron origen a los fondos utilizados para esta financiación.

**ARTÍCULO 12 –**  Las disposiciones de la Ley de Contabilidad serán observadas por el Banco en la ejecución de su presupuesto anual.

**ARTÍCULO 13 –**  Las relaciones del Banco con el Poder Ejecutivo se mantendrán por intermedio del Ministerio de Economía.

**ARTÍCULO 14 –**  La Provincia garantiza los depósitos recibidos, bonos y demás obligaciones emitidas por el Banco de la Provincia de Buenos Aires.

# CAPITULO III

## CAPITAL Y UTILIDADES

**ARTÍCULO 15 –**  El capital del Banco será determinado anualmente por el Directorio, para cada una de las tres (3) Secciones, en las sumas que aquél les fije por aplicación del artículo 17.

**ARTÍCULO 16 –**  El ejercicio financiero del Banco se cerrará el 31 de diciembre de cada año, debiendo publicarse el Balance General y la Cuenta de Ganancias y Pérdidas en el Boletín Oficial de la Provincia y en, por lo menos, dos (2) diarios que se editen en jurisdicción provincial y dos (2) en la Capital Federal.

**ARTÍCULO 17 –**  Cada una de las Secciones que constituyen el Banco, liquidará separadamente sus utilidades al cierre del ejercicio y las transferirá al fondo común de beneficios.
Previa deducción de las sumas necesarias para saneamiento del activo y del diez (10) por ciento de los respectivos beneficios netos para reserva legal de cada Sección, las utilidades realizadas se destinarán:

· A Capital de la Sección Crédito de Inversión, el remanente neto de utilidades producida por la misma.
· Para aumento de capital y reservas de cualquiera de las Secciones y para fondos de previsión,previsión social e inversiones, en las proporciones que determine el Directorio.

# CAPITULO IV

## GOBIERNO DEL BANCO

**ARTÍCULO 18 –**  El Banco será gobernado por un Directorio compuesto por un (1) Presidente y ocho (8) vocales argentinos designados por el Poder Ejecutivo con acuerdo del Senado.

**Carta Orgánica**
del Banco de la Provincia de Buenos Aires



Los miembros durarán cuatro (4) años en sus funciones, pudiendo ser reelectos. El Presidente y los vocales, deberán contar con antecedentes de reconocida idoneidad. Los vocales se renovarán por mitades cada dos (2) años.

**ARTÍCULO 19 –**   No podrán ser Presidentes o Directores:

a) Los legisladores, los magistrados, los intendentes municipales y miembros de los consejos deliberantes;

b) Los funcionarios o empleados a sueldo, sean de los gobiernos de la Nación, de las provincias o municipalidades;

c) Los administradores, presidentes, directores, gerentes o emplea-dos de otros bancos.

Las personas que desempeñando el cargo de presidente o director llegaren a encontrarse comprendidas en alguna de las disposiciones enumeradas en este artículo cesarán inmediatamente en sus funciones. Quedan exceptuados de las inhabilitaciones precedentes los que desempeñen cargos en organismos oficiales de coordinación económica o financiera de orden nacional, provincial o interprovincial y los que desempeñen cargos docentes.

**ARTÍCULO 20 –**   En la primera sesión que realice cada año el Directorio nombrará de su seno al Vicepresidente y al Secretario. Por ausencia o impedimento del Presidente lo reemplazará el Vicepresidente. En ausencia de ambos el Directorio será presidido por el director de más edad. En caso de ausencia o impedimento del Secretario lo reemplazará el miembro que designe el Directorio.

**ARTÍCULO 21 –**   Si el cargo de Presidente o Director quedara vacante será provisto nombrándose reemplazante para completar el período.

**ARTÍCULO 22 –**   El Directorio se reunirá por lo menos dos (2) veces por semana con "quórum" de cinco (5) miembros incluido el Presidente. Las decisiones se tomarán por mayoría de votos y el Presidente, en caso de empate, tendrá doble voto.

**ARTÍCULO 23 –**   El Directorio no puede delegar ninguna de sus facultades en el Presidente. Los Directores que autoricen operaciones prohibidas en la Ley Orgánica serán responsables personal y solidariamente.

**ARTÍCULO 24 –**   Son facultades y obligaciones del Directorio:

a) Hacer cumplir la Ley Orgánica y demás leyes relacionadas con el funcionamiento del Banco;

b) Acordar, establecer, autorizar y reglamentar todas las operaciones, servicios y gastos delestablecimiento;

c) Reglamentar los créditos que puedan acordarse;

d) Establecer los márgenes dentro de los cuales la Gerencia General, Gerencias Departamentales yGerencias de Sucursales podrán acordar los créditos;

e) Celebrar con el Banco Central de la República Argentina los convenios que crea conveniente al efectode una acción concordante y del régimen de redescuento aplicable;

f) Designar el Gerente General, Subgerente General y Gerentes Departamentales a propuesta del Presidente;

g) Aprobar anualmente el Balance General, la Cuenta de Ganancias y Pérdidas, el plan de destino de lasutilidades del Ejercicio y la Memoria, todo lo cual será informado al Poder Ejecutivo;

h) Crear las reservas y fondos de previsión que juzgue convenientes para la consolidación de lasituación financiera del Banco;



i) Dictar los reglamentos internos;

j) Establecer filiales o representaciones en la República y en el extranjero;

k) Designar corresponsales en el interior y en el extranjero, reglamentando sus relaciones con el Banco;

l) Autorizar el otorgamiento de poderes generales y especiales fijando las facultades y atribuciones conferidas;

m) Proyectar el presupuesto anual de gastos, que será elevado a sus efectos, al Poder Ejecutivo;

n) Remover al personal, previo sumario, y reglamentar las medidas disciplinarias respecto al mismo;

o) Reunirse en sesiones ordinarias y extraordinarias en cualquiera de las casas del Banco y todas las veces que estime necesarias;

p) Ejercer las acciones judiciales con todas las facultades de ley sin limitación;

q) Acordar quitas, conceder esperas o concertar arreglos con los deudores de cualquiera de las secciones y aceptar o adquirir inmuebles u otros bienes o valores en pago o defensa de los créditos del Banco;

r) Adquirir los inmuebles indispensables para el funcionamiento de las casas, filiales o dependencias del Banco y enajenarlos cuando así convenga. Vender los bienes raíces, muebles u otros valores que el establecimiento haya recibido en pago o se le hayan adjudicado en defensa de sus créditos o que por otro título adquiriere.

s) El Directorio no podrá otorgar préstamos a personas jurídicas del Sector Privado superiores a pesos DOS MIL MILLONES ($2.000.000.000), en los cuales el monto a desembolsar supere el CINCUENTA POR CIENTO (50%) de sus deudas bancarias con el Sistema Financiero, excepto que se trate de proyectos de inversión que cuenten con calificación de al menos DOS (2) compañías calificadoras de Riesgo de primera línea, que confirmen la capacidad de repago. Tampoco podrá otorgar préstamos a personas jurídicas del Sector Privado, cuyo monto supere el OCHO POR CIENTO (8%) del Patrimonio Neto del Banco, ni otorgar préstamos a personas humanas, superiores a pesos CUATROCIENTOS MILLONES ($400.000.000).
Los límites del párrafo anterior podrán incrementarse hasta DOSCIENTOS POR CIENTO (200%), siempre que el complemento sea garantizado con garantías preferidas clases "A" o "B", según la reglamentación del Banco Central de la República Argentina. Podrán computarse a estos efectos las garantías ya constituidas para tramos de créditos que originalmente no superen los límites aquí establecidos. El incremento de límite admitido para los préstamos respaldados con garantías preferidas clases "A" o "B", será de aplicación a los préstamos a empresas constructoras destinados a la financiación de obra pública de la Provincia de Buenos Aires y a proveedores del mismo Estado, cuando estén garantizados por cesión o caución de derechos respecto de títulos o documentos de cualquier naturaleza que, fehacientemente instrumentados, aseguren que el Banco podrá disponer de los fondos en concepto de cancelación de la obligación contraída por el cliente, sin necesidad de requerir previamente el pago al deudor. Cuando la operación de crédito esté destinada a financiar operaciones en exportaciones, los préstamos a otorgar a personas jurídicas del Sector Privado no podrán superar, por todo concepto, el monto de SESENTA MILLONES DE DÓLARES ESTADOUNIDENSES (U$S 60.000.000), y para las personas humanas SETECIENTOS CINCUENTA MIL DÓLARES ESTADOUNIDENSES (U$S 750.000).
Quedan excluidas de los límites establecidos en los párrafos precedentes las financiaciones que se realicen con empresas vinculadas o pertenecientes al Grupo Provincia y a Provincia Servicios Financieros.
Los montos consignados en este inciso podrán ser modificados anualmente por la Ley de Presupuesto, en caso de necesidad de adaptar los mismos a una nueva realidad macroeconómica nacional.
Los miembros del Directorio serán solidariamente responsables por el incumplimiento de lo dispuesto en el presente artículo y patrimonialmente por los daños que sufriere el Banco como consecuencia de tal incumplimiento, sin perjuicio del resto de las responsabilidades civiles y penales que pudieran corresponderles.

t) Informar trimestralmente y dentro del mes siguiente al de finalizado cada período, a las Comisiones de Presupuesto

**Carta Orgánica**
del Banco de la Provincia de Buenos Aires



e Impuestos de la Cámara de Diputados y de la Cámara de Senadores, sobre la evolución y situación de los deudores clasificados en situación irregular y en forma analítica para aquellos que además fueran superiores a un millón (1.000.000) de pesos, junto con la presentación de los estados contables trimestrales.

u) Supervisar el estricto cumplimiento por parte de las diferentes jerarquías del Banco de las disposiciones de la Carta Orgánica y de las políticas, normas, manuales e instructivos que sobre la aprobación y recuperación de créditos apruebe el cuerpo, así como del adecuado diseño y eficaz aplicación de los sistemas de control interno sobre el particular.

**ARTÍCULO 25 –**   Cada Director podrá examinar los libros del Banco y pedir que se le suministren todos los datos o esclarecimiento sobre cualquier operación realizada o a realizarse, debiendo en todos los casos manifestar su deseo en las reuniones del Directorio.

**ARTÍCULO 26 –**   El Directorio percibirá como remuneración las sumas que se fijen en el Presupuesto.

## CAPITULO V

### PRESIDENTE

**ARTÍCULO 27 –**   El Presidente del Banco asistirá diariamente al establecimiento y sus facultades y obligaciones son:

a) Cumplir y hacer cumplir la Ley Orgánica y Reglamento del Banco y ejecutar las resoluciones delDirectorio;

b) Presidir las sesiones del Directorio; llevar a su conocimiento todas las disposiciones o asuntosque interesen al Banco; firmar conjuntamente con el Secretario las actas respectivas;

c) Nombrar, promover y trasladar los funcionarios y empleados del Banco, dando cuenta alDirectorio, con excepción del Gerente General, del Subgerente General y Gerentes Departamentalesque serán designados de acuerdo con lo establecido en el artículo 24 inciso f);

d) Representar al Banco y firmar las comunicaciones oficiales y correspondencia del Directorio;suscribir con el Gerente General y el Contador General los balances; firmar los poderes que hubieren deotorgarse a empleados de la institución o a terceros, según acuerdo del Directorio;

e) Convocar a sesión extraordinaria al Directorio cuando lo crea conveniente o lo soliciten por lomenos cuatro (4) Directores;

f) Observar los acuerdos de créditos hechos por el Directorio cuando los considereninconvenientes. En tales casos, para que prevalezca la resolución del Directorio, éste deberá insistir porel voto de los dos tercios (2/3) de los Directores presentes citados especialmente a ese objeto;

g) Absolver por escrito posiciones en juicio, no estando obligado a comparecer personalmente;

h) Designar los vocales que compondrán las comisiones;

i) Resolver los asuntos internos de urgencia, dando cuenta al Directorio en su primera sesión;

j) No otorgar préstamos o renovaciones ni contraer compromisos que obliguen al Banco sin la previa autorización del Directorio.

**Carta Orgánica**
del Banco de la Provincia de Buenos Aires



## CAPITULO VI

### GERENCIA GENERAL

**ARTÍCULO 28 –**   La administración del Banco será ejercida por intermedio del Gerente General y en lo que se le asigne, por el Subgerente General, que deberán ser argentinos.

**ARTÍCULO 29 –**   Las funciones del Gerente General y del Subgerente General serán reglamentadas por el Directorio, siendo los asesores directos del Presidente y Directores.

**ARTÍCULO 30 –**  En dicho carácter de asesores, el Gerente General y en su ausencia el Subgerente General, asistirán a las reuniones del Directorio, cuando éste lo requiera, con voz pero sin voto, pudiendo solicitar se deje constancia en actas de su opinión cuando así lo estimen conveniente en algún asunto.

## PRIMERA PARTE

### SECCIÓN BANCARIA

## CAPITULO VII

### OPERACIONES

**ARTÍCULO 31 –**   El Banco en su Sección Bancaria, podrá realizar todas las operaciones que el Directorio juzgue convenientes y que no estando prohibidas por ésta u otras leyes pertenezcan por su naturaleza al giro común de los establecimientos bancarios. Promoverá la economía nacional, preferentemente de las industrias fundamentales de la Provincia y la estabilidad monetaria en cuanto pueda gravitar su acción. Pero no podrá:

a) Adquirir bienes raíces, salvo aquellos Indispensables para uso propio del Banco, o los que se viere obligado a adquirir en defensa de sus créditos o a recibir en pago o garantía de lo que se le adeude, con cargo de enajenar estos últimos a la mayor brevedad;

b) Participar, directa o Indirectamente en empresas comerciales, agrícolas, ganaderas, industriales o de cualquier otro tipo, salvo que se tratare de entidades financieras, cualquiera sea su clase; nacionales o internacionales, o cuando se viera obligado a intervenir en defensa de sus créditos;

c) Adquirir para sí fondos públicos o municipales, hacer préstamos a gobiernos o administraciones públicas, salvo lo dispuesto en los artículos 9, 10, 11 y 32 de esta Ley Orgánica.

**ARTÍCULO 32 –**   La prohibición que establece el artículo 31 inciso c) y limitaciones del artículo 11, no incluyen las siguientes operaciones:

a) Préstamos a reparticiones públicas, comerciales o industriales, de la Nación o de la Provincia y entidades de derecho público no estatales, que tengan patrimonio propio y una dirección o administración autárquica y a sociedades comerciales con participación de los Estados Nacional o Provincial, cuyas explotaciones en todos los casos hayan devengado beneficios en los dos últimos ejercicios, de acuerdo a los siguientes márgenes independientes:

1) Reparticiones provinciales: hasta el veinticinco (25) por ciento del Capital y Reservas del Banco;
2) Reparticiones nacionales: hasta el veinte (20) por ciento del Capital y Reservas del Banco;
3) Sociedades comerciales con participación de los Estados Nacional o Provincial y entidades de derecho público no estatales, hasta el veinte (20) por ciento del Capital y Reservas del Banco;

**Carta Orgánica**
del Banco de la Provincia de Buenos Aires



b) Avales que se concedan a entidades nacionales del carácter indicado en el inciso precedente. Estas operaciones se regirán por las normas generales de la actividad comercial del Banco;

c) Préstamos, avales y fianzas que se acordaren a las Municipalidades de la Provincia de Buenos Aires, con destino a la ejecución de trabajos de infraestructura urbana, edificios públicos, compra y refacción de maquinarias e implementos para prestar servicios públicos y obras de interés general y social. El total de estos préstamos, no podrá exceder en conjunto, del doscientos (200) por ciento del saldo promedio de las cuentas de éstas en el Banco, en los últimos doce meses anteriores a contar desde la fecha de concesión del préstamo. El plazo máximo de estas operaciones, será excepcionalmente hasta diez (10) años, con amortizaciones proporcionales que deben comenzar no más tarde del segundo año;

d) Comprar, caucionar, descontar y vender letras de tesorería y otros títulos públicos, que permitan la colocación transitoria de fondos disponibles o posibiliten una mayor seguridad en sus operaciones.

**ARTÍCULO 33 –**   El Banco podrá otorgar tipos especiales de préstamos destinados al incremento de la agricultura, forestación, ganadería, industria, pesca, construcción de silos y elevadores y otras actividades de interés para el desarrollo de la economía provincial, aplicando tasas y plazos preferenciales en las condiciones que determine el Directorio.

**ARTÍCULO 34 –**   De acuerdo con lo establecido en el artículo 1 de esta Ley Orgánica y artículo 69 de la Ley Nacional Número 1804, el Banco, al efectuar operaciones de garantías hipotecarias, podrá disponer su preanotación por oficio a los Registros Inmobiliarios, antes de efectuar el préstamo y comprobado el dominio y la libertad de disposición de la finca ofrecida;

a) La preanotación de la hipoteca originará una carga real sobre el inmueble, con privilegio especial sobre éste por el importe del anticipo, sus intereses y gastos, el que durará cuarenta y cinco (45) días corridos desde la inscripción y será prorrogable a pedido del Banco, por el mismo lapso y en la misma forma cuantas veces sea necesario;

b) La preanotación caducará en cualquiera de los siguientes casos:

  - Por el mero vencimiento del término fijado en el inciso anterior;
  - Por el pago del crédito y de sus intereses y gastos, que comunicará al Banco por oficio directo;
  - Por la inscripción de la escritura pública de la hipoteca que garantice el crédito total;

c) Si por incumplimiento del contrato, por fallecimiento o por cualquier otra causa no seformalizara la escritura pública de la hipoteca, el Directorio podrá disponer la inmediata ejecución delinmueble como si se tratara de una deuda de plazo vencido, garantizada con derecho real de hipotecaen el grado que se haya preanotado y conforme a sus procedimientos especiales de ejecución si loshubiere, con la base del crédito más los intereses, impuestos, tasas y gastos;

d) Las inscripciones en los Registros de la Propiedad de estas preanotaciones pagarán losderechos correspondientes a la hipoteca sobre la base del crédito acordado, debiendo deducirseposteriormente, al realizarse la hipoteca, del monto del impuesto correspondiente a ésta, el importe ya pagado.

**ARTÍCULO 35 –**   En caso de urgencia las escrituras de constitución de hipotecas a favor del Banco sobre inmuebles situados en la Provincia, podrán otorgarse sin certificados que acrediten el pago de los impuestos y de tasas de servicios o de mejoras, provinciales o municipales, sin perjuicio de los derechos del fisco y de la municipalidad respectiva, para hacer efectivos los importes que por esos conceptos se les adeudare a la fecha de la escrituración.

**ARTÍCULO 36 –**   La Provincia se constituye en garante subsidiario ante el Banco de los saldos no cancelados por los empleados de la Administración Provincial correspondientes a los anticipos de sueldos que la Institución les otorgue. Igualmente responderá de los quebrantos que el Banco tuviese en la ejecución de los créditos hipotecarios provenientes de la cartera transferida por la ex Caja Popular de Ahorros y los que efectuase en virtud de las disposiciones de la Ley Nº 4858.

**Carta Orgánica**
del Banco de la Provincia de Buenos Aires



**ARTÍCULO 37 –**   En los préstamos especiales para empleados públicos u otros afiliados a Cajas de Previsión Social, los tesoreros o habilitados de sus oficinas respectivas, los empleadores o las Cajas de jubilaciones, según corresponda, descontarán mensualmente o en ocasión de todo pago de remuneraciones, de los haberes del empleado, a simple requerimiento del Banco, las cantidades necesarias para el pago de los servicios del préstamo, seguros, gastos, impuestos, tasas y atrasos y las transferirán al Banco hasta la cancelación de la deuda. En caso de incumplimiento se procederá a la ejecución del préstamo.

## SEGUNDA PARTE

### SECCIÓN CRÉDITO HIPOTECARIO

## CAPITULO VIII

### ORGANIZACIÓN

**ARTÍCULO 38 –**   El capital de la Sección Crédito Hipotecario está constituido según las prescripciones del artículo 15 de esta Ley Orgánica.

**ARTÍCULO 39 –**   El activo de la Sección Crédito Hipotecario está formado por el monto de los préstamos hipotecarios concedidos sea en dinero efectivo o en bonos, con más sus accesorios.

**ARTÍCULO 40 –**   El pasivo de la Sección Crédito Hipotecario está constituido:

a) Por los bonos hipotecarios y obligaciones en circulación;

b) Por las sumas recibidas para invertir en préstamos hipotecarios, suministradas por el Banco Central de la República Argentina, por el Instituto de Previsión Social de la Provincia y otras reparticiones o por terceros.

**ARTÍCULO 41 –** El capital, la reserva y el activo de la Sección Crédito Hipotecario garantizan y están afectados al pago de su pasivo.

## CAPITULO IX

### OPERACIONES

**ARTÍCULO 42 –**   La Sección Crédito Hipotecario puede realizar, en general, préstamos hipotecarios garantizados con primera hipoteca en dinero efectivo y en bonos hipotecarios, a corto o largo plazo, con o sin amortización acumulativa. En particular puede realizar las siguientes operaciones:

a) Acordar créditos para la adquisición y para promover la subdivisión de la tierra, cuidando de preservar la medida que constituya una unidad económica;

b) Acordar créditos para forestación y electrificación, promoción y descentralización industrial, especialmente lechera, pesquera, siderúrgica y de celulosa, construcción y ampliación de edificios destinados a instalación de fábricas, hoteles, hosterías, silos, mercados y cámaras frigoríficas en el territorio provincial;

c) Acordar créditos para la construcción de edificios destinados a viviendas;

d) Programar y construir unidades de vivienda y/o barrios para arrendar o enajenar, a fin de eliminar gradualmente, en las áreas urbanas, las viviendas insalubres, ejecutando dentro de sus planes las obras de urbanización y saneamiento que sean necesarias, creando organismos que estimulen el progreso vecinal, pudiendo a tales fines comprar y vender toda clase de bienes inmuebles y muebles;



e) Acordar créditos para la construcción, por parte de cooperativas agrarias, de elevadores de granos y edificios para almacenes;

f) Emitir bonos hipotecarios que devenguen interés y amortizables a corto o largo plazo;

g) Emitir bonos hipotecarios que den derecho a premios adjudicados por sorteo. Estos bonos podrán ser rescatables transcurrido el plazo establecido o bien podrán ser emitidos amortizables en las condiciones previstas en el inciso anterior;

h) Efectuar acuerdos financieros para facilitar en el extranjero la colocación y atención de los servicios de los bonos hipotecarios u otras obligaciones.

i) Emitir otras obligaciones y obtener créditos dentro o fuera del país en moneda nacional o extranjera para invertir su importe en préstamos en efectivo, garantizados con primera hipoteca o bajo las condiciones y garantías especiales que determine el Directorio;

j) Organizar cajas de ahorro, sobre la base de invertir los fondos depositados en préstamos hipotecarios;

k) Encargarse, por cuenta de terceros, de la colocación de dinero en hipoteca en calidad de mandatario;

l) Recibir depósitos destinados a crear un fondo para Préstamos y Ahorro, que tributará los intereses a fijar por el Directorio;

m) Acordar crédito para adquirir, construir y ampliar unidades de vivienda individuales o colectivas y/o barrios, por el sistema de ahorro y préstamo, con facultad de reajuste de los saldos deudores de los préstamos, proporcionalmente a la desvalorización monetaria y al acrecentamiento de las retribuciones, sueldos y jornales de los "Prestatarios", con los planes que establezca el Directorio;

n) Efectuar inversiones de carácter transitorio en colocaciones fácilmente liquidables. Las operaciones a que se hace referencia en los incisos a), b), c), d) y e), se realizarán siempre en primera hipoteca, en dinero efectivo o en bonos hipotecarios, bajo las condiciones que determine el Directorio.

**Artículo 43 –**  El Banco pagará con puntualidad el servicio de las obligaciones y bonos hipotecarios que emita, y efectuará igualmente las amortizaciones correspondientes.

**Artículo 44 –**  Las hipotecas constituidas a nombre del Banco serán sobre inmuebles libres de todo gravamen. Los títulos de dominio serán perfectos, no debiendo adolecer de vicio o defecto legal.

## CAPITULO X

### BONOS HIPOTECARIOS

**Artículo 45 –**  El Directorio del Banco fijará los tipos de interés y amortización ordinaria de los bonos hipotecarios, la división y fechas de sus servicios y las bases de su emisión, pudiendo efectuar amortizaciones extraordinarias cuando lo considere conveniente.

**Artículo 46 –**  Los bonos hipotecarios se emitirán formando series. Pertenecen a una misma serie los que devengan un mismo interés, tienen el mismo fondo de amortización y un término igual para el pago del interés y amortización.

**Artículo 47 –**  El Banco emitirá los bonos hipotecarios en los valores que crea conveniente y por los totales que para cada serie resuelva el Directorio.

**Artículo 48 –**  Los bonos hipotecarios expresarán en su texto la tasa de interés que será abonada por el Banco y el tanto por ciento de la amortización.

**Carta Orgánica**
del Banco de la Provincia de Buenos Aires



**ARTÍCULO 49 –**   Los tenedores de bonos hipotecarios sólo tienen acción contra el Banco. Este deberá abonar en las épocas respectivas los intereses y el capital de los bonos amortizables sorteados y los premios que se hubiesen adjudicado a los bonos emitidos en ese plan, no admitiendo para su pago oposición de terceros, salvo el caso de que medie orden de autoridad competente.

**ARTÍCULO 50 –**   El pago de la renta de los bonos hipotecarios se hará en todas las casas y sucursales del Banco y será satisfecho en dinero efectivo al expirar el respectivo período. El Banco fijará las fechas de los pagos, que serán comunes para los tenedores de una misma serie.

**ARTÍCULO 51 –**   Los bonos hipotecarios en vigor no podrán superar el importe de los préstamos de esa clase.

**ARTÍCULO 52 –**   Los bonos hipotecarios llevarán en facsímil la firma del Presidente del Banco y del Director Secretario y serán suscriptos por el Gerente o Subgerente de la Sección y por el o los escribanos del Banco que el Directorio expresamente autorice.

**ARTÍCULO 53 –**   Las cantidades percibidas en concepto de cuotas de amortización y los intereses devengados por los bonos rescatados constituyen el fondo amortizante de cada serie, en el cual se incluirán, además, los importes que se reciban en efectivo por anticipo o cancelación de préstamo. Con las sumas disponibles de cada fondo amortizante, se rescataran por sorteo y a la par los bonos correspondientes. Los sorteos se realizarán con anticipación de un trimestre al día designado para su pago.

**ARTÍCULO 54 –**   Los bonos sorteados no devengarán interés a favor de los tenedores desde el día señalado para su pago.

**ARTÍCULO 55 –**   A efecto contable, los bonos sorteados continuarán devengando interés para el Banco, mientras no se apliquen a la cancelación de las hipotecas redimidas por el transcurso natural del tiempo o por pago anticipado.

**ARTÍCULO 56 –**   Sin perjuicio de los rescates que prescribe el artículo 53, el Banco tiene derecho a efectuar rescates extraordinarios también a la par, empleando el sorteo en la cantidad que acuerde el Directorio.

## CAPITULO XI

### PRÉSTAMOS

**ARTÍCULO 57 –**   No podrán acordarse préstamos hipotecarios sobre los siguientes inmuebles:

   a) Minas y canteras;

   b) Porciones indivisas, salvo el caso que la hipoteca sea constituida sobre la totalidad del inmueble;

   c) Inmuebles que no produzcan renta cierta y permanente o no sean aptos para producirla.

**ARTÍCULO 58 –**   La hipoteca y su inscripción en el Registro de Hipotecas conservan su eficacia legal durante el tiempo de vigencia del contrato de acuerdo al artículo 69 de la Ley Nacional Nº 1804. No obstante, el Banco tiene facultad de pedir directamente y cuantas veces lo estime necesario, la renovación de la inscripción, la que se efectuará por el Registro de Hipotecas a la sola presentación por el Banco de un testimonio de la escritura originaria del préstamo.

**ARTÍCULO 59 –**   Los contratos de préstamos hipotecario serán libres de impuestos en la medida que lo establezcan las leyes vigentes. En tal caso se expedirán los testimonios de las escrituras en papel sellado de actuación.

**ARTÍCULO 60 –**   El deudor no podrá transferir el inmueble hipotecado mientras el Banco no haya aceptado el nuevo deudor, sin cuyo requisito no se libera de las obligaciones contraídas en el contrato de préstamo. El respectivo testimonio de traspaso de dominio debe depositarse en el Banco dentro de los treinta (30) días siguientes a la fecha de la aceptación y hasta su entrega, el deudor primitivo no queda desligado de su obligación.



**Carta Orgánica**
del Banco de la Provincia de Buenos Aires

**ARTÍCULO 61 –**  El Banco podrá asegurar contra incendio en la Caja de Jubilaciones, Subsidios y Pensiones del Personal del Banco de la Provincia de Buenos Aires y por cuenta del deudor las construcciones que existan o que se levanten en el bien hipotecado. En los préstamos de fomento de edificación o adquisición de vivienda podrá exigir, además, que el deudor contrate un seguro de vida habitación en la citada Institución. En caso de que la Caja de Jubilaciones, Subsidios y Pensiones del Personal del Banco de la Provincia de Buenos Aires no tomare el seguro, el Banco podrá designar la compañía aseguradora, cuya póliza aceptará.

**ARTÍCULO 62 –**  El deudor hipotecario no podrá realizar los siguientes actos o contratos:

a) Arrendar, local o conceder el uso o explotación de los inmuebles hipotecados sinconsentimiento expreso y por escrito del Banco;

b) Constituir sobre los inmuebles hipotecados a favor del Banco ulteriores hipotecas o derecho real de anticresis.
La infracción de estas disposiciones da derecho al Banco para:

-Exigir la inmediata cancelación del préstamo;
-Aplicar sobre la deuda un interés penal desde el momento de la infracción.
-Proceder a la venta de los bienes en la forma y condiciones establecidas en el artículo 65.

**ARTÍCULO 63 –**  En los préstamos hipotecarios, el deudor que demore el pago del servicio abonará sobre el importe de éste y por todo el tiempo de la mora, el interés punitorio que se establezca en el contrato, el que será fijado por el Directorio.

**ARTÍCULO 64 –**  El Banco podrá proceder por sí, sin forma alguna de juicio, al embargo de la renta de la propiedad hipotecada para aplicarla al pago de los servicios y conservación de la propiedad, si el deudor dejase pasar noventa (90) días desde la fecha en que debió pagar el servicio respectivo. Esta facultad no impedirá que el Banco, si lo estima conveniente, proceda a la venta de la propiedad hipotecada de conformidad con el artículo 65. Si la propiedad no produjera arrendamiento el Banco lo fijará, procediendo enseguida en la forma anteriormente indicada.

**ARTÍCULO 65 –**  En todos los casos en que el Banco tenga derecho a ordenar la venta en remate del inmueble hipotecado procederá a ello por sí, sin forma alguna de juicio, al mayor postor y con base de la deuda por todo concepto y otorgará llegado el caso, la correspondiente escritura a favor del comprador, colocándolo, si así lo estimare, en posesión del inmueble libre de ocupantes, ya sean éstos el propietario o terceros a nombre del mismo, cualesquiera sean sus títulos, quedando subrogado el comprador en todos los derechos que correspondan al deudor sobre dichos inmuebles. En el contrato de préstamo el deudor conferirá mandato irrevocable al Banco para otorgar y firmar la escritura traslativa de dominio, el que podrá ejercitar aun en el caso de concurso, quiebra o fallecimiento del deudor. El mismo mandato comprenderá la facultad de dar posesión al comprador y representar al deudor en cualquier juicio que pueda promoverse contra él y que afecte la propiedad hipotecada, así como para iniciarlos contra terceros detentadores de la misma.

**ARTÍCULO 66 –**  Cuando los bienes hipotecados estuviesen en situación de venta, en virtud de las disposiciones de esta Ley Orgánica, el Banco podrá:

a) Proceder a su venta en conjunto o divididos en lotes, según lo considere más ventajoso,pudiendo ceder al Estado o a las municipalidades, al precio que se convenga, o gratuitamente, lasextensiones necesarias para abrir calles o caminos;

b) Representar al deudor en todo juicio que se promueva contra la propiedad hipotecada o iniciarlos contra terceros detentadores y convenir transacciones, firmando los documentos correspondientes;

c) Tomar posesión de los bienes hipotecados en la forma y condiciones determinadas en el artículo 71.

d) Una vez aprobado el remate de los bienes hipotecados o cuando le hayan sido adjudicados, desalojar por sí solo y sin intervención de los jueces, requiriendo directamente el auxilio de la fuerzapública, a los locatarios u ocupantes de los inmuebles, salvo el caso que tuvieren aquel carácter aconsecuencia de contratos de locación celebrados con autorización expresa y por escrito del Banco;



e) Efectuar por cuenta del deudor, en la propiedad hipotecada, las reparaciones que estimenecesarias y tomar las medidas conducentes a la conservación del inmueble.

**ARTÍCULO 67 –**  Los remates serán anunciados, cuando menos, durante tres (3) días consecutivos en dos (2)diarios que designará el Directorio. Los anuncios se harán con una anticipación mínima de ocho (8)días a la fecha de realización del remate, a contar desde la última publicación.

**ARTÍCULO 68 –**  Los remates ordenados por el Banco serán realizados por un martillero público de la matrícula o por empleado del Banco que el Directorio designará donde no hubiere martillero. En el primer caso el martillero solamente podrá cobrar la comisión que establezca el Directorio. En el segundo caso el empleado no percibirá comisión y el Banco cobrará únicamente los gastos que hubiere. Cuando no se efectuare el remate no se cobrará comisión alguna pero se reembolsarán los gastos realizados.

**ARTÍCULO 69 –**  El Directorio, en todos los casos en que el Banco tenga derecho a vender el o los inmuebles hipotecados, está facultado, a su exclusiva elección para disponer el remate:

    · En la Casa Matriz, sita en la Capital de la Provincia;
    · En la Casa Central, establecida en la ciudad de Buenos Aires;
    · En la sucursal donde se solicitó el préstamo o en la que se escrituró el mismo;
    · En la localidad donde esté situado el inmueble.

**ARTÍCULO 70 –**  Toda venta está sujeta a la aprobación del Directorio. El comprador deberá abonar el precio dentro de los diez (10) días de la aprobación. Si no lo abonare, el Banco podrá dejar sin efecto la venta con pérdida de la seña entregada, o bien, podrá permitirse que el comprador continúe con la deuda hipotecaria en las condiciones que se establezcan en la reglamentación en vigor y que se fijen en el aviso de remate.

**ARTÍCULO 71 –**  El Banco podrá por sí solo requerir el auxilio de la fuerza pública para tomar posesión del inmueble hipotecado; para colocar banderas y carteles de remate; para hacer que los interesados y rematadores lo examinen y para dar, en caso de venta, la posesión a los compradores, no obstante la oposición de los propietarios u ocupantes, cualquiera sean sus títulos.

**ARTÍCULO 72 –**  Si la venta no se realizare en el primer remate, el Directorio ordenará, dentro de los ciento ochenta (180) días siguientes, nuevo remate con una base no menor del importe del capital adeudado. Cuando el segundo remate no tuviere éxito queda facultado el Directorio para fijar las bases de los subsiguientes y las fechas en que se realizarán, sin perjuicio de que cuando así lo estime conveniente, resuelva prescindir de ulteriores remates y pedir la adjudicación del inmueble hipotecado. Los jueces deberán decretarla inmediatamente y sin más recaudos que la constancia de haber fracasado los remates ordenados, otorgando la respectiva escritura a favor del Banco por el importe que hubiese servido de base para el último remate, quedando de este modo, aquél, en condiciones de liquidar la cuenta en el cobro del saldo personal.

**ARTÍCULO 73 –**  Si en los dos (2) primeros remates no fuere posible vender el inmueble hipotecado por falta de postores y mientras el deudor esté en mora, el Banco podrá tomar posesión del inmueble a efectos de percibir su renta o producido, o alquilarlo como lo juzgare más conveniente hasta sacarlo nuevamente a remate cuando lo creyere oportuno. Las sumas obtenidas serán aplicadas al pago de los impuestos, al de los servicios y a los gastos de conservación que el Banco considere conveniente realizar. Los jueces harán efectiva la posesión que pida el Banco a la sola presentación de su solicitud.

**ARTÍCULO 74 –**  El Banco podrá ordenar el remate de los inmuebles hipotecados aunque se encuentren embargados en virtud de orden judicial por ejecución de otros créditos y aun cuando el deudor esté concursado o haya sido declarado en quiebra, sea cual fuere la jurisdicción en que se hayan tomado esas providencias. En estos casos, una vez hecha la liquidación de la deuda y cubierto que sea el crédito a su favor y todos los gastos e intereses producidos, el Banco pondrá a disposición de la autoridad judicial respectiva, el sobrante que resultare. En los casos de ejecución, concurso o quiebra del deudor, deberá el Banco, aunque la deuda esté servida con regularidad, hacer uso de su derecho inmediatamente de quedar ejecutoriado el



**Carta Orgánica**
del Banco de la Provincia de Buenos Aires

auto que ordene la venta judicial, a cuyo efecto dicho auto le será notificado. Si el Banco no ordenare el remate dentro de los sesenta (60) días hábiles, contados desde la notificación judicial, el juez podrá disponerlo en la forma ordinaria a pedido de la parte interesada en el juicio.

**ARTÍCULO 75 –**  Los jueces bajo ningún motivo podrán suspender o trabar el procedimiento del Banco para la venta en remate de los inmuebles hipotecados, a menos que se tratare de tercerías de dominio, ni acordar término al deudor; ni detener por oposición de un tercero la percepción del crédito del Banco.

**ARTÍCULO 76 –**  Los Registros de Hipotecas, embargos e inhibiciones levantarán sin más trámite, a pedido del Banco y bajo su responsabilidad, toda inhibición, embargo, segunda hipoteca o cualquier otro gravamen que pese sobre el inmueble vendido, al solo efecto de la escrituración, quedando dicho inmueble sin otro gravamen que el que reconozca a favor del Banco. Para el otorgamiento de la escritura de venta, si el deudor se negara a entregar al Banco el título de dominio del bien hipotecado, hará las veces de tal, a los efectos de lo prescripto por el artículo 6 de la Ley Número 2378, el certificado relativo al mismo que, autenticado por el escribano de la Institución, obre en el archivo de ésta y al cual habrá de ponérsele la nota de ley.

**ARTÍCULO 77 –**  Liquidada la garantía real del préstamo y cuando el precio de venta del inmueble no alcanzare a cubrir íntegramente la deuda por todo concepto, el Banco podrá exigir al deudor, por la vía ejecutiva, el pago del saldo resultante según sus libros. Será documento ejecutivo la escritura de obligación hipotecaria, junto con la liquidación de la deuda que presente el Banco.

**ARTÍCULO 78 –**  El Directorio está facultado para disponer la venta en remate o privadamente, en block o divididos, de los bienes raíces que se adjudiquen al Banco o que por cualquier otro título adquiriese cuando se trate de inmuebles rurales, podrá formular planes de venta que faciliten la mejor formade distribuirlos entre agricultores y ganaderos que exploten personalmente los lotes que adquieran. También para conceder a los adquirentes de los inmuebles a que se refiere el presente artículo,facilidades de pago. Las hipotecas que se constituyan a favor del Banco en garantía de saldo deprecio de los bienes así enajenados, serán regidas por las disposiciones de esta Ley Orgánica para lospréstamos que realiza la Sección Crédito Hipotecario.

## CAPITULO XII

### EMISIÓN DE OBLIGACIONES Y OTROS CRÉDITOS

**ARTÍCULO 79 –**  Las sumas provenientes de préstamos obtenidos por el Banco dentro o fuera del país mediante la emisión de obligaciones o títulos, serán invertidas exclusivamente en préstamos garantizados con primera hipoteca y de acuerdo con las condiciones generales establecidas en la segunda parte de esta Ley Orgánica.

**ARTÍCULO 80 –**  Las obligaciones emitidas o a emitirse deberán estar en todo momento representadas por una cantidad igual o mayor de préstamos hipotecarios.

**ARTÍCULO 81 –**  Las sumas provenientes de amortización o cancelación de préstamos hipotecarios en dinero, serán empleadas inmediatamente en nuevos préstamos de igual clase o en amortizaciones de las obligaciones, de modo que no disminuya en ningún momento la equivalencia entre el activo de la Sección Crédito Hipotecarlo y las obligaciones en circulación.

**ARTÍCULO 82 –**  Las obligaciones pueden emitirse en moneda nacional o en moneda extranjera; los documentos representativos de las obligaciones se extenderán en idioma nacional, pudiendo tener traducción a otros idiomas y transcribirán las partes pertinentes de la presente Ley Orgánica.

**ARTÍCULO 83 –**  El interés y amortización de las obligaciones y las demás condiciones de la emisión, serán determinadas en cada caso por el Directorio. El pago de estas obligaciones se efectuará en moneda nacional.

**ARTÍCULO 84 –**  El Directorio queda autorizado para otorgar las fianzas o garantías reales; abonar los gastos y comisiones que sean necesarias para la emisión y para obtener la admisión de las obligaciones en los mercados y plazas del exterior. Queda

**Carta Orgánica**
del Banco de la Provincia de Buenos Aires



asimismo autorizado para observar los reglamentos de las bolsas extranjeras.

**ARTÍCULO 85 –** El Banco podrá obtener créditos que no estén representados por obligaciones o títulos al portador. Las disposiciones de este título serán aplicadas a esta clase de créditos siempre que sean compatibles con su naturaleza y condiciones.

## TERCERA PARTE

### SECCIÓN CRÉDITO DE INVERSIÓN

### CAPITULO XIII

### OPERACIONES

**ARTÍCULO 86 –** Las operaciones de la Sección Crédito de Inversión comprenderán la financiación a mediano y largo plazo. Asimismo podrá acordar financiación complementaria y limitadamente a corto plazo, y realizar las operaciones que por su naturaleza son inherentes a los bancos de inversión, tales como:

a) Recibir depósitos a plazo;

b) Emitir bonos, obligaciones y certificados de Participación en los préstamos que otorgue u otrosinstrumentos negociables en el mercado local o en el exterior;

c) Otorgar avales, fianzas u otras garantías, y aceptar y colocar letras y pagarés de tercerosvinculados con operaciones en que interviniere;

d) Realizar inversiones en valores mobiliarios vinculados con las operaciones en que interviniere,prefinanciar sus emisiones y colocarlos;

e) Efectuar inversiones de carácter transitorio en operaciones fácilmente liquidables, comocolocaciones en títulos públicos y operaciones de evolución del sector industrial, agroindustrial y/o deinfraestructura;

f) Actuar como fideicomisario y depositario de fondos comunes de inversión, administrar carterasde valores mobiliarios y cumplir otros encargos fiduciarios.

g) Obtener créditos del exterior y actuar como intermediario de créditos obtenidos en monedanacional o extranjera;

h) Realizar operaciones en moneda extranjera;

i) Dar en locación bienes de capital adquiridos con tal objeto;

j) Cumplir mandatos y comisiones conexos con sus operaciones.

**ARTÍCULO 87 –** Los créditos que se acuerden podrán destinarse a financiar proyectos de Promoción Industrial, Agroindustrial y/o infraestructura en el territorio de la Provincia de Buenos Aires, en concordancia con las políticas de desarrollo que establezca el Poder Ejecutivo. Cuando razones de interés general lo justifiquen, a juicio del Directorio, los créditos podrán orientarse a financiar inversiones en territorio argentino fuera de los límites de la Provincia de Buenos Aires.

**Carta Orgánica**
del Banco de la Provincia de Buenos Aires



# CUARTA PARTE

# CAPITULO XIV

## DISPOSICIONES VARIAS

**ARTÍCULO 88 -**  El Banco continuará encargado por cuenta y orden del Gobierno de la liquidación de los valores del Activo correspondiente a operaciones anteriores al 1º de junio de 1906.

**ARTÍCULO 89 -**  El Banco contribuirá mensualmente a la Caja de Jubilaciones, Subsidios y Pensiones de su personal, con el porcentaje que determine la ley respectiva como aporte jubilatorio patronal. Además contribuirá hasta con un cinco (5) por ciento del total de las remuneraciones que abone a su personal por todo concepto, para la formación de un fondo de acumulación destinado a mejorar beneficios jubilatorios y pensionarios de aquélla, conforme a las disposiciones estatales que se dicten en la Provincia para los beneficiarios del Instituto de Previsión Social. Queda autorizado el Directorio para fijar, con destino a cubrir el déficit potencial de la Caja resultante de estudios actuariales, la contribución anual del Banco, la que se tomará de sus utilidades líquidas.

**ARTÍCULO 90 -**  La Provincia de Buenos Aires restituirá al Banco con fondos del producido de la percepción de impuestos y demás rentas fiscales, las pérdidas de las operaciones de fomento que realice, previo convenio con el Poder Ejecutivo.

**ARTÍCULO 91 -**  Los honorarios de los abogados, escribanos y otros profesionales del Banco, serán fijados por el Directorio con exclusión de la ley que rija la materia.

**ARTÍCULO 92 -**  Los actos y contratos que realice el Banco podrán ser protocolizados, cuando así lo disponga el mismo, en la Escribanía General del Gobierno y en la forma que reglamente el Poder Ejecutivo.

**ARTÍCULO 93 -**  El Banco podrá, previa conformidad del Poder Ejecutivo, conceder préstamos para construcción, adquisición o reparación de edificios destinados a entidades subvencionadas por la Provincia, afectándose el importe anual de la subvención a la amortización e intereses de aquellos préstamos. Su monto no podrá exceder de la suma que resulte de multiplicar el importe de la subvención anual por el plazo máximo de diez (10) años que se fija para la amortización de dicho préstamo. También podrán acordarse estos mismos préstamos a las municipalidades de la Provincia, afectándose el importe de la participación acordada a la respectiva municipalidad por impuestos que percibe la Provincia, siendo el plazo máximo de amortización el señalado precedentemente.

**ARTÍCULO 94 -**  Quedan derogadas todas las disposiciones que se opongan a la presente Ley Orgánica.

# QUINTA PARTE

# CAPITULO XV

## DISPOSICIÓN TRANSITORIA

**ARTÍCULO 95 -**  A fin de cumplir con las disposiciones de esta Ley Orgánica en lo relacionado con los préstamos acordados a la Nación y provincias, el Directorio queda facultado:

a) Para convenir con el Poder Ejecutivo la amortización de la deuda que exceda a lo establecido enel artículo 11, segunda parte;

b) Para rebajar lo que corresponda sobre el saldo excedido que se registra en las cuentas del Gobierno de la Nación, en cuanto se convenga con las respectivas autoridades;

c) Para convenir el régimen de amortización de otras deudas oficiales.

**Carta Orgánica**
del Banco de la Provincia de Buenos Aires



El texto de la presente Carta Orgánica fue sancionado por Decreto-Ley Nº 9.434/79, incluye las modificaciones introducidas por Decreto-Ley Nº 9.840/82 y ha sido ordenado de acuerdo con el Decreto Nº 9.166/86.

El artículo 10 del Decreto-Ley Nº 9.434/79, fue modificado por la Ley de la Provincia de Buenos Aires Nº 10.766. Los artículos Nº 18, 22 y 27 fueron modificados por la Ley de la Provincia de Buenos Aires Nº 12.354.

Los artículos Nº 18 y 24 fueron modificados por la Ley de la Provincia de Buenos Aires Nº 12.726.

El artículo Nº 24 fue modificado en su inciso s) por la Ley de la Provincia de Buenos Aires Nº 13.072.

Los artículos Nº 18, 22 y 27 fueron modificados por la Ley de la Provincia de Buenos Aires Nº 13.174.

El artículo Nº 24 fue modificado en su inciso s) por la Ley de la Provincia de Buenos Aires Nº 13.786.

El artículo Nº 24 fue modificado en su inciso s) por la Ley de la Provincia de Buenos Aires Nº 13.929.

El artículo Nº 24 fue modificado en su inciso s) por la Ley de la Provincia de Buenos Aires Nº 14.062.

El artículo Nº 24 fue modificado en su inciso s) por la Ley de la Provincia de Buenos Aires Nº 14.199.

El artículo Nº 11 bis fue incorporado por la Ley de la Provincia de Buenos Aires Nº 14.331.

Los artículos Nº 7 y Nº 24 en su inciso s) fueron modificados por la Ley de la Provincia de Buenos Aires Nº 14.393.

El artículo Nº 24 fue modificado en su inciso s) por la Ley de la Provincia de Buenos Aires Nº 14.552.

El artículo Nº 24 fue modificado en su inciso s) por la Ley de la Provincia de Buenos Aires Nº 14.879.

El artículo Nº 24 fue modificado en su inciso s) por la Ley de la Provincia de Buenos Aires Nº 15.394.

El artículo Nº 24 fue modificado en su inciso s) por la Ley de la Provincia de Buenos Aires Nº 15.480.





# Charter of Banco de la Provincia de Buenos Aires

**Charter**
of Banco de la Provincia de Buenos Aires



# GENERAL PART

# CHAPTER I

## GENERAL PROVISIONS

**ARTICLE 1 –**    Banco de la Provincia de Buenos Aires, as a State-owned Bank, is a self-administered public entity, the origin, guaranties and privileges of which are set forth in the Preamble and in Sections 31 and 104 of the National Constitution, in the National Law No. 1029 based on contractual matters, and in the laws of the Province.

**ARTICLE 2 –**    The Bank shall have its registered office in the Capital of the Province of Buenos Aires and, by resolution of its Board of Directors, it shall be entitled to establish offices, branches, agencies and correspondents within the country or abroad.

**ARTICLE 3 –**    The Bank shall consist of a Banking Section, a Mortgage Loan Section and an Investment Loan Section, each of which shall operate pursuant to its own financial regulations and shall have its separate capital, reserves, assets and liabilities, but all of them shall be subject to the joint control and management of the Bank's Board of Directors and Central Administration.

**ARTICLE 4 –**    The Bank, its assets, acts and doings, agreements, contracts and transactions as well as the rights arising therefrom in its favor shall be exempted from any liens, taxes, charges or contributions of any nature whatsoever. The Bank shall only pay for water rates, charges for street lighting, cleaning and maintenance services, and improvement assessments.

**ARTICLE 5 –**     The Bank's loans shall rank at least pari passu with those granted by any other bank authorized by special laws.

**ARTICLE 6 –**    All fiscal revenues, court-ordered payments as well as any monies from any administrative offices, agencies or government departments of the Province, even if created by special laws, shall be deposited with the Bank free of any charges whatsoever.
Notwithstanding the provisions of the preceding paragraph, the Bank shall take interest-accruing court-ordered payments under the terms set forth by the Board of Directors, whenever so determined by a judge at the request of any interested party.
Article 7 - The Bank shall act as the formal Treasurer for the Municipalities of the Province, in all the cities or locations where the Bank may have established a branch; for the enterprises or companies granted a permanent or temporary tax exemption; and for the reserve or contingency funds of corporations, provided they be required to keep them in cash.
The Municipalities shall implement the payment of salaries through Banco de la Provincia de Buenos Aires opening, to such effect, savings accounts for their employees.

# CHAPTER II

## RELATIONSHIP WITH THE AUTHORITIES OF THE PROVINCE

**ARTICLE 8 –**    Pursuant to the provisions of article 1 hereof, the Province grants full autonomy to the Bank, which shall be exclusively administered by the Board of Directors.

**ARTICLE 9 –**    The Bank shall be the financial agent for the Government of the Province, shall carry out all banking transactions undertaken by such Government and, on its behalf, it shall be empowered to perform the followings acts:

a) To collect fiscal revenues and taxes, in accordance with the provisions of the pertinent agreement, within the Federal Capital and throughout the territory of the Province where the Bank may have established offices and branches. The Government of the Province shall pay the Bank the cost of the services rendered as a commission for collecting fiscal revenues and taxes;

b) To service the Province's public debt in accordance with the directions given every year by the Ministry of Economy. In

**Charter**
of Banco de la Provincia de Buenos Aires



order to fulfill this duty, the Bank shall withhold, out of the monies collected as taxes and fiscal revenues or received on account of the Province's revenue share in national taxes, all the amounts that, pursuant to said Ministry's specifications, shall be necessary for the payment of interest on and principal of loans, and other related expenses, which should be made under the terms and conditions set forth in the pertinent agreements. Should the total collection be insufficient to ensure servicing, the Bank may advance the necessary funds and get reimbursement from the monies subsequently collected under the items herein mentioned, so that all advances made for such purposes shall be settled on the last business day of each year. Should any such advance remain unpaid at that date, this Bank's authority may no longer be exercised until settlement of all amounts due. The Bank shall have the exclusive responsibility of handling and disposing of the funds or advances intended to service the public debt, and shall notify the Ministry of Economy of any entries made in the pertinent fiscal account as a result of these transactions;

c) To grant guaranties or carry out transactions which may substantially involve a security with no application of funds, either within Argentina or abroad, for transactions undertaken by the Province in connection with the development of works set forth in the Annual Schedule of Public Works and/or for the purchase of equipment or supplies related thereto, up to three hundred (300) per cent of its capital and reserves. The Bank shall be authorized to satisfy all the undertakings, commitments and obligations arising from said guaranty out of the proceeds of the collection of taxes and fiscal revenues.

**ARTICLE 10 –**    In addition to the provisions of article 9 paragraph b) above, the Bank shall be authorized to grant the Province, in one or several installments and as an advance on tax collection, an amount of up to twenty (20) per cent of the resources set forth in the current Budget for the Central Administration, excluding those intended for the use of credit. Total advances shall in no event exceed twenty (20) per cent of the peso loan portfolio balance of the Banking Section, as evidenced by the Bank's latest monthly Balance Sheet.
All resulting balances shall be satisfied within the period of twelve (12) months following the date the relevant installment or installments is/are made effective, and the Board of Directors shall not be required to further authorize the use of partial installments, including any amounts already repaid. No advances shall be carried forward to the next fiscal year.
Such advances shall accrue no interest, provided that the total thereof does not exceed eighty (80) per cent of demand deposit fiscal accounts, excluding those of the Instituto de Previsión Social (social security institute), the Municipalities and the General Treasury's Central Account, based on the daily average for the last calendar month. Should this ratio be exceeded, the Province shall pay to the Bank compensatory interest thereon at a rate to be agreed upon.
Once the percentage stipulated in this article has been used in whole or in part, the Province shall not be entitled to obtain from the Bank any kind of financing or advance on deposits, except as expressly stated in this Charter.

**ARTICLE 11 –**    The Bank shall be entitled to grant secured loans or advances to the Government of the Province against sales orders of its Public Debt securities for an amount of up to fifteen (15) per cent of the General Administration's Current Budget for Capital Expenditures. The total amount of such financing shall in no case exceed seven (7) per cent of the peso loan portfolio balance of the Banking Section, as evidenced by the Bank's latest monthly Balance Sheet.
The Board of Directors' affirmative resolution shall be based on the grounds that such securities may be placed on the market at the prices fixed and within a reasonable time period. Should supervening adverse circumstances make it advisable to the Bank to hold the securities in portfolio, the Board of Directors shall not approve any other similar transaction until full satisfaction of the previous one.

**ARTICLE 11 BIS –** The Bank shall be entitled to grant credit facilities to the Government of the Province in order to meet social welfare expenditures and/or make investments in infrastructure to promote people welfare, for an amount of up to TWENTY PER CENT (20%) of the resources set forth in the Current Budget for the General Administration, excluding those intended to be used for credit purposes.
The total amount of loans shall in no case exceed TWENTY PER CENT (20%) of the peso loan portfolio balance of the Banking Section, as evidenced by the Bank's latest monthly Balance Sheet, using to that effect:



**Charter**
of Banco de la Provincia de Buenos Aires

a) funds from market financial transactions linked to government securities, the debtor or guarantor of which is the National Government;

b) funds borrowed from other national or provincial entities or bodies, or from local or foreign, public or private, development agencies;

c) funds specially raised for that purpose through public offering, or directly received from institutional investors.

The Bank shall only be entitled to grant these loans as long as the Province provides as collateral any provincial property not previously granted as security and/or funds from the Federal Tax Revenue Sharing System, as provided in Sections 1º, 2º and 3º of the Agreement between the Nation and the Provinces on the Financial Relationship and the Basis for a Federal Tax Revenue Sharing System, ratified by Law No. 12,888, or any other agreement that may replace it in the future and authorize the Bank to retain the pertinent amounts that guarantee the automatic reimbursement of such financing from the sums received thereunder.

The term and amount of the loans granted pursuant to this article shall in no case exceed the terms and amounts of the agreements from which funds for this transaction are derived.

**ARTICLE 12 -** The Bank shall abide by the provisions of the Accounting Law when preparing its annual budget.

**ARTICLE 13 -** The relationship between the Bank and the Executive Branch shall be held through the Ministry of Economy.

**ARTICLE 14 -** The Province shall secure all deposits placed with, and all bonds and other securities issued by, Banco de la Provincia de Buenos Aires.

# CHAPTER III

## CAPITAL AND PROFITS

**ARTICLE 15 -** The Bank's Board of Directors shall annually fix the amounts of capital corresponding to each of the three (3) Sections, pursuant to the provisions of article 17 hereof.

**ARTICLE 16 -** The Bank's fiscal year shall close on the thirty-first day of the month of December of every year. The Balance Sheet and the Profit and Loss Statement shall be published in the Boletín Oficial (official gazette) of the Province, as well as in at least two (2) daily newspapers printed in the provincial jurisdiction and in other two (2) daily newspapers printed in the Federal Capital.

**ARTICLE 17 -** Each of the Bank's Sections shall make a separate profit and loss statement at the end of each fiscal year and shall transfer its profits to a common pool.

After deducting all the amounts necessary for clearing up the assets and ten (10) per cent of the pertinent net profits for the legal reserve fund of each Section, all realized profits shall be allotted as follows:

-    To the capital account of the Investment Loan Section, the net surplus obtained by said Section.

-    To increases in capital and reserves of any of the Sections, and to contingency, social security and investment funds, pursuant to the ratios determined by the Board of Directors.

# CHAPTER IV

## ADMINISTRATION OF THE BANK

**ARTICLE 18 -** The administration of the Bank shall be vested in a Board of Directors consisting of one (1) Chairman and eight

**Charter**
of Banco de la Provincia de Buenos Aires



(8) voting members, all of whom shall be of Argentine nationality. They shall be appointed by the Provincial Executive Branch and the approval of the Senate of the Province of Buenos Aires shall be required. Members shall hold office for a term of four (4) years and may be re-elected. The Chairman and the voting members shall be duly qualified for their offices. One-half of the voting members shall be renewed every two (2) years.

**ARTICLE 19 -** The following individuals shall not be eligible as members of the Board of Directors:

a) Legislators, judges, mayors and city council members;

b) Wage-earners, salaried employees or officers of the national, provincial or municipal governments;

c) Administrators, chairmen, directors, managers or employees from other banks.

Should the Chairman or any of the members of the Board of Directors be included in any of the aforesaid categories, he/she shall immediately cease to hold his/her office. Any individual holding office in any economic or financial coordination government agency, whether at the national, provincial or inter-provincial level, as well as any individual holding a teaching or educational position shall be exempted from the above-mentioned disqualifications.

**ARTICLE 20 -** At its first meeting held every year, the Board of Directors shall choose from its own number a Vice- Chairman and a Secretary. In case of absence or inability of the Chairman, his powers and duties shall devolve on the Vice-Chairman. Should both of them be absent, the Board of Directors shall be chaired by the eldest director. In the event of absence or inability of the Secretary, the Board of Directors shall appoint a substitute.

**ARTICLE 21 -** Any vacancy of the office of Chairman or Director shall be filled by a substitute appointed for the remaining term.

**ARTICLE 22 -** The Board of Directors shall meet at least twice a week, with a quorum of five (5) members including the Chairman. Resolutions shall be adopted by the majority of votes and, in case of a tie, the Chairman shall have the casting vote.

**ARTICLE 23 -** The Board of Directors shall not be entitled to delegate any of its powers to the Chairman. All Directors who approve transactions expressly forbidden under this Charter shall be held jointly and severally liable.

**ARTICLE 24 -** The Board of Directors shall be vested with the following powers and shall discharge the following duties, to wit:

a) To enforce this Charter and other laws related to the operation of the Bank;

b) To approve, establish, authorize and regulate all the transactions, services and expenses of the Bank;

c) To regulate any and all loans to be granted;

d) To set the scope and restrictions within which the General Management, the Department Managements and the Branch Managements shall be entitled to grant loans;

e) To enter into any agreements that may be deemed convenient with Banco Central de la República Argentina (Argentine Central Bank) providing for joint actions and the applicable rediscounting policy;

f) To appoint the General Manager, the Senior Deputy General Manager and the Department Managers, upon the Chairman's proposal;

g) To annually approve the Balance Sheet, the Profit and Loss Statement, the proposed allocation of profits for the fiscal year and the Annual Report, all of which shall be notified to the Executive Branch;

**Charter**
of Banco de la Provincia de Buenos Aires



h) To set up the reserve and contingency funds that may be deemed convenient to consolidate the Bank's financial position;

i) To issue the internal rules and regulations;

j) To establish branches or representative offices within Argentina and abroad;

k) To appoint domestic or international correspondents and regulate their relationship with the Bank;

l) To authorize the granting of general and special powers of attorney, and decide on the powers and authorities to be conferred thereby;

m) To prepare the annual budget which shall be submitted to the Executive Branch for its approval;

n) To dismiss any member or members of the staff, after a summary investigation, and establish the disciplinary measures to be applied in each case;

o) To hold regular and special meetings in any of the Bank's offices whenever deemed necessary;

p) To bring in actions in court pursuant to all powers granted by law, without any kind of restrictions whatsoever;

q) To grant reductions in the amounts owed, extend the terms of payment thereof or enter into compositions or arrangements with the debtors of any of the Sections, as well as to accept or acquire real property or any other assets or securities in satisfaction of or as security for the Bank's claims;

r) To acquire any real property which shall be essential for the operation of the Bank's offices, branches or agencies and dispose of them, whenever deemed advisable. To sell any real or personal property or other assets that the Bank may have received in satisfaction of its claims or as security therefor, or that the Bank may otherwise acquire;

s) The Board of Directors shall not be authorized to grant loans to artificial persons from the Private Sector for an amount in excess of pesos TWO BILLION ($2,000,000,000), when the amount to be disbursed exceeds FIFTY PER CENT (50%) of the borrower's indebtedness to the Financial System. This restriction shall not apply to investment projects by companies with favorable ratings, as to their repayment capacity, from at least TWO (2) well-known risk-rating agencies. It shall neither be authorized to grant loans to artificial persons from the Private Sector for an amount exceeding EIGHT PER CENT (8%) of the Bank's Net Worth nor to grant loans to natural persons for amounts over pesos FOUR HUNDRED MILLION ($400,000,000). The above amounts may be increased up to TWO HUNDRED PER CENT (200%) when secured by classes "A" or "B" preferred collateral, as stated in the pertinent regulations issued by the Argentine Central Bank. Collateral already granted for loans which have not originally surpassed the limits set herein may be computed for this purpose. The increase authorized for loans secured by classes "A" or "B" preferred collateral shall apply to loans granted to construction companies destined to the financing of public works in the Province of Buenos Aires and to Provincial Suppliers, when secured by the assignment or pledge of rights on securities or other documents, provided that, when properly instrumented, the Bank may have the funds for the settlement of the obligation incurred by the customer, without having to previously request payment from the debtor.

In the case of loans intended to finance export transactions, they may not exceed an overall amount of UNITED STATES DOLLARS SIXTY MILLION (US$60,000,000) for artificial persons from the Private Sector and UNITED STATES DOLLARS SEVEN HUNDRED AND FIFTY THOUSAND (US$750,000) for natural persons.

Financing transactions carried out with companies related to or owned by Grupo Provincia and Provincia Servicios Financieros are excluded from the limits set forth above.

The amounts mentioned in this subparagraph may be modified every year by the Budget Act should the national macroeconomic situation so requires.

The members of the Board of Directors shall be jointly liable for the non-fulfillment of the provisions of this article and shall

**Charter**
of Banco de la Provincia de Buenos Aires



be personally liable for any damages caused to the Bank as a result of such default, without prejudice to any criminal and civil liabilities arising therefrom.

t) To inform quarterly and within one month from the closing of each period to the Budget and Tax Committees of the Lower and Upper Houses about the situation and progress of bad debtors. A detailed analysis of borrowers with debts over pesos one million ($1,000,000) shall be furnished together with the quarterly financial statements;

u) To supervise the strict observance by the different authorities of the Bank of the Charter's provisions and the policies, rules, manuals and instructions related to the approval and recovery of loans issued by the Board of Directors. It shall also oversee the adequate development and the effective implementation of the relevant internal control systems.

**ARTICLE 25 –** Each Director shall be entitled to examine all accounting books of the Bank as well as to request any data or explanations regarding any transaction already carried out or to be carried out in the future. In all cases, such Director shall express his/her intention to do so at the meetings of the Board.

**ARTICLE 26 –** The remuneration to be received by the members of the Board of Directors for their services shall be fixed in the Budget.

# CHAPTER V

## THE CHAIRMAN

**ARTICLE 27 –** The Chairman shall attend the Bank every day and shall be vested with the following powers and discharge the following duties, to wit:

a) To observe and enforce this Charter as well as the Bank's rules and regulations, and to carry out the resolutions adopted by the Board of Directors;

b) To chair the Board of Directors' meetings; to inform the Board of Directors about all the regulations or matters that may be of concern to the Bank; to sign, together with the Secretary, the pertinent minutes of the meetings;

c) To appoint, promote and transfer all of the Bank's officers and employees, giving notice thereof to the Board of Directors, except for the General Manager, the Senior Deputy General Manager and the Department Managers who shall be appointed in accordance with the provisions laid down in article 24 paragraph f) hereof;

d) To represent the Bank and sign the official communications and correspondence of the Board of Directors; to sign the balance sheets together with the General Manager and the General Accountant; to sign all powers of attorney to be granted to employees or third parties, as agreed upon by the Board of Directors;

e) To call a special meeting of the Board of Directors whenever he/she may deem it convenient or when so requested by at least four (4) Directors;

f) To object to loan agreements entered into by the Board of Directors whenever he/ she may deem them disadvantageous. In such cases, and in order that the Board of Directors' resolution may prevail, said loan agreements shall be approved by the vote of two thirds (2/3) of the Directors present at a meeting specially summoned for such purpose;

g) To answer in writing all interrogatories filed in lawsuits, without being obliged to appear in person;

h) To appoint the voting members who shall make up the committees;

**Charter**
of Banco de la Provincia de Buenos Aires



i) To resolve any urgent matters of domestic concern, giving notice thereof to the Board of Directors at its first subsequent meeting;

j) To grant neither loans nor renewals, nor to undertake any commitments that may be binding on the Bank without the Board of Directors' prior authorization.

## CHAPTER VI

### THE GENERAL MANAGEMENT

**ARTICLE 28 -** The management of the Bank shall be vested in a General Manager and, as applicable, in a Senior Deputy General Manager, both of whom shall be of Argentine nationality.

**ARTICLE 29 -** The Board of Directors shall regulate the duties to be performed by the General Manager and the Senior Deputy General Manager, who shall be the Chairman's and Directors' immediate advisors.

**ARTICLE 30 -** In their capacity as advisors, the General Manager and, in his/her absence, the Senior Deputy General Manager, shall attend the meetings of the Board of Directors, when the latter so requires, being entitled to give their opinions but not to vote and to request that their opinions on any matter be recorded in the minutes of the meeting, whenever they deem so advisable.

## PART ONE

## BANKING SECTION

## CHAPTER VII

### TRANSACTIONS

**ARTICLE 31 -** The Bank shall, through its Banking Section, carry out all transactions that the Board of Directors may deem convenient and that by reason of their intrinsic nature are to be carried out within the ordinary course of business of banking institutions, provided they are not expressly forbidden either by the provisions of this Charter or by any other laws.
It shall foster the national economy, giving priority to the Province's basic industries, and the monetary stability insofar as its actions may be affected thereby. However, the Bank shall not perform the following acts, to wit:

a) To acquire real property, except that property which should be essential for its own use, or which the Bank should be compelled to acquire in order to protect its claims or to receive in payment of any debts or as security therefor, being obliged to dispose of the latter as soon as possible;

b) To participate, whether directly or indirectly, in commercial, agricultural, livestock breeding or industrial enterprises, or in any other kind of firms or concerns, except for any financial institutions whatsoever, whether national or international, or whenever it should be obliged to do so in order to protect its claims;

c) To acquire public or municipal funds for itself, and grant loans to governments or public entities, except as provided for in articles 9, 10, 11 and 32 of this Charter.

**ARTICLE 32 -** The prohibition mentioned in article 31, paragraph c) above, and the restrictions set forth in article 11 hereof shall not apply to the following transactions, to wit:

a) Loans to national or provincial government agencies or departments, whether commercial or industrial, to non-state-owned public entities holding their own net worth or equity capital and having a self-governing management or



administration, and to business organizations in which the National or Provincial Governments own shares, provided in all cases that their operations and transactions shall have shown a favorable balance or surplus earnings over the last two fiscal years, according to the following separate rates:

1) Provincial government agencies or departments: up to twenty five (25) per cent of the Bank's Capital and Reserves;

2) National government agencies or departments: up to twenty (20) per cent of the Bank's Capital and Reserves;

3) Business organizations in which the National or Provincial Governments own shares, and non-state-owned public entities: up to twenty (20) per cent of the Bank's Capital and Reserves;

b) Guaranties granted to the national entities specified in paragraph a) above. These transactions shall be subject to the general rules governing the Bank's commercial activities;

c) Loans, guaranties and sureties granted to the Municipalities in the Province of Buenos Aires, intended to be applied to the execution of works related to urban infrastructure, public buildings, the purchase and repair of machinery and facilities for rendering public services as well as to general and social welfare works. These loans may not exceed, in the aggregate, two hundred (200) per cent of the average balance of their accounts held with the Bank over the last twelve-month period prior to the date on which the loan was granted. The maximum term for these transactions shall exceptionally be ten (10) years, with proportional repayments commencing not later than the second year;

d) Purchases, guaranties and sureties, discounts and sales of treasury bills and other public securities that may allow short-term deposits of available funds or provide further security for its transactions.

**ARTICLE 33 -** The Bank shall be entitled to grant special loans for the improvement of agriculture, forestry, livestock breeding, industry, fishing, construction of silos and elevators and other activities aimed at the development of the provincial economy, applying preferential rates and terms under the conditions set forth by its Board of Directors.

**ARTICLE 34 -** In accordance with the provisions of article 1 of this Charter and of section 69 of National Law No. 1804, when undertaking mortgage security transactions, the Bank may order the previous recording thereof by means of an official letter addressed to the Real Property Registries, before granting the loan and after duly verifying the title to the property, and that the same may be freely disposed of:

a)   The previous recording of the mortgage shall create a lien on the real property, having a special privilege thereon for the amount of the advance plus expenses and interest thereon. It shall last forty five (45) consecutive days as from recording and may be extended, at the Bank's request, for the same term and in the same manner as many times as may be necessary;

b)   The previous recording shall expire upon the occurrence of any of the following events:

- The mere expiration of the period mentioned in paragraph a) above;

- Payment of the loan plus expenses and interest thereon, which shall be notified to the Bank directly by means of an official letter;

- Registration of the mortgage deed evidencing the mortgage drawn as security for the total amount of the loan;

c) In case the mortgage deed should not be executed as a result of any breach of the contract, by death of any of the parties or by any other reason whatsoever, the Board of Directors shall be entitled to order the immediate foreclosure of the mortgaged property as if it were a due and payable debt secured by an interest therein consisting of a mortgage, with the rank previously recorded, and in accordance with its current special foreclosure procedures, if any, fixing an upset price

**Charter**
of Banco de la Provincia de Buenos Aires



which shall include the amount of the loan plus interest thereon as well as taxes, rates, and expenses incurred;

d) The registration of these previous recordings with the Real Property Registries shall be subject to the pertinent mortgage recording fees based on the amount of the loan granted. The monies so paid shall be subsequently deducted, upon foreclosure, from the amount of the relevant tax applicable to the mortgage.

**ARTICLE 35 -** In case of urgent need, mortgage deeds in favor of the Bank on certain real property situated in the Province may be executed without any certificates evidencing payment of any provincial or municipal taxes and service rates or improvement assessments, without prejudice to the rights of the treasury and those corresponding to the pertinent municipality, to collect any amounts so owed as from the execution date of the mortgage deed.

**ARTICLE 36 -** The Province shall stand as surety subsidiary liable before the Bank for any unpaid balances held by employees of the provincial Administration as a result of any advances on salaries made to them by the Institution. Likewise, the Province shall answer for any losses suffered by the Bank in connection with the foreclosure of mortgage loans included in the portfolio transferred by the former Caja Popular de Ahorros (savings association) as well as of those granted pursuant to the provisions of Law No. 4858.

**ARTICLE 37 -** In the case of special loans to public employees or other affiliate members of the Cajas de Previsión Social (social security associations), the treasurers or any qualified officers acting in such capacity, the employers or the Cajas de Jubilaciones (retirement and pension funds), as the case may be, shall deduct from the employee's wages or salaries, either monthly or at the time of payment of the pertinent remuneration, at the Bank's request, all amounts necessary to pay loan services, insurances, expenses, taxes, rates and arrears and shall transfer the same to the Bank until satisfaction of the debt. In case of non-compliance, the loan shall be declared due and payable.

## PART TWO

## MORTGAGE LOAN SECTION

## CHAPTER VIII

### ORGANIZATION

**ARTICLE 38 -** The capital of the Mortgage Loan Section shall be made up according to the provisions of article 15 of this Charter.

**ARTICLE 39 -** The assets of the Mortgage Loan Section shall consist of the principal amount of the mortgage loans granted, either in cash or in bonds, plus any other amounts incidental thereto.

**ARTICLE 40 -** The liabilities of the Mortgage Loan Section shall consist of:

a) outstanding mortgage bonds and obligations;

b) amounts received from the Argentine Central Bank, the Instituto de Previsión Social of the Province and from other agencies or third parties to be invested in mortgage loans.

**ARTICLE 41 -** The capital, reserves and assets of the Mortgage Loan Section shall secure its liabilities and be applied to the payment thereof.

**Charter**
of Banco de la Provincia de Buenos Aires



## CHAPTER IX

### TRANSACTIONS

**ARTICLE 42 –** The Mortgage Loan Section shall be entitled to grant, in general, short or long-term mortgage loans secured by first mortgages, either in cash or in mortgage bonds, with or without cumulative repayment. Particularly, it shall be entitled to carry out the following transactions:

a) To grant loans for the purchase and subdivision of land, ensuring minimum land measures that may constitute an economic unit;

b) To grant loans for forestry and electrification, industrial promotion and decentralization, especially for the diary, fishing, iron and steel, and cellulose industries, construction and enlargement of buildings intended for plants and factories, hotels, inns, silos, markets and cold-storage facilities within the territory of the Province;

c) To grant loans for the construction of dwelling-houses;

d) To plan and build household units and/or districts to be rented or sold in order to enable a gradual slum- clearance, carrying out all necessary city planning and sanitation works and setting up organizations to promote local neighboring advances, for which purposes it shall be empowered to buy and sell any kind of real and personal property;

e) To grant loans to agricultural cooperatives for the building of grain elevators and warehouses;

f) To issue interest-bearing mortgage bonds repayable on a short or long-term basis;

g) To issue mortgage bonds that may entitle holders thereof to be awarded premiums by lots. Such bonds shall be redeemable upon maturity or shall be issued under the repayment conditions provided for in paragraph f) above;

h) To enter into financial agreements in order to enable the placing and servicing of mortgage bonds and other obligations in foreign countries;

i) To issue other obligations and take loans within or outside Argentina, either in local or foreign currency, in order to invest the amount thereof in cash loans secured by first mortgages or under such special terms and guaranties as may be determined by the Board of Directors;

j) To create and organize savings accounts, subject to the condition that all deposited funds shall be invested in mortgage loans;

k) To arrange, acting as agent, the placement of funds in mortgages on behalf of third parties;

l) To receive deposits intended to set up a Loan and Savings fund, which shall accrue such interest as may be determined by the Board of Directors;

m) To grant loans to acquire, build and enlarge individual or collective household units and/or districts, through the savings and loan system, being entitled to adjust the unpaid balances of loans in proportion to currency devaluations and increases in Borrowers' remuneration, wages and salaries according to the guidelines that the Board of Directors may establish from time to time;

n) To make temporary investments which may be readily realized. All transactions referred to in paragraphs a), b), c), d) and e) above shall be always secured by a first mortgage, either in cash or in mortgage bonds, under the terms to be established by the Board of Directors.

**Charter**
of Banco de la Provincia de Buenos Aires



**ARTICLE 43 -** The Bank shall service on the due date the obligations and mortgage bonds it may issue, and shall also make all appropriate repayments.

**ARTICLE 44 -** All mortgages in favor of the Bank shall be drawn on real property free of any and all liens and encumbrances. All titles to property shall be marketable and shall have no legal flaws or defects.

## CHAPTER X

### MORTGAGE BONDS

**ARTICLE 45 -** The Bank's Board of Directors shall fix the interest rates and the ordinary repayment of mortgage bonds, their service schedules and terms of issue, and shall be also empowered to make extraordinary repayments whenever deemed appropriate.

**ARTICLE 46 -** The mortgage bonds shall be issued in series. Bonds bearing the same interest rate and having the same sinking fund as well as the same terms of payment of interest and principal shall belong to the same series.

**ARTICLE 47 -** The Bank shall issue mortgage bonds for the nominal values that it may deem appropriate and for the aggregate amounts that the Board of Directors may determine for each series.

**ARTICLE 48 -** The tenor of the mortgage bonds shall specify the interest rate to be paid by the Bank as well as the repayment percentage.

**ARTICLE 49 -** Holders of mortgage bonds shall only have a claim against the Bank. The Bank shall, on the relevant maturity dates, pay the principal and interest corresponding to the redeemable bonds drawn by lots as well as any premiums awarded to the bonds issued under such scheme. No third parties' objection to payment thereof shall be allowed, unless said objection be ordered by a competent authority.

**ARTICLE 50 -** Payment of interest on the mortgage bonds shall be made at any of the Bank's offices and branches, and shall be effected in cash upon expiration of the relevant period of time. The Bank shall establish the payment dates, which shall apply to all holders of the same series of bonds.

**ARTICLE 51 -** Outstanding mortgage bonds may not exceed the amount of loans of such type.

**ARTICLE 52 -** Mortgage bonds shall bear the facsimile signatures of the Bank's Chairman and Director Secretary, and shall be signed by the Manager or Deputy Manager of the Section as well as by the Bank's notary or notaries public expressly authorized by the Board of Directors to do so.

**ARTICLE 53 -** The amounts collected by way of repayment installments as well as all interest accrued on the redeemed bonds shall constitute the sinking fund of each series, which shall also include the amounts received in cash as advance or full payment of the loan. All the amounts available in each sinking fund shall be used to redeem the relevant bonds by lots and at par value. Lots shall be drawn three months prior to the specified payment date.

**ARTICLE 54** -Bonds drawn by lots shall cease to accrue interest in favor of their holders as from their specified payment date.

**ARTICLE 55 -** For accounting purposes, all bonds drawn by lots shall continue to accrue interest in favor of the Bank, provided they were not applied to the satisfaction of mortgages redeemed either by the mere lapse of time or through payment in advance.

**ARTICLE 56 -** Without prejudice to the redemptions provided for in article 53, the Bank shall be entitled to make special redemptions, which shall also be at par value, by drawing lots. The number or quantity of such lots shall be established by the Board of Directors.

**Charter**
of Banco de la Provincia de Buenos Aires



# CHAPTER XI

## LOANS

**ARTICLE 57 –** No mortgage loans shall be granted on the following real property:

a) Mines and quarries;
b) Undivided lots, unless the mortgage be drawn on the entire property;
c) Property not yielding a certain and permanent income or being incapable of doing so.

**ARTICLE 58 -** The mortgage and the registration thereof with the Registry of Mortgages shall remain legally in force during the term of the agreement in accordance with section 69 of National Law No. 1804. However, the Bank shall be entitled to request, directly and as many times as deemed necessary, the renewal of such registration, which shall be made by the officer in charge of the Registry of Mortgages upon the Bank's sole filing of a certified copy of the original deed evidencing the loan.

**ARTICLE 59 -** Mortgage loan agreements shall be tax free to the extent provided for by the laws in force. In such cases, the certified copies of deeds shall be issued on official stamped sheets of notarial paper.

**ARTICLE 60 -** The mortgagor shall be entitled to convey title to the mortgaged property only after the Bank's acceptance of the new mortgagor; should this requirement not be fulfilled, the mortgagor shall not be released from his/her obligations under the loan agreement. The relevant certified copy of the deed conveying title shall be deposited with the Bank within the term of thirty (30) days following the date of acceptance, and the original mortgagor shall only be released from his/ her obligations upon surrendering the same.

**ARTICLE 61 -** The Bank shall be entitled to take out fire insurance with the Caja de Jubilaciones, Subsidios y Pensiones del Personal del Banco de la Provincia de Buenos Aires (retirement and pension fund for employees of the Bank) on behalf of the mortgagor, with respect to any buildings existing or which may be constructed on the mortgaged property. In the case of loans intended to promote construction or purchase of dwelling -houses, the Bank may also request the mortgagor to take out a life insurance including mortgage cancellation with the above- mentioned institution. Should the Caja de Jubilaciones, Subsidios y Pensiones del Personal del Banco de la Provincia de Buenos Aires not underwrite the policy, the Bank shall be entitled to designate another insurance company, the policy of which shall be accepted thereby.

**ARTICLE 62 -** The mortgagor shall not perform any of the following acts or enter into the following agreements, to wit:

a) To lease, rent or grant the use or enjoyment of the mortgaged property without the Bank's express written consent;

b) To create subsequent mortgages or grant antichresis rights on any real property mortgaged in favor of the Bank. Breach or non-fulfillment of any of the above provisions shall entitle the Bank:

- to declare the immediate acceleration of the maturity date of the loan;
- to impose a penalty interest on the debt as from the time of the breach or non-fulfillment;
- to sell the property in the manner and under the terms specified in Article 65 hereof.

**ARTICLE 63 -** In the case of mortgage loans, any mortgagor who delays payment of service shall pay the penalty interest stated in the agreement, to be fixed by the Board of Directors taking into consideration the service amount and the period during which said payment remains in arrears.

**ARTICLE 64 -** Should the mortgagor fail to pay the pertinent service for more than ninety (90) days since the date on which it became due and payable, the Bank shall be entitled, acting on its own initiative and without any kind of legal proceedings whatsoever, to attach the income of the mortgaged property and to apply the same to the payment of services and costs

**Charter**
of Banco de la Provincia de Buenos Aires



of upkeeping the property. This shall not prevent the Bank from selling the mortgaged property in accordance with the provisions of Article 65 hereof, if it deems appropriate to do so. Should the property not yield any income, the Bank shall establish the same and shall forthwith proceed in the aforesaid manner.

**ARTICLE 65 -** The Bank shall be empowered to order the sale by auction of the mortgaged property in all cases where it may be entitled to do so. Said sale shall be effected at its own initiative without any kind of legal proceedings whatsoever to the highest bidder and with an upset price covering the aggregate debt. After the sale, it shall also be empowered to execute the relevant title deed in favor of the purchaser. If so deemed convenient by the Bank, it shall give the purchaser possession of the property free of any occupants, whether they be the owners or third parties acting in the owner's name, whatever their title to or interest in said property may be, and the purchaser shall acquire by subrogation any and all rights or interests corresponding to the mortgagor to or in said property. The loan agreement shall include an irrevocable power of attorney granted by the mortgagor in favor of the Bank, authorizing it to execute and sign the deed of conveyance of title. Such power of attorney shall be valid even upon insolvency, bankruptcy or death of the mortgagor, and shall also authorize the Bank to give possession of the property to the purchaser and to represent the mortgagor in any legal actions or proceedings that may be brought or instituted against him/her in connection with the mortgaged property, as well as to bring any action in court against third parties unlawfully holding or occupying the same.

**ARTICLE 66 -** Should the mortgaged property be in an auction sale position, then the Bank, pursuant to the provisions of this Charter, shall be entitled to carry out the following acts:

a) To proceed to the sale of said property as a whole or divided in lots, whichever may be considered most profitable, being empowered to assign all the areas necessary for the construction of streets or roads to the State or to the municipalities, at a price to be agreed upon or for no valuable consideration;

b) To represent the mortgagor in any legal actions or proceedings that may be brought or instituted against him/her in connection with the mortgaged property as well as to bring any legal actions or proceedings against third parties unlawfully holding or occupying the same, and to agree on any compromise and settlement signing the relevant documents;

c) To take possession of the mortgaged property in the manner and under the terms specified in Article 71 hereof;

d) Once the sale by auction of the mortgaged property has been approved or once such property has been awarded to the Bank, to evict, at its own initiative and without any judicial order but being empowered to directly request the assistance of the police, all tenants or occupants in said property, except that such capacity should derive from lease agreements entered into with the Bank's express written authorization;

e) To repair the mortgaged property, whenever it may deem necessary to do so and at the mortgagor's expense, and to take any and all steps and measures and perform any other acts that may be required for the upkeeping or preservation of said property.

**ARTICLE 67 -** Sales by auction shall be advertised at least during three (3) consecutive days in two (2) daily newspapers to be designated by the Board of Directors. Advertisements shall be published at least eight (8) days before the date on which the sale by auction shall take place, to be counted as from the last publication made.

**ARTICLE 68 -** Sales by auction ordered by the Bank shall be carried out by a licensed auctioneer or by a Bank's employee to be appointed by the Board of Directors in such locations where no auctioneer is available. In the first case, the auctioneer shall be only entitled to receive the commission established by the Board of Directors. In the second case, the employee shall receive no commission whatsoever and the Bank shall only collect the expenses incurred in. If no sale by auction takes place, no commission shall be charged, but all expenses incurred in shall have to be reimbursed.

**ARTICLE 69 -** In all cases where the Bank should be entitled to sell any mortgaged property, the Board of Directors shall be empowered to elect the place whereat the auction shall be held, to wit:

- At the Home Office, located in the Capital of the Province;
- At the Head Office, located in the city of Buenos Aires;

**Charter**
of Banco de la Provincia de Buenos Aires



- At the branch office where the loan was applied for or where the relevant loan agreement was executed;
- At the place where the property is located.

**ARTICLE 70 -** All sales shall be subject to the approval of the Board of Directors. The purchaser shall have to pay the pertinent purchase price within the period of ten (10) days following said approval. Should the purchaser fail to do so, the Bank may declare the sale null and void without being obliged to reimburse the down payment made, or it may otherwise allow the purchaser to assume the mortgage debt under the terms established in the regulations in force and by the notice of auction.

**ARTICLE 71 -** The Bank may request, at its own initiative, the assistance of the police in order to take possession of the mortgaged property, to post auction signs and banners, to allow all interested parties and auctioneers to inspect such property and, in the event of sale, to give possession thereof to the purchasers, notwithstanding any objection to the same by its owners or occupants, whatever their title to or interest in said property may be.

**ARTICLE 72 -** If the property is not sold at the first auction, the Board of Directors shall, within a period of one hundred and eighty (180) days thereafter, order a new sale by auction at an upset price not less than the principal amount of the debt. Should the second auction prove to be unsuccessful, the Board of Directors shall be empowered to establish the terms and conditions of the subsequent auctions as well as the dates on which they shall take place, without prejudice that the Bank may, if appropriate, decide to dispense with further auctions and request the awarding of the mortgaged property. The pertinent judge shall have to order such awarding summarily, without any further evidence other than the proof of failure of the previous auctions ordered. The relevant title deed shall be executed in favor of the Bank for an amount equal to the upset price fixed at the last auction and, thus, the Bank may afterwards settle the account for the purpose of collecting the personal balance.

**ARTICLE 73 -** If no bids were tendered for the mortgaged property at the first two (2) auctions and as long as the mortgagor is in arrears, the Bank may take possession of the property in order to collect the income or proceeds thereof or may lease it, as it may deem most convenient, until a new sale by auction is considered advisable. The amounts so obtained shall be applied to the payment of taxes, services, costs and expenses that the Bank may deem appropriate to be incurred in keeping the property in good repair. The pertinent judge shall confirm the possession of the mortgaged property requested by the Bank upon the mere filing of its petition.

**ARTICLE 74 -** The Bank shall be entitled to order the sale by auction of the mortgaged property even though an attachment has been levied on the same by the order of a court to satisfy other claims, and even if the mortgagor is insolvent or has been adjudged a bankrupt, whichever the venue in which such actions have been taken. In those cases, once the debt has been settled and once the claim in favor of the Bank together with all expenses incurred and interest accrued have been satisfied, the Bank shall make available any resulting excess balance to the pertinent court authorities. In the event of execution, insolvency or bankruptcy of the mortgagor, the Bank shall, even if the debt has been serviced on a regular basis, exercise its right immediately after the court has issued the order directing the judicial sale, for which purpose notice of such order shall be served upon it. Should the Bank not order that said auction is to take place within the period of sixty (60) business days as from service of process, the pertinent judge may direct the sale by auction under customary procedures, at the request of the interested party to the lawsuit.

**ARTICLE 75 -** Under no circumstances the pertinent judges may suspend or hinder the Bank's procedure for the sale by auction of the mortgaged property, except in the case of a third party intervention or joinder of a co-litigant after the action is brought, by which said third party or co-litigant claims to own the property in dispute in the original action; neither may they grant any time limit to the mortgagor nor prevent payment of the Bank's claim by reason of any objection whatsoever raised by any third-party.

**ARTICLE 76 -** The Registries of Mortgages, attachments and injunctions shall, without any further proceedings, at the Bank's request and under its own responsibility, release and discharge any and all injunctions, attachments, second mortgages or any other liens or encumbrances on the property sold, to the only effect of executing the pertinent title deed, whereupon such property shall have no lien upon it other than the one held in favor of the Bank. Should the mortgagor refuse to deliver the

**Charter**
of Banco de la Provincia de Buenos Aires



title deed corresponding to the mortgaged property to the Bank, for the mere purpose of executing the pertinent deed of sale, such title deed shall, to the effects of complying with the provisions of section 6 of Law No. 2378, be replaced by the pertinent certificate of title thereto which, authenticated by the Bank's notary public, is filed in the Bank's archives and on which the marginal note required by law shall be entered.

ARTICLE 77 - Once the collateral security for the loan has been sold, and when the purchase price of said property proves to be insufficient to fully cover the aggregate debt, the Bank shall be entitled to demand from the mortgagor, by execution proceedings, payment of the resulting balance as evidenced in the Bank's accounting books. The mortgage deed, together with the debt statement furnished by the Bank, shall constitute the execution document.

ARTICLE 78 - The Board of Directors shall be empowered to order the public or private sale, either as a whole or divided in lots, of any real property awarded to the Bank or acquired thereby in any other manner whatsoever. In the case of rural property, the Board of Directors shall be entitled to set forth purchase terms intended for ensuring the best possible distribution thereof among farmers and cattle breeders who personally cultivate and manage the parcels of land or plots acquired thereby. The Board of Directors shall also be authorized to grant easy terms of payment to the purchasers of any of the aforesaid parcels of land and plots. Mortgages created in favor of the Bank to secure payment of any purchase price balance of any property so sold shall be governed by the provisions of this Charter related to loans granted by the Mortgage Loan Section.

## CHAPTER XII

### ISSUANCE OF SECURITIES AND OTHER NEGOTIABLE INSTRUMENTS

ARTICLE 79 - The proceeds of loans obtained by the Bank within Argentina or abroad, through the issuance of securities or other negotiable instruments, shall be exclusively invested in loans secured by first mortgages and in accordance with the general terms established in Part Two of this Charter.

ARTICLE 80 - Any securities issued or to be issued shall be at all times represented by an equal or a greater amount of mortgage loans.

ARTICLE 81 - Any cash proceeds from repayment or satisfaction of mortgage loans shall be immediately applied to grant new loans of the same type or to repay any loans, redeem obligations or retire securities, so as to maintain at all times the ratio of Mortgage Credit Section assets to outstanding securities.

ARTICLE 82 - Bonds and securities may be issued in local or foreign currency; all negotiable instruments representing such debts or obligations shall be written out or issued in the official language of Argentina , may be translated into other languages, and shall quote the relevant parts of this Charter.

ARTICLE 83 - The Board of Directors shall establish in each case the rate of interest of the securities, the repayment, redemption and retirement thereof as well as all other terms of issuance. Payments shall be effected in local currency.

ARTICLE 84 - The Board of Directors is hereby authorized to grant any kind of surety bonds, guaranties or security interests; to pay any expenses and commissions necessary to issue and to list the bonds in any foreign exchanges and markets. The Board of Directors is also authorized to observe the regulations of foreign stock exchanges.

ARTICLE 85 - The Bank shall be entitled to obtain credits or loans not secured by bearer bonds or negotiable instruments. The provisions hereunder shall apply to this kind of credits or loans provided they are consistent with the nature and terms thereof.

**Charter**
of Banco de la Provincia de Buenos Aires



## PART THREE

## INVESTMENT LOAN SECTION

## CHAPTER XIII

**TRANSACTIONS**

**ARTICLE 86 -** The Investment Loan Section shall carry out medium and long-term financing transactions. It shall also be entitled to grant additional short-term financing on a limited basis and perform any kind of transactions that, by reason of their nature, are inherent in investment banking institutions, such as:

a) To receive time deposits;

b) To issue bonds, securities and certificates of Participation in the loans granted thereby or any other instruments negotiated either in the domestic or foreign markets;

 c) To grant guaranties, sureties or other securities, and accept and place third-party drafts and promissory notes related to any transactions carried out thereby;

d) To invest in bearer securities related to any transactions performed thereby, prefinance the issuance thereof and place them;

e) To make temporary investments in transactions to be easily settled, such as placements in Government bonds and development operations in the industrial, agro-industrial and/or infrastructure sectors;

f) To act as trustee and depositary of mutual funds, manage bearer securities portfolios as well as discharge other fiduciary duties;

g) To obtain foreign credits and act as intermediary for loans granted in domestic or foreign currency;

h) To carry out transactions in foreign currency;

i) To lease any capital assets acquired therefor;

j) To discharge all tasks and duties that may correspond to it as agent or attorney-in-fact, as well as all commissions related to its transactions.

**ARTICLE 87 -** Any loans granted may be applied to finance projects for Industrial, Agro-industrial and/or infrastructure Promotion within the territory of the Province of Buenos Aires in accordance with the development policies laid down by the Executive Branch. Whenever so justified by reasons of general interest, and at the Board of Directors' discretion, such loans may be granted to finance investments in the Argentine territory beyond the boundaries of the Province of Buenos Aires.

## PART FOUR

## CHAPTER XIV

### MISCELLANEOUS PROVISIONS

**ARTICLE 88 -** The Bank shall continue to take charge, on behalf and by order of the Government, of the administration of all the Assets corresponding to transactions undertaken prior to June 1, 1906.

**Charter**
of Banco de la Provincia de Buenos Aires



**ARTICLE 89 -** The Bank shall make all monthly contributions to the Caja de Jubilaciones, Subsidios y Pensiones of its staff, according to the percentage determined by the relevant law as employers' contribution. Furthermore, it shall contribute up to five (5) per cent of total compensations paid to its staff in order to set up a cumulative fund intended to improve all the retirement and pension benefits of said Institution in accordance with the provisions set forth by the Provincial Government for beneficiaries of the Instituto de Previsión Social. The Board of Directors is hereby authorized to fix the Bank's annual contribution in order to cover any potential deficit of said Caja resulting from actuarial valuations. Such contribution shall be paid out of the Bank's net profits.

**ARTICLE 90 -** The Province of Buenos Aires shall compensate the Bank for any losses suffered in connection with all development operations undertaken, out of the proceeds of the collection of taxes and other fiscal revenues, subject to prior agreement entered into with the Executive Branch.

**ARTICLE 91 -** The remuneration and fees corresponding to the Bank's lawyers, notaries public and other professionals shall be fixed by the Board of Directors regardless of the law governing the same.

**ARTICLE 92 -** All acts performed as well as all agreements and contracts entered into by the Bank may be formally registered, whenever so directed, in the book of notarial record held at the Escribanía General de Gobierno (government main office of the notary public) and in the manner provided for by the Executive Branch.

**ARTICLE 93 -** The Bank shall be authorized, subject to the prior consent of the Executive Branch, to grant loans for the construction, acquisition or repair of buildings intended for entities financially assisted by the Province. The annual amount of the subsidy shall be applied to the payment of principal and interest corresponding to said loans. The amount of the loan shall not exceed the sum resulting from multiplying the amount of the annual subsidy by the maximum ten (10) year term allowed for the repayment thereof. Said loans may also be granted to the municipalities of the Province. In such cases, the amount of the percentage share allocated to each municipality from the Province's total tax revenues shall be applied to the repayment thereof, within the maximum term hereinabove stated.

**ARTICLE 94 -** Any and all provisions contrary to this Charter are hereby considered null and void.

## PART FIVE

## CHAPTER XV

### TEMPORARY PROVISION

**ARTICLE 95 -** In order to comply with the provisions of this Charter in connection with the loans granted to the Nation and to the Provinces, the Board of Directors is hereby empowered as follows:

a) To agree with the Executive Branch on the repayment of the debt exceeding the amount provided for in Article 11, second paragraph;
b) To write down whatever amount may be considered appropriate over the debit balance of the Federal Government's accounts, as may be agreed upon with the pertinent authorities;
c) To agree on other public debt repayment procedures and regulations.

**Charter**
of Banco de la Provincia de Buenos Aires



The text of this Charter was enacted by Decree Law No. 9434/79. It includes the amendments introduced by Decree Law No. 9840/82 and has been ordered in accordance with Executive Order No. 9166/86.

Article 10 of Decree Law No. 9434/79 was amended by Law No. 10766 of the Province of Buenos Aires. Articles 18, 22 and 27 hereof were amended by Law No. 12354 of the Province of Buenos Aires.

Articles 18 and 24 hereof were amended by Law No. 12726 of the Province of Buenos Aires. Paragraph s) of Article 24 hereof was amended by Law No. 13072 of the Province of Buenos Aires. Articles 18, 22 and 27 hereof were amended by Law No. 13174 of the Province of Buenos Aires.

Paragraph s) of Article 24 hereof was amended by Law No. 13786 of the Province of Buenos Aires. Paragraph s) of Article 24 hereof was amended by Law No. 13929 of the Province of Buenos Aires. Paragraph s) of Article 24 hereof was amended by Law No. 14062 of the Province of Buenos Aires. Paragraph s) of Article 24 hereof was amended by Law No. 14199 of the Province of Buenos Aires. Article 11bis was added by Law No. 14331 of the Province of Buenos Aires.

Article 7 and paragraph s) of Article 24 hereof were amended by Law No. 14393 of the Province of Buenos Aires. Paragraph s) of Article 24 hereof was amended by Law No. 14552 of the Province of Buenos Aires.

Paragraph s) of Article 24 hereof was amended by Law No. 14879 of the Province of Buenos Aires.

Paragraph s) of Article 24 hereof was amended by Law No. 15480 of the Province of Buenos Aires.